IN THE CIRCUIT COURT OF THE
EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR SEMINOLE COUNTY,
FLORIDA

H.T.E., Inc., a Florida corporation,

    Plaintiff,

v.                                 CASE NO.: 01-CA-2432-16-W

TYLER TECHNOLOGIES, INC., a
Delaware corporation,

    Defendant

---

## COMPLAINT FOR DECLARATORY AND SUPPLEMENTAL RELIEF

Plaintiff, H.T.E., Inc. (hereinafter, "HTE"), sues Defendant, TYLER TECHNOLOGIES, INC. (hereinafter, "TYLER"), and alleges:

### Nature of Action

1. This is an action against TYLER under Chapter 86, Florida Statutes, for declaratory and supplemental relief to declare valid and enforceable HTE's statutory redemption of TYLER's holdings of HTE common stock in accordance with Section 607.0902(10), Florida Statutes (Florida Control-Share Acquisition Act).[1]

### Parties, Jurisdiction, and Venue

2. HTE is a Florida corporation providing computer software and related services with its principal office located in Seminole County, Florida. HTE is a publicly-held corporation whose shares are traded on the NASDAQ National Market. Currently, HTE has approximately 16,960,408 shares of common stock that are issued and outstanding.

---

[1] This Act is often referred to as "Florida's Takeover Act."

3. TYLER is a Delaware corporation operating and doing business in the State of Florida through substantial and not isolated activity. Moreover, TYLER, by virtue of asserted ownership of the common stock of HTE, is subject to jurisdiction in the State of Florida. TYLER is also a competitor to HTE notwithstanding its holdings of common stock.

4. Venue in this action is proper in Seminole County, Florida.

### Background and General Allegations

5. In 1999, TYLER acquired ownership of 5,618,932 shares of HTE common stock that constituted approximately 32% of the issued and outstanding common stock of HTE. The 5,618,932 shares were purchased from Dennis Harward and Jack Harward, former officers and directors of HTE, in an attempt to gain a controlling interest in the company.

6. However, as a result of TYLER's amassing this large block of HTE's common stock, TYLER's entire concentration of 5,618,932 shares of common stock constituted "control shares," as that term is defined under Section 607.0902(1), Florida Statutes,[2] subjecting those shares to statutory limitations on their voting and ownership. Section 607.0902, Florida Statutes, (Control-Share Acquisitions) is set forth in its entirety in Exhibit "A," attached hereto.

7. The purpose of Florida's control-share acquisition statute is to protect shareholders of public corporations by balancing their rights with those of a potential acquirer of corporate stock by allowing shareholders the opportunity to decide whether a change in corporate control is desirable.

---

[2] 607.0902 Control-share acquisitions. (1) "CONTROL SHARES."—As used in this section, "control shares" means shares that, except for this section, would have voting power with respect to shares of an issuing public corporation that, when added to all other shares of the issuing public corporation owned by a person or in respect to which that person may exercise or direct the exercise of voting power, would entitle that person, immediately after acquisition of the shares, directly or indirectly, alone or as a part of a group, to exercise or direct the exercise of the voting power of the issuing public corporation in the election of directors within any of the following ranges of voting power:

(a) One-fifth or more but less than one-third of all voting power.

* * *

2

8. HTE's articles of incorporation and bylaws do not exempt "control shares" from the limits on voting rights set forth in Section 607.0902(5), Florida Statutes, that states:

> (5) LAW APPLICABLE TO CONTROL-SHARE VOTING RIGHTS.—Unless the corporation's articles of incorporation or bylaws provide that this section does not apply to control-share acquisitions of shares of the corporation before the control-share acquisition, control shares of an issuing public corporation acquired in a control-share acquisition have only such voting rights as are conferred by subsection (9).

9. Section 607.0902(9), Florida Statutes, establishes that "control shares" have the same voting rights as accorded shares **only** to the extent granted by a resolution approved by the shareholders of the issuing public corporation.

10. After amassing approximately 32% of the common stock, TYLER was not accorded full voting rights by the shareholders as a result of a resolution approved by the HTE shareholders at an annual shareholders' meeting on November 16, 2000.

