FILED

01 DEC 21 PM 3: 44

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

CASE NO. 6:01-CV-1366-ORL-31DAB

H.T.E., Inc., a Florida corporation,

      Plaintiff,

v.

TYLER TECHNOLOGIES, INC., a
Delaware corporation,

      Defendant

---

## MOTION TO STRIKE AFFIDAVIT OF H. LYNN MOORE, JR., AND MEMORANDUM OF LAW IN SUPPORT

Pursuant to Fed. R. Civ. P. 12(f), Plaintiff, H.T.E., Inc., ("HTE"), a Florida corporation, hereby files this motion to strike the affidavit of H. Lynn Moore, Jr., and memorandum of law in support thereof. For the reasons more fully set forth in the memorandum of law, the affidavit of H. Lynn Moore, Jr., which was filed in connection with the Defendant, TYLER TECHNOLOGIES, INC.'s, ("Tyler") motion to quash service of process and to dismiss HTE's complaint for an asserted lack of personal jurisdiction and venue, should be stricken.

Pursuant to Local Rule 3.01(g), counsel for HTE has conferred with counsel for Tyler in a good faith effort to resolve the issues raised by this motion. Counsel have been unable to agree on the resolution of this motion.

## MEMORANDUM OF LAW

### I.  Introduction

Tyler has filed a motion to quash service of process and to dismiss HTE's initial complaint for lack of personal jurisdiction and venue ("Motion to Dismiss") and has filed the

14

affidavit of H. Lynn Moore, Jr. ("Affidavit") to support its Motion to Dismiss.[1]  The facts as

asserted in the Affidavit are inconsistent with prior statements and admissions that Tyler has

made.  Therefore, the Affidavit is improper and should be stricken.

## II.  Tyler's Prior Statements are Inconsistent With the Assertions in the Affidavit

The Affidavit asserts that Tyler does not have any offices, employees, agents or

representatives located in the State of Florida and does not otherwise offer for sale or engage in

the solicitation for sale of any products in the State of Florida and does not do any business or

conduct or engage in any activities in the State of Florida.  See Moore Aff. ¶'s 4 and 5.

Furthermore, although the Affidavit admits that Tyler does have some subsidiaries that do

business in the State of Florida it claims that,

> 6.     Tyler owns all of the stock of some separate corporations
> that do business in the state of Florida (the "Subsidiaries"), but
> none of the Subsidiaries owns any of the stock in H.T.E. that is the
> subject matter of this action, and none of the Subsidiaries has had
> any involvement with any H.T.E. stock of the subject matter of this
> action.
>
> 7.     The relationship between Tyler and the Subsidiaries is such
> that: (a) their officers and directors are not identical; (b) their
> employees are entirely separate and independent; (c) their
> accounting systems are maintained separately and independently;
> (d) their books and records are maintained separately and

---

[1] During the course of discovery in the case styled <u>Dennis H. Harward and Jack L. Harward v. H.T.E., Inc.</u>, Case
No. 99-CA-1195-CA-15W, filed in the Circuit Court of the Eighteenth Judicial Circuit in and for Seminole County,
Florida, depositions were taken of several of Tyler's officers or employees, including: H. Lynn Moore, Jr.
("Moore"), Tyler's in-house corporate counsel; Louis A. Waters ("Waters"), Chairman of Tyler's Board of Directors
and Tyler's co-CEO; Sonny Oates ("Oates"), Chairman of Tyler's Executive Committee; and John Marr ("Marr"),
President of Tyler's Munis Division.  During their depositions, Tyler's officers and representatives made numerous
factual admissions which are inconsistent with the Affidavit.  Additionally, HTE has filed the affidavits of L.A.
Gornto, Jr. ("Gornto"), HTE's Executive Vice President and General Counsel; Bernard B. Markey ("Markey"), the
Chairman of HTE's Board of Directors; Ronald Goodrow ("Goodrow"), HTE's Executive Vice President of
Operations; and Tim Vickers ("Vickers"), HTE's Vice President of Sales, in support of this motion.  Finally, there
are a number of operative documents which are relevant to the issues raised in this motion.  These documents, which
have been authenticated through the above-referenced depositions and affidavits, will be contained in an appendix to
HTE's Memorandum in Opposition to Tyler's Motion to Dismiss being filed with this Court and which is
incorporated herein by reference.  In this motion, HTE will cite to the depositions, affidavits and appendix in the
following manner: Moore Depo. @ ___, Gornto Aff., ¶ ___, and App. Tab ___, respectively.

independently; (e) their budgets and business plans are separate and independent; and (f) the officers, directors and management of Tyler do not meet with the officers, directors or management of the Subsidiaries in Florida.

