FILED

01 DEC 21 PM 3: 46

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO. 6:01-CV-1366-ORL-31DAB

H.T.E., INC., a Florida corporation,

    Plaintiff,

vs.

TYLER TECHNOLOGIES, INC.,
a Delaware corporation,

    Defendant.

_____/

### AFFIDAVIT OF L. A. GORNTO, JR.

STATE OF FLORIDA    )
                               )ss
COUNTY OF VOLUSIA  )

    BEFORE ME, the undersigned authority, personally appeared L. A. Gornto, Jr., who after first being duly sworn, deposes and states:

    1. My name is L. A. Gornto, Jr. I am of adult age and have personal knowledge of the matters hereinafter stated.

    2. Since January 16, 1997, I have been the Executive Vice President and General Counsel of H.T.E., Inc. ("HTE"), which is a publicly owned company. HTE is a Florida corporation which is headquartered in Lake Mary, Seminole County, Florida.

    3. This affidavit is intended to be used by or on behalf of HTE in connection with Tyler Technology, Inc.'s ("Tyler") Motion to Quash Service of Process and to Dismiss Complaint for Lack of Personal Jurisdiction and Venue, which HTE opposes because the

*Exhibits filed separately*

26

evidence demonstrates that (a) Tyler has operated, conducted, engaged in or carried on a business or business venture in the state of Florida, (b) Tyler has engaged in substantial and not isolated activity within the state of Florida, and (c) a substantial part of the events or omissions giving rise to HTE's claim occurred, and a substantial part of the property that is the subject of this action is situated, in this judicial district. My affidavit is directed, <u>first</u>, to the business or business venture which Tyler operated, conducted, engaged in or carried on within the state of Florida[1] and, <u>second</u>, to the substantial and not isolated activity in which Tyler engages within the state of Florida.

## BUSINESS OR BUSINESS VENTURE OPERATED, CONDUCTED, ENGAGED IN OR CARRIED ON BY TYLER IN FLORIDA

4. On August 17, 1999, I received a telephone call from John Marr. Mr. Marr is the president of Munis, which is a division of Tyler. Mr. Marr told me that he was in Orlando, Florida, with other Tyler representatives, including Louis Waters and John Yeaman, and with Dennis and Jack Harward. During the telephone conversation, Mr. Marr told me that Tyler had just then acquired 32% of HTE's common stock from the Harwards. Mr. Marr asked me to coordinate a meeting between HTE representatives and he and the Tyler representatives while they were still located in Florida. According to John Marr, he and the other Tyler representatives wanted to talk to representatives of HTE about Tyler's plan to acquire HTE. I told Mr. Marr I would report the information to HTE's board of directors and then follow up at a later date.

5. On or about August 20, 1999, Tyler directed and delivered to me in Florida correspondence which indicated that Tyler had acquired 4,650,000 shares of HTE common stock and that Tyler had a binding agreement to acquire an additional 968,952 shares of HTE common

---

[1] This portion of my affidavit will also describe the events or omissions that give rise to HTE's claim and which occurred within this judicial district.

stock. In this correspondence, Tyler specifically requested a meeting between HTE and Tyler "to discuss a business combination between the two companies." A true and accurate copy of Tyler's correspondence is attached hereto as Exhibit "A" and incorporated herein by reference.

6. Additionally, at or about the same time period, HTE learned that, in exchange for selling Tyler a 32% interest in HTE's common stock, Dennis and Jack Harward (the "Harwards")[2] collectively received 5.59% of the outstanding shares of Tyler common stock.[3]

7. On or about August 26, 1999, Tyler filed a Schedule 13 D with the Securities Exchange Commission, disclosing its beneficial ownership of 5,618,952 shares of HTE stock, which had been purchased by Tyler from the Harwards, and further disclosing that Tyler's purpose for acquiring the Harwards' stock was "to propose to the Board of Directors and management of HTE the business combination of the two companies. . ." A copy of Tyler's Schedule 13 D is attached hereto as Exhibit "B" and incorporated herein by reference.

8. On August 23, 1999, Tyler directed and delivered to HTE in Florida, Tyler's "Acquiring Person Statement", which was expressly provided by Tyler pursuant to Florida law (i.e., § 607.0902(6)), Florida Statutes (the Florida Business Corporation Act)). A true and accurate copy of Tyler's Acquiring Person Statement is attached hereto as Exhibit "C" and incorporated herein by reference.

---

[2] The Harwards founded HTE in the early 1980's. On August 3, 1999, the Harwards and HTE entered into an agreement pursuant to which, among other things, the Harwards resigned their positions as officers and employees of HTE; however, until their stock exchange transaction with Tyler, which occurred on August 17, 1999, the Harwards continued to be major shareholders and directors of HTE.

