UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:01-cv-1366-Orl-31DAB

H.T.E., INC.,

    Plaintiff,

vs.

TYLER TECHNOLOGIES, INC.,

    Defendant.
_____/

**DEFENDANT, TYLER TECHNOLOGIES, INC.'S,
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
<u>MOTION TO STRIKE AFFIDAVIT OF H. LYNN MOORE, JR.</u>**

Defendant, TYLER TECHNOLOGIES, INC. ("Tyler"), pursuant to Local Rule 3.01(b), files and serves this memorandum of law in opposition to the MOTION TO STRIKE AFFIDAVIT OF H. LYNN MOORE, JR. and MEMORANDUM OF LAW IN SUPPORT (Docket No. 14).

    I.    **<u>Statement of the Case</u>:**

This action was commenced as a declaratory judgment action brought by the Plaintiff, H.T.E., INC., a Florida corporation ("H.T.E.") in state court seeking a declaration that its purported redemption pursuant to §607.0902(10), *Fla. Stat.* (2001), of 5,617,932 shares of common stock in H.T.E. owned by Tyler is valid, and seeking supplemental relief to enforce that redemption. It was removed by Tyler to this Court on the basis of diversity jurisdiction pursuant 28 U.C.S. §1332 and

§1441(a). Pending at the time of the removal of the action was Defendant's Motion to Quash Service of Process and to Dismiss the Complaint for Lack of Personal Jurisdiction and Venue (the "Motion to Quash") (Docket No. 4), and a supporting Affidavit of H. Lynn Moore, Jr. (the "Original Moore Affidavit") (Docket No. 5). In the Motion to Quash Tyler sought an order quashing the purported service of process on it and dismissing the complaint and the action on the grounds that there was a lack of personal jurisdiction over Tyler.[1]

Contemporaneously with the filing of its memorandum in opposition to the Motion to Quash, H.T.E. served a FIRST AMENDED COMPLAINT FOR DECLARATORY AND SUPPLEMENTAL RELIEF AND FOR DAMAGES (Docket No. 15. In this amended complaint, H.T.E. has alleged a new Count II seeking damages for purported tortious interference with a contract between H.T.E. and non-parties, Jack Harward and Dennis Harward (the "Harwards"). In the original complaint the declaratory judgment action centered around H.T.E.'s attempt to redeem its stock owned by Tyler and involved actions for which Tyler asserted that it did not have the requisite contacts with the State of Florida to subject it to jurisdiction under Florida's Long Arm Statutes or under Due Process requirements of the Fourteenth Amendment. In the amended complaint, the new allegations of fact and the new count for tortious interference involve earlier acts by Tyler in acquiring the H.T.E. stock in which it did have contacts with the Harwards in the State of Florida. In connection with this new count, H.T.E. has alleged that Tyler is

---

[1] In accordance with the recent decision of the Eleventh Circuit Court of Appeals in *Hollis v. Florida State University*, 259 F.3d 1295, 1300 (11th Cir., 2001), once removed, pursuant to 28 U.S.C. §1441(a), the federal venue of this action was in the district where the state action was pending, and the portions of Tyler's motion attacking state court venue became moot.

subject to personal jurisdiction pursuant to a different Florida Long Arm Statute, §48.193(1)(b), for allegedly committing a tortious act within the state. While Tyler expects to ultimately prevail on this new count, in its amended complaint H.T.E. has sufficiently alleged personal jurisdiction, and the facts covered in this new count are not sufficiently developed as to permit a summary disposition at this time. Accordingly, Tyler has filed an answer and affirmative defenses to the amended complaint and a counterclaim. This has rendered the Motion to Quash moot.

