FILED
1-8-02
U.S. DISTRICT
MIDDLE DISTRICT OF
ORLANDO, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:01-cv-1366-Orl-31DAB

H.T.E., INC.,

    Plaintiff,

vs.

TYLER TECHNOLOGIES, INC.,

    Defendant.

_____/

## ANSWER TO FIRST AMENDED COMPLAINT FOR DECLARATORY AND SUPPLEMENTAL RELIEF AND FOR DAMAGES

Defendant, TYLER TECHNOLOGIES, INC., a Delaware corporation ("Tyler"), answers the First Amended Complaint for Declaratory and Supplemental Relief and For Damages as follows:

### Nature of Action

1.    It is admitted this is an action against Tyler under Chapter 86, *Florida Statutes,* 2001, in which H.T.E., Inc. ("H.T.E.") seeks declaratory and supplemental relief to declare valid its purported redemption of Tyler's holding of H.T.E. common stock pursuant to §607.0902(10), *Florida Statutes*, 2001, and ordering such supplemental relief as is necessary to effect that redemption and to cancel the shares of common stock held by Tyler. Furthermore, it is admitted that Count II



purports to be an action for damages in excess of $75,000.00, exclusive of interest and costs. The remaining allegations contained in paragraph 1 are denied.

2.   It is admitted this action was removed to this Court by Tyler on November 20, 2001, based on diversity of citizenship jurisdiction pursuant to 28 U.S.C. §1332 and §1441, because there was complete diversity of citizenship and the matter in controversy under the declaratory judgment action exceeded the sum of $75,000.00, exclusive of interest and costs. Tyler denies that under its claim in Count II that H.T.E. has sustained damages in excess of $75,000.00, exclusive of interest and costs and denies the remaining allegations contained in paragraph 2.

## Parties, Jurisdiction and Venue

3.   It is admitted H.T.E. is a Florida corporation providing computer software and related services in the public sector marketplace throughout the nation, including Florida and that its principal office is located in Lake Mary, Seminole County, Florida, and that H.T.E. is a publicly held corporation whose shares are traded on the NASDAQ National Market. Tyler is without knowledge or denies any remaining allegations contained in paragraph 3.

4.   It is admitted that Tyler is a Delaware corporation and that it has certain wholly owned subsidiaries that provide computer software and related services in the public sector marketplace throughout the United States, including Florida, and that certain of those subsidiaries sometimes compete with H.T.E. The remaining allegations contained in paragraph 4 are denied.

5.   In response to the allegations contained in paragraph 5, it is admitted that Count I seeking declaratory and supplemental relief seeks to declare valid

H.T.E.'s purported redemption of Tyler's holding of H.T.E. common stock pursuant to §607.0902(10), *Fla. Stat.* (2001), and that Count II for purported tortious interference with a contract concerns Tyler's acquisition of H.T.E. common stock from Jack Harward and Dennis Harward and that the contract under which Tyler acquired that stock was partially negotiated, drafted, signed and closed by Tyler in Florida and that the contract, while subject to Texas law, does contain the paragraph §6.8 dealing with jurisdiction and venue the language of which is quoted in paragraph 5. It is admitted that subsequent to obtaining some of the H.T.E. common stock owned by it, Tyler sent an acquiring persons statement under §607.0902(6) of the *Fla. Stat.* (2001), and, in addition to another shareholder of H.T.E., submitted a proposal for restructuring H.T.E.'s board of directors by removing the then current directors and nominating as replacement directors several persons associated with Tyler, which were mailed from Texas to H.T.E.'s place of business in Florida. It is admitted that an officer of Tyler attended, but did not participate, in the H.T.E. annual shareholders meeting held in November, 2000 in Florida. It is admitted that Tyler has disputed H.T.E.'s purported right of redemption made by H.T.E. pursuant to Florida Statutes and that Tyler asserts it continues to own the H.T.E. common stock. Tyler is either without knowledge or denies the remaining allegations contained in paragraph 5.

  6. In response to the allegations contained in paragraph 6, Tyler admits that it is a Delaware corporation and that it has certain wholly owned subsidiaries that sometimes compete with H.T.E. in Florida. Tyler is without knowledge or denies the remaining allegations contained in paragraph 6.

7. In response to the allegations contained in paragraph 7, Tyler admits that it has certain wholly owned subsidiaries that sell products and services to customers in Florida. Tyler is either without knowledge or denies the remaining allegations contained in paragraph 7.

