UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FILED
02 JAN -8 PM 3: 53

CASE NO.: 6:01-cv-1366-Orl-31DAB

H.T.E., INC.,

 Plaintiff,

vs.

TYLER TECHNOLOGIES, INC.,

 Defendant.
_____/

## NOTICE OF FILING SUPPLEMENTAL AFFIDAVIT OF H. LYNN MOORE, JR.

Defendant, TYLER TECHNOLOGIES, INC., by and through its undersigned attorneys, hereby gives notice of filing the original Supplemental Affidavit of H. Lynn Moore, Jr.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by hand delivery this 8th day of January, 2002, to John W. Foster, Sr., Esquire, Baker & Hostetler LLP, 2300 Sun Trust Center, 200 South Orange Avenue, Post Office Box 112, Orlando, FL 32802-0112.

William B. Wilson, Esquire
Florida Bar No. 153167
HOLLAND & KNIGHT LLP
200 S. Orange Avenue, Suite 2600
Post Office Box 1526
Orlando, FL 32802-1526
Phone: (407)425-8500
Fax: (407)244-5288
Attorneys for Defendant,
Tyler Technologies, Inc.

IN THE CIRCUIT COURT OF THE
EIGHTEENTH JUDICIAL CIRCUIT,
IN AND FOR SEMINOLE COUNTY,
FLORIDA

CASE NO.: 01-CA-2432-16-W

H.T.E., INC.,

    Plaintiff,

vs.

TYLER TECHNOLOGIES, INC.,

    Defendant.
_____/

## SUPPLEMENTAL AFFIDAVIT OF H. LYNN MOORE, JR.

STATE OF TEXAS

COUNTY OF DALLAS

    BEFORE ME, the undersigned authority, personally appeared H. LYNN MOORE, JR., who, being first duly sworn, deposes and says:

    1.    At all times material I have been employed by the Defendant in this action, Tyler Technologies, Inc., a Delaware corporation, in the capacity of Vice President and General Counsel, and I have personal knowledge of the facts stated in this affidavit.

    2.    This supplemental affidavit is filed to be used in opposition to the MOTION TO STRIKE AFFIDAVIT OF H. LYNN MOORE, JR. AND MEMORANDUM OF LAW IN SUPPORT (the "Motion")(Docket No. 14).

    3.    The depositions of Horace Lynn Moore, Jr., Louis A. Waters, William D. Oates and John Marr referenced in the Motion were taken in a civil

action styled "Dennis J. Harward and Jack L. Harward, Plaintiffs, vs. H.T.E., Inc., a Florida corporation, Defendant" that was then pending in the Circuit Court of the Eighteenth Judicial Circuit, Seminole County, Florida, bearing Case No. 99-CA-1995-15-B[1] (the "Harward Action"). Tyler was not a party to the Harward Action. Tyler had no opportunity to cross examine any of these deponents. While I sat in on the depositions of Mr. Waters and Mr. Oates, I am not a trial attorney. I did not prepare Mr. Oates or Mr. Waters for their depositions, and I did not have the requisite litigation experience to object to questions or to otherwise represent them as litigation counsel during their depositions. To my knowledge, the Harward Action did not concern the relationship between Tyler Technologies, Inc. and its subsidiaries or the matters raised by Tyler's Motion to Quash Service of Process and to Dismiss Complaint for Lack of Personal Jurisdiction (Docket No. 4) for which the Affidavit of H. Lynn Moore, Jr. (the "Original Moore Affidavit") (Docket No. 5) was submitted.

4. During my deposition in the Harward Action, the term "Tyler" was used in questions. In the absence of a definition of "Tyler", I considered and used that term broadly to refer to Tyler Technologies, Inc. and all of its subsidiaries collectively without any attempt to be precise or to define the true relationship between Tyler Technologies, Inc. and its subsidiaries. When I was asked, at page 11 of my deposition, what business "Tyler" was in and if "Tyler" developed and marketed software applications in the public sector, I was

---

[1] For some reason the deposition transcripts erroneously show the action pending in the

interpreting the term "Tyler" in that broad sense. It is the subsidiaries of Tyler Technologies, Inc. that develop, market and sell those products and services. I testify on the following page of my deposition that in February, 1998, Tyler Technologies, Inc. had acquired new companies to do this. Those new companies are subsidiaries of Tyler Technologies, Inc., and they are included among the "Subsidiaries" referenced in paragraph 6 of the Original Moore Affidavit.

