IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:01-cv-1366-Orl-31DAB

H.T.E., Inc., a Florida corporation,

      **Plaintiff,**

v.

**TYLER TECHNOLOGIES, INC.,**
a Delaware corporation,

      **Defendant.**

                                       /

## H.T.E.'S MEMORANDUM OF LAW IN SUPPORT OF H.T.E.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

      Plaintiff, H.T.E., Inc. ("HTE"), has filed a motion for partial summary judgment (the "Motion") as to Count I (action for declaratory judgment) of its complaint and Defendant's amended counterclaim (which seeks declaratory relief).

## I. BACKGROUND AND PERTINENT FACTS

### A. Procedural History

      This lawsuit arises out of Tyler's control share acquisition of a large block (the "Control Shares") of HTE's common stock from two Florida residents, Dennis and Jack Harward (the "Harwards"), and HTE's redemption of the Control Shares under Florida law. In August 1999, Tyler formulated a specific plan to take over HTE and initiated the plan by acquiring the Control Shares which represented 32.3% of HTE's outstanding shares. On October 29, 2001, HTE provided Tyler with notice that HTE had exercised its right under Section 607.0902(10), Florida Statutes, to redeem all of the shares of HTE common stock

held by Tyler.  On the same date, Tyler gave notice to HTE that it contested the effectiveness

and scope of HTE's redemption.  Tyler also contested the redemption price tendered by HTE.

On October 30, 2001, HTE instituted an action seeking declaratory relief, styled <u>H.T.E., Inc.</u>

<u>v. Tyler Technologies, Inc.</u>, in the Circuit Court of the Eighteenth Judicial Circuit, Seminole

County, Florida, Case No. 01-CA-2432-16-W.  On November 20, 2001, Tyler removed the

action to this Court.  On December 21, 2001, HTE filed its first amended complaint which

added a cause of action against Tyler for tortious interference.  Tyler has answered HTE's first

amended complaint and Tyler has filed a counterclaim seeking declaratory relief relative to

HTE's redemption of Tyler's HTE stock. There has been prior litigation relating to the

transaction through which Tyler acquired  HTE's stock.  When Tyler acquired the Control

Shares, it did so by exchanging Tyler stock with the Harwards in return for the Control

Shares.[1]  HTE claimed that the Harwards' transaction with Tyler constituted a breach of the

Harwards' severance agreement with HTE.   This led to litigation between HTE and the

Harwards styled <u>Dennis J. Harward and Jack L. Harward v. H.T.E., Inc.</u>, in the Circuit Court

of the Eighteenth Judicial Circuit, Seminole County, Florida, Case No. 99-CA-1195-CA-15-

W (the "Harward Litigation").  The Harwards and HTE settled the Harward Litigation on

February 15, 2001, seven days after HTE obtained a partial summary judgment against the

Harwards.[2]  Tyler was not a party to the Harward Litigation; however, depositions were taken

---

[1] The Harwards founded HTE in the early 1980's.  On August 3, 1999, the Harwards and HTE entered into a severance agreement pursuant to which the Harwards resigned their positions as officers and employees of HTE; however, until their stock exchange transaction with Tyler, which occurred on August 17, 1999, the Harwards continued to be major shareholders and directors of HTE.  Gornto Supp. Aff., ¶ 5.

[2] On February 8, 2001, the State Circuit Court entered partial summary judgment for HTE and specifically found that the Harwards had acted as a group when they collectively purchased more than 5% of Tyler's stock and that said purchase constituted a breach of the severance agreement.  <u>See</u> "Order Granting Partial Summary Judgment for [HTE]", App. Tab 15 (Docket No. 19).

of several of Tyler's officers or employees, including: H. Lynn Moore, Jr. ("Moore"), Tyler's in-house corporate counsel; Louis A. Waters ("Waters"), Chairman of Tyler's Board of Directors and Tyler's co-CEO; Sonny Oates ("Oates"), Chairman of Tyler's Executive Committee; and John Marr ("Marr"), President of Tyler's Munis Division.  In their deposition testimony, Tyler's officers and representatives made numerous factual admissions which support the instant Motion.  These depositions were filed with the Court on December 21, 2001.  (Docket No. 20).  On December 21, 2001, HTE filed an appendix in this action which contains documents relevant to the issues in this Motion.  (Docket No. 19).  HTE has also filed herewith the supplemental affidavit of L. A. Gornto, Jr. ("Gornto"), HTE's executive vice president and general counsel, in support of the instant Motion.[3]

Essentially, the issue before this Court is whether HTE effectively redeemed under Florida statutory law all of the shares of HTE common stock held by Tyler.  This Motion does not involve the remaining issues raised by the pleadings, to wit:

- Whether the redemption price tendered by HTE constitutes the "fair value". (See Count I of HTE's first amended complaint and Tyler's first amended counterclaim); and
- Whether HTE is entitled to recover damages from Tyler for Tyler's interference with the contract or business relationship which existed between HTE and the Harwards (see Count II of HTE's first amended complaint).

