FILED

02 MAR 13 PM 3:39

CLERK            CIRCUIT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION
### CASE NO. 6:01-CV-1366-ORL- 31DAB

H.T.E., INC., a Florida corporation,

      **Plaintiff,**

vs.

**TYLER TECHNOLOGIES, INC.,**
a Delaware corporation,

      **Defendant.**

_____/

## SUPPLEMENTAL AFFIDAVIT OF L. A. GORNTO, JR.

STATE OF FLORIDA     )
                      )ss
COUNTY OF VOLUSIA    )

BEFORE ME, the undersigned authority, personally appeared L. A. Gornto, Jr., who after first being duly sworn, deposes and states:

1. My name is L. A. Gornto, Jr. I am of adult age and have personal knowledge of the matters hereinafter stated.

2. Since January 16, 1997, I have been the Executive Vice President and General Counsel of H.T.E., Inc. ("HTE"), a publicly owned company whose stock is registered pursuant to the Securities Exchange Act of 1934, and which is listed and traded on the NASDAQ National Market. HTE is a Florida corporation which is headquartered in Lake Mary, Seminole County, Florida.

3. This affidavit is intended to be used by or on behalf of HTE in connection with HTE's motion for partial summary judgment against Tyler.

51

## TYLER'S ACQUISITION OF HTE COMMON STOCK FROM THE HARWARDS

4.  On or about August 20, 1999, Tyler directed and delivered to me in Florida correspondence which indicated that Tyler had acquired 4,650,000 shares of HTE common stock and that Tyler had a binding agreement to acquire an additional 968,952 shares of HTE common stock.  In this correspondence, Tyler specifically requested a meeting between HTE and Tyler "to discuss a business combination between the two companies."  A true and accurate copy of Tyler's correspondence is attached hereto as Exhibit "A" and incorporated herein by reference.

5.  Additionally, at or about the same time period, HTE learned that, in exchange for selling Tyler a 32% interest in HTE's common stock, Dennis and Jack Harward (the "Harwards")[1] collectively received 5.59% of the outstanding shares of Tyler common stock.[2]

6.  On or about August 26, 1999, Tyler filed a Schedule 13 D with the Securities Exchange Commission, disclosing its "beneficial ownership" of 5,618,952 shares of HTE stock, which had been purchased by Tyler from the Harwards, and further disclosing that Tyler's purpose for acquiring the Harwards' stock was "to propose to the Board of Directors and management of HTE the business combination of the two companies. . ."  A copy of Tyler's Schedule 13 D is attached hereto as Exhibit "B" and incorporated herein by reference.

---

[1] The Harwards founded HTE in the early 1980's. On August 3, 1999, the Harwards and HTE entered into an agreement pursuant to which, among other things, the Harwards resigned their positions as officers and employees of HTE; however, until their stock exchange transaction with Tyler, which occurred on August 17, 1999, the Harwards continued to be major shareholders and directors of HTE.

[2] The stock exchange transaction between Tyler and the Harwards led to litigation between HTE and the Harwards styled Dennis J. Harward and Jack L. Harward v. H.T.E., Inc., in the Circuit Court of the Eighteenth Judicial Circuit, in and for Seminole County, Florida, Case No. 99-CA-1195-CA-15-W (hereinafter called the "Prior Litigation"). In essence, it was HTE's position that the Harwards had acted as a group when they collectively acquired more than 5% of Tyler's stock and that this constituted a breach of their 8/3/99 agreement. On February 8, 2001, the Circuit Court entered partial summary judgment for HTE which ordered and adjudged, in pertinent part, that the Harwards had indeed acted as a group when they purchased the Tyler stock and that said purchase constituted a breach of the Harwards' 8/3/99 agreement with HTE. The Harwards and HTE settled the Prior Litigation on February 15, 2001.

7.  On August 23, 1999, Tyler delivered to HTE in Florida, Tyler's "Acquiring Person Statement", which was expressly provided by Tyler pursuant to Florida law (i.e., § 607.0902(6)), Florida Statutes (the Florida Business Corporation Act)).  A true and accurate copy of Tyler's Acquiring Person Statement is attached hereto as Exhibit "C" and incorporated herein by reference.  Tyler did not request a special meeting of HTE's shareholders for consideration of the voting rights on the shares of HTE's stock held by Tyler.

8.  On or about December 8, 1999, Tyler directed and delivered to HTE in Florida those certain shareholder proposals of Tyler, through which Tyler proposed the removal of the then-current members of HTE's Board of Directors and the election of Tyler's 10 nominees as directors.  Each of Tyler's 10 nominees were either employees of Tyler or one of Tyler's affiliates.  A true and accurate copy of Tyler's shareholder proposals are attached hereto as Exhibit "D" and incorporated herein by reference.

9.  The next annual meeting of shareholders of HTE following Tyler's acquisition of HTE stock, occurred on November 16, 2000.  Prior thereto, on October 7, 2000, Tyler delivered its proxy to HTE's transfer agent.  The fourth item of business for said shareholders' meeting was to consider a "proposal to confer voting rights on 5,618,952 shares of [HTE's] common stock acquired by Tyler . . . from [the Harwards] in a control share acquisition."  The proposal to confer voting rights on the shares of HTE's common stock held by Tyler was not approved by the shareholders. A true and accurate copy of Tyler's proxy and of the minutes of the annual meeting of shareholders of HTE are attached hereto collectively as composite Exhibit "E" and incorporated herein by reference.   Tyler did not object to the number of shares which were voted on or to the description of same as a "control share acquisition".

3

## HTE'S REDEMPTION OF TYLER'S HTE STOCK

10.  HTE's articles of incorporation authorize the redemption and repurchase of HTE's common stock.  A true and accurate copy of the articles of amendment to the articles of incorporation which authorizes the board of directors of HTE to repurchase its shares of common stock is attached hereto as Exhibit "F" and incorporated herein by reference.

11.  It is HTE's position that Tyler's HTE common stock was clearly purchased in a control share acquisition and, as such, that Tyler's HTE common stock was subject to redemption by HTE under Florida's control share acquisition statute.

12.  On October 12, 2001, the Board of Directors of HTE adopted resolutions authorizing and directing the redemption of Tyler's shares of HTE's common stock pursuant to Florida law. A true and accurate copy of the resolution is attached hereto as Exhibit "G" and incorporated herein by reference.

13.  On October 24, 2001, HTE entered into an escrow agreement with SunTrust Bank ("SunTrust"), pursuant to which SunTrust agreed to act as escrow agent for the purpose of holding funds for payment of the redemption price to Tyler. A true and accurate copy of the escrow agreement  (the "Escrow Agreement") is attached hereto as Exhibit "H" and incorporated herein by reference.

14.  Pursuant to the Escrow Agreement, HTE delivered the funds to SunTrust on October 26, 2001.

15.  The Escrow Agreement contemplates that Tyler will deliver to SunTrust in Florida the certificates representing its shares of HTE common stock in exchange for which SunTrust, as escrow agent, will distribute to Tyler from Florida the funds equal to the redemption price.

4

16.  On October 29, 2001, HTE gave notice to Tyler of HTE's redemption of Tyler's HTE common stock pursuant to the authority granted under § 607.0902(10) and § 607.0721(4), Florida Statutes.  A true and accurate copy of HTE's redemption notice to Tyler is attached hereto as Exhibit "I" and incorporated herein by reference.

17.  On October 29, 2001, Tyler responded to HTE's notice of redemption.  In its response, Tyler contested HTE's redemption and asserted that "Tyler continues to be the owner of 5,618,952 shares of HTE common stock and may continue to vote up to 20% of the issued and outstanding shares of HTE common stock held by Tyler."  A true and accurate copy of Tyler's response letter is attached hereto as Exhibit "J".  HTE disagrees with Tyler's positions.

FURTHER AFFIANT SAYETH NAUGHT.

_____
L. A. Gornto, Jr.

STATE OF FLORIDA          )
                          )ss
COUNTY OF Volusia         )


SWORN TO AND SUBSCRIBED before me this 1st day of March, 2002, by L. A. Gornto, Jr., who is personally known to me or has produced _____ as identification.


                              _____
                              (Notary Signature)

(NOTARY SEAL)                 Michele LeClerc
                              (Notary Name Printed)
                              NOTARY PUBLIC


Michele Le Clerc
MY COMMISSION # CC810463 EXPIRES
April 28, 2003
BONDED THRU TROY FAIN INSURANCE, INC.

                              Commission No. CC810463 _____

# TYLER TECHNOLOGIES, INC.
## 2800 W. Mockingbird Lane
### Dallas, Texas 75235

*Via Facsimile 904-257-1833*

August 20, 1999

L.A. Gornto, Jr.
Executive Vice President and General Counsel of H.T.E., Inc.

Dear Mr. Gornto:

Pursuant to your request in a recent conversation with John Marr, Jr., this letter is to inform you that Tyler Technologies, Inc. has as of today consummated a transaction pursuant to which Tyler has acquired 4,650,000 shares of H.T.E., Inc. common stock. In addition, Tyler has a binding agreement to acquire an additional 968,952 shares of H.T.E., Inc. common stock.

As a significant stockholder of H.T.E., Inc., we would like to request a meeting to be held as soon as possible with the H.T.E., Inc. Board of Directors to discuss a business combination between the two companies. We would like to invite the Board of Directors to come to Dallas, Texas to learn more about our company and our strategy; however, we are willing to meet at whatever location is convenient for the Board of Directors.

Please call John Marr or me to discuss this matter further. I can be reached on my cell phone at (713) 203-9260 or my office at (214) 902-5086. Thank you.

Sincerely,

Louis A. Waters
Chairman of the Board



188

# TYLER TECHNOLOGIES INC

**Filing Type:** SC 13D
**Description:** General Statement of Beneficial Ownership
**Filing Date:** Aug 26, 1999
**Period End:** N/A

**Primary Exchange:** New York Stock Exchange
**Ticker:** TYL



DEPOSITION
EXHIBIT
68
Moore

*Data provided by EDGAR Online, Inc. (http://www.FreeEDGAR.com)*

HTE - 0292

# Table of Contents

*To jump to a section, double-click on the section name.*

## SC 13D

Name of Reporting Person . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Item 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Item 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Item 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Item 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Item 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Item 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
Item 7 . . . . . . . . . . . . . . . . . . . . . 4

HTE - 0293

1

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

SCHEDULE 13D


Under the Securities Exchange Act of 1934
(Amendment No. __ )*

-----------

H.T.E., Inc.
-----------------------------------------------------------------------
(Name of Issuer)

Common Stock, $0.01 par value
-----------------------------------------------------------------------
(Title of Class of Securities)

403926108
-------------------------------------------
(CUSIP Number)


John Sterling, 1601 Elm Street, Suite 3000, Dallas, Texas 75201, (214) 999-3000
-------------------------------------------------------------------------------
(Name, Address and Telephone Number of Person Authorized to
Receive Notices and Communications)

August 17, 1999
-------------------------------------------------------
(Date of Event which Requires Filing of this Statement)

If the filing person has previously filed a statement on Schedule 13G to report
the acquisition that is the subject of this Schedule 13D, and is filing this
schedule because of Section 240.13d-1(e), Section 240.13d-1(f) or Section
240.13d-1(g), check the following box [ ].

