

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:01-cv-1366-Orl-31DAB

H.T.E., INC.,

    Plaintiff,

vs.

TYLER TECHNOLOGIES, INC.,

    Defendant.
_____/

### TYLER'S MOTION FOR LEAVE TO FILE A BRIEF SUPPLEMENTAL MEMORANDUM OF LAW TO PREVENT MISIMPRESSION OF LAW REGARDING H.T.E.'S PENDING MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant/Counterclaimant, TYLER TECHNOLOGIES, INC. ("Tyler"), respectfully moves the Court for leave to file the SUPPLEMENTAL MEMORANDUM OF LAW TO PREVENT MISIMPRESSION OF LAW REGARDING H.T.E.'S PENDING MOTION FOR PARTIAL SUMMARY JUDGMENT, attached hereto as Exhibit 1, on the following grounds:

    1.    At the hearing held on H.T.E.'s Motion for Partial Summary Judgment on June 20, 2002, H.T.E. argued that Tyler could have sold its stock in H.T.E. at any time prior to H.T.E.'s purported redemption. Transcript at 7-8.

    2.    H.T.E. had not raised the argument of an unrestricted right of Tyler to sell its stock prior to redemption in its memorandum of law in support of its motion

for summary judgment and first raised this argument during the hearing. Accordingly, the Court has not been apprised previously of the applicable law restricting Tyler's right to sell its H.T.E. stock.

3. H.T.E.'s argument is contrary to applicable federal law.

4. Based upon the Court's questions during the hearing, counsel for Tyler believed that the Court was aware of restrictions on Tyler's ability to sell H.T.E. stock under federal law because the questions included limitations on the increments of stock that could be sold. Transcript at 32.

5. Upon review of the transcript of hearing it was apparent that the limitations referenced by the Court in its questions were applicable to Florida's Control Share Acquisition Act and not to any restrictions arising under federal law.

6. Through its supplemental memorandum, Tyler seeks to prevent the Court from acting or operating under a misimpression of the applicable law on Tyler's ability to sell its H.T.E. stock.

## MEMORANDUM OF LAW

The Court has the inherent authority to allow departures from its Local Rules. See *Somlyo v J. Lu-Rob Enterprises, Inc.*, 932 F.2d 1043, 1048 (2d Cir. 1991). See also *Wight v. BankAmerica Corporation*, 219 F.3d 79, 85 (2d Cir. 2000). While Local Rule 3.01(b) precludes the filing of any legal memoranda directed to a motion other than the initial memoranda in support or in opposition to the motion, unless requested, the Court has the inherent authority to depart from this Rule and to allow for the filing of a supplemental memorandum of law. Tyler respectfully

submits that the granting of such leave is particularly appropriate where, as here, a position was first raised at oral argument and was not addressed in the parties' initial memoranda, and where the supplemental memoranda is designed to prevent the Court from acting under a misimpression of the law applicable to the newly raised position.

Tyler respectfully submits that the Court should grant it leave to file the attached TYLER'S SUPPLEMENTAL MEMORANDUM OF LAW TO PREVENT MISIMPRESSION OF LAW REGARDING H.T.E.'S MOTION FOR PARTIAL SUMMARY JUDGMENT.

Respectfully submitted,

William B. Wilson, Esquire
Florida Bar No. 153167
HOLLAND & KNIGHT LLP
200 S. Orange Avenue, Suite 2600
Post Office Box 1526
Orlando, FL 32802-11526
(407) 425-8500
Attorneys for Defendant,
Tyler Technologies, Inc.

ORL1 #732187 v1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by hand delivery this 19th day of July, 2002, to John W. Foster, Sr., Esquire, Baker & Hostetler LLP, 2300 Sun Trust Center, 200 South Orange Avenue, Post Office Box 112, Orlando, FL 32802-0112.

William B. Wilson

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:01-cv-1366-Orl-31DAB

H.T.E., INC.,

    Plaintiff,

vs.

