

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**H.T.E., Inc., a Florida corporation,**

        **Plaintiff,**

**CASE NO.:  6:01-cv-1366-Orl-31DAB**

**vs.**

**TYLER TECHNOLOGIES, INC., a**
**Delaware corporation,**

        **Defendant.**

_____/

### PLAINTIFF, H.T.E., INC.'S MOTION FOR UNITED STATES DISTRICT JUDGE'S RECONSIDERATION OF THE MAGISTRATE'S ORDER OF AUGUST 8, 2002 AND THE MAGISTRATE'S ORDER OF JULY 22, 2002 AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, H.T.E., INC. ("HTE"), by and through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 72(a) and 28 U.S.C. § 636(b)(1)(A), hereby moves this Court for The United States District Judge's reconsideration of the Magistrate's Order dated August 8, 2002 ("August Magistrate's Order") (Docket No. 88) and the Magistrate's Order dated July 22, 2002 ("July Magistrate's Order") (Docket No. 81).  The August Magistrate's Order improperly ruled on HTE's motion requesting that the presiding United States District Judge reconsider the July Magistrate's Order.  See HTE's Motion for Reconsideration (Docket No. 86) and Supplement to its Motion for Reconsideration (Docket No. 87) (collectively "Motion for Reconsideration").

For the reasons more fully set forth in the Memorandum of Law, the Magistrate was not the proper judicial officer to decide HTE's Motion for Reconsideration of the July Magistrate's Order; accordingly, the August Magistrate's Order is "contrary to law" and the presiding United States District Judge should consider and rule on HTE's Motion for Reconsideration of the July Magistrate's Order.

## MEMORANDUM OF LAW

### I.    Introduction

The instant motion does not involve a standard discovery issue. This motion involves an attempt by Defendant Tyler Technologies, Inc. ("Tyler") to compel production of a confidential settlement agreement[1] to which Tyler was plainly not a party.[2] Tyler raises a "privity" argument to assert that the Settlement Agreement should be produced because Tyler may somehow be covered by the release language of the Settlement Agreement; however, Tyler's argument is clearly ill-founded and wrong. First, Tyler was not a party to the Harwards/HTE Suit. Second, Tyler paid no consideration in connection with that settlement. Third, both HTE, through its president and CEO, and the Harwards, through their lawyer who negotiated and drafted the

---

[1] The settlement agreement contains a confidentiality and non-disclosure provision which requires the parties to use their best efforts to prevent its disclosure to any person not a party to the settlement agreement, such as Tyler. For this reason, as well as others expressed herein, this discovery issue should ultimately be decided by the United States District Judge.

[2] In 1999, HTE, on the one hand, and Dennis and Jack Harward (the "Harwards"), on the other hand, were engaged in a dispute over a breach of a severance agreement between HTE and the Harwards. Said dispute was the subject of a prior civil action brought in the Circuit Court of the Eighteenth Judicial Circuit, in and for Seminole County, Florida, Case No. 99-CA-1995-16-B (the "Harwards/HTE Suit"), to which Tyler was not a party. HTE and the Harwards settled the Harwards/HTE Suit and entered into a confidential settlement agreement (the "Settlement Agreement") which contained releases of the claims between HTE and the Harwards.

Settlement Agreement, have testified that Tyler is not covered within the scope of the Settlement Agreement's terms and provisions, including the release provision, and that, moreover, neither HTE nor the Harwards intended that Tyler be released under the release provision of the Settlement Agreement.  And, fourth, as recently as August 6, 2002, Tyler's vice president and general counsel, Lynn Moore, testified that Tyler would not be bound by the Circuit Judges' rulings in the Harwards/HTE Suit.  See excerpts of Deposition transcript and Exhibit 97 of H. Lynn Moore's Deposition at p. 238-242, a true and accurate copy of which is attached hereto as Exhibit "A".  In short, where both parties to a settlement agreement agree that a particular third party is not covered within the scope of that agreement's terms and provisions, including the release provision, and where that third party is not a party to the settled litigation, was not a party to the settlement, paid no consideration for the settlement, and would not be bound by the court's rulings, then said third party cannot, through some vague assertion of "privity" or otherwise, assert a basis for production of the confidential settlement agreement.  See Doe v. Methacton School Dist., 164 F.R.D. 175 (E.D. Pa. 1995) (court denied a party's motion to compel the production of a confidential settlement agreement/release).

