# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

CASE NO. 6:01-CV-1366-ORL-31DAB

H.T.E., Inc., a Florida corporation,

    Plaintiff,

v.

TYLER TECHNOLOGIES, INC., a
Delaware corporation,

    Defendant    /

## HTE'S SUPPLEMENTAL BRIEF SUPPORTING
## HTE'S MOTION FOR SUMMARY JUDGMENT

Pursuant to this Court's Order dated August 12, 2002, Plaintiff, H.T.E., Inc., ("HTE"), by and through its undersigned attorney, hereby submits this brief on the narrow issue of whether the Court should read a reasonable time limit into subsection 10(b). (Docket No. 91). In short, under the maxim *expressio unius est exclusio alterius*, the Court cannot read a reasonable time limit into subsection 10(b).

More specifically, in Florida, "the rule *expressio unius est exclusio alterius* is applicable in connection with statutory construction. This maxim . . . translated from Latin means: express mention of one thing is the exclusion of another . . . . ." Dobbs v. Sea Isle Hotel, 56 So.2d 341, 342 (Fla. 1952). See also Locke v. Hawkes, 595 So.2d 32, 36 (Fla. 1992). Where the Florida legislature intends to require action within a reasonable time period and expresses that intent within a statute, a court may not by judicial fiat insert a reasonableness requirement into a

provision of the statute that is silent on the subject.[1]  Id.  See also Landreth v. First National Bank, 45 F.3d 267, 269 (8th Cir. 1995).

In Landreth, the holder of a certificate of deposit (the "CD") sued a bank and the FDIC for failing to honor the CD.  The district court granted the FDIC's motion for summary judgment on the alternative grounds that (1) the statute of limitations had run and (2) the holder of the CD was required to make a demand for payment within a reasonable time and the failure for 20 years to make a demand for payment was unreasonable as a matter of law.

On appeal, the Eighth Circuit reversed, finding that (1) the statute of limitations could not begin to run until a demand was made and (2) the courts may not read a reasonable time limit into a statute that is otherwise silent on the subject.  The Eighth Circuit stated, in pertinent part:

> As is evident throughout the Uniform Commercial Code, when the Arkansas legislature intends to require an action to be taken within a reasonable time, this intention is expressed within the terms of the particular statute.  The Arkansas Uniform Commercial Code is replete with explicit requirements that actions be taken within a reasonable time.  Accordingly, under the maxim expressio unius est exclusio alterius, we will not imply a reasonableness requirement into a statute that is silent on the subject.
>
> ***
>
> The plain meaning of subsection (1) shows that if the Arkansas legislature wants an action to be taken in a reasonable time, they express it within the text of the statute as they have done repeatedly throughout the Uniform Commercial code.  Since § 4-3-118(e) is silent, we will not imply a requirement that demand for payment be made within a reasonable time.

Landreth, 45 F.3d at 269-270.

---

[1] It is for this same reason that the 60-day time period of subsection 10(a) may not on the basis of the *in pari materia* rule or otherwise be read into subsection 10(b).  See also State v. Bradford, 787 So.2d 811, 819 (Fla. 2001); Leisure Resorts, Inc. v. Rooney, 654 So.2d 911, 914 (Fla. 1995).

2

As in Arkansas, when the Florida legislature intends to require an action be taken within a reasonable time, this intention is expressed within the terms of the particular statute. Even more specifically, as with the Arkansas (and Florida) Uniform Commercial Code, the Florida Business Corporation Act is replete with express requirements that a certain action be taken within a reasonable time.[2] Subsection 10(b) of § 607.0902 is silent on the subject and, accordingly, under the maxim *expressio unius est exclusio alterius*, this Court cannot read a reasonableness requirement into subsection 10(b). Landreth, 45 F.3d at 269-270.

In its memorandum in opposition to HTE's motion for partial summary judgment, Tyler relied upon three cases to contend that this Court should read a reasonable time limit into subsection 10(b). See Docket No. 53 at 12n. 16. For two reasons, these cases are distinguishable and not applicable.

First, the cases relied upon by Tyler do not involve the rule of statutory construction *expressio unius est exclusio alterius*. In the instant case, however, said rule of statutory construction plainly applies. Indeed, within the context of the Florida Business Corporation Act, the Florida legislature imposed reasonable time limits where the legislature deemed appropriate, and, in fact, imposed a specific 60-day time limit for redemptions under subsection 10(a). Subsection 10(b) is silent on this subject, signifying that the doctrine *expressio unius est exclusio alterius* applies and the courts may not by judicial fiat read a reasonable time limit into subsection 10(b).