11. Section 607.0902(10), Florida Statutes, empowered HTE to redeem TYLER's 5,619,932 "control shares," stating in pertinent part:

> (10) REDEMPTION OF CONTROL SHARES
>
> (a) If authorized in a corporation's articles of incorporation or bylaws before a control-share acquisition has occurred, control shares acquired in a control-share acquisition with respect to which no acquiring person statement has been filed with the issuing public corporation may, at any time during the period ending 60 days after the last acquisition of control shares by the acquiring person, be subject to redemption by the corporation at the fair value thereof pursuant to the procedures adopted by the corporation.
>
> (b) Control shares acquired in a control-share acquisition are not subject to redemption after an acquiring person statement has been filed unless the shares are not accorded full voting rights by the shareholders as provided in subsection (9).

12. On October 12, 2001, HTE's Board of Directors exercised the company's statutory right under Section 607.0902(10), Florida Statutes, to redeem TYLER's 5,618,932

3

"control shares" of common stock by passing resolutions, a true and correct copy of which is attached hereto as **Exhibit "B,"** approving, authorizing, and ratifying the redemption of TYLER's 5,619,932 "control shares" for a fair value of $1.30 per share, determined to be the market price established by the average of the closing price for the company's stock for each of the 10 trading days as reported on the NASDAQ National Market for the period October 15, 2001 through October 26, 2001, less a fair discount percentage of 17.5% as determined by the Board of Directors after recommendations from Raymond James & Associates, Inc.

13. HTE notified TYLER on Monday, October 29, 2001 about having exercised the company's statutory right to redeem the "control shares," through a letter, a true and correct copy of which is attached hereto as **Exhibit "C."** Thereafter, HTE tendered and made available to TYLER the aggregate purchase price of $7,304,637.60 for the "control shares," deposited into an irrevocable escrow account with SunTrust Bank, Orlando, Florida

14. On Monday, October 29, 2001, TYLER notified HTE that it objected to HTE's exercising of its right to redeem the "control shares." A true and correct copy of TYLER's letter is attached hereto as attached hereto as **Exhibit "D."**

15. Since exercising its statutory right to redeem the TYLER's "control shares," a significant number of shares of common stock have been traded in the public market in response to HTE's announcement of the redemption. TYLER publicly asserts the redemption is unlawful, creating doubt in the market about whether TYLER continues to own the "control shares."

16. Because of TYLER's public objections, HTE needs the Court to declare that HTE has the lawful right, power, and privilege to redeem TYLER's "control shares" at the redemption price of $1.30 per share, and to grant such other supplemental relief as is necessary to effect HTE's redemption and cancellation of TYLER's "control shares."

4

WHEREFORE, Plaintiff, HTE, demands the Court enter a declaratory judgment:

a. Declaring that HTE's redemption of the TYLER 5,619,932 "control shares" of common stock at a redemption price of $1.30 per share was lawful; and

b. Ordering such other supplemental relief as is necessary to effect the redemption and cancel TYLER's "control shares."

> GREENBERG TRAURIG, P.A.
> Attorneys for H.T.E.
> 111 North Orange Avenue, 20th Floor
> Orlando, Florida 32801
> Telephone: (407) 420-1000
> Facsimile: (407) 841-1295
>
> By: _____
> Tucker H. Byrd, Esq.
> Florida Bar No. 38163

\\orl-srv01\BYRDT\176829v01\9R_4011.DOC\10/30/01\22316.010000

articles of incorporation or through an amendment to its articles of incorporation or bylaws may elect to be bound by the provisions of this section by adopting an amendment to its articles of incorporation or bylaws that repeals the original article or the amendment. In addition to any requirements of this act, or the articles of incorporation or bylaws of the corporation, any such amendment shall be approved by the affirmative vote of the holders of two-thirds of the voting shares other than shares beneficially owned by any interested shareholder.

History.—s. 94, ch. 89-154; s. 28, ch. 93-281.

**807.0902 Control-share acquisitions.—**

(1) "CONTROL SHARES."—As used in this section, "control shares" means shares that, except for this section, would have voting power with respect to shares of an issuing public corporation that, when added to all other shares of the issuing public corporation owned by a person or in respect to which that person may exercise or direct the exercise of voting power, would entitle that person, immediately after acquisition of the shares, directly or indirectly, alone or as a part of a group, to exercise or direct the exercise of the voting power of the issuing public corporation in the election of directors within any of the following ranges of voting power:

(a) One-fifth or more but less than one-third of all voting power.