8.     Tyler does not maintain control over the decisions or operations of the Subsidiaries, and the activities of the Subsidiaries in Florida are not the activities of Tyler.

Moore Aff., ¶'s 6-8.   These representations made in the Affidavit are inconsistent with statements Tyler has made in depositions, through filings with the Securities and Exchange Commission ("SEC"), on its website, and in press releases.

### A. Tyler's Depositions

In the case styled, Dennis J. Harward and Jack L. Harward v. H.T.E. Inc., Case No. 99-CA-1195-CA-15-W, filed in the Circuit Court of the Eighteenth Judicial Circuit, in and for Seminole County, Florida (the "Prior Litigation"), numerous depositions were taken of Tyler's officers and directors relating to Tyler's acquisition of HTE's stock from two Florida residents, Dennis and Jack Harward (the "Harwards").   During the course of those depositions, testimony was given by Tyler's representatives that directly contradict the allegations in the Affidavit.

Several of Tyler's officers and directors testified as to Tyler's line of business.   In responding to a question regarding who at Tyler conceived the idea of acquiring HTE, Waters, testified as follows:

Well, you have to understand the makeup of Tyler.  I mean, that's what we were at the time, an acquisition company.  We were building a national company.  We acquire companies.  That's what we do. The Harwards' stock became available.  Probably all of us that looked at it had that in mind:  Here's 30 percent of the company; it's a potential chance to buy the whole company.  So that wouldn't have been one individual conceiving it; it was part of our strategy in our business.

Moore testified that Tyler develops and markets software applications in the public sector marketplace for governmental agencies, cities and municipalities.  Moore Depo. @11.  Moore

acknowledged that <u>Tyler</u> has been involved in this line of business since February of 1998, when <u>Tyler</u> "acquired some new companies and embarked on that line of business." Moore Depo. @ 12. Significantly, Oates testified that he was in charge of acquiring companies for Tyler and running those companies after they were merged with Tyler. Oates Depo, @7.

Similarly, Tyler's representatives testified as to the interconnectivity between Tyler and its subsidiaries. Marr testified that although he is technically an employee of the Munis Division, he was paid by Tyler. Marr Depo. @7-10. Marr's employment contract is with Tyler, not the Munis Division. Marr Depo. @8-9. Marr also testified that after Tyler acquired the Munis Division, Tyler consolidated all the payrolls from each subsidiary into a single processing account. <u>Id</u>. and Goodrow Aff., ¶ 9. Waters testified that Marr was "an employee of Tyler". Waters Depo. @ 44. Oates was not only a director, officer and employee of Tyler, but also the president of a wholly-owned subsidiary called Business Resources Corp. (which was described by him as a Tyler division) and an officer of several other subsidiary companies. Oates Depo. @ 10. Additionally, it is also noteworthy that, prior to his deposition in the Prior Litigation, Marr conferred with Tyler's corporate counsel, Moore, for guidance. Marr Depo. @14-15.

**B. Tyler's Public Filings with the SEC and Florida's Department of State**

Tyler has filed Forms 10-K and 10-Q with the SEC on behalf of itself and its divisions. Gornto Aff. ¶ 25, Ex. N. In these public filings with the SEC, Tyler represents itself as having a "broad line of products and services" and has clients in 49 states, Canada and Puerto Rico. <u>Id</u>. Moreover, these SEC filings state facts indicating that Tyler is not distinct from its subsidiaries and that it has substantial control over its subsidiaries.