[3] The stock exchange transaction between Tyler and the Harwards led to litigation between HTE and the Harwards styled Dennis J. Harward and Jack L. Harward v. H.T.E., Inc., in the Circuit Court of the Eighteenth Judicial Circuit, in and for Seminole County, Florida, Case No. 99-CA-1195-CA-15-W (hereinafter called the "Prior Litigation"). In essence, it was HTE's position that, the Harwards had acted as a group when they collectively acquired more than 5% of Tyler's stock and that this constituted a breach of their 8/3/99 agreement. On February 8, 2001, the Circuit Court entered partial summary judgment for HTE which ordered and adjudged, in pertinent part, that the Harwards had indeed acted as a group when they purchased the Tyler stock and that said purchase constituted a breach of the Harwards' 8/3/99 agreement with HTE. The Harwards and HTE settled the Prior Litigation on February 15, 2001.

9. On or about December 8, 1999, Tyler directed and delivered to HTE in Florida those certain shareholder proposals of Tyler, which were proposed for inclusion in HTE's proxy statement for the solicitation of proxies in connection with the then, next annual meeting of HTE's shareholders. Essentially, Tyler was proposing the removal of the then-current members of HTE's Board of Directors and the election of Tyler's 10 nominees as directors. Each of Tyler's 10 nominees were either employees of Tyler or one of Tyler's affiliates, and the business address of each such nominee was shown by Tyler to be the same business address out of which Tyler operated. A true and accurate copy of Tyler's shareholder proposals are attached hereto as Exhibit "D" and incorporated herein by reference.

10. On December 17, 1999, I responded to Tyler's shareholder proposals. True and accurate copies of my response is attached hereto as Exhibit "E".

11. On the same day (December 17, 1999), Lynn Moore of Tyler delivered or submitted to me in Florida a letter to "clarify Tyler Technology, Inc.'s letter . . . of December 8, 1999. . . " A true and accurate copy of Tyler's December 17th letter is attached hereto as Exhibit "F" and incorporated herein by reference.

12. On December 14, 1999, Tyler filed its amended Schedule 13D, providing the public with notice of Tyler's proposal to restructure the Board of Directors of HTE. A true and accurate copy of Tyler's amended Schedule 13D is attached hereto as Exhibit "G" and incorporated herein by reference.

13. During the course of the above-referenced events, I had various telephone conversations with representatives of Tyler while I was located within the state of Florida. These telephone conversations, in substantial part, concerned and related to Tyler's efforts to effect a

merger with or otherwise acquire HTE, and many of the phone calls were initiated by Tyler's representatives and directed to me here in Florida.

14. The annual meeting of shareholders of HTE occurred on November 16, 2000. Prior thereto, on October 7, 2000, Tyler delivered its proxy to HTE's transfer agent. The fourth item of business for said shareholders' meeting was to consider a proposal to confer voting rights on the shares of HTE's common stock acquired by Tyler from the Harwards in a control share acquisition. The proposal to confer voting rights on the shares of HTE's common stock held by Tyler was not approved by the shareholders. A true and accurate copy of Tyler's proxy and of the minutes of the annual meeting of shareholders of HTE are attached hereto collectively as composite Exhibit "H" and incorporated herein by reference.

15. Significantly, the above-referenced shareholders meeting occurred in Lake Mary, Seminole County, Florida, and Tyler's Vice President and Chief Financial Officer, Theodore Bathurst, and possibly other Tyler officers or employees, personally attended that meeting here in Florida.

16. As plainly evidenced by Tyler's Acquiring Person Statement, which was expressly provided by Tyler pursuant to the Florida Business Corporation Act (§ 607.0902(6)), Tyler's HTE common stock was purchased in a control share acquisition. As such, Tyler's HTE common stock was subject to redemption by HTE under Florida's control share acquisition statute.

17. On October 12, 2001, the Board of Directors of HTE adopted resolutions authorizing and directing the redemption of Tyler's shares of HTE's common stock pursuant to Florida law. A true and accurate copy of the resolution is attached hereto as Exhibit "I" and incorporated herein by reference.

5

18. On October 24, 2001, HTE entered into an escrow agreement with SunTrust Bank ("SunTrust"), pursuant to which SunTrust agreed to act as escrow agent for the purpose of holding funds for payment of the redemption price to Tyler. A true and accurate copy of the escrow agreement (the "Escrow Agreement") is attached hereto as Exhibit "J" and incorporated herein by reference.

19. Pursuant to the Escrow Agreement, HTE delivered the funds to SunTrust on October 26, 2001. The escrow agent and the escrowed funds are located within the Middle District of Florida.

20. The Escrow Agreement contemplates that Tyler will deliver to SunTrust in Florida the certificates representing its shares of HTE common stock in exchange for which SunTrust, as escrow agent, will distribute to Tyler from Florida the funds equal to the redemption price.