In addition to filing an amended complaint, H.T.E. filed a motion to strike the affidavit of H. Lynn Moore, Jr. pursuant to Fed. R. Civ. P. 12(f) (the "Motion to Strike")(Docket No. 14). The thrust of the Motion to Strike is that there are purported inconsistencies between the Original Moore Affidavit and prior statements and admissions that Tyler has made. In support of its memorandum in opposition to Tyler's Motion to Quash and the Motion to Strike, H.T.E. filed four affidavits[2], four depositions[3] taken in a prior unrelated action and a request for judicial notice.[4]

Through misinterpretation, exaggeration and taking matters out of context, H.T.E. has tried to show inconsistencies between the Original Moore Affidavit and these depositions, documents and items. H.T.E.'s efforts in this regard fail. Tyler submits that the Original Moore Affidavit is not in conflict with prior statements by Mr. Moore (or by others on behalf of Tyler for that matter).

---

[2] The affidavits are of L.A. Gornto, Jr., Bernard B. Markey, Ronald Goodnow and James Timothy Vickers. Tyler has filed a motion to exclude from consideration or, in the alternative, to strike certain legal conclusions in the Gornto affidavit.

[3] The depositions of Horace Lynn Moore, Jr., Louis A. Waters, William D. Oates and John Marr were all taken in the case styled "Dennis J. Harward and Jack L. Harward v H.T.E., Inc." which was then pending in the Circuit Court of the Eighteenth Judicial Circuit, Seminole County, Florida.

Accordingly, H.T.E. has shown no basis under applicable law for striking the affidavit.

II. **Law Applicable to Striking an Affidavit:**

H.T.E. has made its motion pursuant to Fed. R. Civ. P. 12(f) which provides in pertinent part that ". . . the court may order stricken from any pleading any insufficient defense or redundant, immaterial, impertinent or scandalous matter." Such motions are disfavored by the courts. See *Vinita Broadcasting Co. v. Colby*, 320 F Supp. 902, 904 (N.D. Okla 1971). No where in its memorandum does H.T.E. argue that the Original Moore Affidavit is redundant, immaterial or impertinent or that it contains scandalous matter.

The four cases cited by H.T.E. in support of striking the Original Moore Affidavit (a federal district court opinion and three Florida state court opinions)[5], are not applicable to the facts here. The decision in *Total Plan Corp. of America v. Lure Camera, Ltd.*, 613 F. Supp. 451 (W.D.N.Y. 1985), the only federal case cited by H.T.E., is distinguishable both factually and legally. In *Total Plan*, the court granted a motion to strike a paragraph of the complaint because it directly conflicted with a statement made by the same party in a complaint in a prior related case in the same court. In the original complaint filed on September 21, 1979, the plaintiff had alleged it had knowledge of the defendant's employment to act as attorney for Total Plan-West. In the subsequent complaint filed over two years later, the plaintiff alleged that it had been less than two years since the

---

[4] Tyler has filed a response in opposition to a portion of the request for judicial notice.
[5] Because the action has been removed to Federal Court, Federal procedure and law would apply to the propriety of striking an affidavit.

4

plaintiff obtained such knowledge. These two statements directly contradicted each other. So insignificant to the case was the order striking a paragraph from the complaint that neither the summary nor the headnotes of the case make any reference to it. *Id.* at 461. No authority is cited by the court in support of its actions.

In *Total Plan*, the court was dealing with a party to two actions, both of which were before the same court, and directly contradictory statements made by that party in the respective complaints on the same issues. Here neither Mr. Moore nor Tyler has been a party in a prior related case before the Court, and the Original Moore Affidavit does not take a position directly in conflict with that of Tyler in another case involving the same issue. The decision in *Total Plan* is inapplicable to the instant case.

In both *Ellison v. Goodman*, 395 So. 2d 1201, 1202 (Fla. 3rd DCA 1981) and *Inman v. Club on Sailboat Key, Inc.*, 342 So. 2d 1069 (Fla. 3rd DCA 1977), the parties' affidavits, which directly contradicted their deposition testimony in the same lawsuit, were given merely to create an issue of fact to avoid a summary judgment. Even under those circumstances the *Ellison* court noted that an affidavit should not be stricken if the party had a credible explanation as to the reason for the discrepancy between his earlier and later opinions or where a party has made an honest mistake. *Id.* at 1202. With respect to the Original Moore Affidavit, the Court is not dealing with a situation in which a party has taken a directly contradictory position in the same lawsuit. Here there was no direct contradiction by the Original Moore Affidavit and any prior statement by Moore and to the extent

5

there is a perceived inconsistency it has been explained in the Moore Supplemental Affidavit. Thus, *Ellison* and *Inman* are not applicable here.