8. The allegations contained in paragraph 8 are denied.

9. In response to the allegations contained in paragraph 9, it is admitted that there is complete diversity of citizenship and that the amount in controversy with respect to the declaratory judgment action exceeds $75,000.00. The remaining allegations contained in paragraph 9 are denied.

10. In response to the allegations contained in paragraph 10, Tyler admits that venue in this action is proper within the Middle District of Florida because pursuant to a decision of the 11th Circuit Court of Appeals, the removal of this action made venue proper in this Court. Tyler is without knowledge or denies the remaining allegations contained in paragraph 10.

## Background and General Allegations

11. In response to the allegations contained in paragraph 11, Tyler admits that at some point during the negotiations it had with Dennis Harward and Jack Harward for the purchase of the stock each of them held in H.T.E., Tyler became aware of a severance agreement and employment agreements that Dennis Harward and Jack Harward each had with H.T.E. Exhibit A contains copies of an employment agreement between Jack Harward and H.T.E., an employment agreement between Dennis Harward and H.T.E., and an agreement between Dennis Harward and Jack Harward and H.T.E. dated August 3, 1999. Tyler is

4

without knowledge if these are true and correct copies of the agreements and is without knowledge of the remaining allegations in paragraph 11.

12. On information and belief it is admitted that at the time Jack Harward and Dennis Harward resigned as officers and employees of H.T.E. that they each remained a director of H.T.E. It is admitted that when Jack Harward resigned as an officer and employee of H.T.E., he owned at least 2,205,154 shares of H.T.E. common stock and that at the time Dennis Harward resigned as an officer and employee of H.T.E., he owned at least 3,413,798 shares of H.T.E. common stock. Tyler denies or is without knowledge of the remaining allegations contained in paragraph 12.

13. In response to the allegations contained in paragraph 13, it is admitted that the document attached in Exhibit A and entitled "AGREEMENT" contains a paragraph 6 "Restrictive Covenants" which provides that Dennis Harward shall be subject to §6, 7 and 14 of his employment agreement, which employment agreement contains a paragraph 6.1 that provides that "for a two year period after termination of his employment, Dennis Harward shall not, directly or indirectly, engage in or have any interest in a corporation (whether as an employee, officer, director, partner, agent, security holder, creditor, consultant or otherwise) that directly or indirectly (or through any affiliated entity) engages in competition with H.T.E. as defined in the agreement and which exempts his ownership or acquisition of securities as investments as set forth in the agreement so long as he does not control, acquire a controlling interest in or become a member of a group which exercises direct or indirect control or, more than 5% of any class of capital stock of

5

such corporation. It is admitted that the document attached in Exhibit A and entitled "AGREEMENT" contains a paragraph 6 "Restrictive Covenants" which provides that Jack Harward shall be subject to §6, 7 and 14 of his employment agreement, which employment agreement contains a paragraph 6.1 that provides that for a two year period after termination of his employment, Jack Harward shall not, directly or indirectly, engage in or have any interest in a corporation (whether as an employee, officer, director, partner, agent, security holder, creditor, consultant or otherwise) that directly or indirectly (or through any affiliated entity) engages in competition with H.T.E. as defined in the agreement and which exempts his ownership or acquisition of securities as investments as set forth in the agreement so long as he does not control, acquire a controlling interest in or become a member of a group which exercises direct or indirect control or, more than 5% of any class of capital stock of such corporation. Tyler is either without knowledge or denies the remaining allegations contained in paragraph 13.

14.   In response to the allegations contained in paragraph 14, it is admitted that on or about August 13, 1999, the Board of Directors of Tyler entered into a Unanimous Written Consent in which it deemed it to be in the best interest of Tyler to acquire all of the common stock of H.T.E., Inc., in a single transaction or pursuant to a specific plan which is consummated within one year and to initiate the plan acquiring up to 6,143,952 shares of H.T.E. common stock from Dennis Harward and from Jack Harward. Tyler is either without knowledge or denies the remaining allegations contained in paragraph 14.

15. In response to the allegations contained in paragraph 15, it is admitted that on August 17, 1999, Tyler and Dennis Harward and Jack Harward entered into to the Stock Purchase Agreement, a copy of which is attached to the complaint as Exhibit B and that under the Stock Purchase Agreement Tyler acquired a total of approximately 32% of H.T.E.'s common stock from both of the Harwards and that Dennis Harward received 1,412,555 shares of Tyler stock (constituting 3.4% of Tyler's then outstanding and issued stock) and that Jack Harward received 912,445 shares of Tyler stock (constituting approximately 2.199% of Tyler's then outstanding and issued stock). Tyler is either without knowledge or denies the remaining allegations contained in paragraph 15.