     5.    In or about 2000, the processing of the payrolls for Tyler Technologies, Inc. and its subsidiaries were set up through ADP under a master processing account; however, there are subcategories within that master account in which Tyler Technologies, Inc. and each of its subsidiaries is delineated. Furthermore, Tyler Technologies, Inc. and each of its subsidiaries funds its own payroll out of its own separate account. In addition, as set forth in paragraph 7 of the Original Moore Affidavit, the accounting systems of Tyler Technologies, Inc. and its subsidiaries are maintained separately and independently and their books and records are maintained separately and independently.

     6.    Some of the testimony of John Marr in his deposition in the Harward Action concerning his employment was incorrect. The organization employing Mr. Marr was and is Munis, Inc., a Maine corporation, f/k/a Process, Inc., f/k/a Computer Center Software, Inc., which is a wholly owned subsidiary of Tyler Technologies, Inc. Likewise, Mr. Marr was and is paid by

---

Circuit Court of the Ninth Judicial Circuit, Orange County, Florida.

3

Munis, Inc., the subsidiary of which he is President. Also, Mr. Marr testified that he contacted me prior to his deposition. This was done because I was the individual who was coordinating the depositions with the attorneys of record in the Harward Action.

7. In the Motion, H.T.E. notes that the 10K and 10Q forms filed by Tyler with the Securities and Exchange Commission ("SEC") contain consolidated financial statements and make reference to lines of business in a consolidated fashion. Tyler is required to file consolidated financials with the SEC both under the SEC Rules and under GAAP. Because of the consolidated accounting required, Tyler has not attempted to delineate the lines of business and products and services for each subsidiary in these filings. In point of fact, Tyler and its subsidiaries each have separate independent accounting systems and separate and independent books and records.

8. In the Motion, H.T.E. refers to a credit agreement under which Tyler has pledged as security the stock it holds in its subsidiaries and under which its subsidiaries are guarantors, and that one representative signed Amendment No. 5 to the credit agreement for all of Tyler's subsidiaries. Because Tyler and its subsidiaries are separate and distinct entities, essentially the only assets Tyler has to pledge as security are the stock it owns in the subsidiaries. It is a common practice of banks to require subsidiaries to guarantee debt of a parent corporation. Under Amendment No. 5 to the credit agreement, Tyler Technologies, Inc. is designated as the "borrower", and it has a separate signature line from that of the subsidiaries.

9. In the Motion, H.T.E. makes a statement that under the credit agreement Tyler pledges to control the "restricted entities" with respect to debt, liens, insurance and corporate transactions. While the credit agreement imposes certain restrictions on each subsidiary, generally with respect to extraordinary transactions, it does not require Tyler Technologies, Inc. to control the operations of each subsidiary occurring in the ordinary course of business. Tyler Technologies, Inc. does not maintain control over the business decisions or operations of its subsidiaries that occur in the ordinary course of business.

10. In the Motion, H.T.E. attempts to refute the statement contained in paragraph 7 of the Original Moore Affidavit that the officers and directors of Tyler Technologies, Inc. and its subsidiaries are not identical, by referring to a filing with the Florida Department of State signed by an officer of CLT on December 14, 2000 and filed on January 29, 2001 on from which it deduces that four of five directors of CLT are officers and directors of Tyler Technologies, Inc. The filing with the Florida Secretary of State does not reflect the officers of CLT for 2001 (the year in which the Original Moore Affidavit was signed). In 2001, the President and CEO of CLT was Bruce F. Nagel, the COO was Ruel E. Williamson, the Executive Vice President was Benjamin F. Story, and the controller was C. Mark Brown. None of these individuals is an officer or director of Tyler Technologies, Inc.

11. While Tyler Technologies, Inc. has a website, as noted by H.T.E. in the Motion, each of its subsidiaries has its own independent website. A party

making an inquiry on the Tyler Technologies, Inc. website about a type of product will receive information from the specific subsidiary marketing that particular product.

12. The Tyler Technologies, Inc. website does make reference to "Regional Offices", one of which is in Raleigh, North Carolina, and those offices are for its subsidiaries. None of the referenced "Regional Offices" are in Florida. The only office out of which Tyler Technologies, Inc. transacts business is Dallas, Texas.

13. H.T.E.'s assertions in the Motion that Tyler has leased offices in Florida for its subsidiaries is incorrect. Tyler has no leases in the State of Florida, for its subsidiaries or otherwise.

FURTHER AFFIANT SAYETH NOT.

_____
H. Lynn Moore, Jr.

The foregoing instrument was acknowledged before me this 7 day of January, 2002 by H. Lynn Moore, Jr., who is personally known to me or has produced _____ as identification and who did take an oath.



Notary Stamp

_____
Signature of Person Taking Acknowledgment
Print Name: ANNE E. PATTON
Title: Notary Public
Serial No. (if any)_____
Commission Expires: 12·06·2003

ORL1 #697538 v1

6