These remaining issues may involve disputed issues of fact or, at the very least, are subject to further discovery; however, the effectiveness and scope of HTE's redemption is subject to no genuine factual dispute and this issue is ripe for summary judgment.

---

[3] In this Motion, HTE will cite to the answer filed by Tyler, and to the depositions, affidavit and appendix in the following manner: Answer, ¶ _____; Moore Depo @ _____; Gornto Supp. Aff. ¶ ____; and App. Tab ____.

**B.**     **Statement of the Facts**

**1. Tyler's Control Share Acquisition of HTE Stock.**

HTE is a public company, incorporated in Florida and headquartered in Lake Mary, Seminole County, Florida. Answer ¶ 3; Gornto Supp. Aff., ¶ 2.  Tyler considers itself to be an "acquisition company" (i.e. Tyler acquires other companies.)  See, Waters Depo. @ 17; Marr Depo. @ 7; Moore Depo. @ 11-12.  Like HTE, Tyler (either directly or through its wholly owned subsidiaries) engages in the development and marketing of software applications in the public sector marketplace and otherwise engages in competition with HTE in the United States, including Florida.  Answer ¶¶ 4 and 6.  See also Waters Depo. @ 21.

In August 1999, Tyler formulated a plan to take over HTE by first making a control share acquisition of the Harwards' HTE stock.  Answer ¶ 14.  Indeed, on August 13, 1999, Tyler's board of directors issued a unanimous written consent which stated:

> The Board of Directors deems it to be in the best interests of the Company to acquire all of the common stock of HTE, Inc. **in a single transaction or pursuant to a specific plan which is consummated within one year**; and to initiate this specific plan of the Company by acquiring up to 6,143,952 shares (the "Shares") of HTE, Inc. common stock...

(Emphasis added). Answer ¶ 14; App. Tab 3; Moore Depo. @ 36-37.  See also Waters Depo. @ 16-17; Marr Depo. @ 24-26; Oates Depo. @ 22-23.  In responding to a question regarding who at Tyler conceived the idea of acquiring HTE, Waters, testified as follows:

> Well, you have to understand the makeup of Tyler.  I mean, that's what we were at the time, an acquisition company.  We were building a national company.  We acquire companies.  That's what we do. The Harwards' stock became available.  Probably all of us that looked at it had that in mind:  Here's 30 percent of the company; **it's a potential chance to buy the whole company**.  So that wouldn't have been one individual conceiving it; it was part of our strategy in our business.  Waters Depo @ 17 (emphasis added).

4

On August 17, 1999, Tyler and the Harwards entered into a stock purchase agreement ("Stock Purchase Agreement"), pursuant to which Tyler acquired the Control Shares from the Harwards. Answer ¶ 15; App Tab 1; Moore Depo. @ 24-27. On August 20, 1999, Tyler notified HTE of its acquisition of the Control Shares. In this notice, Tyler requested a meeting with the HTE board of directors "to discuss a business combination between the two companies." App. Tabs 4 & 8; Moore Depo. @ 62; see also Gornto Supp. Aff. ¶ 4, Ex. A. Tyler's written notice also specifically acknowledged that, pursuant to the Stock Purchase Agreement, Tyler had acquired 4,650,000 shares of HTE stock and "had a binding agreement to acquire an additional 968,952 shares . . ." App. Tabs 4 & 8.

On August 23, 1999, Tyler provided its "Acquiring Person Statement" to HTE pursuant to Florida law (i.e., § 607.0902(6), Fla. Stat. (1999)). Answer, ¶ 5; App. Tab 9; Moore Depo. @ 64-66. In its Acquiring Person Statement, Tyler again expressly stated that, as of August 23, 1999, Tyler owned 4,650,000 shares of HTE common stock and had a "binding agreement to acquire an additional 968,952 shares of HTE common stock." App. Tab 9. In its Acquiring Person Statement, Tyler stated:

> Based on information contained in reports filed with the Securities & Exchange Commission by HTE, Tyler understands that the HTE common stock so acquired and to be acquired by it falls within the range of between one-fifth or more, but less than one-third, of all voting power of the shares of HTE common stock.

App. Tab 9. On August 26, 1999, Tyler filed a Schedule 13 D with the Securities and Exchange Commission ("SEC") in which Tyler acknowledged that it "beneficially owned" 5,618,952 shares (or 32.3%) of HTE stock. App. Tab 14; Gornto Supp. Aff.,¶ 6, Ex. B.

On November 8, 1999, pursuant to Section 1.2 of the Stock Purchase Agreement, Tyler exercised its call option to purchase the additional 968,952 shares of HTE's common stock. App. Tab 6; Moore Depo. @ 54.