NOTE: Schedules filed in paper format shall include a signed original and five
copies of the schedule, including all exhibits. See Section 240.13d-7(b) for
other parties to whom copies are to be sent.

* The remainder of this cover page shall be filled out for a reporting person's
initial filing on this form with respect to the subject class of securities, and
for any subsequent amendment containing information which would alter
disclosures provided in a prior cover page.

The information required on the remainder of this cover page shall not be deemed
to be "filed" for the purpose of Section 18 of the Securities Exchange Act of
1934 ("Act") or otherwise subject to the liabilities of that section of the Act
but shall be subject to all other provisions of the Act (however, see the
Notes).

2

SCHEDULE 13D

-------------------------------------------------------------------------------
CUSIP NO. 403926108                                        PAGE 2 OF 4 PAGES

HTE - 0294

```
--------------------------------------------------------------------
1       NAME OF REPORTING PERSON
        S.S. OR I.R.S. IDENTIFICATION NO. OF ABOVE PERSON

        Tyler Technologies, Inc.
--------------------------------------------------------------------
2       CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP*      (a) [ ]
                                                              (b) [_]
--------------------------------------------------------------------
3       SEC USE ONLY

--------------------------------------------------------------------
4       SOURCE OF FUNDS*
        OO
--------------------------------------------------------------------
5       CHECK BOX IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED PURSUANT TO
        ITEMS 2(d) or 2(e)                                           [_]
--------------------------------------------------------------------
6       CITIZENSHIP OR PLACE OF ORGANIZATION
        Delaware
--------------------------------------------------------------------
                       7       SOLE VOTING POWER
      NUMBER OF                 5,618,952
        SHARES         ------------------------------------------------
     BENEFICIALLY      8       SHARED VOTING POWER
       OWNED BY                -0-
         EACH         ------------------------------------------------
      REPORTING       9        SOLE DISPOSITIVE POWER
        PERSON                 5,618,952
         WITH         ------------------------------------------------
                      10       SHARED DISPOSITIVE POWER
                               -0-
--------------------------------------------------------------------
11      AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON
        5,618,952
--------------------------------------------------------------------
12      CHECK BOX IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES*
                                                                     [_]
--------------------------------------------------------------------
13      PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)
        32.3%
--------------------------------------------------------------------
14      TYPE OF REPORTING PERSON*
        CO
--------------------------------------------------------------------
```

*SEE INSTRUCTIONS BEFORE FILLING OUT!
INCLUDE BOTH SIDES OF THE COVER PAGE, RESPONSES TO ITEMS 1-7
(INCLUDING EXHIBITS) OF THE SCHEDULE, AND THE SIGNATURE ATTESTATION.

3

CUSIP NO. 403926108                                          Page 3 of 4

Item 1.  Security and Issuer.

        This Schedule 13D (this "Filing") relates to the Common Stock, $0.01
par value ("HTE Common Stock"), and voting and other contractual rights relating
thereto, of H.T.E., Inc., a Florida corporation (the "Company"), which has its
principal executive offices located at 1000 Business Center Drive, Lake Mary,
Florida 32746. The purpose of this Filing is to reflect the beneficial ownership
of HTE Common Stock by Tyler Technologies, Inc., a Delaware corporation.

Item 2.  Identity and Background.

HTE - 0295

(a)     Tyler Technologies, Inc. ("Tyler")

(b)     2800 West Mockingbird Lane, Dallas, Texas 75235

(c)     Tyler is a leading consolidator and provider of document and information management outsourcing and other services to county, municipal and local governments. Tyler provides data warehousing, electronic document management systems and services, information management outsourcing services, property records database information services, software systems and other professional services for local governments, as well as title record and other governmental database information and services to commercial customers.

(d)     Tyler has not, during the last five years, been convicted in a criminal proceeding (excluding traffic violations or similar misdemeanors).

(e)     Tyler has not, during the last five years, been a party to a civil proceeding of a judicial or administrative body of competent jurisdiction and as a result of such proceeding was or is subject to a judgment, decree or final order enjoining future violations of, or prohibiting or mandating activities subject to, federal or state securities laws or finding any violation with respect to such laws.

Item 3.   Source and Amount of Funds or Other Consideration.

On August 17, 1999, Tyler entered into a stock purchase agreement with Dennis Harward ("DH") and Jack Harward ("JH") (the "Purchase Agreement"). Under the Purchase Agreement, DH sold to Tyler 2,825,110 shares of HTE Common Stock in exchange for 1,412,555 shares of Tyler Technologies, Inc. common stock, $0.01 par value per share ("Tyler Common Stock"), and JH sold to Tyler 1,824,890 shares of HTE Common Stock in exchange for 912,445 shares of Tyler Common Stock.

Under the Purchase Agreement and effective until March 31, 2000, the parties agreed to put and call options on other shares of HTE Common Stock owned by DH and JH. Pursuant to these options, DH has the right and option to put to Tyler and Tyler has the right to call from DH an additional 588,688 shares of HTE Common Stock in exchange for 294,344 shares of Tyler Common Stock, and JH has the right and option to put to Tyler and Tyler has the right to call from JH an additional 380,264 shares of HTE Common Stock in exchange for 190,132 shares of Tyler Common Stock.

Item 4.   Purpose of Transaction.

Tyler plans to propose to the Board of Directors and management of HTE a business combination of the two companies on similar exchange terms. Tyler reserves the right to acquire, or cause to be acquired, additional securities of HTE, to dispose of, or cause to be disposed of, such securities at any time or to formulate other purposes, plans or proposals regarding HTE or any of its securities, to the extent deemed advisable by Tyler.

Item 5.   Interest in Securities of the Issuer.

(a) Tyler is deemed to beneficially own 5,618,952 shares of HTE Common Stock. Of those shares deemed to be beneficially owned by Tyler, all shares were purchased with shares of Tyler Common Stock.

The percentage calculations are based upon 17,372,374 shares of HTE Common Stock outstanding on August 5, 1999, as reported in the Company's most recent Quarterly Report on Form 10-Q, filed August 16, 1999.

4

CUSIP NO. 403926108                                        Page 4 of 4

(b) Tyler may be deemed to have sole voting and dispositive power over 5,618,952 shares of HTE Common Stock.

(c) See Item 3 above.

(d) None.

(e) Not applicable.

Item 6.   Contracts, Arrangements, Understandings or Relationships With Respect to Securities of the Issuer.

See Item 3 above.

Item 7.   Material to be Filed as Exhibits.

None.


After reasonable inquiry and to the best of the undersigned's knowledge and belief, the undersigned certifies that the information set forth in this statement is true, complete and correct.

                                        TYLER TECHNOLOGIES, INC.

August 26, 1999                         /s/ John Yeaman
                                        ---------------------------------------
                                        By: John Yeaman, President

HTE - 0297

2800 W. Mockingbird Lane
Dallas, Texas 75235
Tel: 214/902-5086 Fax: 214/358-0943
www.tylercorporation.com

## Tyler Corporation

<u>Via Facsimile (407) 304-1075 and</u>
<u>Certified Mail Return Receipt Requested</u>

August 23, 1999

H.T.E., Inc.
1000 Business Center Drive
Lake Mary, FL   32746

Attention:      Bernard B. Markey, Chairman of the Board of Directors

Dear Mr. Markey:

You are hereby advised that Tyler Technologies, Inc., a Delaware corporation
("Tyler") acquired on August 20, 1999, and now owns, 4,650,000 shares of the common
stock, $0.01 par value, of H.T.E., Inc., a Florida corporation ("HTE").  Tyler also has
entered into a binding agreement to acquire an additional 968,952 shares of THE
common stock.  All of these shares of HTE common stock have been or are to be
acquired from Jack L. Harward and Dennis J. Harward.  Based on information contained
in reports filed with the Securities and Exchange Commission by HTE, Tyler understands
that the HTE common stock so acquired and to be acquired by it falls within the range of
between one-fifth or more, but less than one-third, of all voting power of the shares of
HTE common stock.

This notice is delivered pursuant to Section 607.0902(6) of the Florida Business
Corporation Act (the "Act") and constitutes an "acquiring person statement" as provided
for therein.

Very truly yours,

TYLER TECHNOLOGIES, INC.

Lynn Moore, Jr.
General Counsel

DEPOSITION
EXHIBIT
53
Moore

TTI 0148

**Tyler Technologies, Inc.**
2800 West Mockingbird Lane
Dallas, Texas 75235

December 8, 1999

L. A. Gornto, Jr.
Executive Vice President, Secretary & General Counsel
H.T.E., Inc.
1000 Business Center Drive
Lake Mary, Florida 32746

Re: *Shareholder Proposals*

Dear Mr. Gornto:

Pursuant to the Articles of Incorporation and Bylaws of H.T.E., Inc. (the "Company"), attached are proposals of Tyler Technologies, Inc., as a shareholder, for inclusion in the Company's proxy statement for the solicitation of proxies in connection with the next annual meeting of the Company's shareholders.

Please be advised that Tyler Technologies, Inc. is a record owner of shares of Common Stock of the Company entitled to vote for the election of directors at the next annual meeting of the Company's shareholders and that we intend to continue to hold the shares through the date of the meeting of shareholders.

In accordance with Article VI(C)(a)(l), the business and residential addresses for each of the director nominees listed in Proposal Five have been listed in the attached appendix.

Sincerely,

John M. Yeaman

President

Tyler Technologies, Inc.

DEPOSITION
EXHIBIT
67



December 8, 1999

Sam Bain
Bainco International Investors
38 Newbury Street
Boston, Massachusetts 02116

L.A. Gornto, Jr.
Executive Vice President, Secretary & General Counsel
R.T.E., Inc.
Lake Mary, Florida 32746

Re: *Shareholder Proposals*

Dear Mr. Gornto:

Pursuant to the Articles of Incorporation and Bylaws of R.T.E., Inc. (the "Company"), attached are proposals I am making, as a shareholder of the Company, for inclusion in the Company's proxy statement for the solicitation of proxies in connection with the next annual meeting of the Company's shareholders.

Please be advised that I own 30,000 shares of Common Stock of the Company entitled to vote for the election of directors at the next annual meeting of the Company's shareholders and that I intend to continue to hold the shares through the date of meeting with the shareholders.

In accordance with Article VI(C)(2)(f), the business and residential addresses for each of the director nominees listed in Proposal Five have been listed in the attached appendix.