TYLER TECHNOLOGIES, INC.,

    Defendant.
_____/

## TYLER'S SUPPLEMENTAL MEMORANDUM OF LAW TO PREVENT MISIMPRESSION OF LAW REGARDING H.T.E.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant/Counterclaimant, TYLER TECHNOLOGIES, INC. ("Tyler"), respectfully submits this Supplemental Memorandum of Law to prevent any misimpressions on the law applicable to the ability of Tyler to sell its H.T.E. stock prior to H.TE.'s purported redemption at the oral argument held by this Court on June 20, 2002 (the "MSJ Hearing").

### BACKGROUND FACTS:

H.T.E. argued at the hearing on its motion for summary judgment on June 20, 2002 (the "MSJ Hearing") that its interpretation of Section 607.0902(10) (the "Florida Statute") providing for an *infinite* right of redemption (as opposed to the 60-day time limit imposed by the Florida Statute) was "fair" to Tyler because Tyler could have "sold its stock to third parties at any time prior to redemption." MSJ

EXHIBIT 1

Transcript at 8. This argument, which was first raised at oral argument and was not addressed in any prior memoranda, is contrary to applicable federal law.

### TYLER'S RIGHT TO SELL RESTRICTED BY FEDERAL LAW:

Tyler acquired 5,618,952 shares of H.T.E. (the "Tyler Shares") from Dennis and Jack Harward in a privately negotiated transaction (not in the open market). Tyler Memorandum at 4. Because neither the Tyler Shares nor their acquisition were registered under the federal securities laws, but were acquired in a non-open market transaction, such shares are "restricted securities" under §4(1) of the Securities Act of 1933, as amended (the "Securities Act"), and subject to the restrictions set forth in Rule 144 (17 C.F.R. §230.144) of the Securities Act.[1] *See* Rule 144, attached hereto as <u>Exhibit A</u>.

Under Rule 144, the Tyler Shares are subject to certain restrictions on re-sale, including initial minimum holding periods and subsequent volume limitations, among others. Rule 144 (d), (e), and (k). Rule 144 prohibited Tyler from selling *any* of the Tyler Shares during the first year after each of such shares were acquired.[2] Rule 144(d)(1).

Following the first year after acquisition but prior to the second year following acquisition, Tyler was restricted from selling, *during any three month period during such timeframe,* an amount of not more than (1) one percent of the total outstanding shares of H.T.E. or (2) the average weekly reported volume of

---

[1] If H.T.E. had wanted to afford Tyler with unrestricted rights to sell its H.T.E. stock, H.T.E. could have filed a registration statement with the SEC covering such shares which, of course, it did not.
[2] Tyler acquired 4,650,000 shares on August 20, 1999 and 968,952 shares on December 21, 1999. Tyler Memorandum at 4, f.n.7.

2

trading in H.T.E. stock, or approximately 170,000 shares. Rule 144(e)(1) and (2).

Even following the second year of its acquisition of the restricted securities (or, August 20, 2001 for 4,650,000 shares, and December 21, 2001 for 968,952 shares), Tyler's ability to "freely" sell the shares in the open market is determined by whether or not it is deemed to be an "affiliate" of H.T.E.[3] Rule 144(e)(1), (2) and (k). If Tyler is deemed to be an affiliate of H.T.E., the volume limitations set forth above continue until such time as Tyler is no longer deemed an affiliate. Rule 144(e)(1) and (k). If Tyler is not deemed to be an affiliate of H.T.E., the volume limitations are lifted after Tyler has held the stock for two years. Rule 144(e)(2) and (k). Since determination of affiliate status generally requires the consent of company counsel, H.T.E. maintained some control over Tyler's ability to sell its shares even after the two-year holding period.

### CONCLUSION:

Under Federal law, H.T.E.'s argument at the MJS Hearing that its interpretation of the Florida Statute is "fair" to Tyler because Tyler could have sold its shares any time prior to their purported redemption is legally incorrect.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by hand delivery this 19th day of July, 2002, to John W. Foster, Sr.,

---

[3] An "affiliate" is defined as a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such issuer. Rule 144(a)(1).

Esquire, Baker & Hostetler LLP, 2300 Sun Trust Center, 200 South Orange Avenue, Post Office Box 112, Orlando, FL 32802-0112.