II.     **Statement of the Case and Facts**

On June 28, 2002, Tyler filed a motion to compel discovery ("Motion to Compel") in which it sought to compel the production of any release or release language contained in the Settlement Agreement between the Harwards, on the one hand, and HTE, on the other, in the Harwards/HTE Suit.  The Harwards have refused to consent to the disclosure of the Settlement Agreement to Tyler.  HTE filed a memorandum of law in opposition to Tyler's motion to compel

(Docket No. 75) and filed supporting affidavits from Douglas B. Brown, counsel for the Harwards (Docket No. 77), who negotiated and drafted the Settlement Agreement for the Harwards, and Joseph Loughry, President and CEO of HTE (Docket No. 78).

The affidavits of Joseph Loughry and Douglas B. Brown clearly show that Tyler was not a party to the Settlement Agreement or the Harwards/HTE Suit and was not intended to be released under the release provisions of the Settlement Agreement. Tyler has failed to establish the relevance of the release language in the Settlement Agreement and, despite HTE's explanation and factually supportive affidavits as to the document's lack of relevance, the July Magistrate's Order granted Tyler's Motion to Compel and ordered the disclosure of this irrelevant and confidential document. Accordingly, the July Magistrate's Order requiring disclosure of this confidential release was clearly erroneous and contrary to law.

Pursuant to 28 U.S.C. §636, HTE filed the Motion for Reconsideration requesting that the United States District Judge reconsider the July Magistrate's Order. The Magistrate then issued the August Magistrate's Order, denying HTE's Motion for Reconsideration. The United States District Judge, not the Magistrate, is required to reconsider the July Magistrate's Order under 28 U.S.C. §636 and Fed.R.Civ.P. 72. Accordingly, the August Magistrate's Order directly conflicts with the procedural requirement of Fed.R.Civ.P. 72(a), and 28 U.S.C. §636, making it contrary to the law.

Counsel for HTE has attempted in good faith to resolve the issues raised in this motion with counsel for Tyler, pursuant to Local Rule 3.01(g). However, the parties have been unable to agree on a resolution of the motion.

## III.  Argument

### A.  The August Magistrate's Order is Clearly Erroneous and Contrary to Law

The Magistrate was not the proper judicial officer to rule on HTE's Motion for Reconsideration. 28 U.S.C. §636(b)(1)(a) requires that

> [a] judge of the court [district court judge] may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law. 28 U.S.C. 636(b)(1)(A) (Emphasis added).

Furthermore, Federal Rule of Civil Procedure 72(a) states,

> [t]he district judge to whom the case is assigned shall consider [objections to a magistrate judge's order] and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.

It is clear Federal Rule 72(a) "addresses court-ordered referrals of nondispositive matters under 28 U.S.C. § 636(b)(1)(A)." Advisory Committee Note, Rule 72, 1983 Addition.[3]    HTE specifically filed its Motion for Reconsideration pursuant to 28 U.S.C. §636(b)(1)(A), therefore the Motion for Reconsideration and this motion should be ruled on by the United States District Judge not the Magistrate.

Tyler tacitly acknowledged that the United States District Judge was the proper judicial officer to review HTE's Motion for Reconsideration. Tyler stated, "A district court may reverse a non-dispositive ruling of a magistrate judge only where it is clearly erroneous or contrary to

---

[3] Local Rule 6.10(c)(18) permits a Magistrate to supervise and determine "all pretrial proceedings and motions made in civil cases including, without limitation, rulings upon all procedural and discovery motions." However, this rule must be "applied, construed and enforced to avoid inconsistency with other governing statutes and rules of court," M.D. Fla. L.R. 1.01(b).

law." Tyler's Opposition to HTE's Motion for Reconsideration of Magistrate's Order of July 22, 2002 (Docket No. 90), p. 6, <u>citing</u> Fed.R.Civ.P. 72(a), <u>and</u> 28 U.S.C. § 636(b)(1)(A) (internal quotations omitted). Tyler further stated that "HTE filed the instant motion for reconsideration pursuant to 28 U.S.C. §636(b)(1)." <u>Id.</u> at 5. Tyler's assertion that HTE's Motion for Reconsideration would be heard by the District Court, explicitly recognizes that HTE's Motion for Reconsideration was filed under Rule 72(a) and § 636(b)(1). Accordingly, the August Magistrate's Order was contrary to law, and the United States District Judge must review both the August Magistrate's Order and the July Magistrate's Order.