---

[2] See §§ 607.0505(6) (department must proceed "with reasonable dispatch"); 607.0604(1)(b) (corporation must "provide reasonable opportunity"); 607.0626(2) (corporation shall send the shareholder a written statement "within a reasonable time. . ."); 607.1601(4) (corporation must maintain its records in written form or in another form capable of conversion into written form within a reasonable time"); 607.1604(2) (corporation must allow a shareholder inspection "within a reasonable time").

3

Second, the cases relied upon by Tyler involve statutorily required actions for which reasonable time limits should be imposed, whereas substantial reasons exist for imposing no time limits on a Florida corporation's discretion to redeem its shares acquired in a control share acquisition. For instance, Burnsed v. Seaboard Coastline Ry. Co., 290 So.2d 13, 19 (Fla. 1974) involved a statute which requires lighted fuses or other visual warning devices to be placed in both directions from a railroad train whenever said train is engaged in a switching operation or is otherwise stopped so as to block a public highway, road or street. The statute is silent as to the length of time for placement of such warning devices. Obviously, the Florida Supreme Court found that the statute implied the allowance of a reasonable time after the blocking of a crossing to provide the requisite visual warning. In fact, the court expressly stated:

> Neither the courts nor the Legislature expect the impossible and this Court recognizes that the warning device cannot be put out instantaneously, but rather a reasonable time period is permitted to train personnel to comply with this statute.

Burnsed, 290 So.2d at 19. This determination is consistent with the intended purpose of that statute, namely to warn motorists and protect human life.

On the other hand, to read a reasonable time limit into subsection 10(b) would not only be contrary to this state's sound rules of statutory construction but, moreover, would frustrate the purpose of Florida's control share acquisition act. The staff analyses for both the Florida Senate and Florida House of Representatives indicate that, in pertinent part, the intent of the Florida control share acquisition act is to provide a safe haven where Florida corporations cannot be easily subjected to attempted takeovers and to otherwise create an incentive for corporations to incorporate or reincorporate in Florida. See State of Fla. House Comm. On Commerce, Final

4

<u>Staff Analysis</u>, HB. 358, Reg. Sess., at 5 (June 22, 1987); <u>State of Fla. Senate Staff Analysis and Economic Impact Statement</u>, HB. 358, Reg. Sess., at 3 (May 26, 1987).

In many cases, a corporation becomes the target of an attempted takeover because, from an economic standpoint, it is vulnerable to being taken over. Under such circumstances, the target corporation could ill-afford the price of redemption. To read a reasonable time limit into subsection 10(b) would create uncertainty on the part of Florida corporations as to what is the permissible period of time for redemption and would be contrary to the legislative intent of creating a safe haven. This uncertainty may very well force a Florida corporation to undertake a redemption before it is financially advisable to do so for fear of losing its redemption rights. Or, a Florida corporation such as HTE may wait until it is financially advisable to redeem, only to learn that it has been divested of its statutory redemption right because of the retrospective imposition of some "reasonable" but uncertain time limit. This is neither fair to the Florida corporation nor consistent with the statute's intended purpose.

It is noteworthy that a redemption under subsection 10(b) is permitted only if and when the shareholders vote <u>not</u> to accord full voting rights to the control shares. Thus, when redemption takes place under 10(b), the shareholders will have already determined that a change in control is not warranted and the control share acquirer will be holding a large block of non-voting stock.[3] The statute contemplates that, after the shareholders have voted not to accord voting rights to the control shares, the Florida corporation's right of redemption should not be

---

[3] On the other hand, a redemption under subsection 10(a) will occur <u>before</u> the shareholders have determined whether or not to accord full voting rights to the control shares and, thus, the initial decision as to whether a change in control is warranted is placed within the control of the Board of Directors rather than the shareholders. It is for this reason that the Florida legislature saw fit to impose a 60-day time period for redemptions under subsection 10(a).

limited in time, and a balance is achieved between the Florida corporation and the control share acquirer. On the one hand, the Florida corporation may redeem the control shares when its board of directors determines that redemption is appropriate. On the other hand, the acquirer may either (i) sell its stock to third parties when the acquirer deems it to be appropriate and proper and in whatever amounts the acquiring person deems to be proper and appropriate, or (ii) receive "fair value" upon redemption.