(b) One-third or more but less than a majority of all voting power.

(c) A majority or more of all voting power.

(2) "CONTROL-SHARE ACQUISITION."—

(a) As used in this section, "control-share acquisition" means the acquisition, directly or indirectly, by any person of ownership of, or the power to direct the exercise of voting power with respect to, issued and outstanding control shares.

(b) For purposes of this section, all shares, the beneficial ownership of which is acquired within 90 days before or after the date of the acquisition of the beneficial ownership of shares which result in a control share acquisition, and all shares the beneficial ownership of which is acquired pursuant to a plan to make a control-share acquisition shall be deemed to have been acquired in the same acquisition.

(c) For purposes of this section, a person who acquires shares in the ordinary course of business for the benefit of others in good faith and not for the purpose of circumventing this section has voting power only of shares in respect of which that person would be able to exercise or direct the exercise of votes without further instruction from others.

(d) The acquisition of any shares of an issuing public corporation does not constitute a control-share acquisition if the acquisition is consummated in any of the following circumstances:

1. Before July 2, 1987.

2. Pursuant to a contract existing before July 2, 1987.

3. Pursuant to the laws of intestate succession or pursuant to a gift or testamentary transfer.

4. Pursuant to the satisfaction of a pledge or other security interest created in good faith and not for the purpose of circumventing this section.

5. Pursuant to a merger or share exchange effected in compliance with s. 607.1101, s. 607.1102, s. 607.1103, s. 607.1104, or s. 607.1107, if the issuing public corporation is a party to the agreement of merger or plan of share exchange.

6. Pursuant to any savings, employee stock ownership, or other employee benefit plan of the issuing public corporation or any of its subsidiaries or any fiduciary with respect to any such plan when acting in such fiduciary capacity.

7. Pursuant to an acquisition of shares of an issuing public corporation if the acquisition has been approved by the board of directors of such issuing public corporation before acquisition.

(e) The acquisition of shares of an issuing public corporation in good faith and not for the purpose of circumventing this section by or from:

1. Any person whose voting rights had previously been authorized by shareholders in compliance with this section; or

2. Any person whose previous acquisition of shares of an issuing public corporation would have constituted a control-share acquisition but for paragraph (d),

does not constitute a control-share acquisition, unless the acquisition entitles any person, directly or indirectly, alone or as a part of a group, to exercise or direct the exercise of voting power of the corporation in the election of directors in excess of the range of the voting power otherwise authorized.

(f) For the purpose of this section, persons shall not be deemed to be part of a "group" if such persons join together to exercise or direct the exercise of the voting power of an issuing public corporation (whether through a voting trust, a shareholder agreement, or through other arrangements), and the voting trustee of any voting trust shall not be deemed to be an "acquiring person" if such persons or all the parties to the voting trust:

1. Are related by blood or marriage or are the personal representatives or trustees of such persons; and

2. Such persons were shareholders (or the beneficial owners of shares) of the issuing public corporation (or were trustees, personal representatives, or heirs of such shareholders or beneficial owners) on July 1, 1987, and have continued to be shareholders (or the beneficial owners of shares) of the issuing public corporation (or have been trustees, personal representatives, or heirs of such shareholders or beneficial owners) since that time.

(3) "INTERESTED SHARES."—As used in this section, "interested shares" means the shares of an issuing public corporation in respect of which any of the following persons may exercise or direct the exercise of the voting power of the corporation in the election of directors:

(a) An acquiring person or member of a group with respect to a control-share acquisition.

(b) Any officer of the issuing public corporation.

(c) Any employee of the issuing public corporation who is also a director of the corporation.

(4) "ISSUING PUBLIC CORPORATION."—

(a) As used in this section, "issuing public corporation" means a corporation that has:

1. One hundred or more shareholders;

2. Its principal place of business, its principal office, or substantial assets within this state; and

3. Either:

a. More than 10 percent of its shareholders resident in this state;

b. More than 10 percent of its shares owned by residents of this state; or

c. One thousand shareholders resident in this state.