Tyler submits consolidated financial statements for it and its divisions. <u>Id</u>. Furthermore, attached to its SEC filings is a Credit Agreement and various amendments to the agreement

4

between Tyler and its divisions and certain banks and lending institutions.  Pursuant to this Credit Agreement, the assets of Tyler and the stock of Tyler's operating subsidiaries have been pledged to secure Tyler's credit line.   Moreover, Tyler's divisions, including Munis, FundBalance and CLT, are guarantors of the Credit Agreement.  Significantly, the guarantors have executed the Fifth Amendment to Credit Agreement through one representative. The Credit Agreement and its amendments specifically require Tyler to exercise control over its "restricted entities" which is defined under the Credit Agreement as "the borrower [Tyler] and each subsidiary of the borrower."  In the Credit Agreement, Tyler promised to exercise control over its "restricted entities" with respect to various business operations including debt, liens, insurance and corporate transactions.  Id.

Tyler's 2000 Form 10-K also specifically states that at least one person sitting on Tyler's Board of Directors, Glenn A. Smith,  is an officer of a Tyler subsidiary.  Id.  Moreover, according to Florida's Department of State records, one of Tyler's subsidiaries, CLT, was authorized to do business in Florida during the relevant time period and four of the five directors of Tyler's CLT Division are directors and/or officers of Tyler, including Yeaman, Brian Miller, Moore (Tyler's affiant), and Oates.  App. Tab 16.

Tyler's Form 10-K also does not distinguish between employees who work for Tyler as opposed to its divisions.  The Form 10-K states, that Tyler "had approximately 1,267 employees, of which approximately 29 were employed in the corporate office."  The Form 10-K also states that Tyler leases offices, facilities and project offices for its operating subsidiaries in Florida. Furthermore, the Form 10-K states that Tyler's stock option plan is available to employees and directors of Tyler and its subsidiaries.  Finally, Tyler's 2000 Form 10-K states that Tyler has a retirement savings plan (401k plan) for all employees.  This was changed from the prior year in

5

which Tyler's 1999 Form 10-K indicated that it maintained separate contribution profit sharing plans at each of its operating subsidiaries.  Id.

## C.  Tyler and its Subsidiaries' Web Sites

As stated in its web site, Tyler focuses on serving local governments and claims to have over 6,000 local government customers in 49 states, Canada and Puerto Rico.  Vickers Aff., ¶ 9, Ex. B; Gronto Aff., ¶ 23, Ex. M.  Although, through its web site, Tyler markets and labels products and services under the Tyler name, Tyler has acquired several companies through which it directs and conducts business throughout the world, including Florida.  Id. and Vickers Aff., ¶ 4.  Tyler identifies these companies as divisions of Tyler.

Tyler's own web site advertises and markets its products and services and allows internet users to obtain further information on purchasing Tyler's products and services.  Gornto Aff., ¶ 23, Ex. M and Vickers Aff., ¶ 17.   Tyler's website indicates that it has several regional offices throughout the United States. Vickers Aff., ¶ 16, Ex. F.  Tyler states that one of these regional offices is located in Raleigh, North Carolina.  This office is staffed by employees working under Tyler's Munis Division name which makes it clear that Tyler makes no distinction between Tyler and its divisions.  Id. and Goodrow Aff., ¶ 4.  In fact, as stated in Tyler's FundBalance Division's web site, Tyler has implemented a comprehensive corporate branding campaign to identify each of its operating subsidiaries or divisions as a member of the Tyler Technologies Group.  Vickers Aff., ¶ 11, Exhibit "D."

Tyler's CLT Division's web site indicates that it has an office located in Bradenton, Florida and its web site indicates that it will be attending conferences in Tallahassee, Florida, Cocoa Beach, Florida, Altamonte Springs, Florida, Tampa, Florida and Daytona Beach, Florida throughout the 2002 calendar year.  Vickers Aff., ¶ 12, Ex. E.  Tyler's FundBalance Division is

conducting regional training sessions in Florida as stated in its website. Vickers Aff., ¶ 11, Ex. D. Moreover, on at least two occasions, Tyler has prepared press releases posted on its website indicating that its CLT and Incode Divisions are installing Tyler products in the state of Florida. Vickers Aff., ¶'s 9 and 10, Ex.'s B and C.