21. On October 29, 2001, HTE effected the redemption of Tyler's HTE common stock pursuant to the authority granted under § 607.0902(10) and § 607.0721(4), Florida Statutes. A true and accurate copy of HTE's redemption notice to Tyler is attached hereto as Exhibit "K" and incorporated herein by reference.

22. On October 29, 2001, Tyler directed and delivered a letter to HTE, in Florida, responding to HTE's notice of redemption. Relying upon Florida law, Tyler asserted (albeit incorrectly) that "Tyler continues to be the owner of 5,618,952 shares of HTE common stock and may continue to vote up to 20% of the issued and outstanding shares of HTE common stock held by Tyler." A true and accurate copy of Tyler's response letter is attached hereto as Exhibit "L".

## SUBSTANTIAL AND NOT ISOLATED ACTIVITY
## ENGAGED BY TYLER WITHIN THE STATE OF FLORIDA

23. Tyler is a competitor of HTE. More specifically, both HTE and Tyler engage in the development and marketing of software applications in the public sector marketplace throughout the United States, including Florida. In its website and various press and marketing releases (which I periodically review), Tyler has consistently indicated that Tyler, without distinction between Tyler and its various affiliates or divisions, is a provider of end-to-end, e-government information management solutions for local governments, with a client base that is spread across the entire nation, including Florida. Indeed, in one of its websites, Tyler has expressly stated:

> In February of 1998, Tyler Technologies embarked on a multi-phase strategy and growth plan focused on the specialized information management needs of local government. Since that time, Tyler has experienced significant growth both internally and as a result of a number of strategic acquisitions.
>
> By the close of 1999, Tyler had established itself as a leading provider of information management solutions in the local government marketplace - with a huge breadth of products spanning virtually every area of city and county government operations from law enforcement, to courts, financial systems, appraisal and taxation, records management, and utility billing. <u>Tyler's installed base expanded to over 5,000 local government offices in 49 states in the USA</u>.

<u>See</u>, page 6 of Tyler's website information or other press or marketing releases, true and accurate copies of which are attached hereto collectively as Composite Exhibit "M" and incorporated herein by reference (emphasis added).

24. As was indicated above at paragraph 13, over the course of the events referenced herein, I have had various telephone conversations with representatives of Tyler concerning Tyler's efforts to effect a takeover of HTE. I also attended a meeting with certain of Tyler's

officers or representatives in New Jersey in or around the month of September, 1999. Tyler's representatives included Louis Waters (the Chairman of Tyler's Board of Directors), John Yeaman (Tyler's President and CEO), Sonny Oates (Chairman of Tyler's Executive Committee), John Marr[4], and others. During this meeting, the Tyler officers and employees unequivocally indicated that it had an overall corporate plan and strategy to increase its nationally-installed customer base with growth both internally and through the acquisition of various companies, including HTE in Florida. The Tyler representatives represented and stated that Tyler markets and distributes a broad line of products and services throughout the entire nation, including the state of Florida, through Tyler and its various affiliates, which were described by Tyler's representatives as divisions of Tyler. The Tyler representatives emphasized that Tyler is a national company, and they made no distinctions between Tyler and its affiliates or "divisions" when they discussed Tyler's marketing and distribution of products and services into Florida. In fact, to promote Tyler's acquisition of HTE, the Tyler representatives emphasized the centralized nature and control of Tyler's management over all divisions operating throughout the nation, including Florida.

25. Since Tyler's control share acquisition of HTE common stock, I have reviewed the quarterly reports (the Form 10Q's) and annual reports (the Form 10K's) filed by Tyler with the Securities and Exchange Commission (the "SEC"). True and accurate copies of the reports filed with the SEC since September 1, 1999, are attached hereto collectively as composite Exhibit "N" and incorporated herein by reference.

---

[4] As indicated above at paragraph 4, John Marr was president of Tyler's Munis division. During our September, 1999 meeting, John Marr strongly promoted Tyler and strongly promoted Tyler's acquisition of HTE. In short, Mr. Marr was plainly representing the interests of Tyler in connection with Tyler's plan to acquire or take over HTE.

FURTHER AFFIANT SAYETH NAUGHT.

_____
L. A. Gornto, Jr.

STATE OF FLORIDA    )
                    )ss
COUNTY OF Volusia   )

SWORN TO AND SUBSCRIBED before me this 13th day of December, 2001, by L. A. Gornto, Jr., who is personally known to me or has produced _____ as identification.

_____
(Notary Signature)

(NOTARY SEAL)

Michele LeClerc
(Notary Name Printed)
NOTARY PUBLIC

Commission No. CC 810463



Michele Le Clerc
MY COMMISSION # CC810463 EXPIRES
April 28, 2003
BONDED THRU TROY FAIN INSURANCE, INC.

G:\Jwf0370\25944\00001\Affidavit Of Gornto.Doc

9