Likewise, the decision in *Freixas v. Buena Vista Lakes Condominium Association*, 559 So. 2d 1184 (Fla. 3rd DCA 1990), is inapplicable. In *Freixas* a third party plaintiff took a position that specifically and directly contradicted sworn testimony given by him in a related lawsuit, and the court found that a party could not do this to create a genuine issue of material fact precluding a summary judgment. Once again, Mr. Moore is not a party here, and he was not a party in the prior action in which his deposition was taken. In addition, he has not given directly contradictary testimony in a case where a material issue was the same as the subject matter of his affidavit. In summary, the cases cited by H.T.E. stand for the proposition that a party cannot take directly contradictory positions on material issues in a case or related cases before the same court in order to create an issue of fact to preclude a summary judgment. Those are not the facts here, and the cases are inapposite.

At odds with the decisions cited by H.T.E. is the Fifth Circuit Court of Appeals decision in *Kennett-Murray Corporation v. Bone*, 622 F. 2d 887, 893 (5th Cir. 1980), in which the Court noted,

> In considering a motion for summary judgment, a district court must consider all the evidence before it and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition. See, e.g., *Camerlin v. New York Central R. Co.,* 199 F. 2d 698, 701 (1st Cir. 1952); *Adams v. United States,* 392 F. Supp. 1272, 1274 (E.D.Wis.1975). "An opposing party's affidavit should be considered although it differs from or varies his evidence as given by deposition or another affidavit and

6

> the two in conjunction may disclose an issue of credibility." [citations omitted].

*See also United States v. Johns-Manville Corporation*, 259 F. Supp. 440, 456 (E.D.Pa.1968) (holding that merely because certain statements of the affiant contained in the affidavit were in conflict with his deposition was not grounds for excluding the statements in the affidavit). Moreover, where the affiant, Mr. Moore, was not deposed at length on the issues (i.e., the relationship between Tyler Technologies, Inc. and its subsidiaries, and the contacts of Tyler Technologies with Florida) and/or there is not actual, direct contradiction between the deposition and the affidavit, the affidavit should not be stricken. *See Palazzo v. Corio*, 232 F. 3d 38, 43 (2nd Cir. 2000). *See also Susko v. Romano's Macaroni Grill*, 142 F. Supp. 2d 333, 337 (E.D.N.Y 2001).

III. **Purported Inconsistencies Between Original Moore Affidavit and Prior Statements:**

A. **H.T.E. does not argue any inconsistency in significant portions of Moore Affidavit.**

Significantly, H.T.E. has only chosen to attack three of the eleven paragraphs (paragraphs 6,7 and 8) of the Original Moore Affidavit. This alone should preclude the striking of the entire affidavit. *See Perma Research and Development Co. v. Singer Co.*, 410 F. 2d 572, 579 (2nd Cir. 1969).

Furthermore, to the extent that H.T.E. attempts to attack statements concerning subsidiaries of Tyler, those attacks are not jurisdictionally material because the conduct of the subsidiaries is not related to H.T.E.'s causes of action. In its memorandum of law in opposition to the Motion to Quash, H.T.E. acknowledges that as part of the required analysis to determine whether or not personal

7

jurisdiction is present, the court must determine that Tyler's contacts are related to the plaintiff's cause of action. (H.T.E. Memorandum, at page 14). The original declaratory judgment complaint dealt with H.T.E.'s attempts to redeem stock owned by Tyler. Even in the amended complaint, Count II for purported intentional interference with a contract involves Tyler's purchase of its H.T.E. stock. The Original Moore Affidavit, at paragraph 6, sets forth that none of Tyler's subsidiaries owns any of the stock in H.T.E. that is the subject matter of the action, and that none of the subsidiaries had any involvement with any H.T.E. stock or the subject matter of the action. H.T.E. does not contest these statements.[6] Without a relationship between the subsidiary and H.T.E.'s causes of action personal jurisdiction cannot be based on Tyler's subsidiaries.