16. In response to the allegations contained in paragraph 16, it is admitted that after the Unanimous Written Consent of the Board of Directors of Tyler on August 13, 1999, Tyler on one occasion submitted shareholder proposals and submitted a proxy voting in favor of the proposals and, in addition, requested and held a meeting with senior management of H.T.E. regarding a possible combination of the two companies. Tyler is either without knowledge or denies the remaining allegations contained in paragraph 16.

17. In response to the allegations contained in paragraph 17, it is admitted that attached to the amended complaint as Exhibit C is a copy of §607.0902, *Fla. Stat.* (2001). Tyler is either without knowledge or denies the remaining allegations contained in paragraph 17.

18. Tyler is either without knowledge or denies the allegations contained in paragraph 18.

19. In response to the allegations contained in paragraph 19, it is admitted that §607.0902(5), *Fla. Stat.* (2001), provides as is quoted. Tyler is either without knowledge or denies the remaining allegations contained in paragraph 19.

20. In response to the allegations contained in paragraph 20, Tyler admits that §607.0902(9) provides as is set forth in that provision in Exhibit C attached to the amended complaint. Tyler denies the allegations of paragraph 20 to the extent that they are not in strict conformity with the contents of the statutory provision.

21. In response to the allegations contained in paragraph 21, it is admitted that at the annual shareholders meeting on November 16, 2000, Tyler was not accorded full voting rights of its control shares by the shareholders as a result of their failure to approve a resolution that accorded Tyler full voting rights of those control shares of stock in H.T.E. Tyler is either without knowledge or denies the remaining allegations contained in paragraph 21.

22. In response to the allegations contained in paragraph 22, Tyler admits that §607.0902(10), *Fla. Stat.* (2001), provides as is set forth in that provision in Exhibit C attached to the amended complaint. Tyler denies the remaining allegations contained in paragraph 22.

23. On information and belief, it is admitted that on October 12, 2001, H.T.E.'s Board of Directors passed resolutions attempting to redeem Tyler's 5,618,932 shares of common stock in H.T.E. for a price of $1.30 per share. Tyler is either without knowledge or denies the remaining allegations contained in paragraph 23.

24. In response to the allegations contained in paragraph 24, it is admitted that Exhibit E is a true and accurate copy of a letter dated October 29, 2001 from Joseph M. Loughry, III to Tyler Technologies, Inc. and that the letter speaks for itself. Tyler denies any allegations contained in paragraph 24 that are not in strict conformity with the contents of Exhibit E. Tyler is without knowledge of the remaining allegations contained in paragraph 24.

25. In response to the allegations contained in paragraph 25, it is admitted that Exhibit F is a true and accurate copy of a letter dated October 29, 2001 from H. Lynn Moore, Jr. to Joseph M. Loughry, III and that the letter speaks for itself. Tyler denies any allegations contained in paragraph 25 that are not in strict conformity with the contents of Exhibit F.

### Count I (Action for Declaratory Judgement)

26. In response to the allegations contained in paragraph 26, Tyler adopts and realleges its responses to the allegations set forth in paragraphs 1 through 25 above.

27. The allegations contained in paragraph 27 are admitted.

28. In response to the allegations contained in paragraph 28, it is admitted that Tyler publicly has asserted that the purported redemption of its shares of common stock in H.T.E. by H.T.E. is contrary to law. Tyler is either without knowledge or denies the remaining allegations contained in paragraph 28.

29. In response to the allegations contained in paragraph 29, Tyler admits that a declaration is necessary to determine whether H.T.E. is entitled to any redemption of shares of stock owned by Tyler in H.T.E., and, if so, the number of

shares of that stock that H.T.E. is entitled to redeem and the fair value of the shares of stock it is entitled to redeem.

30. The allegations in paragraph 30 are admitted.

### Count II (Action for Tortious Interference)

31. In response to the allegations contained in paragraph 31, Tyler adopts and realleges each and every response to paragraphs 1 through 25 above.

32. The allegations contained in paragraph 32 are denied.

33. In response to the allegations contained in paragraph 33, and on information and belief, Tyler admits that H.T.E. had contracts with Jack Harward and had contracts with Dennis Harward, but the allegation does not identify the contract or contracts at issue. Accordingly, Tyler is without knowledge of or denies the remaining allegations contained in paragraph 33.