On December 8, 1999, Tyler submitted shareholder proposals, through which Tyler proposed the removal of the then-current members of HTE's Board of Directors and the election of Tyler's 10 nominees as directors. Answer, ¶¶ 5 & 16; App. Tab 10; Moore Depo. @ 83-84. Tyler's in-house corporate counsel, Moore, testified that Tyler's shareholder proposal was viewed by Tyler "as a way to take over the company." Moore Depo. @ 84. On December 14, 1999, Tyler filed an amended Schedule 13D, providing the public with notice of Tyler's proposal to restructure the Board of Directors of HTE. App. Tab 5.

### 2.  HTE's Shareholder Vote Denying Full Voting Rights to Stock Held by Tyler

On November 16, 2000, HTE held its annual shareholders meeting. Answer, ¶ 21; Gornto Supp. Aff., ¶ 9. This shareholders meeting was the first meeting of HTE's shareholders after Tyler sent the Acquiring Person Statement to HTE. Gornto Supp. Aff., ¶ 9. The fourth item of business for the shareholders' meeting was to consider a proposal to confer voting rights on the HTE stock held by Tyler. Gornto Supp. Aff., ¶ 9; Ex. E. This proposal was not approved by the shareholders. Id.; see also Answer, ¶ 21.

### 3.  HTE's Redemption of HTE Stock held by Tyler

On October 12, 2001, HTE's Board of Directors adopted resolutions authorizing the redemption of Tyler's shares of HTE common stock pursuant to Florida law (§ 607.0902(10), Fla. Stat.). Gornto Supp. Aff., ¶ 12. Ex. G; Answer, ¶ 23. HTE's articles of incorporation authorize HTE to repurchase or redeem its common stock. Gornto Supp. Aff., ¶ 10. In

connection with the redemption of Tyler's HTE stock, HTE entered into an escrow agreement with SunTrust Bank ("SunTrust"), pursuant to which SunTrust is holding the funds for payment of the redemption price to Tyler. Gornto Supp. Aff., ¶ 13, Ex. H.

On October 29, 2001, HTE provided Tyler with statutory notice of the redemption pursuant to §607.0902(10) and §607.0721(4), Florida Statutes.  Gornto Supp. Aff., ¶ 16, Ex. I.  On this same date, Tyler responded to HTE's notice of redemption, disputed the validity and scope of HTE's redemption and asserted that "Tyler continues to be the owner of 5,618,952 shares of HTE common stock and they continue to vote up to 20% of the issued and outstanding shares of HTE common stock held by Tyler." Gornto Supp. Aff., ¶ 17, Ex. J. See also Answer, ¶ 25. HTE filed this lawsuit seeking *inter alia* declaratory relief relative to HTE's statutory redemption of Tyler's HTE stock.

## II.  SUMMARY JUDGMENT STANDARD

The essential determination on a motion for summary judgment is identical to that on a motion for directed verdict, to wit:   "Whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S.Ct. 2505, 2512 (1986).  In seeking this determination, the moving party has the initial burden of demonstrating the absence of a genuine issue of material fact.  Celotex v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986).   The moving party may rely upon the pleadings, depositions, answers to interrogatories, admissions, or affidavits to demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552 (1986).

Once the moving party satisfies the requirements of Rule 56(c), the burden then shifts to the nonmovant to demonstrate that there is a genuine issue for trial. <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986). A nonmovant may not oppose summary judgment by resting on the pleadings alone. <u>Street</u>, 886 F.2d at 1478. Rather, the nonmovant must come forward with specific facts from the list of evidentiary materials identified in Rule 56(c). <u>Id.</u>

In light of the indisputable facts, the only questions before this Court are questions of law involving construction of Florida's Control Share Acquisition Act (the "Act"). <u>See</u> <u>Johnson v. Land O'Lakes</u>, 18 F.Supp.2d 985, 993 (N.D. Iowa 1998) and <u>Local 1239 v. Allsteel, Inc.</u>, 9 F.Supp.2d 901, 902 (N.D. Ill 1998) (interpretation of a statute when facts are not in dispute is primarily a legal question amenable to summary judgment). Essentially, HTE seeks a partial summary judgment establishing the effectiveness and scope of HTE's redemption <u>See</u>, <u>Alviso-Medrano v. Harloff</u>, 868 F.Supp. 1367, 1370 (M.D. Fla. 1994).