Sincerely,

Sam Bain

38 NEWBURY STREET • BOSTON, MA 02116    ONE SANSOME ST., 39th Floor • SAN FRANCISCO, CA 94104
(617) 536-0333 • FAX (617) 536-0333    (415) 439-7230 • FAX (415) 439-7239

DEC 08 '99  01:59PM TYLER CORPORATION                                    P.3/8

# SHAREHOLDER PROPOSALS

**Proposal One - Amendment of the Company's Articles of Incorporation to Allow Shareholders to Fix the Number of Directors; Fixing the Number of Directors at Nine**

Tyler Technologies, Inc. and Sam Bain, shareholders of the Company (the "Proposing Shareholders") propose that the Company's Articles of Incorporation be amended to reserve to the Company's shareholders the right to fix the number of directors, and to fix the number of directors at 9. Specifically, the Proposing Shareholders propose that the shareholders vote to approve and adopt the following resolution:

"RESOLVED that Article VI, Section A of the Company's Articles of Incorporation be amended to read in its entirety as follows:

The Corporation's Board shall consist of not less than three (3) nor more than nine (9) members, with the exact number to be fixed from time to time by action of the Corporation's shareholders, but which number shall be fixed at nine (9) until decreased by action of the shareholders."

This proposal, if approved by the Company's shareholders, would increase the number of members on the Board of Directors from six (6) (or such other number as has been or may be fixed from time to time by the Board of Directors) to nine (9). Pursuant to Proposal Five below, the Proposing Shareholders have proposed nine (9) nominees to fill such number of directorships.

**Proposal Two - Amendment of the Company's Articles of Incorporation to Eliminate the Classified Board of Directors**

The Proposing Shareholders propose that the Company's Articles of Incorporation be amended to eliminate the classified Board of Directors. In order to declassify the Board of Directors, the Proposing Shareholders propose that the shareholders vote to approve and adopt the following resolution:

"RESOLVED, that the shareholders hereby amend Article VI, Section A of the Articles of Incorporation by deleting the third, fourth and fifth sentences thereof."

The sentences to be deleted read as follows:

The Board shall be divided into three classes, Class I, Class II and Class III with the directors of each class to be elected for a staggered term of three years so as to serve until their successors are duly elected and qualified or until their earlier resignation, death or removal form office. The number of directors elected to each class shall be as nearly

927771 6                                              1

equal in number as possible. The Board shall apportion any increase or decrease in the number of directorships among the classes so as to make the number of directors in each class as nearly equal as possible.

The Company's Board of Directors currently is divided into three classes of two directors each. Two directors are elected annually for a period of three years at each annual meeting of shareholders to serve until their successors are duly elected and qualified. Removing the classified Board would enable the Company's shareholders to elect annually all members of the Board to serve one-year terms. Under the Company's current system, three annual meetings are required to remove all of the Company's existing directors.

**Proposal Three - Amendment of the Company's Articles of Incorporation to Allow Shareholders to Fill Vacancies in the Board**

The Proposing Shareholders propose that the Company's Articles of Incorporation be amended to provide that vacancies in the Board can be filled by the Company's shareholders. To permit shareholders to fill vacancies in the Board, the Proposing Shareholders propose that the shareholders vote to approve and adopt the following resolution:

"RESOLVED, that Article VI, Section B of the Company's Articles of Incorporation be amended to read in its entirety as follows:

B. DIRECTOR VACANCIES. Whenever any vacancy on the Board shall occur due to death, resignation, retirement, disqualification, removal, increase in the number of directors or otherwise, a majority of the directors in office, although less than a quorum of the entire Board, or the shareholders may fill the vacancy or vacancies for the balance of the unexpired term or terms, at which time a successor or successors shall be duly elected by the shareholders."

The current Articles of Incorporation provide that vacancies on the Board of Directors may be filled only by the directors then in office. The Articles of Incorporation specifically prevent the Company's shareholders from filling vacancies on the Board. The proposed amendment would allow shareholders to elect the persons to fill the vacancies on the Board of Directors which would be created by the Proposing Shareholders' proposals to increase the size of the Board of Directors, as well as the vacancies that would be created by the proposal described below to remove all existing directors.

303771.5

2

DEC 08 '99  02:00PM TYLL. CORPORATION                                    P.5/8

**Proposal Four - Removal of Directors**

The Proposing Stockholders are asking the stockholders to remove all members of H.T.E.'s Board of Directors as of the date of the Annual Meeting. The Proposing Shareholders propose that the following resolution be approved and adopted:

"RESOLVED, that each current member of the Board of Directors of the Company (other than those elected at the Annual Meeting of shareholders) is hereby removed and the office of each member of the Board of Directors is hereby declared vacant."

This proposal, if adopted, would enable the shareholders to elect persons to fill each seat on the Board. H.T.E.'s Board of Directors currently consists of O. F. Ramos and Edward A. Moses, whose terms expire in 2000; Raymond Ambrose and L. A. Gornto, Jr., whose terms expire in 2001; and Bernard B. Markey, whose term expires in 2002.

**Proposal Five - Election of Tyler's Nominees for Director**

The Proposing Shareholders are asking the shareholders to elect nine persons to fill the vacant directorships proposed to be created by Proposals One and Four, above. The Proposing Shareholders' nominees for the office of director are as follows, in each case to serve until the next annual meeting of shareholders:

Louis A. Waters, age 61, has served as Chairman of the Board of Tyler Technologies, Inc. ("Tyler") since October 1997 after being appointed director of Tyler in August 1997. Mr. Waters is a member of the Executive Committee, the Audit Committee, and the Compensation Committee of the Tyler Board. Mr. Waters was the founding Chairman of the Board and Chief Executive Officer of Browning-Ferris Industries, Inc. ("BFI"). He recently directed BFI's international activities, serving as Chairman and Chief Executive Officer of BFI International, Inc. from 1991 to March 1997, at which time he retired from full-time employment with BFI. From 1988 to March 1997, Mr. Waters was Chairman of the BFI Finance Committee, and from 1980 through 1988, he was Chairman of the BFI Executive Committee. Mr. Waters also served as Chairman of the Board and Chief Executive Officer of BFI from 1969 through 1980. Mr. Waters is also a director of Team, Inc., which is a public company providing industrial repair services including leak repair, hot tapping, emissions control, concrete repair and energy management services.

William D. Oates, age 58, has been Chairman of the Executive Committee of Tyler since December 1998, and a director of Tyler since February 1998. He has been Chairman of the Board of Business Resources Corporation ("BRC") since its inception in 1993 and President of BRC from 1993 until September 1998 and from December 1998 until the present. From 1987 through 1994, Mr. Oates acquired or formed and served as President or a principal executive officer of American Title Company of Dallas, Austin Title Company, Commercial Abstract and Title Company, and other title insurance agencies in Texas, as well as a title insurance underwriting company. Mr. Oates held these companies through American Title Company of Dallas, of which he was the principal owner and President until his sale of the company in November 1994. Mr. Oates was appointed director of Tyler

803773.5                                    3

in February 1998 following Tyler's acquisition of BRC and is Chairman of the Executive Committee of the Tyler Board.

John M. Yeaman, age 58, is President and Chief Executive Officer of Tyler, a position he has held since December 1998. Mr. Yeaman was appointed to the Tyler Board in February 1999. From September 1998 until December 1998, Mr. Yeaman served as President and Chief Executive Officer of Business Resources Corporation ("BRC"), a subsidiary of Tyler. Mr. Yeaman had previously been employed by Electronic Data Systems Corporation ("EDS"), where he served as the director of a worldwide Strategic Support Unit managing $2 billion in real estate assets. Prior to that position, Mr. Yeaman had been associated with EDS as a service provider since 1980. Mr. Yeaman began his career with Eastman Kodak Company. Mr. Yeaman also serves on the Board of Directors of Eagle National Bank in Dallas.

John D. Woolf, age 55, has been the Senior Vice President - Administration for Tyler since December 1999. From 1994 to present, Mr. Woolf has been the Executive Vice President and Chief Financial Officer of BRC. From 1987 through 1994, Mr. Woolf served as a director and Executive Vice President and Chief Financial Officer of American Title. Prior to that time, Mr. Woolf served as Vice President-Finance and Treasurer of Records of American Title, working with Mr. Oates in negotiating and consummating multiple acquisitions and mergers from 1984 through 1986. Mr. Woolf has also held finance and accounting positions with Tyler, including serving as Controller of Atlas Powder Company, a former subsidiary of Tyler, from 1977 through 1979.

Theodore L. Bathurst, age 50, has been the Vice President and Chief Financial Officer of Tyler since October 1998. Mr. Bathurst was previously an audit partner in the Dallas office of KPMG Peat Marwick LLP for more than five years, where he served as engagement partner on the accounts of a wide variety of information technology, communications, and high technology companies. Mr. Bathurst was also designated by KPMG as a SEC partner responsible for the review of filings made by public companies with the SEC. Mr. Bathurst, a certified public accountant, serves as a board member of both the Dallas Chapter and the Texas Society of CPAs.

Brian K. Miller, age 41, has been Vice President-Finance and Treasurer of Tyler since December 1997. From June 1986 through December 1997, Mr. Miller held various senior financial management positions at Metro Airlines, Inc. ("Metro"), a regional airline holding company. Mr. Miller was Chief Financial Officer of Metro from May 1991 to December 1997 and also held the office of President of Metro from January 1993 to December 1997. From March 1994 to November 1995, Mr. Miller also held the position of Vice President and Chief Financial Officer of Lone Star Airlines, a regional airline. Mr. Miller is a certified public accountant.

H. Lynn Moore, Jr., age 32, has served as Corporate Counsel of Tyler since September 1998. Prior to joining Tyler, Mr. Moore was an attorney with the Dallas office of Hughes & Luce for more than five years.

John S. Marr, Jr., age 39, has served as President of Process, Incorporated d/b/a MUNIS, a subsidiary of Tyler since April 1999, for more than five years.

683771.5

4

Ronald E. Goodrow, age 48, has served as Southern Operations Manager of MUNIS since August 1999. Prior to joining MUNIS, Mr. Goodrow was with HTE, Inc. from 1988 and most recently served as its Vice President-Operations. From 1987 to 1988, he was employed by GCC Beverage Corporation, where he was Vice President of Information Systems. From 1980 to 1987, he was Vice President of Dynamic Control Corporation (Baxter Travenol), a healthcare company.

## SECURITY OWNERSHIP OF THE PROPOSING SHAREHOLDERS

Tyler beneficially owns 5,618,952 shares of H.T.E. Common Stock. Sam Bain beneficially owns 20,000 shares of H.T.E. Common Stock. To the best of our knowledge, none of the Proposing Shareholders' nominees or any associate or immediate family member of such nominee beneficially owns any shares of H.T.E. Common Stock.

None of our nominees for director, or any associate or immediate family member of any of the foregoing persons is or has within the past year been a party to any contract, arrangement or understanding with respect to any securities of H.T.E. To the best of our knowledge, none of our nominees for director, or any associate or immediate family member of any of the foregoing persons has been convicted in a criminal proceeding.

We have agreed to indemnify each of our nominees against all liabilities, including liabilities under the federal securities laws, in connection with this proxy statement and such person's involvement in the operation of H.T.E. and to reimburse such nominees for their related out-of-pocket expenses.