/s/ William B. Wilson
William B. Wilson, Esquire
Florida Bar No. 153167
HOLLAND & KNIGHT LLP
200 S. Orange Avenue, Suite 2600
Post Office Box 1526
Orlando, FL 32802-11526
(407) 425-8500
Attorneys for Defendant,
Tyler Technologies, Inc.

ORL1 #732180 v1

17 CFR S 230.144
17 C.F.R. § 230.144

CODE OF FEDERAL REGULATIONS
TITLE 17--COMMODITY AND SECURITIES EXCHANGES
CHAPTER II--SECURITIES AND EXCHANGE COMMISSION
PART 230--GENERAL RULES AND REGULATIONS, SECURITIES ACT OF 1933
GENERAL
Current through June 17, 2002; 67 FR 41204

§ 230.144 Persons deemed not to be engaged in a distribution and therefore not underwriters.

Preliminary Note

**Rule 144** is designed to implement the fundamental purposes of the Act, as expressed in its preamble, "To provide full and fair disclosure of the character of the securities sold in interstate commerce and through the mails, and to prevent fraud in the sale thereof * * *" The rule is designed to prohibit the creation of public markets in securities of issuers concerning which adequate current information is not available to the public. At the same time, where adequate current information concerning the issuer is available to the public, the rule permits the public sale in ordinary trading transactions of limited amounts of securities owned by persons controlling, controlled by or under common control with the issuer and by persons who have acquired restricted securities of the issuer.

Certain basic principles are essential to an understanding of the requirement of registration in the Act:

1. If any person utilizes the jurisdictional means to sell any nonexempt security to any other person, the security must be registered unless a statutory exemption can be found for the transaction.

2. In addition to the exemptions found in Section 3, four exemptions applicable to transactions in securities are contained in section 4. Three of these section 4 exemptions are clearly not available to anyone acting as an "underwriter" of securities. (The fourth, found in section 4(4), is available only to those who act as brokers under certain limited circumstances.) An understanding of the term "underwriter" is therefore important to anyone who wishes to determine whether or not an exemption from registration is available for his sale of securities.

The term underwriter is broadly defined in section 2(11) of the Act to mean any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates, or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking. The interpretation of this definition has traditionally focused on the words "with a view to" in the phrase "purchased from an issuer with a view to * * * distribution." Thus, an investment banking firm which arranges with an issuer for the public sale of its securities is clearly an "underwriter" under that section. Individual investors who are not professionals in the securities business may also be "underwriters" within the meaning of that term as used in the Act if they act as links in a chain of transactions through which securities move from an issuer to the public. Since it is difficult to ascertain the mental state of the purchaser at the time of his acquisition, subsequent acts and circumstances have been considered to determine whether such person took with a view to distribution at the time of his acquisition. Emphasis has been placed on factors such as the length of time the person has held the securities and whether there has been an unforeseeable change in circumstances of the holder. Experience has shown, however, that reliance upon such factors as the above has not assured adequate protection of investors through the maintenance of informed trading markets and has led to uncertainty in the application of the registration provisions of the Act.

It should be noted that the statutory language of section 2(11) is in the disjunctive. Thus, it is insufficient to conclude that a person is not an underwriter solely because he did not purchase securities from an issuer with a view to their distribution. It must also be established that the person is not offering or selling for an issuer in connection with the distribution of the securities, does not participate or have a direct or indirect participation in any such undertaking, and does not participate or have a participation in the direct or indirect underwriting of such an undertaking.

In determining when a person is deemed not to be engaged in a distribution several factors must be considered.

First, the purpose and underlying policy of the Act to protect investors requires that there be adequate current information concerning the issuer, whether the resales of securities by persons result in a distribution or are effected in trading transactions. Accordingly,

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works


EXHIBIT A

the availability of the rule is conditioned on the existence of adequate current public information.