This situation is similar to <u>Kaiser Aluminum & Chemical Corp. v. Phosphate Engineering and Construction Co., Inc.</u>, where the Magistrate "first entered an order compelling discovery of certain documents from Defendant . . . Defendant immediately asked for reconsideration of the order []; a request that was denied by [the] Magistrate." 153 F.R.D. 686, 687 (M.D. Fla. 1994). In <u>Kaiser</u>, the District Court, in reviewing an order entered by a Magistrate, recognized Rule 72(a)'s requirement that "[t]he district judge to whom the case is assigned shall consider" objections to the Magistrate's order. <u>Id.</u>, quoting Fed.R.Civ.P. 72(a). Therefore, since the August Magistrate's Order is clearly erroneous and contrary to law, HTE's Motion for Reconsideration must be reviewed by the United States District Judge pursuant to Rule 72(a).

Moreover, the case law cited in the August Magistrate's Order asserts the wrong standard to be applied with respect to HTE's Motion for Reconsideration. The cases cited in the August Magistrate's Order concern situations where the party has requested that the District Court reconsider issues raised in a motion not filed pursuant to Fed.R.Civ.P. 72 and 28 U.S.C. §636. In

those types of situations, the movant is required to assert new issues of fact or law since the United States District Judge or Magistrate has presumably already addressed those issues. However, a motion for reconsideration under Fed.R.Civ.P. 72 and 28 U.S.C. §636 is similar to an appeal where the United States District Judge reviews the Magistrate's Order to determine if it is clearly erroneous and/or contrary to law. See 28 U.S.C. §636(b)(1)(A) (2001). Nothing in the United States Code or Federal Rules of Civil Procedure require the movant to assert new issues of law or fact when filing a motion under Fed.R.Civ.P. 72 and 28 U.S.C. §636.[4]

**B.    The July Magistrate's Order is Clearly Erroneous and Contrary to Law**

The July Magistrate's Order is clearly erroneous and contrary to law and therefore should be reversed under 28 U.S.C. §636 and Fed.R.Civ.P. 72(a). Tyler has failed to establish the relevance of the release and, despite HTE's explanation and factually supportive affidavits as to the release's lack of relevance, the July Magistrate's Order compels disclosure of an irrelevant document. Moreover, the Harwards and HTE's right and interest in maintaining the confidentiality of the Settlement Agreement and any release provisions contained therein outweighs any harm to Tyler from the non-disclosure of a document that does not bare any relevance to the issues in the instant case. Accordingly, the July Magistrate's Order's finding that the confidential release language was relevant to the issues in this case was clearly erroneous and contrary to law.

---

[4] Significantly, however, as will be discussed in more detail below, new facts further supporting the denial of Tyler's Motion to Compel were discovered during the deposition of Tyler's general counsel, Lynn Moore, on August 6, 2002.

1.    **Release Is Not Relevant**

Despite Tyler's bare allegation of relevance and HTE's legal explanation, with evidentiary support, of irrelevance, the July Magistrate's Order concluded that relevance was obvious and granted Tyler's Motion to Compel.  The law not only requires relevance to support the disclosure of confidential settlement agreements, see Walker v. Prudential Property and Casualty Ins. Co., 286 F.3d 1270, 1280 (11th Cir. 2002)[5], but also requires that the requesting party make a showing of relevance, see Centillion Data Systems, Inc. v. Ameritech Corp., 193 F.R.D. 550, 552 (S.D. Ind. 1999).[6]  Tyler made no such showing and HTE offered indisputable evidence demonstrating that the release is not relevant to HTE's claims against it.  The July Magistrate's Order is clearly erroneous and contrary to law because Tyler, like the plaintiff in Serina, 128 F.R.D. at 293, "failed to meet its burden of making out a factual basis for its claim of relevance of the settlement information sought."