Tyler has previously taken the position that the existence of unlimited redemption rights under subsection 10(b) and the non-voting status of Tyler's HTE stock somehow precludes Tyler from selling said stock. (Docket No. 53 at p. 13). See also MSJ transcript at 31 l. 17-33 l. 23. However, neither unlimited redemption rights under subsection 10(b) nor the voting provisions of § 607.0902 prohibit an acquiring person, such as Tyler, from selling its acquired shares. Indeed, provided the acquiring person's sale of acquired shares to a third party does not itself constitute a control share acquisition, then such buyer would receive the shares free of redemption rights and cloaked with voting rights.[4]

---

[4] In a supplemental memorandum dated July 19, 2002 (Docket No. 80), Tyler asserted that, under Rule 144 (17 C.F.R. § 230.144) of the Securities Act of 1933, Tyler's shares of HTE stock are subject to certain restrictions on resale, including certain holding periods and subsequent volume limitations; however, Rule 144 considerations are not particularly relevant to the issue of whether subsection 10(b) accords a Florida corporation such as HTE an unlimited time period to redeem its non-voting shares from a control share acquirer such as Tyler. Moreover, to the extent relevant, such considerations plainly weigh in favor of an unlimited time to redeem. First, Rule 144 is not the only way to structure a sale of securities. Rule 144 is a safe harbor rule which, if followed, ensures a seller of securities that its sale is exempt from registration under § 4(1) of the Securities Act. There are other ways, however, (such as properly structured private transactions) in which to sell securities. Second, regardless of whether or not Tyler would choose to follow the safe harbor guidelines of Rule 144, Tyler's HTE shares (which at 32.3% undoubtedly constitutes a large block of stock) may, from a practical standpoint, otherwise face an illiquid market, signifying that Tyler, as with any owner of a large block of stock, would have to "make its own analysis of the market conditions, its own analysis of its financial condition, and decide when it's appropriate, at what intervals, at what times, and what quantities it wants to sell its stock to third parties." MSJ Transcript at 8. While an illiquid market may impact the "fair value" issue (e.g., Does a marketability discount for illiquid securities apply to establish the "fair value"?), it is not an issue to be addressed in connection with HTE's redemption rights under subsection 10(b). Third, to the extent that the Securities Act or, for that matter, the practical impact of owning a large block of

In short, reading a reasonable time limit into subsection 10(b) would create uncertainty on the part of Florida corporations as to when to redeem, disrupt the balance achieved between the Florida corporation and the control share acquirer, and otherwise frustrate the intended purpose for the statute.

## CONCLUSION

When the Florida legislature intends to require that a Florida corporation take some action within a reasonable time, this intention is expressed within the provisions of the Florida Business Corporation Act, Chapter 607, Florida Statutes. Subsection 10(b) of § 607.0902 is silent in this regard and, under the maxim *expressio unius est exclusio alterius*, this Court cannot by judicial fiat read a reasonable time limit into said statutory provision. This conclusion is consistent not only with this sound rule of statutory construction, but also serves the intended purpose of the control share acquisition act and strikes a fair balance between the Florida corporation and the control share acquirer.

DATED this 22nd day of August, 2002.

Respectfully submitted,
BAKER & HOSTETLER LLP
200 South Orange Avenue, Suite 2300
Orlando, FL 32802-0112
Telephone: (407) 649-4000

By: _____
John W. Foster, Sr.
Florida Bar No. 318620
Attorneys for Plaintiff, H.T.E., Inc.

---

stock restricts a control-share acquirer's ability to sell its stock, then the control share acquirer such as Tyler can hardly complain about a redemption of its otherwise restricted or unmarketable stock for which the acquirer receives "fair value". Thus, any Securities Act or practical restrictions, to the extent relevant, would support a construction of subsection 10(b) which accords the Florida corporation an unlimited period to redeem all shares acquired in a control share acquisition (shares which, parenthetically, are non-voting per the prior vote of the shareholders).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing HTE's Supplemental Brief Supporting HTE's Motion for Summary Judgment has been furnished via hand delivery to: **WILLIAM B. WILSON, ESQ.**, Holland & Knight LLP, 200 S. Orange Avenue, Suite 2600, Post Office Box 1526, Orlando, Florida 32802-1526 this 22nd day of August, 2002.

John W. Foster