(b) The residence of a shareholder is presumed to be the address appearing in the records of the corporation.

(c) Shares held by banks (except as trustee or guardian), brokers, or nominees shall be disregarded for purposes of calculating the percentages or numbers described in this subsection.

(5) LAW APPLICABLE TO CONTROL-SHARE VOTING RIGHTS.—Unless the corporation's articles of incorporation or bylaws provide that this section does not apply to control-share acquisitions of shares of the corporation before the control-share acquisition, control shares of an issuing public corporation acquired in a control-share acquisition have only such voting rights as are conferred by subsection (9).

(6) NOTICE OF CONTROL-SHARE ACQUISITION.—Any person who proposes to make or has made a control-share acquisition may at the person's election deliver an acquiring person statement to the issuing public corporation at the issuing public corporation's principal office. The acquiring person statement must set forth all of the following:

(a) The identity of the acquiring person and each other member of any group of which the person is a part for purposes of determining control shares.

(b) A statement that the acquiring person statement is given pursuant to this section.

(c) The number of shares of the issuing public corporation owned, directly or indirectly, by the acquiring person and each other member of the group.

(d) The range of voting power under which the control-share acquisition falls or would, if consummated, fall.

(e) If the control-share acquisition has not taken place:

1. A description in reasonable detail of the terms of the proposed control-share acquisition; and

2. Representations of the acquiring person, together with a statement, in reasonable detail of the facts upon which they are based, that the proposed control-share acquisition, if consummated, will not be contrary to law and that the acquiring person has the financial capacity to make the proposed control-share acquisition.

(7) SHAREHOLDER MEETING TO DETERMINE CONTROL-SHARE VOTING RIGHTS.—

(a) If the acquiring person so requests at the time of delivery of an acquiring person statement and gives an undertaking to pay the corporation's expenses of a special meeting, within 10 days thereafter, the directors of the issuing public corporation or others authorized to call such a meeting under the issuing public corporation's articles of incorporation or bylaws shall call a special meeting of shareholders of the issuing public corporation for the purpose of considering the voting rights to be accorded the shares acquired or to be acquired in the control-share acquisition.

(b) Unless the acquiring person agrees in writing to another date, the special meeting of shareholders shall be held within 50 days after receipt by the issuing public corporation of the request.

(c) If the acquiring person so requests in writing at the time of delivery of the acquiring person statement, the special meeting must not be held sooner than 30 days after receipt by the issuing public corporation of the acquiring person statement.

(d) If no request is made, the voting rights to be accorded the shares acquired in the control-share acquisition shall be presented to the next special or annual meeting of the shareholders.

(8) NOTICE OF SHAREHOLDER MEETING.—

(a) If a special meeting is requested, notice of the special meeting of shareholders shall be given as promptly as reasonably practicable by the issuing public corporation to all shareholders of record as of the record date set for the meeting, whether or not entitled to vote at the meeting.

(b) Notice of the special or annual shareholder meeting at which the voting rights are to be considered must include or be accompanied by each of the following:

1. A copy of the acquiring person statement delivered to the issuing public corporation pursuant to this section.

2. A statement by the board of directors of the corporation, authorized by its directors, of its position or recommendation, or that it is taking no position or making no recommendation, with respect to the proposed control-share acquisition.

3. A statement that shareholders are or may be entitled to assert dissenters' rights, to be accompanied by a copy of ss. 607.1301, 607.1302, and 607.1320.

(9) RESOLUTION GRANTING CONTROL-SHARE VOTING RIGHTS.—

(a) Control shares acquired in a control-share acquisition have the same voting rights as were accorded the shares before the control-share acquisition only to the extent granted by resolution approved by the shareholders of the issuing public corporation.

(b) To be approved under this subsection, the resolution must be approved by:

1. Each class or series entitled to vote separately on the proposal by a majority of all the votes entitled to be cast by the class or series, with the holders of the outstanding shares of a class or series being entitled to vote as a separate class if the proposed control-share acquisition would, if fully carried out, result in any of the changes described in s. 607.1004; and

2. Each class or series entitled to vote separately on the proposal by a majority of all the votes entitled to be cast by that group, excluding all interested shares.