### D.  Tyler's Press Releases

Tyler has submitted to news publishers such as PRNewswire many of the press releases Tyler has posted on its web site and the web sites of its subsidiaries. Vickers Aff., ¶'s 9 and 10, Ex's B and C. These articles indicate that the source of the information came from Tyler and discuss products being sold by Tyler's divisions, CLT and Incode, in the state of Florida. Id. Tyler specifically states in its press releases that its Incode division sells a Tyler product called "Invision" which is "Tyler Technologies' Window based suite of applications designed for local governments." Vickers Aff., ¶ 10, Ex. C.

## III.  LAW CONCERNING MOTION TO STRIKE AFFIDAVIT

The Affidavit is inconsistent with several prior admissions made by Tyler through the depositions of its officers and directors as well as in documents it filed with the SEC and others made  to the public.  Where a party takes inconsistent positions, the inconsistent position is subject to being stricken. *See* Totalplan Corp. of America v. Lure Camera Ltd., 613 F.Supp. 451 (D.C. N.Y.  1985)(where a plaintiff alleged two inconsistent allegations in two separate complaints in related actions, the inconsistent allegation in the second complaint was stricken). An affidavit is properly stricken when it contradicts that party's deposition testimony. Ellison v. Goodman, 395 So.2d 1201, 1202 (Fla. 3rd DCA 1981); *see also,* Inman v. Club on Sailboat Key, Inc. 342 So.2d 1069 (Fla. 3rd DCA 1977)("A party who opposes summary judgment will not be permitted to alter the position of his or her previous pleadings, admissions, affidavits, depositions

or testimony in order to defeat summary judgment.")  Moreover, a party's legal maneuvers and tactics in taking inconsistent positions to create mere "paper issues" should not be countenanced. Freixas v. Buena Vista Lakes Condominium Assoc., 559 So.2d 1184, 1185 (Fla. 3d DCA 1990).

## IV.  APPLICATION OF FACTS TO LAW

The factual allegations contained in the Affidavit are inconsistent with Tyler's prior statements and admissions as stated in the depositions of its corporate officers and directors and released through its filings with the SEC, its website, and its press releases.

### A.  Tyler's Offices

Tyler's affiant  indicates that Tyler only has an office for the transaction of business located at 5949 Sherry Lane, Suite 1400, Dallas, Texas.  Affidavit ¶ 3.  However, Tyler's web site indicates that it has regional offices located throughout the United States.  Vickers Aff. ¶ 16, Ex. F.  Moreover, Tyler's 2000 Form 10-K states that Tyler leases office space in several states, including Florida. Gornto Aff. ¶ 25, Ex. N.

### B.  Tyler's Business Activity in Florida

Tyler's assertion that it does not offer for the sale or engage in the solicitation for sale of any products in the State of Florida and does not do any business or conduct or engage in any activities in the State of Florida is also inconsistent with its prior statements.  Affidavit ¶5.  In its 10-Q and 10-K filings with the SEC, on its web site and in press releases it prepared, Tyler refers to itself as a national company that has clients in 49 states, including Florida, and over 6,000 government clients.  Tyler markets products and services on its web site and does not identify the specific products and services with any of its subsidiaries.  In fact, the products and services are expressly identified with Tyler by Tyler.  Furthermore, through press releases, Tyler has stated to

the public that its subsidiaries (which are identified as Tyler divisions) are selling products and services in the State of Florida.

### C. Tyler's Control over its Subsidiaries

Tyler's assertions through the Affidavit in an attempt to separate itself from its subsidiaries for jurisdictional purposes are inconsistent with its prior admissions. Tyler admits that it owns the stock of some corporations that do business in the State of Florida. Affidavit ¶ 6. However, Tyler attempts to distance itself from its subsidiaries by stating that Tyler does not maintain control over the decisions or operations of the subsidiaries, and that the activities of the subsidiaries in Florida are not the activities of Tyler. Tyler's affiant specifically asserts that Tyler and its subsidiaries' officers and directors are not identical, their employees are entirely separate and independent, their accounting systems are maintained separately and independently, their books and records are maintained separately and independently, their budgets and business plans are separate and independent, and the officers, directors and management of Tyler do not meet with the officers, directors or management of the subsidiaries "in Florida". Affidavit ¶'s 7 and 8.