### B. Purported Inconsistencies Between Original Moore Affidavit and Moore Deposition.

The only purported inconsistency between the Original Moore Affidavit and the Moore deposition raised by H.T.E. was a statement contained in the following testimony that appears at page 11 of Mr. Moore's deposition:

> Q. What business is Tyler in?
>
> A. Tyler is really two business lines. One business is its - - its kind of a property - records business. We provide information to title companies, mostly here in Texas, help them with taxes on property and that nature.

---

[6] To the extent that H.T.E. contends that deposition testimony of John Marr shows involvement of a subsidiary a reading of the entire deposition makes it abundantly clear that any involvement of John Marr in connection with the acquisition of H.T.E. stock by Tyler had nothing to do with the Tyler subsidiary of which Marr is president. His involvement arose because he was the only person at Tyler or its subsidiaries who happened to know the Harwards because of prior business dealings with them. Marr Deposition, pp 13 and 18.

> The other business which is -- is really an outsourcing IT business, service business that tailors to the local governmental markets.
>
> Q. In connection with that part of Tyler's business, does Tyler develop and market software applications in the public sector marketplace?
>
> A. In the public sector? Explain what you mean by the public sector.
>
> Q. Governmental agencies, cities, municipalities.
>
> A. Yes, definitely. That's . . .

The foregoing testimony must be considered in the context of the deposition Mr. Moore was giving. Tyler was not a party to the lawsuit in which the deposition was given. There was no preparation performed in connection with the giving of the deposition. Mr. Moore was not represented by counsel at the deposition, and Tyler had no opportunity to cross examine him. There was no issue involved in that lawsuit to Mr. Moore's knowledge that concerned the relationship between Tyler Technologies, Inc. and its subsidiaries. The above-referenced questions were asked in the context of obtaining general background information. In the absence of a definition of "Tyler", Mr. Moore did not make any attempt to be precise or technically correct, and he viewed the term "Tyler" broadly to encompass Tyler and its subsidiaries. Significantly, on the following page of his deposition, when asked how Tyler embarked into that marketplace, Mr. Moore refers to the acquisitions of The Software Group and a company called Incode. In that testimony he was referring to Tyler subsidiaries. See Moore Supplemental Affidavit, paragraph 4.

In short, there is no direct contradiction between the Moore Affidavit and Mr. Moore's deposition testimony, and to the extent that one wanted to infer a contradiction, Mr. Moore has explained it away in the Moore Supplemental Affidavit.

### C. Purported Inconsistencies Between Moore Affidavit and Other Depositions.

At the outset, Tyler notes that H.T.E. has failed to cite a single case in which the affidavit of an individual was stricken based upon purported inconsistencies between it and the testimony of other witnesses. The reason is obvious. Often witnesses perceive and recall things differently, and there are often inconsistencies between the testimony of witnesses. For this reason the court or a trier of fact is required to weigh and balance the testimony to determine that which is most accurate. It would be a departure from traditional rules of jurisprudence to start striking one witness' testimony because it conflicts with that of another.

To the extent that the court is going to consider the depositions of other witnesses, it needs to keep them in the proper context. Tyler was not a party to the case in which the depositions were taken. There was nothing about that case which, to the knowledge of the deponents, made the distinctions between Tyler Technologies, Inc. and its subsidiaries of any significance whatsoever. The deponents did nothing in preparation for their depositions, and while Mr. Moore, in-house counsel for Tyler, sat in on the depositions of Mr. Waters and Mr. Oates, he is not a trial lawyer and did not have the litigation experience necessary to prepare the deponents or to make objections. Furthermore, Tyler had no opportunity to cross examine the witnesses. *See* Moore Supplemental Affidavit, paragraph 3.