34. In response to the allegations contained in paragraph 34, in the absence of identification of the "said contract", Tyler is without knowledge of or denies the allegations contained in paragraph 34 or denies them.

35. The allegations contained in paragraph 35 are denied.

36. The allegations contained in paragraph 36 are denied.

### AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

37. Any right of redemption of shares of common stock in H.T.E. owned by Tyler to which H.T.E. may have been entitled expired prior to October 29, 2001, the date on which H.T.E. first attempted to redeem those shares of stock, and any

10

attempt by H.T.E. to redeem the shares of common stock in H.T.E. owned by Tyler is time barred.

## SECOND AFFIRMATIVE DEFENSE

38. Any right of redemption on the part of H.T.E. for the shares of its common stock owned by Tyler would be limited to not more than those shares of stock in excess of 20% or more of the voting shares of stock of H.T.E. at the time that Tyler acquired those shares of stock.

## THIRD AFFIRMATIVE DEFENSE

39. Subsequent to the acquisition by Tyler of its shares of common stock of H.T.E., H.T.E. purchased shares of its common stock from public stockholders other than Tyler with the resulting effect that the number of outstanding shares of stock has decreased and the percentage of H.T.E. stock held by Tyler has increased. H.T.E. cannot utilize the results of its action in redeeming the shares of stock and in increasing the proportionate number of shares of H.T.E. stock held by Tyler to which H.T.E. would be entitled to redeemed.

## FOURTH AFFIRMATIVE DEFENSE

40. Count II fails to state a claim for failure of the pleader to allege the absence of privilege on the part of Tyler.

## FIFTH AFFIRMATIVE DEFENSE

41. Any actions taken by Tyler that purportedly caused the breach or otherwise interfered with any contract or contracts between H.T.E. and Jack Harward or Dennis Harward were privileged thereby precluding liability on the part of Tyler.

## COUNTERCLAIM

Defendant/Counterclaimant, Tyler, sues Plaintiff/Counterdefendant, H.T.E., and alleges:

1. This is an action for declaratory and supplemental relief pursuant to 28 U.S.C. §2201 and Chapter 86 of the *Florida Statutes* and is a compulsory counterclaim since it arises out of the subject matter of the Amended Complaint filed in this action.

2. Tyler is a Delaware corporation with its sole office for the transaction of business located in Dallas, Texas.

3. H.T.E. is a Florida corporation with its principal place of business located in Seminole County, Florida.

4. On August 20, 1999, Tyler acquired ownership of 4,650,000 shares of H.T.E. common stock, and on or about December 21, 1999, Tyler acquired an additional 968,952 shares of H.T.E. common stock.

5. On or about August 23, 1999, Tyler delivered to H.T.E. an "Acquiring Person Statement" pursuant to §607.0902(6) of the *Florida Statutes*. A copy of this letter is attached hereto as Exhibit 1.

6. On November 16, 2000, at an annual shareholders meeting of H.T.E., the shareholders of H.T.E. failed to approve a resolution according Tyler with full voting rights of the control shares of common stock owned by it in H.T.E.

7. By letter dated October 29, 2001, H.T.E. advised Tyler that H.T.E. was redeeming the 5,618,952 shares of H.T.E. common stock owned by Tyler, at a price of $1.30 per share. A copy of this letter is attached as Exhibit 2.

8. Section §607.0902(10), *Fla. Stat.* (2001) provides,

(a) If authorized in a corporation's articles of incorporation or by-laws before a control-share acquisition has occurred, control shares acquired in a control-share acquisition with respect to which no acquiring persons statement has been filed with the issuing public corporation may, at any time during the period ending 60 days after the last acquisition of control shares by the acquiring person, be subject to redemption by the corporation at the fair value thereof pursuant to the procedures adopted by the corporation.

(b) Control shares acquired in a control share acquisition are not subject to redemption after an acquiring person statement has been filed unless the shares are not accorded full voting rights by the shareholders as provided in subsection (9).

9. Pursuant to §607.0902(10) (a) and (b), H.T.E. had a period of 60 days after Tyler's last acquisition of control shares to submit to shareholders whether or not to accord full voting rights to control shares acquired by Tyler and, if not, to redeem those control shares during that 60-day period. Since Tyler delivered an Acquiring Person Statement to H.T.E., H.T.E. was barred from redeeming the control shares prior to the shareholder vote in order not to make the possibility of according full voting rights to those control shares a moot question for shareholders. Since H.T.E. failed to or elected not to submit the voting issue to shareholders during the 60-day period following Tyler's last acquisition, H.T.E. forfeited any right to redeem the control shares owned by Tyler pursuant to §§607.0902(10)(a) and (b).