### III. LEGAL ARGUMENT

The Act which is modeled after Indiana's nearly equivalent act,[4] was enacted in 1987 to protect Florida corporations from hostile takeovers.[5] In essence, the Act allows the disinterested shareholders of the target corporation to vote on whether or not to accord full

---

[4] <u>See</u> The Florida Bar, Business Law Section, Corporations and Securities Committee, Subcommittee to Revise F.S. Chapter 607, "Proposal to Amend Florida Statutes, Chapter 607," §§ 9.01-9.03, p. 194 (Jan. 18, 1989)("The control-share acquisition statute is closely modeled on the Indiana statute which was upheld by the United States Supreme Court in April, 1987, in <u>CTS Corp. v. Dynamics Corporation of America, Inc.</u>"). Florida's definition of "control shares" under the Act is identical to that found in the Indiana Act. <u>See</u> Ind. Code §§ (23-1-42-1)-(23-1-42-11) (2001).

[5] Senate Staff Analysis and Economic Impact Statement regarding HB 358, § 3, p.3 (May 25, 1987)(stating that "[b]y offering a safe haven where Florida corporations cannot be easily subjected to hostile takeovers, corporations will be more attracted to Florida when deciding where, among other states, to locate").

voting rights to the shares acquired by a person or group in a control-share acquisition,[6] as defined under the Act.[7]  Once an acquiring person has made a control-share acquisition, the acquired control shares do not have voting rights unless a majority of disinterested shareholders approves a resolution granting voting rights to said control shares. See § 607.0902(9)(a), Fla. Stat. (2001).  If the control shares are not accorded full voting rights, then the control shares acquired in a control share acquisition are subject to redemption by the target corporation. See id. at 607.0902(10)(b).

## A.  All of the Shares of HTE Stock Acquired by Tyler are Control Shares Subject to Redemption

Under the Act, the target corporation is entitled to redeem all "control shares" that were part of a control-share acquisition..    §607.0902(10), Fla. Stat. (2001).    Section 607.0902(1) defines "control shares" as follows:

> (1) "CONTROL SHARES." –As used in this section, "control shares" means shares that, except for this section, would have voting power with respect to shares of an issuing public corporation that, when added to all other shares of the issuing public corporation owned by a person or in respect to which that person may exercise or direct the exercise of voting power, would entitle that person, **immediately after acquisition of the shares**, directly or indirectly, alone or as a part of a group, to exercise or direct the exercise of the voting power of the issuing public corporation in the election of directors within any of the following ranges of voting power:
> (a) One-fifth or more but less than one-third of all voting power.
> (b) One-third or more but less than a majority of all voting power.
> (c) A majority or more of all voting power.

Section 607.0902(2) defines "control-share acquisition" to mean the acquisition by any person of ownership of issued and outstanding "control shares," which includes "**all** shares" acquired within 90 days of the control-share acquisition and, which also includes, "**all**

---

[6] See § 607.0902(9), Fla. Stat. (2001).
[7] See § 607.0902(1), Fla. Stat. (2001).

shares" acquired pursuant to a plan to make a control-share acquisition. Specifically, the relevant parts of subsection (2) state:

> (2) "CONTROL-SHARE ACQUISITION."—
> (a) As used in this section, "control-share acquisition" means the acquisition, directly or indirectly, by any person of ownership of, or the power to direct the exercise of voting power with respect to, issued and outstanding **control shares**.
> (b) For purposes of this section, **all shares, the beneficial ownership of which is acquired within 90 days before or after the date of the acquisition of the beneficial ownership of shares which result in a control share acquisition, and all shares the beneficial ownership of which is acquired pursuant to a plan to make a control-share acquisition shall be deemed to have been acquired in the same acquisition.**

Id. at 607.0902(2) (emphasis added). Reading §§607.0902(1) and 607.0902(2) together leads to the inescapable conclusion that "control shares" are all shares acquired by the acquiring company or person within a 90-day period. "Control shares" also include shares acquired pursuant to a plan to make a control share acquisition.

All of the shares acquired by Tyler were part of a single plan for the control-share acquisition of HTE. The record before this Court is replete with indisputable evidence that it was Tyler's plan to acquire HTE and to initiate this plan through its acquisition of at least 5,618,952 shares of HTE stock from the Harwards through the Stock Purchase Agreement. On August 13, 1999 Tyler issued a unanimous written consent which stated:

> The Board of Directors deems it to be in the best interests of the Company to acquire all of the common stock of HTE, Inc. **in a single transaction or pursuant to a specific plan which is consummated within one year**; and to initiate this specific plan of the Company by acquiring up to 6,143,952 shares (the "Shares") of HTE, Inc. common stock from [the Harwards]...

App. Tab 3; Moore Depo. @ 36-37.  (Emphasis added).  On August 17, 1999, Tyler entered

into the Stock Purchase Agreement with the Harwards in which Tyler agreed that:

> Neither party shall be obligated to close under this Agreement until such time
> as Buyer (Tyler) makes a general public announcement of its intention to
> acquire all of the issued and outstanding shares of HTE common stock on
> terms substantially similar to those given to Sellers under this Agreement.