805771.5                                    5

## APPENDIX

| Nominee | Business Address | Residential Address |
|---|---|---|
| Louis A. Waters | 2800 West Mockingbird Lane<br>Dallas, Texas 75235 | 11003 Wickwood<br>Houston, Texas 77024 |
| William D. Oates | 2800 West Mockingbird Lane<br>Dallas, Texas 75235 | 4900 Lakeside Drive<br>Dallas, Texas 75205 |
| John D. Woolf | 2800 West Mockingbird Lane<br>Dallas, Texas 75235 | 7112 Winedale<br>Dallas, Texas 75231 |
| John M. Yeaman | 2800 West Mockingbird Lane<br>Dallas, Texas 75235 | 4200 Shenandoah<br>Dallas, Texas 75205 |
| John S. Marr, Jr. | 2800 West Mockingbird Lane<br>Dallas, Texas 75235 | 21 White Rock Drive<br>Falmouth, Maine 04105 |
| Ronald E. Goodrow | 2800 West Mockingbird Lane<br>Dallas, Texas 75235 | 843 Golf Valley<br>Apopka, Florida 32712 |
| Brian K. Miller | 2800 West Mockingbird Lane<br>Dallas, Texas 75235 | 6452 Waggoner<br>Dallas, Texas 75230 |
| H. Lynn Moore, Jr. | 2800 West Mockingbird Lane<br>Dallas, Texas 75235 | 5665 Arapaho, No. 2336<br>Dallas, Texas 75248 |
| Theodore L. Bathurst | 2800 West Mockingbird Lane<br>Dallas, Texas 75235 | 1511 Meadow Glen<br>Dallas, Texas 75081 |

8637713

6

(CONTINUED FROM OTHER SIDE)

**THIS PROXY, WHEN PROPERLY EXECUTED, WILL BE VOTED IN THE MANNER DIRECTED HEREIN BY THE UNDERSIGNED SHAREHOLDER. IF NO DIRECTION IS MADE, THIS PROXY WILL BE VOTED "FOR" ITEMS 1, 2 AND 3 AND "AGAINST" ITEM 4.**

The undersigned hereby acknowledges receipt of (i) the Company's 1999 Annual Report on Form 10-K, (ii) the Proxy Statement and (iii) the Notice of Annual Meeting of shareholders to be held on November 16, 2000.

```
H476PR#       191  5,618,952
TYLER TECHNOLOGIES INC
2800 WEST MOCKINGBIRD LANE
DALLAS TX  75235
```

Dated: _October 7_____ , 2000

_Tyler Technologies, Inc._

_Uly Monn/ : Vice President, GC dkt/y_

Please sign exactly as your name appears hereon. If stock is registered in more than one name, each holder should sign. When signing as an attorney, administrator, executor, guardian or trustee, please add your title as such. If executed by a corporation or partnership, the proxy should be signed in full corporate or partnership name by a duly authorized officer or partner, as applicable.

90122184 (mc)

ALL SHAREHOLDERS ARE URGED TO COMPLETE, SIGN, DATE AND RETURN THIS PROXY IN THE ENVELOPE PROVIDED, WHICH REQUIRES NO POSTAGE IF MAILED WITHIN THE UNITED STATES.

## H.T.E., INC.
### PROXY FOR 2000 ANNUAL MEETING OF SHAREHOLDERS
### THIS PROXY IS SOLICITED ON BEHALF OF THE BOARD OF DIRECTORS

The undersigned hereby appoints Bernard B. Markey and Joseph M. Loughry, III, or either of them, each with the power of substitution, as proxies to represent the undersigned at the Annual Meeting of Shareholders of H.T.E., INC., to be held on Thursday, November 16, 2000 at 9:30 a.m., at The Country Club at Heathrow, 1200 Bridgewater Drive, Heathrow, Florida, and any adjournment or postponement thereof, and to vote the number of shares the undersigned would be entitled to vote if personally present on the following matters:

**THE BOARD OF DIRECTORS UNANIMOUSLY RECOMMENDS A VOTE FOR PROPOSAL 1.**

1. ELECTION OF Edward A. Moses and O.F. Ramos as directors to serve until the Annual Meeting of Shareholders in 2003 or until their successors are duly elected and qualified;

   ☐ FOR all nominees listed above (except as marked to the contrary below)      ☒ WITHHOLD AUTHORITY to vote

   (INSTRUCTION: To withhold authority to vote for any individual nominee, write that nominee's name on the space provided below.)

   *Edward A. Moses ; O.F. Ramos*

**THE BOARD OF DIRECTORS UNANIMOUSLY RECOMMENDS A VOTE FOR PROPOSAL 2.**

2. PROPOSAL TO increase the number of shares of the Company's common stock reserved for issuance under the 1997 Employee Stock Purchase Plan from 600,000 shares to 800,000 shares;      ☐ FOR      ☒ AGAINST      ☐ ABSTAIN

**THE BOARD OF DIRECTORS UNANIMOUSLY RECOMMENDS A VOTE FOR PROPOSAL 3.**

3. PROPOSAL TO increase the number of shares of the Company's common stock reserved for issuance under the 1997 Employee Incentive Compensation Plan from 2,908,000 shares to 3,700,000 shares;      ☐ FOR      ☒ AGAINST      ☐ ABSTAIN

**THE BOARD OF DIRECTORS UNANIMOUSLY RECOMMENDS A VOTE AGAINST PROPOSAL 4.**

4. PROPOSAL TO confer voting rights on 5,618,952 shares of Company common stock acquired by Tyler Technologies, Inc. from Dennis Harward and Jack Harward in a control share acquisition;      ☒ FOR      ☐ AGAINST      ☐ ABSTAIN

5. OTHER BUSINESS: The proxies are authorized to vote in their discretion upon such other business as may properly come before the Annual Meeting or any adjournment or postponement thereof.

**(SEE REVERSE SIDE)**

H.T.E., Inc.

Minutes of Annual Meeting of Shareholders
November 16, 2000

Bernard Markey called for order and gave opening remarks.  He then introduced the officers and directors of the company, Randy Fields of Greenberg Traurig and representatives for Arthur Andersen.

Bernard Markey called the meeting to order and asked if anyone present wishes to vote in person and has not yet registered to vote.  There were none.  He announced that a complete list of shareholders entitled to vote is open for inspection and will remain open during the voting.

Bernard Markey then asked Gus Gornto to serve as secretary of the meeting and report the number of shares represented either by proxy or in person.  Gus Gornto accepted and replied that there are a total of 11,136,755 shares of common stock represented either in person or by proxy at the meeting, which is approximately 93% of the 11,939,587 shares of common stock issued and entitled to vote.  Bernard Markey announced that a quorum is present, so the meeting is duly convened.

Bernard Markey stated that Gus Gornto has an affidavit from the transfer agent denoting that notices of the meeting were mailed on October 11, 2000, to shareholders of record as of the close of business on October 4, 2000, and in accordance with the Bylaws, the affidavit will be so filed.

Bernard Markey then presented the first item of business which was the election of two directors to serve until the 2003 annual shareholders meeting.  Gus Gornto has been appointed Inspector of Elections.  Bernard Markey presented Edward A. Moses and O. F. Ramos as management's slate for election as Class I Directors of the company, and recognized Sue Falotico for a motion.  Sue Falotico moved that Edward A. Moses and O. F. Ramos be elected for the three year term expiring in 2003, unless there is a sooner resignation or removal in accordance with the Bylaws of the Corporation or applicable law.  Brian Heafy seconded the motion.  Bernard Markey asked for a motion from the shareholders regarding the closing of nominations.  Brian Heafy moved that the nominations be closed.  Sue Falotico seconded the motion.  Bernard Markey asked that all in favor of the motion to close the nominations say 'aye'; all opposed say 'no'.  Bernard Markey stated that the nominations are closed and the polls are now open.

Bernard Markey then presented the second item of business which was to consider a proposal to ratify the amendment to the Company's 1997 Employee Stock Purchase Plan to increase the number of shares authorized for issuance thereunder from 600,000 shares to 800,000 shares.  After asking if anyone wishes to discuss the matter, Bernard Markey closed the discussion and stated that the polls are now open.

Bernard Markey then presented the third item of business which was to consider a proposal to ratify the amendment to the Company's 1997 Employee Incentive Compensation Plan to increase the number of shares authorized for issuance thereunder from 2,908,000 shares to 3,700,000 shares.

After asking if anyone wishes to discuss the matter, Bernard Markey closed the discussion and stated that the polls are now open.

Bernard Markey then presented the fourth item of business which was to consider a proposal to confer voting rights on the shares of HTE's common stock acquired by Tyler Technologies, Inc. from Dennis Harward and Jack Harward in a control share acquisition. After asking if anyone wishes to discuss the matter, Bernard Markey closed the discussion and stated that the polls are now open.

Bernard Markey declared voting closed as no other proposals of the shareholders intended to be presented at this meeting had been received by the Company, and asked Gus Gornto, Inspector of Elections, to collect the ballots for tabulation and report on the results of the balloting.

Bernard Markey then introduced HTE's President and CEO, Joe Loughry, who presented a company report and who presided over the remainder of the meeting.

Following Joe Loughry's presentation, Gus Gornto reported on the results of the balloting.

With respect to the election of the directors, Gus Gornto announced that a total of 10,461,335 voted for Edward A. Moses and 675,420 withheld authority; 10,249,931 voted for O. F. Ramos and 886,824 withheld authority. With respect to the ratification of the amendment to the Company's 1997 Employee Stock Purchase Plan, Gus Gornto announced that 3,987,935 voted for; 595,599 voted against; and 26,385 abstained. With respect to the ratification of the amendment to the Company's 1997 Employee Incentive Compensation Plan, Gus Gornto announced that 2,431,108 voted for; 2,145,547 voted against; and 33,264 abstained. With respect to conferring voting rights to HTE's common stock acquired by Tyler Technologies, Inc., Gus Gornto announced that 1,334,655 voted for; 3,122,226 voted against; and 153,038 abstained.

Gus Gornto declared that: (1) the Management's nominees have been duly elected as directors of the Company, (2) the amendments to the 1997 Employee Stock Purchase Plan and the 1997 Employee Incentive Compensation Plan have been approved by the Shareholders and (3) the proposal to confer voting rights on the shares of HTE's common stock held by Tyler Technologies, Inc. was not approved.

With no further business at hand, Joe Loughry entertained a motion to adjourn. Sue Falotico moved to adjourn the meeting, and Brian Heafy seconded the motion. Joe Loughry announced that the meeting was hereby adjourned.

At this time, Joe Loughry gave the floor to any shareholders having questions concerning the Company.

L. A. Gornto, Jr., Secretary

# H.T.E., INC.

## 2000 ANNUAL MEETING OF SHAREHOLDERS

### NOVEMBER 16, 2000

### OATH OF INSPECTOR OF ELECTIONS

    I, the undersigned, duly appointed Inspector of Elections of H.T.E., Inc. (the "Company"), being duly sworn, do solemnly swear that I will fairly and impartially perform my duties as Inspector of Elections at the Annual Meeting of Shareholders of the Company to be held on November 16, 2000, in connection with such matters as set forth in the Notice of Annual Meeting of Shareholders of the Company, dated October 10, 2000, and in connection with such other matters on which I may be called upon to act, and will faithfully and diligently canvass the votes in connection with such matters, and will honestly and truthfully report on such matters.