Secondly, a holding period prior to resale is essential, among other reasons, to assure that those persons who buy under a claim of a section 4(2) exemption have assumed the economic risks of investment, and therefore are not acting as conduits for sale to the public of unregistered securities, directly or indirectly, on behalf of an issuer. It should be noted that there is nothing in section 2(11) which places a time limit on a person's status as an underwriter. The public has the same need for protection afforded by registration whether the securities are distributed shortly after their purchase or after a considerable length of time.

A third factor, which must be considered in determining what is deemed not to constitute a "distribution", is the impact of the particular transaction or transactions on the trading markets. Section 4(1) was intended to exempt only routine trading transactions between individual investors with respect to securities already issued and not to exempt distributions by issuers or acts of other individuals who engage in steps necessary to such distributions. Therefore, a person reselling securities under section 4(1) of the Act must sell the securities in such limited quantities and in such a manner as not to disrupt the trading markets. The larger the amount of securities involved, the more likely it is that such resales may involve methods of offering and amounts of compensation usually associated with a distribution rather than routine trading transactions. Thus, solicitation of buy orders or the payment of extra compensation are not permitted by the rule.

In summary, if the sale in question is made in accordance with all of the provisions of the section as set forth below, any person who sells restricted securities shall be deemed not to be engaged in a distribution of such securities and therefore not an underwriter thereof. The rule also provides that any person who sells restricted or other securities on behalf of a person in a control relationship with the issuer shall be deemed not to be engaged in a distribution of such securities and therefore not to be an underwriter thereof, if the sale is made in accordance with all the conditions of the section.

(a) Definitions. The following definitions shall apply for the purposes of this section.

(1) An "affiliate" of an issuer is a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such issuer.

(2) The term "person" when used with reference to a person for whose account securities are to be sold in reliance upon this section includes, in addition to such person, all of the following persons:

(i) Any relative or spouse of such person, or any relative of such spouse, any one of whom has the same home as such person;

(ii) Any trust or estate in which such person or any of the persons specified in paragraph (a)(2)(i) of this section collectively own 10 percent or more of the total beneficial interest or of which any of such persons serve as trustee, executor or in any similar capacity; and

(iii) Any corporation or other organization (other than the issuer) in which such person or any of the persons specified in paragraph (a)(2)(i) of this section are the beneficial owners collectively of 10 percent or more of any class of equity securities or 10 percent or more of the equity interest.

(3) The term restricted securities means:

(i) Securities acquired directly or indirectly from the issuer, or from an affiliate of the issuer, in a transaction or chain of transactions not involving any public offering;

(ii) Securities acquired from the issuer that are subject to the resale limitations of § 230.502(d) under Regulation D or § 230.701(c);

(iii) Securities acquired in a transaction or chain of transactions meeting the requirements of § 230.144A;

(iv) Securities acquired from the issuer in a transaction subject to the conditions of Regulation CE (§ 230.1001);

(v) Equity securities of domestic issuers acquired in a transaction or chain of transactions subject to the conditions of § 230.901 or § 230.903 under Regulation S (§ 230.901 through § 230.905, and Preliminary Notes);

(vi) Securities acquired in a transaction made under § 230.801 to the same extent and proportion that the securities held by the security holder of the class with respect to which the rights offering was made were as of the record date for the rights offering "restricted securities" within the meaning of this paragraph (a)(3);

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

17 CFR S 230.144

and

(vii) Securities acquired in a transaction made under § 230.802 to the same extent and proportion that the securities that were tendered or exchanged in the exchange offer or business combination were "restricted securities" within the meaning of this paragraph (a)(3).

(b) Conditions to be met. Any affiliate or other person who sells restricted securities of an issuer for his own account, or any person who sells restricted or any other securities for the account of an affiliate of the issuer of such securities, shall be deemed not to be engaged in a distribution of such securities and therefore not to be an underwriter thereof within the meaning of section 2(11) of the Act if all of the conditions of this section are met.