This case is similar to Doe v. Methacton School Dist., 164 F.R.D. 175 (E.D. Pa. 1995), where the plaintiff and her family entered into a settlement/release with two defendants to a litigation.  The release included a strict confidentiality provision that precluded the signatories from disclosing the release or its terms to anyone, including the remaining parties without Court approval.  Id.  The remaining defendant sought discovery of the settlement agreement.  Id.  On

---

[5] Despite the Magistrate's and Tyler's position to the contrary, the Eleventh Circuit Court's ruling in Walker does not obviate the need for Tyler to establish the relevance of the Settlement Agreement to compel its disclosure.  In fact, the Court determined that the subject documents were not relevant without specifically addressing which party had the burden of proof.  Id.

the basis of Federal Rule of Civil Procedure 26(b)(1), the court reasoned that the person requesting confidential information must have some heightened showing of relevance.   Id. Discovery is permitted only if the movant   "lays foundation by adducing from other sources evidence indicating that the settlement may be collusive."   Id.; *see also*, Thornton v. Syracuse Savings Bank, 961 F.2d 1042 (2d Cir. 1992).   The court ultimately found that the defendant had not shown the relevance of the release by merely making a broad assertion that the release could lead to admissible evidence and saying that it was "clearly" relevant to the issue of damages.   Id.

Here, Tyler's similar broad and conclusory (and wrong) assertion that the Settlement Agreement could lead to admissible evidence does not meet this standard.   Tyler was not even a co-party with the Harwards in the Harwards/HTE Suit and therefore would have even less of a basis than the defendants in Methacton for the disclosure of a confidential settlement agreement.

More specifically, the affidavits of HTE's CEO and president, Joseph Loughry, and the Harwards' counsel, Douglas B. Brown, indisputably show that the confidential Settlement Agreement, and any release contained therein, are wholly irrelevant to HTE's tort claim against Tyler and that, despite Tyler's so-called "privity" argument, the order compelling production of the Settlement Agreement to third-party Tyler, is clearly erroneous.   Indeed, it is indisputable that (i) Tyler was not a party to the Harwards/HTE Suit, (ii) Tyler paid no consideration in connection with that settlement, and (iii) both HTE, through its president and CEO, and the

---

(continued)
[6] While not specifically ruling on the issue, the United States District Court for the Middle District of Florida has recognized that other courts require, in the context of confidential settlement agreements, a particularized showing of relevance.  See, Serina v. Albertson's, Inc., 128 F.R.D. 290, 293 (M.D.Fla. 1989).

Harwards, through their lawyer who negotiated and drafted the Settlement Agreement, have testified that Tyler is not covered within the scope of the Settlement Agreement's terms and provisions, including the release provision, and that, moreover, neither HTE nor the Harwards intended that Tyler be released under the release provisions of the Settlement Agreement. (Docket Nos. 77 and 78).

Furthermore, new facts have been discovered which further demonstrate that Tyler's "privity" assertion is not a valid basis for compelling production of the confidential Settlement Agreement. More specifically, in the Harwards/HTE Suit, the State Circuit Court entered an order on February 8, 2001, granting HTE's motion for partial summary judgment. A true and accurate copy of said order is attached hereto as Exhibit "A" and incorporated herein by reference. See also HTE's request for judicial notice dated December 21, 2001. (Docket No. 17). In this order, the State Circuit Court expressly ruled that the Harwards acted as a group when they purchased the Tyler stock and that, moreover, said purchase constituted a breach of the Harwards' severance agreement with HTE. On August 6, 2002, the deposition of Tyler's vice president and general counsel, H. Lynn Moore, was taken in the instant case. In said deposition, the following colloquy regarding this order occurred:

> Q.    Do you acknowledge that Tyler is bound by that determination that was rendered by the circuit court in the H.T.E./Harward litigation?

MR. WILSON:  The same objections as were made to the prior two questions or three questions.[7]

Q.      (BY MR. FOSTER)  You may answer, sir.

A.      No, I don't acknowledge that.

Q.      And why is that, sir?

A.      I don't know what this litigation was about.  I wasn't a party to it.

Deposition of H. Lynn Moore at p. 242.