(10) REDEMPTION OF CONTROL SHARES.—

(a) If authorized in a corporation's articles of incorporation or bylaws before a control-share acquisition has occurred, control shares acquired in a control-share acquisition with respect to which no acquiring person statement has been filed with the issuing public corporation may, at any time during the period ending 60 days after the last acquisition of control shares by the acquiring person, be subject to redemption by the corporation at the fair value thereof pursuant to the procedures adopted by the corporation.

(b) Control shares acquired in a control-share acquisition are not subject to redemption after an acquiring person statement has been filed unless the shares are not accorded full voting rights by the shareholders as provided in subsection (9).

(11) RIGHTS OF DISSENTING SHAREHOLDERS.

(a) Unless otherwise provided in a corporation's articles of incorporation or bylaws before a control-share acquisition has occurred, in the event control shares acquired in a control-share acquisition are accorded full voting rights and the acquiring person has acquired control shares with a majority or more of all voting power, all shareholders of the issuing public corporation shall have dissenters' rights to receive the fair value of their shares as provided in ss. 607.1301, 607.1302, and 607.1320 as provided in this section.

(b) As used in this subsection, "fair value" means a value not less than the highest price paid per share by the acquiring person in the control-share acquisition.

History.—s. 95, ch. 89-154; s. 37, ch. 93-281; s. 4, ch. 94-327; s. 6, ch. 97-230.

607.0903 Application of ss. 607.0901 and 607.0902 to certain foreign corporations.—

(1) The provisions of s. 607.0901 also apply to a foreign corporation that has:

(a) Been granted authority pursuant to this act to conduct business in this state;

(b) One hundred or more shareholders;

(c) Its principal place of business, its principal office, or substantial assets within this state;

(d) More than 500 residents of this state as employees, including employees of an entity as to which the foreign corporation owns, directly or indirectly, shares or other interests of such entity having a majority of the unlimited voting rights in matters as to which shareholders or interestholders of such entity are accorded voting rights;

(e) Gross annual payroll, including the payroll of an entity as to which the foreign corporation owns, directly or indirectly, shares or other interests of such entity having a majority of the unlimited voting rights in matters as to which shareholders or interestholders of such entity are accorded voting rights, of more than $5 million to residents of this state; and

(f) Either:

1. More than 10 percent of its shareholders resident in this state;

2. More than 10 percent of its shares owned by residents of this state; or

3. More than 1,000 shareholders resident in this state.

For purposes of paragraph (f), the residence of a shareholder is presumed to be the address appearing in the records of the corporation, and shares held by banks (except as trustee or guardian), brokers, or nominees shall be disregarded for purposes of calculating the percentages or numbers described.

(2) Except as provided in subsection (3), the provisions of s. 607.0902 apply to a foreign corporation which meets the requirements of an "issuing public corporation" in s. 607.0902(4) and, in addition, has:

(a) Authority pursuant to this act to conduct business in this state;

(b) More than 500 residents of this state as employees, including employees of an entity as to which the foreign corporation owns, directly or indirectly, shares or other interests of such entity having a majority of the unlimited voting rights in matters as to which shareholders or interestholders of such entity are accorded voting rights; and

(d) Gross annual payroll, including the payroll of an entity as to which the foreign corporation owns, directly or indirectly, shares or other interests of such entity having a majority of the unlimited voting rights in matters as to which shareholders or interestholders of such entity are accorded voting rights, of more than $5 million to residents of this state.

(3) The acquisition of any shares of any foreign corporation which is subject to subsection (2) does not constitute a control-share acquisition if the acquisition is consummated pursuant to a merger or share exchange effected in compliance with s. 607.1107 and such foreign corporation is a party to the agreement of merger or plan of share exchange.

(4) The merger, consolidation, or share exchange of two foreign corporations does not constitute a control-share acquisition if the merger, consolidation, or share exchange is effected in compliance with the laws of the jurisdictions under which such corporations are organized and with the approval of the board of directors of the foreign corporation subject to subsection (2).

(5) If the laws of any jurisdiction under the laws of which a foreign corporation is organized contain provisions that are expressly inconsistent with the provisions of this section as applicable to such foreign corporation, the provisions of this section shall be inapplicable to such foreign corporation to the extent necessary to resolve such inconsistency.