These claims are controverted by several prior admissions by Tyler. Tyler's president, Oates, testified that he was in charge of acquiring companies for Tyler and "running those companies". Oates Depo. @ 7. In a Credit Agreement executed by Tyler and filed with the SEC, Tyler specifically promised its lenders that it shall control its subsidiaries with regards to their debt, liens, corporate transactions and insurance coverage. Moreover, the Fifth Amendment to the Credit Agreement is executed by a single Tyler representative on behalf of all of the subsidiaries. Furthermore, the activities of the subsidiaries are, in fact, the activities of Tyler as represented by Tyler in its press releases as they state that it is Tyler's products, not the products

of Tyler's subsidiaries, that are being sold by its various divisions.  Tyler does not distinguish between itself and its subsidiaries and in fact prepares consolidated financial statements for itself and its subsidiaries.

Additionally, both the 1999 and 2000 Form 10-K's states that all significant intercompany balances and transactions have been eliminated in consolidation.  Therefore, Tyler admits that it has intercompany transactions between its subsidiaries and itself.  Tyler, through a Credit Agreement, has secured a credit line with various banks for itself and presumably its subsidiaries.  The Credit Agreement is secured by substantially all of Tyler's real and personal property and by a pledge of the common stock of Tyler's present and future significant operating subsidiaries.  Moreover, the Credit Agreement is guaranteed by the subsidiaries.

The employees of Tyler and its subsidiaries are not entirely separate and independent as stated in the Affidavit.  In Tyler's Form 10-K filed for the fiscal year ending December 31, 2000, Tyler represents that, "The Company's stock option plan provides for the granting of non-qualified and incentive stock options, as defined by the Internal Revenue Code, to key employees and directors of the company and its subsidiaries."  Gornto Aff. ¶ 25, Ex. N.  Moreover, Tyler's 2000 Form 10-K also states that their employee benefit "plan covers substantially all of the employees meeting their minimum service requirements".  Id.  This was changed from Tyler's 1999 10-K form which indicated that Tyler maintained various contribution profit sharing plans at each of its operating subsidiaries.  Id.  Marr testified that Tyler also consolidated its payroll into one of its companies.  Marr Depo. @ 8-9.   Tyler is consolidating the business operations of its subsidiaries and therefore managing those subsidiaries through a centralized structure.

The officers and directors of Tyler act as officers and sit on the board of directors of Tyler's subsidiaries.  The majority of the directors and officers of Tyler's CLT division, which

has an office in Florida and is authorized to do (and does business) in Florida, is composed of Tyler's own directors.  App. Tab. 16.  Marr who is the president of Tyler's Munis division, which also has customers in Florida, testified that he was paid by Tyler and had an employment agreement with Tyler.  Marr Depo. @ 7-10.  It is apparent that contrary to the Affidavit, Tyler plainly intermingles its officers and directors with those of its subsidiaries.

## V.  CONCLUSION

In short, several of the so-called facts asserted in the Affidavit are inconsistent with Tyler's prior admissions as set forth in public documents and the depositions of its corporate officers and directors.   Tyler's prior admissions plainly prove that Tyler has substantial contacts with the state of Florida, and that the Affidavit raises nothing more than mere "paper issues". Therefore, the Affidavit should be struck by this Court.

WHEREFORE, the Plaintiff, H.T.E., Inc., respectfully requests that this Court strike the Affidavit of H. Lynn Moore, Jr., and  grant such additional relief as may be appropriate under the circumstances.

Dated this 21st day of December, 2001.

BAKER & HOSTETLER LLP
2300 SunTrust Center
200 South Orange Avenue
Post Office Box 112
Orlando, FL 32802-0112
Attorneys for Plaintiff, H.T.E., Inc.

By: _____
John W. Foster, Sr.
Florida Bar No. 318620
Jerry R. Linscott
Florida Bar No. 148009
Robert C. Yee
Florida Bar No.0096784

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing motion to strike affidavit of H. Lynn Moore, Jr. has been furnished by hand delivery this 21st day of December, 2001, to William B. Wilson, Esquire, Holland & Knight LLP, 200 S. Orange Avenue, Suite 2600, Orlando, FL 32801.

Robert C. Yee

\\ORBDC1\Ordata\Jwf0370\25944\00001\Pleadings\FEDERAL\Motion And Memo Strike Aff Lynn Moore.Doc

12