The purported inconsistencies between the Original Moore Affidavit and the depositions of Messrs. Waters, Oates and Marr raised by H.T.E. concern isolated testimony.

The purportedly contradictory testimony of Mr. Waters is found at page 17 of his deposition and is as follows:

> Q. Who was it here at Tyler that initially conceived to that idea: that is, acquiring all of the H.T.E. shares of stock following the transaction with Harwards?
>
> A. Well, you have to understand the make up of Tyler. I mean, that's what we were at the time, an acquisition company. We were building a national company. We acquire companies. That's what we do. Harward stock became available. Probably all of us that looked at it, had that in mind: here's 30% of the company; it's a potential chance to buy the whole company. So that wouldn't have been one individual conceiving it; it was part of our strategy in our business.

There is nothing inconsistent, either directly or indirectly, between the this statement and the Original Moore Affidavit. In fact, Mr. Waters is merely describing a holding company such as is described in the Original Moore Affidavit.

The purportedly inconsistent testimony of Mr. Oates is found at page 7 of his deposition where he was asked:

> Q. What are your duties and responsibilities as chairman of the executive committee?
>
> A. Basically, I'm in acquisitions and running the companies <u>that I merged into Tyler Corp.</u> [emphasis added]

Mr. Oates went on to explain that "the companies [he] merged into Tyler Corp." were his company, Business Resources Corporation, which provided systems in the county recorders office in Texas. *See* Oates Deposition, pp 8-9.

11

Furthermore, the statements in the Original Moore Affidavit concerning subsidiaries are limited to those "that do business in the State of Florida". Indeed, that is the definition the term "Subsidiaries" as set forth in paragraph 6 of the Original Moore Affidavit. The record reflects that Business Resources Corp. does business in Texas. There is nothing in the record to reflect Business Resources Corp. has done business in Florida, either before or after its acquisition by Tyler Technologies, Inc. Business Resources Corp. is what Mr. Oates was referring to "running" in his deposition. Thus, there is no contradiction between the Original Moore Affidavit and the testimony of Mr. Oates.

Next, H.T.E. attempts to raise inconsistencies between the Moore Affidavit and some testimony of Mr. Marr. H.T.E. asserts that Marr testified that he was technically an employee of the Munis division, but that he was paid by Tyler. Mr. Marr was in error in this testimony. He was and is employed by Munis, Inc., f/k/a Process, Inc., f/k/a Computer Center Software, Inc., and he was and is paid by that entity. *See* Moore Supplemental Affidavit, paragraph 6. Next, H.T.E. raises Marr's testimony about a payroll account. Marr was correct in his testimony that at a point in time a single processing account was set up to handle the payrolls of each subsidiary; however, that processing account has subcategories for each subsidiary, and each subsidiary funds its own payroll out of that subsidiary's own separate account. *See* Moore Supplemental Affidavit, paragraph 6. In any event, there is no contradiction between this and the fact, as stated in the Original Moore Affidavit, that the subsidiaries have separate accounting systems and separate books and records. Finally, H.T.E. notes that "prior to his deposition in the prior

12

litigation, Marr conferred with Tyler's corporate counsel, Moore, for guidance. Marr Depo. at 14-15." As is true with most of H.T.E.'s positions in this matter, to say that Marr conferred with Tyler's corporate counsel "for guidance" is very misleading. The actual testimony of Mr. Marr went as follows:

> Q. Now prior to this deposition in order to prepare for it, did you review any documents?
>
> A. I didn't prepare for it.
>
> Q. So you reviewed no documents?
>
> A. No.
>
> Q. Did you speak with any persons?
>
> A. I talked to Lynn Moore just to ask if he had any guidance, if he had in fact spoken to you folks -- one of you contacted me and had indicated that he said go ahead and call John [Foster] directly. So I confirmed that, not that there is any distrust in your representation, but just as a courtesy obviously to our counsel. We didn't have any detailed discussions. He said sure go ahead and do it. Let me know. That's really the extent of it.