10. In the alternative, §§607.0902(10)(a) and (b) provide for a moratorium on the 60-day right of H.T.E. to redeem the Tyler control shares, with the

13

moratorium being in effect from the date Tyler delivered its Acquiring Person Statement to H.T.E. until the date of a shareholder vote in which shareholders fail to accord full voting rights to the control shares owned by Tyler. On November 16, 2000, the H.T.E. shareholders voted upon and failed to adopt a resolution according full voting rights to the control shares owned by Tyler and the moratorium on H.T.E.'s right to redeem those control shares terminated. H.T.E. thereupon had a period of 60 days to redeem the Tyler-owned control shares. H.T.E. failed to attempt any redemption of any of its common stock owned by Tyler during that 60-day period.

11. Pursuant to §607.0902(1), *Fla. Stat.*, "control shares" are the shares acquired by an individual or entity which, when added to all of the other shares owned by the person or entity, give the person or entity voting power of twenty (20) percent or more. In other words, "control shares" are those shares that are acquired and are in excess of 20% of the total issued and outstanding voting shares of the corporation.

12. Tyler maintains that any ability of H.T.E. to limit the voting rights of Tyler are limited to the shares of stock held by Tyler in excess of the 20% of H.T.E.'s issued and outstanding shares of stock at the time Tyler acquired its stock. It is H.T.E.'s position that it can limit the voting rights of all of the stock held by Tyler.

13. It is the position of Tyler that any right of redemption in H.T.E. expired prior to October 29, 2001. It is H.T.E.'s position that its redemption of Tyler's control shares effective October 29, 2001 is valid.

14. It is Tyler's position that any right of redemption by H.T.E. is limited to the stock held by Tyler in excess of 20% of the issued outstanding voting stock of H.T.E. as of the date Tyler acquired those shares. H.T.E.'s position is that it is entitled to redeem all of the stock of H.T.E. owned by Tyler.

15. Tyler maintains that the $1.30 per share proposed by H.T.E. in its purported redemption is significantly below "fair value" and that the application of a discount is not proper in determining the "fair value" of the H.T.E. stock it owns. H.T.E.'s position is to the contrary.

16. Tyler is in disagreement with H.T.E. with respect to its rights under §607.0902(10), *Florida Statutes,* under these facts.

17. There is a bonafide, actual, present and practical need for the declaration to resolve the disputes between the parties.

18. Tyler and H.T.E. are in need of a declaration as to their respective rights under §607.0902(10), *Florida Statutes*, under these facts.

WHEREFORE, Counterclaimant, Tyler, requests the Court enter judgment:

(a) declaring that any right of H.T.E. to redeem the H.T.E. common stock owned by Tyler expired prior to any exercise of that right by H.T.E. and that H.T.E. is time barred from attempting to redeem H.T.E. stock owned by Tyler;

(b) or, in the alternative, that any right of redemption by H.T.E. of the common stock owned by Tyler is limited to not more than the shares that Tyler owns in excess of 20% of H.T.E.'s issued and outstanding shares of common stock as of the time that Tyler acquired the shares of stock;

(c) that Tyler is entitled to full voting rights of all of the H.T.E. common stock owned by it up to 20% of the issued and outstanding shares of common stock of H.T.E. as of the date Tyler acquired those shares;

(d) determining the "fair value" of any shares of H.T.E. common stock owned by Tyler that H.T.E. is deemed to have a right to redeem; and

(d) providing for such further and supplemental relief as is necessary and just.

William B. Wilson, Esquire
Florida Bar No. 153167
HOLLAND & KNIGHT LLP
200 S. Orange Avenue, Suite 2600
Post Office Box 1526
Orlando, FL 32802-1526
Phone: (407)425-8500
Fax: (407)244-5288
Attorneys for Defendant,
Tyler Technologies, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by hand delivery this 8th day of January, 2002, to John W. Foster, Sr., Esquire, Baker & Hostetler LLP, 2300 Sun Trust Center, 200 South Orange Avenue, Post Office Box 112, Orlando, FL 32802-0112.