App. Tab. 1 at 2.1; Moore Depo. @ 24-27.

Three days after executing the Stock Purchase Agreement, Tyler corresponded with

HTE and requested a meeting "to discuss a business combination between the two

companies."  App. Tabs 4 & 8; Moore Depo. @ 62.[8]  And, on August 23, 1999, Tyler

submitted its Acquiring Person Statement to HTE in which Tyler stated:

> This notice is delivered pursuant to Section 607.0902(6) of the Florida
> Business Corporation Act (the "Act") and constitutes an "acquiring person
> statement" as provided for therein.

App. Tab 9;  Moore Depo. @ 64-66.  Under the Act, an Acquiring Person Statement is a

notice which may be delivered by "any person who proposes to make or has made a control-

share acquisition. . . . "  §  607.0902(6), Fla. Stat. (2001).[9]  Additionally, Tyler has

specifically admitted through the testimony of its general counsel, Moore, that Tyler's

proposals to replace HTE's then current Board of Directors with Tyler's own directors was

viewed by Tyler "as a way to take over [HTE]." Moore Depo. @ 84.

---

[8] The Schedule 13D filed by Tyler with the SEC on August 26, 1999, announced Tyler's intentions:
> Tyler plans to propose to the Board of Directors and management of HTE a business
> combination of the two companies on similar exchange terms.
Gornto Supp. Aff., ¶ 6, Ex. B; App. Tab. 14.

[9] Accordingly, by delivering its Acquiring Person Statement, Tyler plainly admitted that it had made a control-share acquisition.  See Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (summary judgment is appropriate where reasonable minds could not differ on the inferences arising from the undisputed material facts).

In short, the indisputable evidence is that Tyler acquired all of its shares of HTE common stock as a part of a plan to make a control-share acquisition and, accordingly, all of the Control Shares must be deemed to have been acquired in the same transaction. Quite simply, all of Tyler's shares of HTE common stock are "control shares".

The record also is replete with evidence that Tyler acquired "the beneficial ownership" of all of its shares of HTE common stock within a 90-day period and, for that additional reason, said shares constitute "control shares". In its letter dated August 20, 1999 and in its Acquiring Person Statement dated August 23, 1999, Tyler advised HTE that it had consummated a transaction pursuant to which Tyler acquired 4,650,000 shares of HTE common stock and had "a binding agreement to acquire an additional 968,952 shares. . . . ." App. Tabs 4, 8 & 9; Moore Depo. @ 62 and 64-66. On August 26, 1999, Tyler filed its Schedule 13D form with the SEC and represented to the SEC and the public at large that it (Tyler) "beneficially owned" 5,618,952 shares (or 32.3%) of HTE common stock. App. Tab 14. In its Schedule 13D, Tyler represented that, as of August 26, 1999:

> Tyler is deemed to beneficially own 5,618,952 shares of HTE Common Stock. Of those shares deemed to be beneficially owned by Tyler, all shares were purchased with shares of Tyler Common Stock. Id.

On November 8, 1999, 82 days after Tyler and the Harwards entered into the Stock Purchase Agreement, Tyler provided the Harwards with formal notice as to Tyler's exercise of its option to call and purchase the 968,952 shares of HTE common stock. App. Tab 6; Moore Depo. @ 52-54. In short, not only did Tyler acquire beneficial ownership of all of its shares of HTE common stock pursuant to a plan to make a control-share acquisition, but also Tyler

acquired beneficial ownership within a 90-day period.  Accordingly, all of Tyler's shares of

HTE common stock constitute "control shares".

**B.  HTE's Redemption was Proper Under Florida's Control Share Acquisition Act.**

Subsection (10) of the Act governs the redemption of control shares acquired through

a control-share acquisition and provides:

> (10) REDEMPTION OF CONTROL SHARES.—
> (a)  If authorized in a corporation's articles of incorporation or bylaws before a
> control-share acquisition has occurred, control shares acquired in a control-
> share acquisition **with respect to which no acquiring person statement has
> been filed** with the issuing public corporation may, at any time during the
> period ending 60 days after the last acquisition of control shares by the
> acquiring person, be subject to redemption by the corporation at the fair value
> thereof pursuant to the procedures adopted by the corporation.
> (b)  Control shares acquired in a control-share acquisition are not subject to
> redemption after an acquiring person statement has been filed **unless the
> shares are not accorded full voting rights by the shareholders as provided
> in subsection (9).**

§607.0902(10), Fla. Stat. (2001) (emphasis added).  Section 607.0902(10) does not provide

any restrictions for stock redemptions if an Acquiring Person Statement has been filed and a

majority of disinterested shareholders has voted not to accord full voting rights to the acquired

shares under subsection (9).  The statutory requirement for redemption is notice and the

proper deposit of the redemption price:

> Redeemable shares are not entitled to vote on any matter, and shall not be
> deemed to be outstanding, after notice of redemption is mailed to the holders
> thereof and a sum sufficient to redeem such shares has been deposited with a
> bank, trust company, or other financial institution upon an irrevocable
> obligation to pay the holders the redemption price upon surrender of the
> shares."  § 607.0721(4), Fla. Stat. (2001).