L. A. Gornto, Jr.
Inspector of Elections

**EXHIBIT A**

**H.T.E., INC.**
**ANNUAL MEETING OF SHAREHOLDERS**
**NOVEMBER 16, 2000**

**CERTIFICATE OF QUORUM AND VOTING**

The undersigned, Inspector of Elections at the Annual Meeting of Shareholders of H.T.E.., Inc. (the "Company"), held November 16, 1999, hereby certifies that:

1.    Quorum:  As of October 4, 2000, the date of record for determining shareholders entitled to notice of and to vote at the annual meeting of shareholders of the Company to be held on Thursday, November 16, 2000, there were 17,558,538 shares of common stock of the Company issued and outstanding, on which 11,939,587 shares are entitled to one vote upon proposals A, B and C, below, and of which _11,726,233_ shares are entitled to vote on proposal D, below, all of which proposals are to be acted upon at the Annual Meeting.  There have been filed with the Secretary of the Company and are here and available for examination by any shareholder of the Company ___114___ proxies evidencing _11,135,755_ shares of the common stock of the Company, which proxies are executed in favor of Messrs. Bernard B. Markey and Joseph M. Loughry, III.  There are, therefore, in attendance in person or by proxy _11,136,755_ shares of common stock, holders of common stock representing ownership of a total of approximately _93_% of the total number of issued and outstanding shares of common stock of the Company.

2.    Voting:  The number of votes cast on the proposals submitted to the meeting were as follows:

A.    Election of Two Directors

| | For | Withhold Authority |
|---|---|---|
| Edward A. Moses | 10,461,335 | 675,420 |
| O.F. Ramos | 10,249,931 | 886,824 |

B.    Ratification of the Amendment to the 1997 Employee Stock Purchase Plan

| | |
|---|---|
| For | 3,987,935 |
| Against | 595,599 |
| Abstain | 26,385 |

C.    Ratification of the Amendment to the 1997 Employee Incentive Compensation Plan

For                                             2,431,108

Against                                        2,145,547

Abstain                                         33,264

D.    Conferring Voting Rights on shares of HTE common stock held by Tyler Technologies, Inc.

For                                             1,334,655

Against                                        3,122,226

Abstain                                        153,038

In witness whereof, I have hereunto set my hand on November 16, 2000.

L. A. Gonto, Jr.
Inspector of Elections

**EXHIBIT B-1**

**H.T.E., INC.**

**VOTING OF PROXIES**

**NOVEMBER 16, 2000**

In accordance with the proxies granted to Bernard B. Markey and Joseph M. Loughry, III, and pursuant to the instructions indicated by shareholders thereon, I do hereby vote the proxies with respect to the proposal to elect two directors as set forth in the resolution presented to this annual meeting of shareholders at the 2000 Annual Meeting of Shareholders as follows:

|  | **FOR** | **WITHHOLD AUTHORITY** |
|---|---|---|
| Edward A. Moses | 10,461,335 | 675,420 |
| O.F. Ramos | 10,249,931 | 886,824 |

By _____

Attorney-in-Fact

EXHIBIT B-2

H.T.E., INC.

VOTING OF PROXIES

NOVEMBER 16, 2000

   In accordance with the proxies granted to Bernard B. Markey and Joseph M. Loughry, III, and pursuant to the instructions indicated by shareholders thereon, I do hereby vote the proxies with respect to the proposal to approve the amendment to the 1997 Employee Stock Purchase Plan as set forth in the resolution presented to this annual meeting of shareholders at the 2000 Annual Meeting of shareholders as follows:

FOR    3,987,935

AGAINST   595,599

ABSTAIN   26,385

By: _____

      Attorney-in-Fact

**EXHIBIT B-3**

**H.T.E., INC.**

**VOTING OF PROXIES**

**NOVEMBER 16, 2000**

In accordance with the proxies granted to Bernard B. Markey and Joseph M. Loughry, III, and pursuant to the instructions indicated by shareholders thereon, I do hereby vote the proxies with respect to the proposal to approve the amendment to the 1997 Employee Incentive Compensation Plan as set forth in the resolution presented to this annual meeting of shareholders at the 2000 Annual Meeting of shareholders as follows:

FOR               2,431,108

AGAINST        2,145,547

ABSTAIN           33,264

By: _____

Attorney-in-Fact

**EXHIBIT B-4**

**H.T.E., INC.**

**VOTING OF PROXIES**

**NOVEMBER 16, 2000**

In accordance with the proxies granted to Bernard B. Markey and Joseph M. Loughry, III, and pursuant to the instructions indicated by shareholders thereon, I do hereby vote the proxies with respect to the proposal to approve conferring voting rights on shares of HTE common stock owned by Tyler Technologies, Inc. as set forth in the resolution presented to this annual meeting of shareholders at the 2000 Annual Meeting of shareholders as follows:

**FOR**          1,334,655

**AGAINST**      3,122,226

**ABSTAIN**      153,038


By: _____

Attorney-in-Fact

# ARTICLES OF AMENDMENT

## TO

## ARTICLES OF INCORPORATION

## OF

## H.T.E, INC.

Pursuant to Sections 607.1003, 607.1004 and 607.1006 of the Florida Business Corporation Act, the Articles of Incorporation of H.T.E., Inc. (the "Corporation") are hereby amended as follows:

**FIRST: AMENDMENTS, DELETIONS AND RESTATEMENTS ADOPTED:**

**ARTICLE IV CAPITAL STOCK IS AMENDED TO DELETE THE INTRODUCTION THERETO AND SECTIONS 1 THROUGH 4 THEREOF AND TO INCLUDE THE FOLLOWING PROVISIONS:**

1. <u>Authorized Capital Stock.</u>  Subject to Section 2 hereof, the total number of shares of all classes of stock which the Corporation shall have authority to issue is 6,400,000, consisting solely of:

     (i)     two million (2,000,000) shares of preferred stock, par value $0.01 per share (the "Preferred Stock"); and

     (ii)     four million (4,000,000) shares of Class A common stock, par value $0.01 per share (the "Class A Common Stock");and

     (iii)     two hundred thousand (200,000) shares of Class B common stock, par value $0.01 per share (the "Class B Common Stock"); and

     (iv)     two hundred thousand (200,000) shares of Class C common stock, par value $0.01 per share (the "Class C Common Stock").

Upon the Reclassification as set forth in Article IV Section E, the par value of the Preferred Stock, the Class A Common Stock and the Class C Common Stock shall be split 53-for-one, and shall be equal to $0.0002 per share. Following the exchanges described in the Reclassification set forth in Article IV Section E, the Preferred Stock, Class A Common Stock, Class B Common Stock and Class C Common Stock will be canceled, retired and eliminated from the shares the Corporation is authorized to issue.

2. <u>Additional Authorized Capital Stock.</u>  Upon the Reclassification as set forth in Article IV Section E, the aggregate number of shares of all classes of stock which the Corporation shall have authority to issue is thirty million (30,000,000) shares, consisting solely of:

     (i)     twenty-five million (25,000,000) shares of common stock, par value $0.01 per share (the "New Common Stock"); and

     (ii)     five million (5,000,000) shares of preferred stock, par value $0.01 per share (the "New Preferred Stock").

No shareholder of any stock of the Corporation shall have preemptive rights. There shall be no cumulative voting by the shareholders of the Corporation.

(x) Provisions relating to New Preferred Stock.

1.   General.  The New Preferred Stock may be issued from time to time in one or more classes or series, the shares of each class or series to have such designations and powers, preferences and rights, and qualifications, limitations and restrictions thereof as are stated and expressed herein and in the resolution or resolutions providing for the issue of such class or series adopted by the Board of Directors (the "Board") as hereinafter prescribed.

2.   Preferences.  Authority is hereby expressly granted to and vested in the Board to authorize the issuance of the New Preferred Stock from time to time in one or more classes or series, to determine and take necessary proceedings fully to effect the issuance and redemption of any such New Preferred Stock and, with respect to each class or series of the New Preferred Stock, to fix and state, by resolution or resolutions from time to time adopted providing for the issuance thereof, the following:

(a)   whether or not the class or series is to have voting rights, full or limited, or is to be without voting rights;

(b)   the number of shares to constitute the class or series and the designations thereof;

(c)   the preferences and relative, participating, optional or other special rights, if any, and the qualifications, limitations or restrictions thereof, if any, with respect to any class or series;

(d)   whether or not the shares of any class or series shall be redeemable and if redeemable the redemption price or prices, and the time or times at which and the terms and conditions upon which, such shares shall be redeemable and the manner of redemption;

(e)   whether or not the shares of a class or series shall be subject to the operation of retirement or sinking funds to be applied to the purchase or redemption of such shares for retirement, and if such retirement or sinking fund or funds be established, the annual amount thereof and the terms and provisions relative to the operation thereof;

(f)   the dividend rate, whether dividends are payable in cash, stock of the Corporation or other property, the conditions upon which and the times when such dividends are payable, the preference to or the relation to the payment of the dividends payable on any other class or classes or series of stock, whether or not such dividend shall be cumulative or noncumulative, and, if cumulative, the date or dates from which such dividends shall accumulate;

(g)   the preferences, if any, and the amounts thereof that the holders of any class or series thereof shall be entitled to receive upon the voluntary or involuntary dissolution of, or upon any distribution of the assets of, the Corporation;

(h)   whether or not the shares of any class or series shall be convertible into, or exchangeable for, the shares of any other class or classes or of any other series of the same or any other class or classes of the Corporation and the conversion price or prices or ratio or ratios or the rate or rates at which such conversion or exchange may be made, with such adjustments, if any, as shall be stated and expressed or provided for in such resolution or resolutions; and

(i)     such other special rights and protective provisions with respect to any class or series as the Board may deem advisable.

The shares of each class or series of the New Preferred Stock may vary from the shares of any other class or series thereof in any or all of the foregoing respects.  The Board may increase the number of shares of New Preferred Stock designated for any existing class or series by a resolution adding to such class or series authorized and unissued shares of the New Preferred Stock not designated for any other class or series.  The Board may decrease the number of shares of the New Preferred Stock designated for any existing class or series by a resolution, subtracting from such series unissued shares of the New Preferred Stock designated for such class or series, and the shares so subtracted shall become authorized, unissued and undesignated shares of the New Preferred Stock.