(c) Current public information. There shall be available adequate current public information with respect to the issuer of the securities. Such information shall be deemed to be available only if either of the following conditions is met:

(1) Filing of reports. The issuer has securities registered pursuant to section 12 of the Securities Exchange Act of 1934, has been subject to the reporting requirements of section 13 of that Act for a period of at least 90 days immediately preceding the sale of the securities and has filed all the reports required to be filed thereunder during the 12 months preceding such sale (or for such shorter period that the issuer was required to file such reports); or has securities registered pursuant to the Securities Act of 1933, has been subject to the reporting requirements of section 15(d) of the Securities Exchange Act of 1934 for a period of at least 90 days immediately preceding the sale of the securities and has filed all the reports required to be filed thereunder during the 12 months preceding such sale (or for such shorter period that the issuer was required to file such reports). The person for whose account the securities are to be sold shall be entitled to rely upon a statement in whichever is the most recent report, quarterly or annual, required to be filed and filed by the issuer that such issuer has filed all reports required to be filed by section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the issuer was required to file such reports) and has been subject to such filing requirements for the past 90 days, unless he knows or has reason to believe that the issuer has not complied with such requirements. Such person shall also be entitled to rely upon a written statement from the issuer that it has complied with such reporting requirements unless he knows or has reasons to believe that the issuer has not complied with such requirements.

(2) Other public information. If the issuer is not subject to section 13 or 15(d) of the Securities Exchange Act of 1934, there is publicly available the information concerning the issuer specified in paragraphs (a)(5)(i) to (xiv), inclusive, and paragraph (a)(5)(xvi) of Rule 15c2-11 (§ 240.15c2-11 of this chapter) under that Act or, if the issuer is an insurance company, the information specified in section 12(g)(2)(G)(i) of that Act.

(d) Holding period for restricted securities. If the securities sold are restricted securities, the following provisions apply:

(1) General rule. A minimum of one year must elapse between the later of the date of the acquisition of the securities from the issuer or from an affiliate of the issuer, and any resale of such securities in reliance on this section for the account of either the acquiror or any subsequent holder of those securities. If the acquiror takes the securities by purchase, the one-year period shall not begin until the full purchase price or other consideration is paid or given by the person acquiring the securities from the issuer or from an affiliate of the issuer.

(2) Promissory notes, other obligations or installment contracts. Giving the issuer or affiliate of the issuer from whom the securities were purchased a promissory note or other obligation to pay the purchase price, or entering into an installment purchase contract with such seller, shall not be deemed full payment of the purchase price unless the promissory note, obligation or contract:

(i) Provides for full recourse against the purchaser of the securities;

(ii) Is secured by collateral, other than the securities purchased, having a fair market value at least equal to the purchase price of the securities purchased; and

(iii) Shall have been discharged by payment in full prior to the sale of the securities.

(3) Determination of holding period. The following provisions shall apply for the purpose of determining the period securities have been held:

(i) Stock dividends, splits and recapitalizations. Securities acquired from the issuer as a dividend or

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

17 CFR S 230.144

pursuant to a stock split, reverse split or recapitalization shall be deemed to have been acquired at the same time as the securities on which the dividend or, if more than one, the initial dividend was paid, the securities involved in the split or reverse split, or the securities surrendered in connection with the recapitalization;

(ii) Conversions. If the securities sold were acquired from the issuer for a consideration consisting solely of other securities of the same issuer surrendered for conversion, the securities so acquired shall be deemed to have been acquired at the same time as the securities surrendered for conversion;

(iii) Contingent issuance of securities. Securities acquired as a contingent payment of the purchase price of an equity interest in a business, or the assets of a business, sold to the issuer or an affiliate of the issuer shall be deemed to have been acquired at the time of such sale if the issuer or affiliate was then committed to issue the securities subject only to conditions other than the payment of further consideration for such securities. An agreement entered into in connection with any such purchase to remain in the employment of, or not to compete with, the issuer or affiliate or the rendering of services pursuant to such agreement shall not be deemed to be the payment of further consideration for such securities.

(iv) Pledged securities. Securities which are bona-fide pledged by an affiliate of the issuer when sold by the pledgee, or by a purchaser, after a default in the obligation secured by the pledge, shall be deemed to have been acquired when they were acquired by the pledgor, except that if the securities were pledged without recourse they shall be deemed to have been acquired by the pledgee at the time of the pledge or by the purchaser at the time of purchase.