Tyler may not, on the one hand, assert that it would not be bound by the rulings of the State Circuit Court in the Harwards/HTE Suit and yet, on the other hand, assert on some so-called privity basis that it falls within the scope of a release provision set forth in a confidential Settlement Agreement between the parties to the prior Harwards/HTE Suit.  This is particularly true where, as here, both of those parties have testified that Tyler is not covered within the scope of the Settlement Agreement's terms and provisions, including the release provision, and that neither of them intended for Tyler to be released under said release provision.  See, Sasser v. First Joint Stock Land Bank of Montgomery, Ala., 99 F.2d 744 (11th Cir. 1938)(No privity where appellant was not a party to the prior suit and had no interest therein, other than that of being a material witness.)

---

[7] In his objections, Tyler's counsel, William Wilson, objected to these questions because, in pertinent part, "Tyler's not a party to this litigation . . . ".  Deposition of H. Lynn Moore at p. 240.

In light of the affidavits filed by HTE, Tyler not being a party to the Harwards/HTE Suit or Settlement Agreement, Tyler <u>not</u> falling within the scope of the Settlement Agreement's release provisions, and Tyler's testimony that it would not be bound by the rulings rendered in the Harwards/HTE Suit, Tyler has not asserted a proper basis for why the document is relevant or reasonably calculated to lead to the discovery of admissible evidence. Therefore, the July Magistrate's Order is clearly erroneous and contrary to law and HTE should not be required to produce the contents of the Settlement Agreement.

### 2. The Prejudicial Effect Of Disclosing The Release Outweighs Any Harm To Tyler By Its Nondisclosure

Settlement agreements, such as the one made by the Harwards and HTE, are encouraged by the maintenance of the confidential nature of such agreements. The confidentiality of settlement agreements is a primary inducement to parties to settle cases. <u>Centillion Data Systems</u>, 193 F.R.D. at 552. Therefore, courts require a strong countervailing interest to breach that confidentiality. <u>Id</u>. The court in <u>Centillion</u> found that the defendant did not establish a strong countervailing interest and therefore the court did not compel the production of the settlement agreement. <u>Id</u>.

Furthermore, HTE and the Harwards specifically agreed to keep the Settlement Agreement confidential. Aff'd of Loughry (Docket No. 78), ¶ 5 and Aff'd of Brown (Docket No. 77), ¶ 6. The Harwards have also specifically denied HTE consent to disclose the Settlement Agreement and release language contained therein. Aff'd of Brown (Docket No. 77), ¶ 10. <u>see</u>,

Centillion Data Systems, 193 F.R.D. at 552. (where the parties specifically agreed to confidentiality, the effectiveness of contracts is an interest the court will protect).

Tyler has not shown that these interests are outweighed by its interest in disclosure of the release. In fact, since the Settlement Agreement in the Harwards/HTE Suit was not intended to, and plainly does not, release Tyler from any liability, there is no countervailing interest that can be asserted by Tyler. *See*, Butta-Brinkman v. FCA International, LTD., 164 F.R.D. 475 (N.D. Ill 1995) (holding that employer was not required to turn over confidential settlement agreements reached in other cases involving sexual harassment.). Therefore, HTE's need to keep the provisions of the Settlement Agreement confidential outweighs any alleged need for the discovery by Tyler, rendering the July Magistrate's Order requiring the disclosure of the subject document clearly erroneous and contrary to law.

**IV.    Conclusion**

For the reasons more fully set forth above, Plaintiff, HTE, Inc., respectfully requests that the United States District Judge reconsider the August Magistrate's Order and the July Magistrate's Order, declare that the Magistrate's orders were clearly erroneous, and otherwise deny Tyler's Motion to Compel.

DATED this 19th day of August, 2002.

BAKER & HOSTETLER LLP
2300 Sun Trust Center
200 South Orange Avenue
Post Office Box 112
Orlando, Florida 32802-0112
Telephone: (407) 649-4000
Telecopier: (407) 841-0168

Attorneys for Plaintiff, H.T.E., Inc.

By: _____
John W. Foster, Sr.
Florida Bar No. 318620
Robert C. Yee
Florida Bar No.0096784

## CERTIFICATE OF SERVICE

I   HEREBY   CERTIFY   that   a   true   and   correct   copy   of   the   foregoing   Motion   for
Reconsideration has been furnished via hand delivery to **WILLIAM B. WILSON, ESQ.**, Holland
& Knight LLP, 200 S. Orange Avenue, Suite 2600, Post Office Box 1526, Orlando, Florida 32802-
1526 this 19th day of August, 2002.