History.—s. 98, ch. 89-154.

607.1001 Authority to amend the articles of incorporation.—

(1) A corporation may amend its articles of incorporation at any time to add or change a provision that is required or permitted in the articles of incorporation or to delete a provision not required in the articles of incorporation. Whether a provision is required or permitted in the articles of incorporation is determined as of the effective date of the amendment.

(2) A shareholder of the corporation does not have a vested property right resulting from any provision in the articles of incorporation, including provisions relating to management, control, capital structure, dividend entitlement, or purpose or duration of the corporation.

History.—s. 97, ch. 89-154.

Case 6:01-cv-01366-GAP   Document 3   Filed 11/20/01   Page 9 of 15 PageID 19

02 2001  1:58 PM FR HOLLAND & KNIGHT                              7804195800#3600 P.12
NOV-02-01 11:08  From:GARDERE                    +21499945          T-752  P 13/20 Job-932
OCT.31.2001  12:27PM    ERNMENT SERVICES                           NO.611   P.12

RESOLUTIONS
ADOPTED BY
BOARD OF DIRECTORS OF HTE, INC.

WHEREAS, Tyler Technologies, Inc. ("Tyler") owns 5,618,952 shares (the "Shares") of the common stock of H.T.E., Inc. (the "Company") which "control shares" (as defined in Florida Statutes §607.0902(1)) were not accorded voting rights by the shareholders of the Company at its 2000 annual shareholders meeting pursuant to Florida Statutes §607.0902(7), and are therefore redeemable pursuant to Florida Statutes §607.0902(10) (said Shares being certificates Nos. 2391 and 2416).

WHEREAS, the Board of Directors has determined that it is in the best interest of the Company, its shareholders, employees and customers to redeem such Shares for the following reasons, among others: (i) that the redemption will be accomplished at a fair value which, when paid, will nevertheless redound to the benefit of the Company and its remaining shareholders; (ii) that the elimination of the non-voting Shares will eliminate a complexity to the Company's capitalization which will make the Company more understandable to the investing public; (iii) that the limitation of such non-voting Shares will eliminate a potential large block overhang on the market which should remove a depressing pressure on the Company's stock price; (iv) provide the Company's employees, customers and prospective customers with more certainty as to ownership, control and direction of the Company; and (v) alleviate confusion that has arisen in the marketplace regarding Tyler's ownership interest in the Company, which has been a negative in terms of attracting new employees and new customers.

WHEREAS, the redemption will be accomplished in accordance with law (including Florida Statutes §607.06401 and §607.0721(4)) and procedures adopted pursuant to Florida Statutes §607.0902.

WHEREAS, the Board of Directors finds that, after giving effect to the redemption (based on a review of the Company's financial statements prepared in accordance with generally accepted accounting principles and other factors known to and considered by the Board): (i) the Company will be able to pay its debts as they become due in the usual course of business; and (ii) the Company's total assets will be greater than the sum of its total liabilities.

NOW, THEREFORE BE IT:

RESOLVED, the Company's Board of Directors does hereby approve, authorize and ratify the redemption ("Redemption") of the Shares by the Company at a price per share equal to 100% minus a marketability discount % times the "Market Price" (the "Aggregate Redemption Price"). The Market Price shall be established by the average of the closing price for the Company's common stock for each of the 10 trading days as reported on the NASDAQ National Market for the close each day of the regular or normal trading hours for the period October 15, 2001 through October 26, 2001, inclusive. The marketability discount % shall be 17.5%, said percentage having been determined by the Board of Directors based on its deliberations and its discussions with Raymond James & Associates, Inc. and the findings contained in the Raymond

1

James & Associates, Inc. Report presented to the Board of Directors on September 26, 2001, and in the Raymond James & Associates valuation Letter dated October 12, 2001;

**FURTHER RESOLVED**, that the Redemption shall be effective at 8:00 A.M. on Monday, October 29, 2001 (Heathrow, Florida time) (the "Effective Date");

**FURTHER RESOLVED**, that the Company shall cause notice of such redemption to be by means of a redemption letter (in form and substance equivalent to the form of letter presented to the Board and to be appended to these minutes) to be delivered by U.S. mail, facsimile and/or private mail delivery service on the Effective Date;