As indicated in the Moore Supplemental Affidavit, it was natural for Mr. Marr to contact Mr. Moore because Mr. Moore was the individual handling the scheduling and logistics of the depositions from the Tyler standpoint. In no way can this testimony of Mr. Marr be construed as directly contradicting anything in the Original Moore Affidavit.

D. **Purported Inconsistencies With Filings.**

H.T.E. attempts to show that there are inconsistencies between the Original Moore Affidavit and filings made by Tyler with the Securities and Exchange Commission. This is a total red herring. H.T.E. attempts to assert that

13

because Tyler files consolidated financial statements in its SEC filings, this somehow conflicts with statements in the Original Moore Affidavit concerning subsidiaries maintaining separate accounting systems, and books and records. Under the rules of the SEC as well as GAAP, Tyler is required to file consolidated statements with the SEC. Of course, this has nothing to do with the fact that subsidiaries maintained separate accounting systems, and books and records as, in fact, is the case. The subsidiaries report their individual numbers which are then combined to compile the required consolidated statements. The same is true with respect to the lack of distinction between Tyler and its subsidiaries in its SEC filings. *See* Moore Supplemental Affidavit, paragraph 7.

    Much the same can be said with respect to the credit agreement which is attached to various SEC filings. H.T.E. emphasizes the fact that the subsidiaries are guarantors of the credit agreement and that Tyler has pledged its stock in the subsidiaries as security under the credit agreement. It is a common practice for lenders to require wholly owned subsidiaries to guaranty the debt of corporate parents. Likewise, it is a common practice of lending institutions to require corporate parents to pledge security of their stock in wholly owned subsidiaries. In fact, because Tyler and its subsidiaries are separate from each other, essentially the only asset that Tyler has to pledge as security is the stock its owns in its subsidiaries. *See* Moore Supplemental Affidavit at paragraph 8. There is nothing inconsistent with these common lending practices and anything contained in the Original Moore Affidavit. Likewise, the fact that Amendment No. 5 to the credit agreement has a signature line for Tyler Technologies, Inc. and a separate

signature line for all of its subsidiaries is not inconsistent with the Original Moore Affidavit and, indeed, supports its points. Finally, H.T.E. asserts that under the credit agreement, Tyler pledges to control the restricted entities with respect to debts, liens, insurance and corporate transaction. A complete reading of the credit agreement reflects this is a gross oversimplification and overstatement of it. For example, under the credit agreement attached as a portion of Exhibit N to the Gornto Affidavit a subsidiary is restricted as to debt, except for "permitted debt." "Permitted debt" allows the subsidiary to incur subordinated debt up to an aggregate of $20,000,000 and other debt up to an aggregate of $10,000,000. The same principle applies to liens, insurance and corporate transactions. In fact, Tyler does not maintain control over the business decisions or operations of its subsidiaries that occur in the ordinary course of business. *See* Moore Supplemental Affidavit, paragraph 9.

H.T.E. attaches a filing with the Florida Secretary of State concerning CLT, Inc. ("CLT"), a Tyler subsidiary. From this it deduces that four out of five directors of CLT are officers and directors of Tyler. Even this would not contradict the statement in the Original Moore Affidavit that the officers and directors of Tyler and its subsidiaries are not identical since they still would not be identical. The filing, however, does not accurately reflect the officers of CLT for 2001, the year in which the Moore Affidavit was signed. In 2001, the President and CEO of CLT was Bruce F. Nagle, the COO was Ruel E. Williamson, the Executive Vice President was Benjamin F. Story and the controller was C. Mark Brown. None of these

individuals is an officer or director of Tyler Technologies, Inc. *See* Moore Supplemental Affidavit, paragraph 10.