William B. Wilson, Esquire

ORL1 #697884 v1

16

2800 W. Mockingbird Lane
Dallas, Texas 75235
Tel: 214/902-5086 Fax: 214/358-0943
www.tylercorporation.com

## Tyler Corporation

Via Facsimile (407) 304-1075 and
Certified Mail Return Receipt Requested

August 23, 1999

H.T.E., Inc.
1000 Business Center Drive
Lake Mary, FL 32746

Attention:   Bernard B. Markey, Chairman of the Board of Directors

Dear Mr. Markey:

You are hereby advised that Tyler Technologies, Inc., a Delaware corporation ("Tyler") acquired on August 20, 1999, and now owns, 4,650,000 shares of the common stock, $0.01 par value, of H.T.E., Inc., a Florida corporation ("HTE"). Tyler also has entered into a binding agreement to acquire an additional 968,952 shares of THE common stock. All of these shares of HTE common stock have been or are to be acquired from Jack L. Harward and Dennis J. Harward. Based on information contained in reports filed with the Securities and Exchange Commission by HTE, Tyler understands that the HTE common stock so acquired and to be acquired by it falls within the range of between one-fifth or more, but less than one-third, of all voting power of the shares of HTE common stock.

This notice is delivered pursuant to Section 607.0902(6) of the Florida Business Corporation Act (the "Act") and constitutes an "acquiring person statement" as provided for therein.

Very truly yours,

TYLER TECHNOLOGIES, INC.

Lynn Moore, Jr.
General Counsel

**EXHIBIT 1**



Headquarters:
1000 Business Center Drive, Lake Mary, FL 32746 ● (407) 304-3235

Application Solutions for Government

October 29, 2001

Via Facsimile #(214) 547-4041, U.S. Mail
and Federal Express #7916 8870 2000

Tyler Technologies, Inc.
5949 Sherry Lane, Suite 1400
Dallas, TX 75225

Attn: John M. Yeaman, President

Re: Redemption of 5,618,952 Shares of Common Stock of H.T.E., Inc.

Dear Mr. Yeaman:

This letter serves as notice to Tyler Technologies, Inc. ("Tyler") that H.T.E., Inc. (the "Company") has on October 29, 2001, effective at 8:00 A.M. (Eastern time), exercised its right under Section 607.0902(10)(b), Florida Statutes, to redeem the 5,618,952 shares of Company common stock (the "Shares") acquired by Tyler in a control share acquisition under Section 607.0902, Florida Statutes. The redemption price the Company is paying for the Shares is $1.30 per share, for an aggregate redemption price of $7,304,637.60 for all of the Shares. On October 12, 2001, the Company's Board of Directors approved the redemption of the Shares. The redemption price represents a 17.5% discount from the average closing share price for the 10 trading days commencing on October 15, 2001 and ending on October 26, 2001, as reported on the NASDAQ National Market for the regular trading hours or session each day. In determining the fair value of the Shares for the redemption, as provided under Section 607.0902(10)(a), the Company relied on a report prepared for the Company by a national investment banking firm, which recommended a discount ranging from 10% to 25% should be deducted from the Company's public share price. The Company's Board of Directors approved a discount that was at the mid-point of this recommended discount range.

We have escrowed the aggregate redemption price ($7,304,637.60) with SunTrust Bank as escrow agent. Pursuant to the escrow agreement between SunTrust Bank and the Company, SunTrust Bank has an irrevocable obligation to pay to Tyler the aggregate redemption price upon its surrender of all of the Shares. Please return the certificates representing the Shares to SunTrust Bank, 225 E. Robinson Street, Suite 250, Orlando,

**EXHIBIT 2**

John M. Yeaman, President
Tyler Technologies, Inc.
Page – 2 –

---

FL 32801, Attention: Corporate Trust Division. Upon receipt of the certificates representing all of the Shares, SunTrust Bank will release the aggregate redemption price to Tyler. Please indicate to SunTrust Bank how Tyler wishes to receive the funds (i.e., by check or wire transfer), and if by wire transfer, please include in Tyler's transmittal letter to SunTrust Bank the appropriate wiring instructions.

In accordance with Section 607.0721(4), Florida Statutes, the Shares are no longer considered issued and outstanding shares of common stock of the Company, and all rights with respect thereto have ceased, except only the right of Tyler to receive the aggregate redemption price in the amount and manner described above. In that regard, the Company has informed its transfer agent to put a stop transfer order on the Shares.

Very truly yours,

H.T.E., Inc.

By: _____
Joseph M. Loughry, III
President & Chief Executive Officer