It is indisputable that Tyler filed an Acquiring Person Statement on August 23, 1999,

but did not request the convening of a special shareholder meeting to consider the voting

rights to be accorded the Control Shares. It is likewise indisputable that HTE's shareholders,

at the November 16, 2000 annual shareholder meeting (which was the first annual shareholder's meeting following Tyler's control-share acquisition),[10] did **not** approve a resolution to accord Tyler's shares of HTE full voting rights.  Specifically as stated in the proxy issued by HTE, at that shareholders meeting, more than 50% of the shareholders present and voting at the meeting voted against the following:

> PROPOSAL TO confer voting rights on 5,618,952 shares of [HTE] common stock acquired by Tyler Technologies, Inc. from Dennis Harward and Jack Harward in a control share acquisition.  Gornto Supp. Aff., ¶ 9, Ex. E.

HTE's articles of incorporation specifically authorize the redemption and repurchase of its common stock.  Gornto Supp. Aff. ¶ 10, Ex. F.  Based on the denial of voting rights to Tyler's acquired shares under the Act and the authority granted by the articles of incorporation, HTE's Board of Directors adopted resolutions on October 12, 2001 authorizing and directing the redemption of the Control Shares.   HTE hired Raymond James & Associates, Inc. to determine a fair price for the redemption of this stock and deposited this sum with SunTrust.[11]  Gornto Supp. Aff., ¶ 14 and 16.  Pursuant to the terms of the escrow agreement between SunTrust and HTE, this sum was deposited with SunTrust upon an irrevocable obligation to pay Tyler that sum upon the surrender of Tyler's shares of HTE stock.  Gornto Supp. Aff., ¶ 13, 14 and 16, Ex. H.  Then, on October 29, 2001, HTE delivered the statutory notice of its redemption to Tyler.  Id. at ¶ 16.

---

[10] Since Tyler, as the acquiring person, did not request a special shareholder meeting, the voting rights to be accorded the shares acquired in Tyler's control-share acquisition were properly presented to HTE's shareholders at HTE's next annual shareholder meeting.  See § 607.0902(7)(d), Fla. Stat. (2001).

[11] While HTE maintains that it offered a fair price for the redemption of its stock held by Tyler, it is possible that, through discovery, a factual dispute may arise as to the fair redemption price.  The redemption price issue is thus not at issue in this Motion.

All of the steps which were taken by HTE in connection with its redemption of Tyler's HTE stock were in strict accordance with the statutory language set forth in Section 607.0902(10) and Section 607.0721(4), Florida Statutes.   Accordingly, as of October 29, 2001, Tyler's shares of HTE common stock "shall not be deemed to be outstanding" and must be surrendered by Tyler.  See § 607.0721(4), Fla. Stat. (2001).

## C.  Tyler's Challenges are without Merit.

In its Amended Counterclaim and affirmative defenses, Tyler challenged the effectiveness and scope of HTE's redemption, and the extent to which the shareholders of HTE may limit the voting rights of the HTE stock held by Tyler.

It is axiomatic that the Courts may not rewrite a statute contrary to its plain language or otherwise invade the province of the legislature.  Hawkins v. Ford Motor Co., 748 So.2d 993, 1001 (Fla. 1999).  Moreover, the Court may not by judicial fiat do what the legislature has chosen not to do. Dobbs v. Sea Isle Hotel, 56 So. 2d 341, 342 (Fla. 1952).  In the instant case, Tyler's argument would have this Court improperly rewrite the Act and otherwise add restrictions or requirements which the legislature chose not to.

### 1. Contrary to Tyler's Pleadings, the Redemption was Effective

Tyler alleges that HTE has somehow forfeited its right to redeem the control shares owned by Tyler, because HTE did not submit the voting issue to shareholders during the 60-day period following Tyler's last acquisition of HTE stock.  Amended Counterclaim, ¶ 9.  In essence, Tyler's allegation is that, under Section 607.0902(10) of the Act, HTE had 60 days within which to submit the voting issue to the shareholders and then redeem Tyler's HTE stock.  Tyler's position is simply contrary to the plain language of the Act.