**ARTICLE IV SECTION B  1.1.1 IS DELETED AND AMENDED AND RESTATED AS FOLLOWS:**

1.1  Provisions Relating to the New Common Stock and Common Stock.

(a)     Dividends, Voting, etc.  The Common Stock and New Common Stock shall be subject to the express terms of the New Preferred Stock, Preferred Stock and any class or series thereof.  Subject to the preferential dividend rights applicable to shares of any series of New Preferred Stock or Preferred Stock, the holders of shares of Common Stock and New Common Stock  shall be entitled to receive when, as and if declared by the Board, out of funds legally available therefor, dividends and other distributions payable in cash, property, stock (including shares of any class or series of the Corporation, whether or not shares of such class or series are already outstanding) or otherwise.  In the event of any voluntary or involuntary liquidation, dissolution or winding up of the Corporation, after distribution in full of the preferential amounts to be distributed to the holders of shares of the New Preferred Stock and/or Preferred Stock, the holders of shares of Common Stock and New Common Stock shall be entitled to receive all of the remaining assets of the Corporation available for distribution to its shareholders, ratably in proportion to the number of shares of the Common Stock and New Common Stock held by them.  If dividends are declared which are payable in shares of Common Stock such dividends shall be payable in shares of Class A Common Stock to holders of Class A Common Stock, in shares of Class B Common Stock to holders of Class B Common Stock, and in shares of Class C Common Stock to holders of Class C Common Stock.

Shares of Common Stock or New Common Stock may be issued by the Corporation for such consideration, having a value of not less than the par value thereof, as is determined by the Board of Directors.

(b)     Mergers and Consolidations.  In the event of a merger, consolidation or combination of the Corporation with another entity (whether or not the Corporation is the surviving entity), the holders of Common Stock and New Common Stock shall be entitled to receive their respective pro rata share of the consideration received in respect of that transaction.

(c)     Liquidating Distributions.  Upon any liquidation, dissolution or winding-up of the Corporation, whether voluntary or involuntary, and after the holders of the Preferred Stock and New Preferred Stock shall have been paid in full the amounts to which they shall be entitled, if any, or a sum sufficient for such payment in full shall have been set aside, the remaining net assets of the Corporation, if any, shall be divided among and paid ratably to the holders of Common Stock and New Common Stock.

(d)     Sales and Repurchases.  The Board shall have the power to cause the Corporation to issue and sell shares of Common Stock or New Common Stock to such individuals, partnerships, joint ventures, limited liability companies, associations, corporations, trusts or other legal

entities (collectively, "persons") and for such consideration as the Board shall from time to time in its discretion determine, and as otherwise permitted by law.  The Board shall have the power to cause the Corporation to purchase, out of funds legally available therefor, shares of Common Stock and New Common Stock from such persons and for such consideration as the Board shall from time to time in its discretion determine, and as otherwise permitted by law.

**ARTICLE B 1.1.2 IS AMENDED TO INCLUDE THE FOLLOWING PROVISION:**

(d) <u>New Common Stock</u>.  Each share of New Common Stock shall have one (1) vote on all matters that are submitted to shareholders for vote.

**ARTICLE IV IS AMENDED TO INCLUDE THE FOLLOWING PROVISIONS:**

E.     <u>Share Reclassification</u>.  Immediately prior to the effective date (the "Effective Date") of the Corporation's Registration Statement on Form S-1, relating to a proposed underwritten public offering of Common Stock and initially filed with the Securities and Exchange Commission on February 28, 1997 (the "Registration Statement"), (a) all of the outstanding shares of Preferred Stock (the "Existing Preferred Stock"),  Class A Common Stock and Class C Common Stock (the Class A Common Stock and Class C Common Stock are hereinafter collectively referred to as the "Existing Common Stock") will be split 53-for-one and exchanged simultaneously on a one-for-one basis for shares of the Corporation's New Common Stock, (b) the Corporation shall pay in cash all accrued dividends on the Existing Preferred Stock to the date of the stock splits and exchanges described above, and (c) following the exchanges described above, the Preferred Stock, Class A Common Stock, Class B Common Stock and Class C Common Stock will be canceled, retired and eliminated from the shares the Corporation is authorized to issue. Each certificate that theretofore represented shares of Existing Common Stock and Existing Preferred Stock shall thereafter represent the number of shares of New Common Stock into which the shares of Existing Common Stock and Existing Preferred Stock represented by such certificate were reclassified and converted hereby; provided, however, that each person holding of record a stock certificate or certificates that represented shares of Existing Common Stock and Existing Preferred Stock shall receive, upon surrender of each such certificate or certificates, a new certificate or certificates evidencing and representing the number of shares of New Common Stock to which such person is entitled.  Upon consummation of the reclassification of the Existing Common Stock and Existing Preferred Stock of the Corporation provided for in this Section E (the "Reclassification"), the holders of New Common Stock of the Corporation shall have all rights accorded them by law and the Corporation's Amended Articles of Incorporation.  The issuance of certificates representing shares of New Common Stock issuable upon the Reclassification shall be made without charge to the holders of Existing Common Stock and Existing Preferred Stock; provided, however, that if any certificate is to be issued in a name other than that of the record holder of the shares of Existing Common Stock and Existing Preferred Stock being reclassified pursuant to the Reclassification, the Corporation shall not be required to issue or deliver any such certificate unless and until the person requesting the issuance thereof shall have paid to the Corporation the amount of any tax that may be payable with respect to any transfer involved in the issuance and delivery of such certificate or has established to the satisfaction of the Corporation that such tax has been paid.  If so required by the Corporation or the transfer agent, any certificate for shares of Existing Common Stock and Existing Preferred Stock surrendered in connection with the Reclassification shall be accompanied by instruments of transfer, in form satisfactory to the Corporation or the transfer agent, duly executed by the holder of such shares or the duly authorized representative of such holder, together with funds for the payment of any transfer tax required as set forth above. As promptly as practicable following the surrender of a certificate representing shares of Existing Common Stock and Existing Preferred Stock in the foregoing manner, any required instruments of transfer and the payment in cash of any amount for

the payment of any transfer tax, the Corporation shall issue and deliver or cause to be issued and delivered to such holder or such holder's nominee or nominees, a certificate or certificates representing the number of shares of New Common Stock issued upon the Reclassification to which such holder is entitled, in such name or names as such holder may direct.

F.      Elimination from authorized shares. Immediately following the Reclassification in Article IV Section E, the Preferred Stock, Class A Common Stock, Class B Common Stock and Class C Common Stock will be canceled, retired and eliminated from the shares the Corporation is authorized to issue.

**ARTICLE VI IS DELETED AND AMENDED AND RESTATED IN ITS ENTIRETY AS FOLLOWS:**

## ARTICLE VI

A.      Number and Term of Directors.  The Corporation's Board shall consist of not less than three (3) nor more than nine (9) members, with the exact number to be fixed from time to time by resolution of the Board.  No decrease in the number of directors shall have the effect of shortening the term of any incumbent director.  The Board shall be divided into three classes, Class I, Class II and Class III with the directors of each class to be elected for a staggered term of three years and to serve until their successors are duly elected and qualified or until their earlier resignation, death or removal from office. The number of directors elected to each class shall be as nearly equal in number as possible.  The Board shall apportion any increase or decrease in the number of directorships among the classes so as to make the number of directors in each class as nearly equal as possible.

B.      Director Vacancies.  Whenever any vacancy on the Board shall occur due to death, resignation, retirement, disqualification, removal, increase in the number of directors or otherwise, a majority of directors in office, although less than a quorum of the entire Board, may fill the vacancy or vacancies for the balance of the unexpired term or terms, at which time a successor or successors shall be duly elected by the shareholders and qualified.  Notwithstanding the provisions of any other Article herein, only the remaining directors of the Corporation shall have the authority, in accordance with the procedure stated above, to fill any vacancy that exists on the Board for the balance of the unexpired term or terms.  The Company's shareholders shall not, and shall have no power to, fill any vacancy on the Board.

C.      Shareholder Nominations of Director Candidates.   Only persons who are nominated in accordance with the following procedures shall be eligible for election as directors of the Corporation. Nominations of persons for election to the Board at an annual or special meeting of shareholders may be made by or at the direction of the Board by any nominating committee or person appointed by the Board or by any shareholder of the Corporation entitled to vote for the election of directors at such meeting who complies with the procedures set forth in this Section C; provided, however, that nominations of persons for election to the Board at a special meeting may be made only if the election of directors is one of the purposes described in the special meeting notice required by Section 607.0705 of the Florida Business Corporation Act.  Nominations of persons for election at a special meeting, other than nominations made by or at the direction of the Board, shall be made pursuant to notice in writing delivered to or mailed and received at the principal executive offices of the Corporation not later than the close of business on the fifth (5th) day following the date on which notice of such meeting is given to shareholders or made public, whichever first occurs.  Nominations of persons for election at an annual meeting, other than nominations made by or at the direction of the Board, shall be made pursuant to timely notice in writing to the Secretary of the Corporation. To be timely, a shareholder's notice must be delivered to or mailed and received at the principal executive offices of the Corporation not less than one hundred twenty (120) days nor more than one hundred eighty (180) days prior to the first anniversary of the date of the Corporation's notice of

annual meeting provided with respect to the previous year's annual meeting; provided, however, that if no annual meeting was held in the previous year or the date of the annual meeting has been changed to be more than thirty (30) calendar days earlier than the date contemplated by the previous year's notice of annual meeting, such notice by the shareholder to be timely must be so delivered or received not later than the close of business on the fifth (5th) day following the date on which notice of the date of the annual meeting is given to shareholders or made public, whichever first occurs. Such shareholder's notice to the Secretary shall set forth the following information: (a) as to each person whom the shareholder proposes to nominate for election or re-election as a director at the annual meeting, (i) the name, age, business address and residence address of the proposed nominee, (ii) the principal occupation or employment of the proposed nominee, (iii) the class and number of shares of capital stock of the Corporation which are beneficially owned by the proposed nominee, and (iv) any other information relating to the proposed nominee that is required to be disclosed in solicitations for proxies for election of directors pursuant to Rule 14a under the Securities Exchange Act of 1934, as amended; and (b) as to the shareholder giving the notice of nominees for election at the annual meeting, (i) the name and record address of the shareholder, and (ii) the class and number of shares of capital stock of the Corporation which are beneficially owned by the shareholder. The Corporation may require any proposed nominee for election at an annual or special meeting of shareholders to furnish such other information as may reasonably be required by the Corporation to determine the eligibility of such proposed nominee to serve as a director of the Corporation. No person shall be eligible for election as a director of the Corporation unless nominated in accordance with the procedures set forth herein. The Chairman of the meeting shall, if the facts warrant, determine and declare to the meeting that a nomination was not made in accordance with the requirements of this Section C, and if he should so determine, he shall so declare to the meeting and the defective nomination shall be disregarded.

D. Board Classification.  Initial classes of the Board of Directors shall consist of the following members of the Board of Directors with terms expiring at the annual meeting of shareholders in the year indicated:

| Class I Directors | Term Expiring |
|---|---|
| Peter R. Roberts | 1997 |
| Bernard Markey | 1997 |
| | |
| Class II   Director | |
| Jack L. Harward | 1998 |
| | |
| Class III Director | |
| Dennis J. Harward | 1999 |

**ARTICLE XII IS ADDED TO INCLUDE THE FOLLOWING PROVISIONS:**

## ARTICLE XII

A.    Call of Special Shareholders Meeting.  Except as otherwise required by law, the Corporation shall not be required to hold a special meeting of shareholders of the Corporation unless (in addition to any other requirements of law) (i) the holders of not less than fifty (50) percent of all the votes entitled to be cast on any issue proposed to be considered at the proposed special meeting sign, date and deliver to the Corporation's Secretary one or more written demands for the meeting describing the purpose or purposes for which it is to be held; (ii) the meeting is called by the Board pursuant to a resolution approved by a majority of the entire Board; or (iii) the meeting is called by the Chairman of the Board of Directors. Only business within the purpose or purposes described in the special meeting notice

required by Section 607.0705 of the Florida Business Corporation Act may be conducted at a special shareholders' meeting.