(v) Gifts of securities. Securities acquired from an affiliate of the issuer by gift shall be deemed to have been acquired by the donee when they were acquired by the donor.

(vi) Trusts. Where a trust settlor is an affiliate of the issuer, securities acquired from the settlor by the trust, or acquired from the trust by the beneficiaries thereof, shall be deemed to have been acquired when such securities were acquired by the settlor.

(vii) Estates. Where a deceased person was an affiliate of the issuer, securities held by the estate of such person or acquired from such estate by the beneficiaries thereof shall be deemed to have been acquired when they were acquired by the deceased person, except that no holding period is required if the estate is not an affiliate of the issuer or if the securities are sold by a beneficiary of the estate who is not such an affiliate.

Note: While there is no holding period or amount limitation for estates and beneficiaries thereof which are not affiliates of the issuer, paragraphs (c), (h) and (i) of the rule apply to securities sold by such persons in reliance upon the rule.

(viii) Rule 145(a) transactions. The holding period for securities acquired in a transaction specified in Rule 145(a) shall be deemed to commence on the date the securities were acquired by the purchaser in such transaction. This provision shall not apply, however, to a transaction effected solely for the purpose of forming a holding company.

(e) Limitation on amount of securities sold. Except as hereinafter provided, the amount of securities which may be sold in reliance upon this rule shall be determined as follows:

(1) Sales by affiliates. If restricted or other securities are sold for the account of an affiliate of the issuer, the amount of securities sold, together with all sales of restricted and other securities of the same class for the account of such person within the preceding three months, shall not exceed the greater of

(i) One percent of the shares or other units of the class outstanding as shown by the most recent report or statement published by the issuer, or

(ii) The average weekly reported volume of trading in such securities on all national securities exchanges and/or reported through the automated quotation system of a registered securities association during the four calendar weeks preceding the filing of notice required by paragraph (h), or if no such notice is required the date of receipt of the order to execute the transaction by the broker or the date of execution of the transaction directly with a market maker, or

(iii) The average weekly volume of trading in such securities reported through the consolidated transaction reporting system contemplated by Rule 11Aa3-1 under the Securities Exchange Act of 1934 (§ 240.11A3-1) during the four-week period specified in paragraph (e)(1)(ii) of this section.

(2) Sales by persons other than affiliates. The amount of restricted securities sold for the account of any

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

17 CFR S 230.144

person other than an affiliate of the issuer, together with all other sales of restricted securities of the same class for the account of such person within the preceding three months, shall not exceed the amount specified in paragraphs (e)(1)(i), (1)(ii) or (1)(iii) of this section, whichever is applicable, unless the conditions of paragraph (k) of this rule are satisfied.

(3) Determination of amount. For the purpose of determining the amount of securities specified in paragraphs (e)(1) and (2) of this section, the following provisions shall apply:

(i) Where both convertible securities and securities of the class into which they are convertible are sold, the amount of convertible securities sold shall be deemed to be the amount of securities of the class into which they are convertible for the purpose of determining the aggregate amount of securities of both classes sold;

(ii) The amount of securities sold for the account of a pledgee thereof, or for the account of a purchaser of the pledged securities, during any period of three months within one year after a default in the obligation secured by the pledge, and the amount of securities sold during the same three-month period for the account of the pledgor shall not exceed, in the aggregate, the amount specified in paragraph (e) (1) or (2) of this section, whichever is applicable;

(iii) The amount of securities sold for the account of a donee thereof during any period of three months within one year after the donation, and the amount of securities sold during the same three-month period for the account of the donor, shall not exceed, in the aggregate, the amount specified in paragraph (e) (1) or (2) of this section, whichever is applicable;

(iv) Where securities were acquired by a trust from the settlor of the trust, the amount of such securities sold for the account of the trust during any period of three months within one year after the acquisition of the securities by the trust, and the amount of securities sold during the same three-month period for the account of the settlor, shall not exceed, in the aggregate, the amount specified in paragraph (e) (1) or (2) of this section, whichever is applicable;