_____
Robert C. Yee

1              IN THE UNITED STATES DISTRICT COURT

              FOR THE MIDDLE DISTRICT OF FLORIDA

2                      ORLANDO DIVISION

3                  CASE NO.: 6:01-CV-1366-Orl-31DAB

4     H.T.E., Inc., a Florida corporation,

          Plaintiff,

5

      VS.

6

      TYLER TECHNOLOGIES, INC.,

7     a Delaware corporation,

          Defendant.

8

9     ****************************************************************

              VIDEO DEPOSITION OF H. LYNN MOORE

10                      VOLUME 1

      ****************************************************************

11

12

13

14

15

16

17

18          ANSWERS AND DEPOSITION OF H. LYNN MOORE, produced as a

19     witness at the instance of the Plaintiff, taken in the

20     above-styled and -numbered cause on the 6th day of August,

21     2002, A.D., beginning at 9:04 a.m., before Brandy Cooper, a

22     Certified Shorthand Reporter in and for the State of Texas,

23     in Hilton Dallas Park Cities, located at 5954 Luther Lane,

24     Dallas, Texas, in accordance with the Federal Rules of

25     Civil Procedure and the agreement hereinafter set forth.



Page 238

1 to you?
2     A. Did I object to the language?
3     Q. Yes, sir.
4     A. No, I did not object to the language.
5     Q. And why not?
6     A. I think that falls within attorney/client
7 privilege.
8         (Exhibit No. 97 was marked.)
9     Q. (BY MR. FOSTER) Sir, I'm going to hand you what's
10 been marked as Exhibit 97, which is a copy of an order from
11 the circuit court in the 18th judicial circuit for the
12 state of Florida --
13     A. Okay.
14     Q. -- that was rendered by the court in litigation
15 that took place between the Harwards and H.T.E. And this
16 is a copy of an order granting partial summary judgment for
17 H.T.E. in that case dated February 8th of 2001.
18         Did you receive a copy of this order shortly
19 after it was entered by the court?
20     A. I've never seen this until today.
21     Q. (Inaudible) is that right?
22     A. Yes.
23     Q. Do you know if Tyler received a copy of this
24 shortly after the order was entered?
25     A. I don't believe it did.

Page 240

1 a Florida lawyer. Calls for a legal conclusion that he
2 isn't qualified to make. Secondly, John, you know full
3 well Tyler's not a party to this litigation, and this order
4 is not a final order.
5         MR. FOSTER: Are you done with your speaking
6 objection and your coaching of the witness?
7         MR. WILSON: No. I'm not coaching the
8 witness. I'm just telling yo what the facts are.
9         MR. FOSTER: I object to you coaching the
10 witness, Mr. Wilson.
11         MR. WILSON: That's fine. Object all you
12 want.
13         MR. FOSTER: You've done it before, and it's
14 something that we don't engage in, and the record will
15 speak for itself in that regard.
16         MR. WILSON: The regard will speak for it.
17 That's true.
18     Q. (BY MR. FOSTER) But going back to my question to
19 you, do you acknowledge that Tyler is bound by the finding
20 of the circuit court in this Harward/H.T.E. litigation
21 where the court found, in this order granting partial
22 summary judgment, that the Harwards acted as a group when
23 they purchased the Tyler stock?
24         MR. WILSON: Same objection.
25     A. No, I do not.

Page 239

1     Q. You'll see down at the bottom of the first page of
2 Exhibit 97, subparagraph A1, the order -- orders and
3 adjudges as follows: The Harwards acted as a group when
4 they purchased the Tyler stock.
5         Do you see that?
6     A. I see that language.
7     Q. Do you acknowledge that Tyler is bound by the
8 finding of the court in this Harward versus H.T.E.
9 litigation?
10         MR. WILSON: I object to the form of the
11 question. Number one it calls for a legal conclusion.
12 Number two it's not true. It's not a final order.
13     Q. (BY MR. FOSTER) Did I say final order?
14     A. Yes. No.
15         MR. WILSON: But I mean, you're not bound --
16         MR. FOSTER: I want to know, did I say final
17 order? If I said final order, I will rephrase the
18 question.
19         MR. WILSON: No, but you're asking him to --
20         MR. FOSTER: Well, we'll just find out. Did
21 I say final order or not?
22         (Requested portion was read.)
23         MR. WILSON: The answer is -- I mean, the
24 objection is going to be -- the objection is going to be
25 number one, there's no predicate. I mean, this man is not