**FURTHER RESOLVED**, that the Company shall have on or before the Effective Date entered into an irrevocable escrow agreement with the SunTrust Bank, Orlando, Florida pursuant to which the Company shall have deposited the Aggregate Redemption Price with the SunTrust Bank, which said funds are to be held for the purpose of payment of the Aggregate Redemption Price to Tyler upon the tender or surrender of the certificates representing the Shares;

**FURTHER RESOLVED**, that the proper officers of the Company, and each of them, are hereby authorized, empowered and directed, in the name of and on behalf of the Company, to execute and deliver any of the documentation heretofore referenced and any amendments, changes or modifications thereto, with the execution of the same being evidence of the approval by them of such additional terms and conditions;

**FURTHER RESOLVED**, that the proper officers of the Company, and each of them, are hereby authorized, empowered and directed, in the name of and on behalf of the Company, to execute, deliver and file on behalf of the Company any and all other documents and take any and all other actions as any of them may deem reasonably necessary to enter into, consummate and perform the transactions contemplated by the foregoing resolutions, including any amendments or supplements thereto;

**FURTHER RESOLVED**, that upon the Effective Date, the Shares redeemed shall assume the status of authorized but unissued shares of the Company's common stock;

**FURTHER RESOLVED**, that any proper officer of the Company is authorized, empowered and directed, in the name of and on behalf of the Company, to sign and file with the Securities and Exchange Commission a Current Report on Form 8-K with respect to the transactions described herein, and any supplemental amendments thereto, and such other documents related thereto as they may deem necessary, appropriate or advisable;

**FURTHER RESOLVED**, that the officers of the Company shall provide appropriate notice to Tyler, the Company's transfer agent, NASDAQ and the press as they shall deem advisable;

**FURTHER RESOLVED**, that all acts and things heretofore done by any officer or any agent of the Company, on or prior to the date hereof, in connection with the transactions contemplated by these resolutions be, and the same hereby are, in all respects ratified, confirmed, approved and adopted as acts on behalf of the Company; and

2

**FURTHER RESOLVED**, that the officers of this Corporation are hereby authorized to take all such steps and to do all such acts and things as they or any one of them shall deem necessary or advisable to carry out the intent and purposes of the foregoing resolutions, including, but not limited to, the making of any and all payments, the making and execution of any necessary or advisable instruments, certificates, affidavits, or other documents in connection therewith, the signing or endorsement of any checks, posting of any bonds, and the payment of any fees in connection, and, from time to time, to take any and all actions to make, execute, verify, and, as necessary, file all applications, certificates, documents or other instruments and to do any and all acts and things which any one or more of them shall deem necessary, advisable or appropriate in order to carry out the intent and purposes of any and all of the foregoing resolutions.



Headquarters:
1000 Business Center Drive, Lake Mary, FL 32746 • (407) 304-3235

Application Solutions for Government
October 29, 2001

Via Facsimile #(214) 547-4041, U.S. Mail
and Federal Express #7916 8870 2000

Tyler Technologies, Inc.
5949 Sherry Lane, Suite 1400
Dallas, TX 75225

Attn: John M. Yearman, President

Re: Redemption of 5,618,952 Shares of Common Stock of H.T.E., Inc.

Dear Mr. Yearman:

This letter serves as notice to Tyler Technologies, Inc. ("Tyler") that H.T.E., Inc. (the "Company") has on October 29, 2001, effective at 8:00 A.M. (Eastern time), exercised its right under Section 607.0902(10)(b), Florida Statutes, to redeem the 5,618,952 shares of Company common stock (the "Shares") acquired by Tyler in a control share acquisition under Section 607.0902, Florida Statutes. The redemption price the Company is paying for the Shares is $1.30 per share, for an aggregate redemption price of $7,304,637.60 for all of the Shares. On October 12, 2001, the Company's Board of Directors approved the redemption of the Shares. The redemption price represents a 17.5% discount from the average closing share price for the 10 trading days commencing on October 15, 2001 and ending on October 26, 2001, as reported on the NASDAQ National Market for the regular trading hours or session each day. In determining the fair value of the Shares for the redemption, as provided under Section 607.0902(10)(a), the Company relied on a report prepared for the Company by a national investment banking firm, which recommended a discount ranging from 10% to 25% should be deducted from the Company's public share price. The Company's Board of Directors approved a discount that was at the mid-point of this recommended discount range.