### E. Purported Inconsistencies Between Moore Affidavit and Websites.

While Tyler Technologies, Inc. has a website, as noted by H.T.E. in the Motion to Strike and its memorandum, each of the Tyler subsidiaries has its own independent website. Any party making a inquiry on the Tyler Technologies, Inc. website about a type of product will receive information from the specific subsidiary marketing that particular product. While the Tyler Technologies website does make reference to "regional offices, one of which is in Raleigh North Carolina", those offices are for its subsidiaries, and none of the referenced "regional offices" are in Florida. The only office out of which Tyler Technologies, Inc. transacts business is located in Dallas, Texas. *See* Moore Supplemental Affidavit, paragraph 12.

Under this portion of its memorandum, H.T.E. includes a paragraph about CLT maintaining an office in Bradenton and that it would be attending conferences in several locations in Florida, and that Fund Balance, Inc., another Tyler subsidiary, is conducting regional training sessions in Florida. Again, there is nothing inconsistent between this and paragraph 6 of the Original Moore Affidavit in which Mr. Moore stated that Tyler has some wholly owned subsidiaries that do business in Florida. CLT and Fund Balance are two of the "Subsidiaries" to which he was referring.

H.T.E.'s assertions in the Motion that Tyler has leased offices in Florida for its subsidiaries are incorrect. Tyler has no leases in the State of Florida, for its subsidiaries or otherwise. *See* Moore Supplemental Affidavit, paragraph 13.

16

F.  **Purported Inconsistencies Between Moore Affidavit and Tyler Press Releases.**

The press releases to which H.T.E. refers clearly identify products being sold by Tyler subsidiaries such as CLT and Incode, and clearly identify the products as products of those subsidiaries. There is no contradiction or inconsistency with the Original Moore Affidavit here.

G.  **Application of Law to the Facts.**

Tyler submits that H.T.E. has failed to show any direct contradictions between the Original Moore Affidavit and the Moore deposition (or other sources for that matter). Furthermore, assuming such a contradiction existed, H.T.E. has not cited, and Tyler's research has not disclosed any decisions where a court struck an affidavit on the basis of purportedly contradictory testimony from a case in another court where the deponent was not a party and where the testimony went to preliminary matters not material in that case.

Based on the better reasoned cases and the law in the Eleventh Circuit[7], a court should not strike an affidavit even if it contains inconsistencies with prior testimony. Moreover, H.T.E. has been unable to cite any authority for striking an affidavit that conflicts with testimony of one other than the affiant himself.

Here, there is no inconsistency between the prior deposition testimony of Mr. Moore in the unrelated action under circumstances in which he would not have been the least bit concerned about defining the relationship between Tyler

---

[7] *See Kennett-Murry Corporation v. Bone*, 622 F. 2d at 893 and *Bonner v. City of Prichard*, 661 F. 2d 1206, 1207 (11th Cir. 1981).

Technologies, Inc. and its wholly owned subsidiaries and the Original Moore Affidavit. Understandably, in response to general background questions and in the absence of any definition of the term "Tyler", Mr. Moore considered it generally and used it broadly in the context of Tyler and its subsidiaries. All of this has been adequately explained in Moore's Supplemental Affidavit.

Even if the court wanted to plow new ground and in ruling on the Motion to Strike to consider testimony of deponents other than Mr. Moore in an unrelated action in which Tyler was not a party, SEC filings, websites or press releases, the foregoing analysis shows that there is no direct contradiction between those sources and the contents of the Original Moore Affidavit.

V.  **Conclusion**.

For the foregoing reasons, Tyler respectfully submits that the Motion to Strike should be denied in its entirety.

*[signature]*

William B. Wilson, Esquire
Florida Bar No. 153167
HOLLAND & KNIGHT LLP
200 S. Orange Avenue, Suite 2600
Post Office Box 1526
Orlando, FL 32802-1526
Phone: (407)425-8500
Fax: (407)244-5288
Attorneys for Defendant,
Tyler Technologies, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by hand delivery this **8th** day of January, 2002, to John W. Foster, Sr., Esquire, Baker & Hostetler LLP, 2300 Sun Trust Center, 200 South Orange Avenue, Post Office Box 112, Orlando, FL 32802-0112.

William B. Wilson, Esquire

ORL1 #697828 v1