The Act does not require the target company (here, HTE) to submit the voting issue to shareholders within the 60-day period following the acquiring person's acquisition of stock. In fact, in cases such as this, where the acquiring person delivers an Acquiring Person Statement, it is the acquiring person who <u>may</u> request, and give an undertaking to pay the expenses of, a special meeting of the shareholders. <u>See</u> § 607.0902(7), Fla. Stat. (2001). If the acquiring person does not make such a request, then the voting issue is to be presented to the shareholders at the next special or annual meeting of the shareholders. <u>Id</u>.[12]

More specifically, the relevant provision of Section 607.0902(7), expressly states:

(7)   SHAREHOLDER MEETING TO DETERMINE CONTROL-SHARE VOTING RIGHTS. --

(a)   **If the acquiring person so requests** at the time of delivery of an acquiring persons statement and gives an undertaking to pay the corporation's expenses of a special meeting within 10 days thereafter, the directors of the issuing public corporation or others authorized to call such a meeting under the issuing public corporation's articles of incorporation or bylaws shall call a special meeting of shareholders of the issuing public corporation for the purpose of considering the voting rights to be accorded the shares acquired or to be acquired in the control-share acquisition. . . .

\* \* \*

(d)   **If no request is made, the voting rights to be accorded the shares acquired in the control-share acquisition shall be presented to the next special or annual meeting of the shareholders.**   § 607.0902(7), Fla. Stat. (2001) (emphasis added).

It is undisputed that Tyler delivered an Acquiring Person Statement but did not request a special meeting. Tyler's failure to request a special meeting meant that the voting rights to be accorded Tyler's HTE shares were to be presented to the next special or annual meeting of

---

[12] In essence, Tyler argues that the responsibility for requesting and paying for a special meeting should be shifted from itself to HTE. Tyler's argument would render the language of § 607.0902(7)(a) meaningless. Tyler's argument is ill-founded. <u>See</u> <u>Beach v. Great Western Bank</u>, 692 So.2d 147, 152 (Fla. 1997) *aff'd* 523 U.S. 410, 118 S.Ct. 1408 (1998) ("This court traditionally has avoided readings that would render part of a

the shareholders which is precisely what occurred.  On November 16, 2001, at the first annual shareholders meeting of HTE following Tyler's acquisition of HTE stock, the shareholders voted <u>not</u> to confer voting rights to the Control Shares.  Amended Counterclaim ¶ 6; Answer, ¶ 21.  <u>See also</u> Gornto Supp. Aff. ¶ 9, Ex. E.

Tyler's allegations that HTE, in order to preserve its redemption rights, was required to redeem within 60 days after the control-share acquisition is also not supported by the plain language of the Act.  The only reference to a 60-day period in this context is in subsection 10(a) - a section applicable only if no Acquiring Person Statement was filed.  Tyler filed such a statement, thus making Section 10(b) of the Act the relevant section.  <u>See</u> Section 607.0902(10)(b), Fla. Stat. (2001).  Tyler's allegation that this Court should transport this 60-day period from subsection (a) to subsection (b) would be an act of legerdemain not contemplated by the language chosen by the Florida Legislature when the Act was passed. <u>See</u> <u>Hawkins</u>, 748 So.2d at 1000; <u>Dobbs</u>, 56 So.2d at 342.  <u>See also</u> <u>Leisure Resorts, Inc. v. Rooney</u>, 654 So.2d 911, 914, (Fla. 1995) ("When the legislature has used a term. . .  in one section of the statute but omits it in another section of the same statute, we will not imply it where it has been excluded.")

As an alternative to its contention that HTE forfeited its redemption rights, Tyler alleges that the Act should somehow be read so as to impose some illusory moratorium on the otherwise inapplicable 60-day time limit to redeem Tyler's control shares.  According to Tyler's strained argument, this alleged moratorium ends on the date the HTE shareholders

---

statute meaningless.  Underlying that caution is our assumption that legislatures do not enact purposeless and therefore useless legislation.")

denied voting rights to the Control Shares. The Act does not create such a moratorium. Tyler's contention would require this Court to improperly invade the province of the legislature and rewrite the statute.  Id.

### 2. Contrary to Tyler's Allegations, HTE's Redemption and Shareholder Vote to Not Accord Voting Rights to its Shares Held by Tyler Was Not Limited in Scope to the Shares that Exceeded the Statutory Threshold (20%)

As yet another alternative allegation, Tyler claims that, if HTE's redemption is effective, then such redemption should be limited to only those shares of stock held by Tyler which are in excess of the statutory threshold (i.e., 20% of the issued and outstanding shares of HTE).  Tyler also asserts that HTE's shareholders were only entitled to vote on the voting rights of the stock that exceeded the statutory threshold (i.e., 20% of the issued and outstanding shares of HTE).  Tyler's positions are again contrary to the Act.

Significantly, the provisions of the Act relating to the shareholder meeting to determine the voting rights of control shares supports the proposition that all shares acquired in the control share acquisition are subject to the shareholder vote. Subsection (7)(d) of the Act specifically provides that, when the Acquiring Person Statement does not request a special shareholders meeting, the "voting rights to be accorded **the shares acquired in the control-share acquisition** shall be presented to the next special or annual meeting of the shareholders." §607.0902(7)(d), Fla. Stat.(2001)(emphasis added).   As with every other subsection in the Act, this language clearly subjects all of the acquired shares to a shareholder vote (i.e., not just the shares that are in excess of the statutory threshold).