       B.    <u>Advance Notice of Shareholder-Proposed Business for Annual Meeting</u>.  At an annual meeting of the shareholders, only such business shall be conducted as shall have been properly brought before the meeting.  To be properly brought before an annual meeting, business must be either (a) specified in the notice of meeting (or any supplement thereto) given by or at the direction of the Board, (b) otherwise properly brought before the meeting by or at the direction of the Board, or (c) otherwise properly brought before the meeting by a shareholder.  In addition to any other applicable requirements, for business to be properly brought before an annual meeting by a shareholder, the shareholder must have given timely notice thereof in writing to the Secretary of the Corporation.  To be timely, a shareholder's notice must be delivered to or mailed and received at the principal executive offices of the Corporation, not less than one hundred twenty (120) days nor more than one hundred eighty (180) days prior to the first anniversary of the date of the Corporation's notice of annual meeting provided with respect to the previous year's annual meeting; provided, however, that if no annual meeting was held in the previous year or the date of the annual meeting has been changed to be more than thirty (30) calendar days earlier than the date contemplated by the previous year's notice of annual meeting, such notice by the shareholder to be timely must be so delivered or received not later than the close of business on the fifth (5th) day following the date on which notice of the date of the annual meeting is given to shareholders or made public, whichever first occurs.  Such shareholder's notice to the Secretary shall set forth as to each matter the shareholder proposes to bring before the annual meeting (i) a brief description of the business desired to be brought before the annual meeting and the reasons for conducting such business at the annual meeting, (ii) the name and record address of the shareholder proposing such business, (iii) the class and number of shares of capital stock of the Corporation which are beneficially owned by the shareholder, and (iv) any material interest of the shareholder in such business.  The Chairman of an annual meeting shall, if the facts warrant, determine and declare to the meeting that business was not properly brought before the meeting in accordance with the requirements of this Section B, and if he should so determine, he shall so declare to the meeting and any such business not properly brought before the meeting shall not be transacted.

*  *  *  *  *

**SECOND:**    The foregoing Amended Articles of Incorporation of this Corporation were duly approved by the Board of Directors by unanimous written consent, dated February 27, 1997.

**THIRD:**    The foregoing Amended Articles of Incorporation of this Corporation were duly approved by written consent of the holders of a majority of the Corporation's issued and outstanding capital stock entitled to vote, dated February 27, 1997, representing the number of votes sufficient for approval of these Amended Articles of Incorporation.

IN WITNESS WHEREOF, the undersigned, for the purpose of amending the Corporation's Articles of Incorporation pursuant to the laws of the State of Florida, has executed these Amended Articles of Incorporation as of March 13, 1997.

H.T.E., INC.

By: _____

Name:   Dennis J. Harward
Title:   President

## INCUMBENCY CERTIFICATE

I, L. A. Gornto, Jr., hereby certify that I am the duly elected Secretary of H.T.E., Inc., a Florida corporation (the "Company"), and that the following is a true and correct copy of certain resolutions adopted by the Board of Directors of the Company at a meeting held on October 12, 2001:

BE IT RESOLVED:

1.    That the Company shall have on or before the Effective Date entered into an irrevocable escrow agreement with the SunTrust Bank, Orlando, Florida pursuant to which the Company shall have deposited the Aggregate Redemption Price with the SunTrust Bank, which said funds are to be held for the purpose of payment of the Aggregate Redemption Price to Tyler upon the tender or surrender of the certificates representing the Shares;

2.    That the proper officers of the Company, and each of them, are hereby authorized, empowered and directed, in the name of and on behalf of the Company, to execute and deliver any of the documentation heretofore referenced and any amendments, changes or modifications thereto, with the execution of the same being evidence of the approval by them of such additional terms and conditions; and

3.    That the proper officers of the Company, and each of them, are hereby authorized, empowered and directed, in the name of and on behalf of the Company, to execute, deliver and file on behalf of the Company any and all other documents and take any and all other actions as any of them may deem reasonably necessary to enter into, consummate and perform the transactions contemplated by the foregoing resolutions, including any amendments or supplements thereto.

I do further certify that the following officers are duly qualified officers of the Company:

| Name | Office |
|------|--------|
| Joseph M. Loughry, III | President and CEO |
| Susan D. Falotico | Vice President and CFO |
| L. A. Gornto, Jr. | Exec. Vice President, Secretary and Treasurer |

that there is no provision in the Charter or Bylaws of the Corporation limiting the power of the Board of Directors to pass the foregoing resolution and that the same is in conformity with the provisions of said Charter and Bylaws.

IN WITNESS WHEREOF, I have hereunto subscribed my name as Secretary, pursuant to due and lawful corporate authority, as of the 26th day of October, 2001.

L. A. Gornto, Jr., Secretary

## ESCROW AGREEMENT

This **ESCROW AGREEMENT** (this "Agreement") is entered into as of October 24, 2001, by and among **HTE, INC.** ("HTE"), and **SUNTRUST BANK**, as escrow agent ("SunTrust").

## RECITALS

**WHEREAS**, Tyler Technologies, Inc. ("Tyler") is the owner of 5,618,952 shares of the issued and outstanding common stock of HTE (the "Shares");

**WHEREAS**, the Board of Directors of HTE adopted on October 12, 2001, resolutions authorizing and directing: (i) that the redemption ("Redemption") of the Shares by HTE at a price per share equal to 100% minus a discount of 17.5% times the Market Price (the "Aggregate Redemption Price"), which shall be established by the average of the closing price for HTE's common stock for each of the 10 trading days as reported on the NASDAQ National Market for the close each day of the regular or normal trading hours for the period October 15, 2001 through October 26, 2001 inclusive; (ii) that the Redemption shall be effective at 8:00 A.M. on Monday, October 29, 2001 (Heathrow, Florida time) (the "Effective Date"); and (iii) that HTE shall have on or before the Effective Date entered into an escrow agreement with SunTrust Bank, Orlando, Florida pursuant to which the Company shall have deposited the Aggregate Redemption Price with SunTrust, and which said funds are to be held for the purpose of payment of the Aggregate Redemption Price to Tyler immediately upon the tender or surrender of the certificates representing the Shares;

**WHEREAS**, HTE shall, prior to the Effective Date, determine and communicate in writing to SunTrust the dollar amount of the Aggregate Redemption Price;

**WHEREAS**, HTE desires that SunTrust, as escrow agent, hold funds for payment of the Aggregate Redemption Price to Tyler (the "Escrowed Funds") contemplated to be deposited with SunTrust pursuant to the terms of the Redemption, as authorized by the HTE Board of Directors; and

**WHEREAS**, SunTrust agrees to act as escrow agent for HTE for the purpose of payment of the Aggregate Redemption Price to Tyler pursuant to the terms and conditions as set forth in this Agreement.

## AGREEMENT

**NOW, THEREFORE**, for and in consideration of the mutual covenants contained in this Agreement and for good and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties to this Agreement, intending to be legally bound, agree as follows:

1.      **Recitals.**  The above recitals are true and correct and are hereby incorporated into and made a part of this Agreement.

2.      **Delivery of Escrowed Funds.**

(a)     HTE shall deliver the Escrowed Funds to SunTrust on or before the Effective Date for the purpose of payment of the Aggregate Redemption Price to Tyler, as provided herein.  At all times from the Effective Date until the payment by SunTrust of the Aggregate Redemption Price to Tyler, HTE shall be required to maintain the Escrowed Funds with SunTrust in an amount not less than the Aggregate Redemption Price, as provided hereinafter.

(b)     Until the Aggregate Redemption Price has been disbursed from the Escrowed Funds to Tyler, SunTrust agrees to hold all of the Escrowed Funds in escrow in an interest bearing account and/or investment account, as directed by HTE from time to time (the "Investment Account"), subject to the terms and conditions of this Agreement; provided, however that if at any time prior to the payment of the Aggregate Redemption Price to Tyler, the principal or liquidation value of the Investment Account shall ever be less than the Aggregate Redemption Price, HTE shall deposit cash with SunTrust, pursuant to this Agreement, in an amount necessary to increase the principal or liquidation value of the Investment Account to the Aggregate Redemption Price.

3.      **Release of Escrowed Funds.**  SunTrust agrees to release the Escrowed Funds in accordance with the terms and conditions set forth this Agreement as follows:

**First**, on or after the Effective Date and upon receipt from Tyler of the certificates representing the Shares (which certificates shall be authenticated to SunTrust by HTE), distribute to Tyler funds equal to the Aggregate Redemption Price, as Tyler shall direct;

**Second**, prior to the payment of the Aggregate Redemption Price to Tyler, distribute to HTE an amount equal to the excess, if any, of the principal or liquidation value of the Investment Account over the Aggregate Redemption Price, as HTE may direct from time to time; and

**Third**, after the payment of the Aggregate Redemption Price to Tyler, distribute to HTE the remainder, if any, of the Escrowed Funds, and return to HTE the certificates representing the Shares tendered or surrendered by Tyler.

4.    **Duties of SunTrust.**

(a)    In the event SunTrust becomes uncertain as to its duties or rights as escrow agent under this Agreement, or received instructions, claims or demands with respect to the Escrowed Funds which, in SunTrust's opinion, are in conflict with any provision of this Agreement, SunTrust shall be entitled to refrain from taking any action until it is directed otherwise in writing by HTE, or by final order or judgment of a court of competent jurisdiction. Alternatively, SunTrust may interplead the Escrowed Funds with a court of competent jurisdiction as set forth in paragraph 4(f) hereof.

(b)    If all or any portion of the Escrowed Funds delivered to SunTrust is in the form of a check or in any form other than cash, SunTrust shall deposit same as required, but shall not be liable for the non-payment thereof nor responsible to enforce collection thereof. SunTrust shall not be required to disburse on such checks or other instruments until SunTrust's banking institution confirms clearance of same. If such check or other instrument other than cash representing the Escrowed Funds is returned to SunTrust unpaid, SunTrust shall notify HTE in writing and request further instructions.

(c)    If SunTrust is in doubt as to its duties under this Agreement, it may demand written instructions from HTE, and may conclusively rely upon such instructions pursuant to this subparagraph and, if acting pursuant to written instruction received from HTE, SunTrust shall not be required to investigate or otherwise evaluate the propriety of any disbursement of the Escrowed Funds.

(d)    The sole responsibility of SunTrust under this Agreement shall be to comply with the provisions of this Agreement and to account via monthly trust statements only to HTE for the Escrowed Funds actually received and held in the Investment Account and disbursed from the Investment Account.