(v) The amount of securities sold for the account of the estate of a deceased person, or for the account of a beneficiary of such estate, during any period of 3 months and the amount of securities sold during the same period for the account of the deceased person prior to his death shall not exceed, in the aggregate, the amount specified in paragraph (e)(1) or (2) of this section, whichever is applicable: Provided, That no limitation on amount shall apply if the estate or beneficiary thereof is not an affiliate of the issuer;

(vi) When two or more affiliates or other persons agree to act in concert for the purpose of selling securities of an issuer, all securities of the same class sold for the account of all such persons during any period of 3 months shall be aggregated for the purpose of determining the limitation on the amount of securities sold;

(vii) The following sales of securities need not be included in determining the amount of securities sold in reliance upon this section: securities sold pursuant to an effective registration statement under the Act; securities sold pursuant to an exemption provided by Regulation A (§ 230.251 through § 230.263) under the Act; securities sold in a transaction exempt pursuant to Section 4 of the Act (15 U.S.C. 77d) and not involving any public offering; and securities sold offshore pursuant to Regulation S (§ 230.901 through § 230.905, and Preliminary Notes) under the Act.

(f) Manner of sale. The securities shall be sold in "brokers' transactions" within the meaning of section 4(4) of the Act or in transactions directly with a "market maker," as that term is defined in section 3(a)(38) of the Securities Exchange Act of 1934, and the person selling the securities shall not (1) solicit or arrange for the solicitation of orders to buy the securities in anticipation of or in connection with such transaction, or (2) make any payment in connection with the offer or sale of the securities to any person other than the broker who executes an order to sell the securities. The requirements of this paragraph, however, shall not apply to securities sold for the account of the estate of a deceased person or for the account of a beneficiary of such estate provided the estate or beneficiary thereof is not an affiliate of the issuer; nor shall they apply to securities sold for the account of any person other than an affiliate of the issuer provided the conditions of paragraph (k) of this rule are satisfied.

(g) Brokers' transactions. The term "brokers' transactions" in section 4(4) of the Act shall for the purposes of this rule be deemed to include transactions by a broker in which such broker--

(1) Does not more than execute the order or orders to sell the securities as agent for the person for whose account the securities are sold; and receives no more than the usual and customary broker's commission;

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

17 CFR S 230.144

(2) Neither solicits nor arranges for the solicitation of customers' orders to buy the securities in anticipation of or in connection with the transaction; provided, that the foregoing shall not preclude (i) inquiries by the broker of other brokers or dealers who have indicated an interest in the securities within the preceding 60 days, (ii) inquiries by the broker of his customers who have indicated an unsolicited bona fide interest in the securities within the preceding 10 business days; or (iii) the publication by the broker of bid and ask quotations for the security in an inter-dealer quotation system provided that such quotations are incident to the maintenance of a bona fide inter- dealer market for the security for the broker's own account and that the broker has published bona fide bid and ask quotations for the security in an inter- dealer quotation system on each of at least twelve days within the preceding thirty calendar days with no more than four business days in succession without such two-way quotations;

Note To Paragraph (g)(2)(ii): The broker should obtain and retain in his files written evidence of indications of bona fide unsolicited interest by his customers in the securities at the time such indications are received.

(3) After reasonable inquiry is not aware of circumstances indicating that the person for whose account the securities are sold is an underwriter with respect to the securities or that the transaction is a part of a distribution of securities of the issuer. Without limiting the foregoing, the broker shall be deemed to be aware of any facts or statements contained in the notice required by paragraph (h) of this section.

Notes: (i) The broker, for his own protection, should obtain and retain in his files a copy of the notice required by paragraph (h) of this section.

(ii) The reasonable inquiry required by paragraph (g)(3) of this section should include, but not necessarily be limited to, inquiry as to the following matters:

(a) The length of time the securities have been held by the person for whose account they are to be sold. If practicable, the inquiry should include physical inspection of the securities;

(b) The nature of the transaction in which the securities were acquired by such person;

(c) The amount of securities of the same class sold during the past 3 months by all persons whose sales are required to be taken into consideration pursuant to paragraph (e) of this section;

(d) Whether such person intends to sell additional securities of the same class through any other means;

(e) Whether such person has solicited or made any arrangement for the solicitation of buy orders in connection with the proposed sale of securities;

(f) Whether such person has made any payment to any other person in connection with the proposed sale of the securities; and

(g) The number of shares or other units of the class outstanding, or the relevant trading volume.