Page 241

1     Q. (BY MR. FOSTER) And why is that?
2     A. Well, there are a number of reasons why, and I
3 think some of those probably fall within the
4 attorney/client privilege.
5     Q. All right. I do not want you to give me anything
6 that you consider to fall within the attorney/client
7 privilege, and I will imply or -- I will take it to mean
8 that your counsel has instructed you not -- instructed you
9 not to disclose that type of privileged information. All
10 right?
11     A. Okay.
12     Q. So with that, go ahead and give me your answer.
13     A. Are you asking for my personal opinion?
14     Q. I'm asking for your testimony on it. And if you
15 want to say that's your personal opinion, then you may
16 qualify it as such.
17     A. Number one, this is first time I've seen this
18 document. Number two, while I'm a lawyer, I'm not a
19 Florida lawyer. My understanding is that this case was
20 settled before trial and before this became a final order.
21 I also have the personal opinion that that finding is
22 wrong.
23     Q. And besides those reasons, any other reasons?
24     A. Other reasons would be attorney/client privilege,
25 and those reasons are mine -- I qualify those as my

Page 242

1  personal opinion.
2      Q.  Okay.  Subparagraph B, this order shows or --
3  strike that.
4          Subparagraph B, this order rules, orders and
5  adjudges that as follows:  This purchase constituted a
6  breach of the Harwards severance agreement with H.T.E..  Do
7  you see that?
8      A.  I see it.
9      Q.  Do you acknowledge that Tyler is bound by that
10  determination that was rendered by the circuit court in the
11  H.T.E./Harward litigation?
12          MR. WILSON:  The same objections as were made
13  to the prior two questions or three questions.
14      Q.  (BY MR. FOSTER)  You may answer, sir.
15      A.  No, I don't acknowledge that.
16      Q.  And why is that, sir?
17      A.  I don't know what this litigation was about.  I
18  wasn't a party to it.  All these findings -- these findings
19  that you're reading to me are the first I've seen them.
20  And if you're asking me if I'm -- if I'm going to agree
21  that Tyler is bound by them, I can't answer that question.
22          (Exhibit No. 98 was marked.)
23      Q.  (BY MR. FOSTER)  Sir, I'm going to hand you what's
24  been marked as Exhibit 98.  Do you recognize this as being
25  a true and accurate copy of a letter that was delivered to

Page 243

1  Tyler Technologies on October 29 of 2001?
2      A.  Yes.
3          (Exhibit No. 99 was marked.)
4      Q.  (BY MR. FOSTER)  And I am now going to hand you
5  Exhibit 99.  And do you recognize Exhibit 99 -- it's the
6  second page of that exhibit -- as being a true and accurate
7  copy of a response to what is now marked as Exhibit 98?
8      A.  Yes.
9      Q.  And you actually prepared and executed the
10  original letter on behalf of Tyler, correct?
11      A.  Yes.
12          (Exhibit No. 100 was marked.)
13      Q.  (BY MR. FOSTER)  Mr. Moore, I'd like to inquire
14  further about the relationship between Tyler and Jack
15  Harward if I may.  Let me hand you what is marked as
16  Exhibit 100.
17      A.  Okay.
18      Q.  And do you recognize this as being a true and
19  accurate copy of a letter you received from Lou Conti of
20  Holland & Knight law firm on September 11 of 2000?
21      A.  Yes.
22      Q.  Now, the letter starts off by saying as follows:
23  I would like to get together with you by conference call or
24  in person to finalize a firm plan to deal with the funds
25  which are owed to Jack Harward.