We have escrowed the aggregate redemption price ($7,304,637.60) with SunTrust Bank as escrow agent. Pursuant to the escrow agreement between SunTrust Bank and the Company, SunTrust Bank has an irrevocable obligation to pay to Tyler the aggregate redemption price upon its surrender of all of the Shares. Please return the certificates representing the Shares to SunTrust Bank, 235 E. Robinson Street, Suite 250, Orlando,

John M. Yearnan, President
Tyler Technologies, Inc.
Page – 2 –

FL 32801, Attention: Corporate Trust Division. Upon receipt of the certificates representing all of the Shares, SunTrust Bank will release the aggregate redemption price to Tyler. Please indicate to SunTrust Bank how Tyler wishes to receive the funds (i.e., by check or wire transfer), and if by wire transfer, please include in Tyler's transmittal letter to SunTrust Bank the appropriate wiring instructions.

In accordance with Section 607.0721(4), Florida Statutes, the Shares are no longer considered issued and outstanding shares of common stock of the Company, and all rights with respect thereto have ceased, except only the right of Tyler to receive the aggregate redemption price in the amount and manner described above. In that regard, the Company has informed its transfer agent to put a stop transfer order on the Shares.

Very truly yours,

H.T.E., Inc.

By: _____
Joseph M. Loughry, III
President & Chief Executive Officer

02 2001 2:00 PM FR MOLL GARDERE KN JOHN Case 6:01-cv-01366-GAP-KN Document 3 Filed 11/20/01 Page 14 of 15 PageID 24 7984#950090#3600 P.17
NOV-02-01 11:10 From:GARDERE +21499949. T-752 P.19/20 Job-932
JOHN STERLING - letter to HTE

| | |
|---|---|
| From: | "Lynn Moore" <lynn.moore@tylertechnologies.com> |
| To: | <jsterling@gardere.com> |
| Date: | Mon, Oct 29, 2001 3:41 PM |
| Subject: | letter to HTE |

FYI.

<<HTE Letter re Redemption.doc>>

HTE b/c

Via Facsimile (407) 304-1075
and Federal Express

October 29, 2001

Mr. Joseph M. Loughry, III
President & Chief Executive Officer
H.T.E., Inc.
1000 Business Center Drive
Lake Mary, FL 32746

Mr. Loughry:

This letter serves as a response to your letter of October 29, 2001.

Tyler Technologies, Inc. ("Tyler") disagrees with H.T.E., Inc.'s ("H.T.E.") interpretation of Section 607.0902 of the Florida Corporations Code. Under Florida law, to the extent that H.T.E. maintained any right to redeem the "control shares" held by Tyler, such right expired 60 days from the date that the stockholders of H.T.E. did not grant Tyler voting rights to such "control shares," or January 5, 2001. Accordingly, H.T.E.'s purported redemption of Tyler's "control shares" effective October 29, 2001 is invalid.

Moreover, the right of a corporation to redeem its shares under the Florida control-share acquisition statute applies only to "control shares," or those shares that may "exercise or direct the exercise of...one-fifth or more but less than one-third of all voting power..." of the corporation. In other words, even assuming that H.T.E. maintains a right to redeem Tyler's "control shares" (which it does not), such right would be limited to those shares that Tyler owns that are in excess of 20% of H.T.E.'s issued and outstanding shares of common stock, not all of the shares currently held by Tyler.

Finally, even assuming that H.T.E. maintains the right to redeem Tyler's "control shares" (which it does not), Tyler vigorously disputes H.T.E.'s calculation of per share "fair value" as set forth in your letter.

Under Florida law, Tyler continues to be the owner of 5,618,952 shares of H.T.E. common stock and may continue to vote up to 20% of the issued and outstanding shares of H.T.E. common stock held by Tyler. Please be advised that Tyler is prepared to take all actions necessary to protect such rights.

Sincerely,


H. Lynn Moore, Jr.
Vice President, General Counsel, and Secretary