Similarly, the redemption of acquired shares is also not limited to the shares that exceed the statutory threshold.  As discussed in Section A above, HTE is entitled to redeem

all "control shares" which, as defined in the Act, include all of the HTE shares acquired by Tyler from the Harwards. While there are no reported Florida decisions that interpret the meaning of "control shares" under the Act, courts outside of Florida, in discussing other states' similar control-share acquisition statutes, support the plain meaning of "control shares" as articulated above. For instance, in <u>CTS Corp. v. Dynamics Corp. of America</u>, 481 U.S. 69 (1987), the United States Supreme Court considered the constitutionality of Indiana's control-share acquisition statute, which is nearly identical to the Act.[13] The Supreme Court defined "control shares" under Indiana's Act to include all shares acquired in a control-share acquisition and not just the excess shares beyond the statutory threshold of 1/5, 1/3 or 1/2 of all voting shares. Significantly, in <u>CTS</u>, the Supreme Court held that "Dynamics will have no voting rights **in its shares** unless shareholders of CTS grant those rights in a meeting held pursuant to the Act." <u>CTS</u>, 481 U.S. at 78 n.5 (emphasis added). Clearly, the Supreme Court deemed "control shares" to include all shares acquired in a control-share acquisition and not just those shares which exceed the statutory thresholds. Indeed, the official comments to Indiana's control-share acquisition statute sum it up well:

> "Control shares" are *not* "all shares" owned by the acquiring person, but only the shares acquired in the "control share acquisition" (**which can be acquired in separate purchases over a considerable period of time,** *see* IC 23-1-42-2) that, when added to the acquiring person's pre-acquisition holdings, put the person over one of the three specified thresholds of voting power. The facts in *CTS Corp. v. Dynamics Corp. of America* are illustrative. The acquiring person in *CTS* owned approximately 9.6% of the issuing public corporation's shares before the acquisition, and then acquired approximately 17.9% in a tender offer, giving it a total of about 27.5%. **Only the 17.9% acquired in the tender offer** -- which put the acquirer over the one-fifth threshold -- **were**

---

[13] <u>See</u> Ind. Code §§ (23-1-42-1)-(23-1-42-11) (2001).

**"control shares" whose voting power would be determined**, under IC 23-1-42-9, **by a vote of the disinterested shareholders**.

Ind. Code § 23-1-42-1 (2001)(Indiana Comment)(emphasis added)(internal citations omitted). See also Business Aviation of South Dakota, Inc. v. Medivest, Inc., 882 P.2d 662 (Utah 1994) (construing Utah's act to facts involving a board's issuance of stock to three of its own directors so that their ownership increased from 18.76% to 25.33% of issued and outstanding shares. The Utah Supreme Court held that "the new shares of stock ... are control shares acquired in a control share acquisition subject to the [Utah] Control Shares Acquisitions Act ...." and did not limit its ruling to the shares that exceeded the statutory threshold).

In short, neither the shareholders' vote as to voting rights nor HTE's redemption is limited only to the shares exceeding the statutory (20%) threshold. Rather, the shareholders' vote to not confer voting rights on Tyler's shares of HTE stock and HTE's redemption apply to all of the shares acquired in Tyler's control-share acquisition which, in this case, includes all shares of HTE stock held by Tyler.

### IV. CONCLUSION

Based upon the foregoing analysis, HTE respectfully requests that this Honorable Court grant its Motion and enter partial summary judgment for HTE as requested in its Motion.

BAKER & HOSTETLER LLP

By: _____
John W. Foster, Sr.
Florida Bar No. 318620
Post Office Box 112
Orlando, FL 32802-0112
Telephone: (407) 649-4000

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing memorandum of law in support of plaintiff's motion for partial summary judgment has been furnished via hand delivery to: **WILLIAM B. WILSON, ESQ.**, Holland & Knight LLP, 200 S. Orange Avenue, Suite 2600, Post Office Box 1526, Orlando, Florida 32802-1526 this _13th_ day of March, 2002.

Respectfully submitted,

BAKER & HOSTETLER LLP
2300 SunTrust Center
200 South Orange Avenue
Post Office Box 112
Orlando, FL 32802-0112
Telephone: (407) 649-4000
Telecopier: (407) 841-0168

By: _____
John W. Foster, Sr.
Florida Bar No. 318620
Jerry R. Linscott
Florida Bar No. 148009
Robert C. Yee
Florida Bar No. 0096784

Attorneys for Plaintiff, H.T.E., Inc.