(e)    SunTrust assumes no obligations or responsibilities under this Agreement other than as expressly set forth herein. SunTrust has no knowledge of the content of the Redemption or of the dealings among the other parties hereto. HTE hereby acknowledges that SunTrust is acting solely as a stakeholder at its request for its convenience; that SunTrust will not be deemed to be the agent of HTE; and that SunTrust shall not be liable to HTE for any act or omission on its part unless its actions or omissions are in bad faith, or in willful disregard of this Agreement, or unless involving gross negligence.

(f)    Notwithstanding anything contained in this Agreement to the contrary, or which might be construed to the contrary, SunTrust shall be fully and completely discharged and released from any obligation or duty with respect to the Escrowed Funds when SunTrust has disbursed same as provided in this Agreement, except with respect to actions or omissions which are in bad faith, or willful disregard of this Agreement, or involving any negligence. If any dispute arises as to SunTrust's right and duties under this Agreement, or if SunTrust is in doubt as to SunTrust's duties, or if any attachment, garnishment or other similar proceeding is instituted or procured respecting all or any

3

portion of the Escrowed Funds, or if any writ, order or rule of attachment, garnishment or other similar order is levied upon or entered against any portion of the Escrowed Funds while held by SunTrust, SunTrust may, in its sole discretion, continue to hold the Escrowed Funds until all parties involved in such dispute mutually agree to disbursement thereof, or until a judgment of a court of competent jurisdiction shall determine the rights of the parties therein, or may deposit the same with the Clerk of the Circuit Court for Orange County, Florida, in an interpleader action, and, upon notifying HTE in writing of such action, all liability on the part of SunTrust shall fully terminate, except to the extent of accounting for any moneys therefore delivered out of escrow; thereupon SunTrust shall be discharged from any obligations in connection with the holding of the Escrowed Funds and this Agreement. HTE indemnifies SunTrust for any fees, expenses or liabilities incurred under this Agreement except for liabilities incurred in connection with SunTrust's negligence or willful misconduct.

5.    **Notices.**  Any notice or communication given pursuant to this Agreement by any party to another party shall be in writing and shall be delivered by private express carrier or mailed by registered mail, postage prepaid, to the parties at their principal addresses as set forth below, or to such other address as any of them shall designate by written notice delivered in like manner.

> As to HTE:
>
> HTE, Inc.
> Attention: L. A. Gornto, Jr.
> 149 South Ridgewood Avenue, Suite 550
> Daytona Beach, FL 32114
> Facsimile: 386-257-1833
>
> As to SunTrust:
>
> SunTrust Bank
> Attention: Corporate Trust Division
> 225 E. Robinson Street, Suite 250
> Orlando, Florida 32801
> Facsimile: (407) 237-5299

Notices shall be effective three (3) days after being sent properly address, postage prepaid, if mailed, and shall be effective upon receipt (or refusal) when sent by private express carrier or facsimile.

6.    **Miscellaneous.**

(a)    This Agreement constitutes the entire agreement among the parties with respect to the subject matter herein and may not be modified or amended except pursuant to a written instrument executed by all parties.

(b)    This Agreement may be executed in one or more counterparts, all of which together shall be deemed an original.

(c)   SunTrust shall not be deemed to have knowledge of any matter or thing unless and until SunTrust receives actual written notice of such matter or thing and SunTrust shall not be charged with any constructive or actual notice whatsoever except where written notice is received by SunTrust.

7.   **Governing Law.**   The laws of the State of Florida shall govern the validity, construction, enforcement and interpretation of this Agreement.   Any legal action instituted in connection with this Agreement shall be maintained only in Orange County, Florida.

8.   **Parties Bound.**   This Agreement shall be binding upon and inure to the benefit of the parties respective heirs, personal representatives, successors and assigns.

9.   **SunTrust Fee.**   HTE shall pay SunTrust a fee of $1,000 for its services hereunder and its legal fees to review and approve this Agreement, not to exceed $500.

**IN WITNESS WHEREOF**, the parties hereto, each intending to be legally bound by this writing, have caused this Agreement to be executed as of the date first set forth above.

"HTE"

HTE, INC.

By: _____
L. A. Gornto, Jr., Executive Vice President

"SUNTRUST"

**SUNTRUST BANK**

By: _____
Name: M. Bruce Daiger
Title: Group Vice President

5

(c)     SunTrust shall not be deemed to have knowledge of any matter or thing unless and until SunTrust receives actual written notice of such matter or thing and SunTrust shall not be charged with any constructive or actual notice whatsoever except where written notice is received by SunTrust.

7.     **Governing Law.**  The laws of the State of Florida shall govern the validity, construction, enforcement and interpretation of this Agreement.  Any legal action instituted in connection with this Agreement shall be maintained only in Orange County, Florida.

8.     **Parties Bound.**  This Agreement shall be binding upon and inure to the benefit of the parties respective heirs, personal representatives, successors and assigns.

9.     **SunTrust Fee.**  HTE shall pay SunTrust a fee of $1,000 for its services hereunder and its legal fees to review and approve this Agreement, not to exceed $500.

**IN WITNESS WHEREOF**, the parties hereto, each intending to be legally bound by this writing, have caused this Agreement to be executed as of the date first set forth above.

"HTE"

HTE, INC.

By: _____
        L. A. Gornto, Jr., Executive Vice President

"SUNTRUST"

SUNTRUST BANK, as Escrow Agent

By: _____
Name: M. Bruce Daiger
Title: Group Vice President

5



Headquarters:
1000 Business Center Drive, Lake Mary, FL 32746 ◆ (407) 304-3235

Application Solutions for Government

October 29, 2001

Via Facsimile #(214) 547-4041, U.S. Mail
and Federal Express #7916 8870 2000

Tyler Technologies, Inc.
5949 Sherry Lane, Suite 1400
Dallas, TX 75225

Attn:  John M. Yeaman, President

Re:  Redemption of 5,618,952 Shares of Common Stock of H.T.E., Inc.

Dear Mr. Yeaman:

This letter serves as notice to Tyler Technologies, Inc. ("Tyler") that H.T.E., Inc. (the "Company") has on October 29, 2001, effective at 8:00 A.M. (Eastern time), exercised its right under Section 607.0902(10)(b), Florida Statutes, to redeem the 5,618,952 shares of Company common stock (the "Shares") acquired by Tyler in a control share acquisition under Section 607.0902, Florida Statutes. The redemption price the Company is paying for the Shares is $1.30 per share, for an aggregate redemption price of $7,304,637.60 for all of the Shares. On October 12, 2001, the Company's Board of Directors approved the redemption of the Shares. The redemption price represents a 17.5% discount from the average closing share price for the 10 trading days commencing on October 15, 2001 and ending on October 26, 2001, as reported on the NASDAQ National Market for the regular trading hours or session each day. In determining the fair value of the Shares for the redemption, as provided under Section 607.0902(10)(a), the Company relied on a report prepared for the Company by a national investment banking firm, which recommended a discount ranging from 10% to 25% should be deducted from the Company's public share price. The Company's Board of Directors approved a discount that was at the mid-point of this recommended discount range.

We have escrowed the aggregate redemption price ($7,304,637.60) with SunTrust Bank as escrow agent. Pursuant to the escrow agreement between SunTrust Bank and the Company, SunTrust Bank has an irrevocable obligation to pay to Tyler the aggregate redemption price upon its surrender of all of the Shares. Please return the certificates representing the Shares to SunTrust Bank, 225 E. Robinson Street, Suite 250, Orlando,

John M. Yeaman, President
Tyler Technologies, Inc.
Page – 2 –

FL 32801, Attention: Corporate Trust Division.  Upon receipt of the certificates representing all of the Shares, SunTrust Bank will release the aggregate redemption price to Tyler.  Please indicate to SunTrust Bank how Tyler wishes to receive the funds (i.e., by check or wire transfer), and if by wire transfer, please include in Tyler's transmittal letter to SunTrust Bank the appropriate wiring instructions.

In accordance with Section 607.0721(4), Florida Statutes, the Shares are no longer considered issued and outstanding shares of common stock of the Company, and all rights with respect thereto have ceased, except only the right of Tyler to receive the aggregate redemption price in the amount and manner described above. In that regard, the Company has informed its transfer agent to put a stop transfer order on the Shares.

Very truly yours,

H.T.E., Inc.

By: _____
Joseph M. Loughry, III
President & Chief Executive Officer



# TYLER
### TECHNOLOGIES, INC.

## FACSIMILE TRANSMITTAL SHEET

| TO: Joseph Loughry, III | FROM: H. Lynn Moore, Jr. |
|---|---|
| COMPANY: | DATE: 10/29/2001 |
| FAX NUMBER: 407-304-1075 | TOTAL NO. OF PAGES INCLUDING COVER: 2 |
| PHONE NUMBER: | SENDER'S REFERENCE NUMBER: |
| RE: | YOUR REFERENCE NUMBER: |

☐ URGENT    ☐ FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY    ☐ PLEASE RECYCLE

NOTES/COMMENTS:



**TYLER**
TECHNOLOGIES, INC.

*Via Facsimile (407) 304-1075*
*and Federal Express*

October 29, 2001

Mr. Joseph M. Loughry, III
President & Chief Executive Officer
H.T.E., Inc.
1000 Business Center Drive
Lake Mary, FL 32746

Mr. Loughry:

This letter serves as a response to your letter of October 29, 2001.

Tyler Technologies, Inc. ("Tyler") disagrees with H.T.E., Inc.'s ("H.T.E.") interpretation of Section 607.0902 of the Florida Corporations Code. Under Florida law, to the extent that H.T.E. maintained any right to redeem the "control shares" held by Tyler, such right expired 60 days from the date that the stockholders of H.T.E. did not grant Tyler voting rights to such "control shares," or January 5, 2001. Accordingly, H.T.E.'s purported redemption of Tyler's "control shares" effective October 29, 2001 is invalid.

Moreover, the right of a corporation to redeem its shares under the Florida control-share acquisition statute applies only to "control shares," or those shares that may "exercise or direct the exercise of. . .one-fifth or more but less than one-third of all voting power. . ." of the corporation. In other words, even assuming that H.T.E. maintains a right to redeem Tyler's "control shares" (which it does not), such right would be limited to those shares that Tyler owns that are in excess of 20% of H.T.E.'s issued and outstanding shares of common stock, not all of the shares currently held by Tyler.

Finally, even assuming that H.T.E. maintains the right to redeem Tyler's "control shares" (which it does not), Tyler vigorously disputes H.T.E.'s calculation of per share "fair value" as set forth in your letter.

Under Florida law, Tyler continues to be the owner of 5,618,952 shares of H.T.E. common stock and may continue to vote up to 20% of the issued and outstanding shares of H.T.E. common stock held by Tyler. Please be advised that Tyler is prepared to take all actions necessary to protect such rights.

Sincerely,

H. Lynn Moore, Jr.
Vice President, General Counsel, and Secretary

*5949 Sherry Lane  Suite 1400*
*Dallas, Texas 75225*
*214/547-4000*