(h) Notice of proposed sale. If the amount of securities to be sold in reliance upon the rule during any period of three months exceeds 500 shares or other units or has an aggregate sale price in excess of $10,000, three copies of a notice on Form 144 shall be filed with the Commission at its principal office in Washington, D.C.; and if such securities are admitted to trading on any national securities exchange, one copy of such notice shall also be transmitted to the principal exchange on which such securities are so admitted. The Form 144 shall be signed by the person for whose account the securities are to be sold and shall be transmitted for filing concurrently with either the placing with a broker of an order to execute a sale of securities in reliance upon this rule or the execution directly with a market maker of such a sale. Neither the filing of such notice nor the failure of the Commission to comment thereon shall be deemed to preclude the Commission from taking any action it deems necessary or appropriate with respect to the sale of the securities referred to in such notice. The requirements of this paragraph, however, shall not apply to securities sold for the account of any person other than an affiliate of the issuer, provided the conditions of paragraph (k) of this rule are satisfied.

(i) Bona fide intention to sell. The person filing the notice required by paragraph (h) of this section shall have a bona fide intention to sell the securities referred to therein within a reasonable time after the filing of such notice.

(j) Non-exclusive rule. Although this rule provides a means for reselling restricted securities and securities held by affiliates without registration, it is not the exclusive means for reselling such securities in that manner. Therefore, it does not eliminate or otherwise affect the availability of any exemption for resales under the Securities Act that a person or entity may be

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

17 CFR S 230.144

able to rely upon.

(k) Termination of certain restrictions on sales of restricted securities by persons other than affiliates. The requirements of paragraphs (c), (e), (f) and (h) of this section shall not apply to restricted securities sold for the account of a person who is not an affiliate of the issuer at the time of the sale and has not been an affiliate during the preceding three months, provided a period of at least two years has elapsed since the later of the date the securities were acquired from the issuer or from an affiliate of the issuer. The two-year period shall be calculated as described in paragraph (d) of this section.

(Authority: Secs. 2(11), 4(1), 4(4), 19(a), 19(c), 48 Stat. 74, 75, 77, 85; secs. 201, 203, 209, 210, 48 Stat. 904, 906, 908; secs. 1-4, 6, 68 Stat. 683, 684; sec. 12, 78 Stat. 580, 84 Stat. 1480; sec. 308(a)(2), 90 Stat. 58 (15 U.S.C. 77b(11), 77d(1), 77d(4), 77s(a); sec. 209, 59 Stat. 167; sec. 3(b), 48 Stat. 75; sec. 308(a)(1), (2), (3), 90 Stat. 56, 57; secs. 2, 18, 92 Stat. 275, 962; secs. 505, 622, 701, 94 Stat. 2291, 2292, 2294 (15 U.S.C. 77c(b), 77d(1), 77s(a), 77s(c))

[37 FR 596, Jan. 14, 1972, as amended at 39 FR 6071, Feb. 19, 1974; 39 FR 8914, March 7, 1974; 43 FR 43711, Sept. 27, 1978; 43 FR 54230, Nov. 21, 1978; 44 FR 15612, March 14, 1979; 45 FR 12391, Feb. 28, 1980; 46 FR 12197, Feb. 12, 1981; 47 FR 11261, March 16, 1982; 48 FR 44771, Sept. 30, 1983; 53 FR 12921, April 20, 1988; 55 FR 17944, April 30, 1990; 58 FR 67312, Dec. 21, 1993; 61 FR 21359, May 9, 1996; 62 FR 9244, Feb. 28, 1997; 63 FR 9642, Feb. 25, 1998; 64 FR 61400, Nov. 10, 1999]

<General Materials (GM) - References, Annotations, or Tables>

17 C. F. R. § 230.144

17 CFR § 230.144

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works