Page 244

1          Do you see that, sir?
2      A.  I see that.
3      Q.  First of all did you, subsequent to this September
4  11th 2000 letter, get together with Mr. Conti by conference
5  call or in person, as he put it here, finalize a firm
6  plan for dealing with the funds which are owed to Jack
7  Harward?
8      A.  I don't think so.
9      Q.  Following this September 11, 2000, did you have a
10  conference call with or meet with Mr. Conti to discuss that
11  topic?
12      A.  I don't think so, but I might have.  I don't -- I
13  don't remember.  I don't think so.
14      Q.  Do you recall having a meeting, after this
15  September 11th, 2000 date, with anyone about that topic?
16      A.  No.
17      Q.  Do you know do you know what Mr. Conti meant when
18  he said, "...to deal with the funds which are owed to Jack
19  Harward"?
20      A.  That would be speculation on my part.
21          (Exhibit No. 101 was marked.)
22      Q.  (BY MR. FOSTER)  Let me hand you what's been
23  marked as Exhibit 101.  This appears to be a copy of an
24  e-mail communication or, I should say, e-mail
25  communications between you and Mr. Conti in the October

Page 245

1  2000 time frame.
2      A.  That's correct.
3      Q.  And is Exhibit 101 a true and accurate copy of the
4  actual e-mail communications that took place between you
5  and Mr. Conti between the dates of October 18 and October
6  31, 2000?
7      A.  It appears to be.
8      Q.  In Mr. Conti's e-mail communication to you dated
9  October 18, 2000, he states as follows:  Dear Lynn, sorry I
10  missed you today.  Would you please respond to let me know
11  the results of your conversation with Mr. Waters regarding
12  reimbursement of the legal expenses incurred by Dennis and
13  Jack.  Thank you.
14          Did you understand that to mean the legal
15  expenses being incurred by Dennis and Jack in their
16  litigation -- Dennis and Jack Harward in their litigation
17  with H.T.E.?
18      A.  Yes.
19      Q.  Now, this infers that there had been some prior
20  conversations about that topic.  Had there been?
21      A.  I don't recall.  He may have called me and -- and
22  asked me about that topic, but I don't specifically recall
23  the conversation.
24      Q.  This infers that basically he wanted -- he wanted
25  to know what the results of your conversation was with

IN THE CIRCUIT COURT OF THE
EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR SEMINOLE COUNTY,
FLORIDA

CASE NO. 99-CA-1995-CA-15-W

DENNIS J. HARWARD and
JACK L. HARWARD,

          Plaintiffs,

vs.

H.T.E., INC., a Florida corporation,

          Defendant.

_____/

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT FOR DEFENDANT/COUNTERPLAINTIFF

       THIS MATTER was heard on the motion for summary judgment, which was

filed on January 8, 2001 by the Defendant/Counterplaintiff, H.T.E., Inc. ("THE), and this Court

having considered the record, having heard argument of counsel, and being otherwise apprised in

its premises, it is hereby

       ORDERED AND ADJUDGED as follows:

1.  The pleadings, depositions, answers to interrogatories, and admissions on

     file, together with the relevant affidavits, show that there is no genuine

     issue as to any material fact and that HTE is entitled to partial summary

     judgment as a matter of law as to the following matters:

     a)  The Harwards acted as a group when they purchased the Tyler stock.



EXHIBIT
97

H 1087

b) This purchase constituted a breach of the Harwards' severance agreement with HTE.  An issue of fact remains as to whether this breach was excused by some prior breach of HTE.

c) The provision of the Harwards' employment agreement with regard to the purchase of greater than a 5% interest in a competitor is not governed by section 542.335, Fla. Stat. (1999).


DONE AND ORDERED in Chambers in Seminole County, Sanford, Florida, this ___ day of February, 2001.

's/ James E.C. Perry

James E.C. Perry, Circuit Court Judge


Copies furnished to:

Eli H. Subin, Esq.
200 South Orange Avenue, Suite 2600
Orlando, FL   32802

W.L. Kirk, Jr. Esq. and
Douglas B. Brown, Esq.
Rumberger, Kirk & Caldwell
Signature Plaza, Suite 300
201 S. Orange Avenue
Orlando, FL   32802-1873

John W. Foster, Sr., Esq.
P O Box 112
Orlando, Fl.  32802-0112


this ___ day of February, 2001.

/s/ Donna J. Roberson

Judicial Assistant

staff

H  1088