# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

### CASE NO. 6:01-CV-1366-ORL-31DAB

H.T.E., Inc., a Florida corporation,

     **Plaintiff,**

v.

**TYLER TECHNOLOGIES, INC., a**
**Delaware corporation,**

     **Defendant**           /

## APPENDIX IN SUPPORT OF HTE'S SUPPLEMENTAL BRIEF SUPPORTING HTE'S MOTION FOR SUMMARY JUDGMENT

H.T.E., Inc. ("HTE"), by and through its undersigned attorneys, hereby files this Appendix in Support of HTE's Supplemental Brief Supporting HTE's Motion for Summary Judgment. Said appendix includes the following legislative history which is cited at pages 4-5 of HTE's supplemental brief:

1.    State of Fla. House Comm. On Commerce, Final Staff Analysis, HB. 358, Reg. Sess., @ 5 (June 22, 1987)

2.    State of Fla. Senate Staff Analysis and Economic Impact Statement, HB. 358, Reg. Sess., @ 3 (May 26, 1987)

DATED this 22 day of  August, 2002.


Respectfully submitted,
BAKER & HOSTETLER LLP
200 South Orange Avenue, Suite 2300
Orlando, FL  32802-0112
Telephone: (407) 549-4000

By: _____

John W. Foster, Sr.
Florida Bar No. 318620
Attorneys for Plaintiff, H.T.E., Inc.


## CERTIFICATE OF SERVICE

I  HEREBY CERTIFY that a true and correct copy of the foregoing Appendix in Support of HTE's Supplemental Brief Supporting HTE's Motion for Summary Judgment has been furnished via hand delivery to **WILLIAM B. WILSON, ESQ.**, Holland & Knight LLP, 200 S. Orange Avenue, Suite 2600, Post Office Box 1526, Orlando, Florida 32802-1526 this ____ day of August, 2002.


_____
John W. Foster, Sr.

2

Date: June 22, 1987

HOUSE OF REPRESENTATIVES
COMMITTEE ON COMMERCE
FINAL STAFF ANALYSIS

ENACTED BILL #:   HB 358

RELATING TO:   Corporations/Affiliated Transactions

SPONSOR(S):   Representative Trammell

EFFECTIVE DATE:   October 1, 1987

BECAME LAW:

CHAPTER  87-   , LAWS OF FLORIDA

COMPANION BILL(S):   SB 940

OTHER COMMITTEES OF REFERENCE:   (1)  None

*****************************************************************

I.    SUMMARY:

House Bill 358 amends Chapter 607, Florida Statutes,
Corporations, creating a new section entitled "affiliated
transactions" which provides certain shareholder protection when
affiliated transactions by a tender offer occur.  The proposed
legislation provides specific requirements regarding affiliated
transactions, as defined in the bill, which involve corporations
and interested shareholders.  The powers of disinterested
shareholders are specifically set forth under the bill.  In
addition, provision for exemption from this section is
established for corporations electing such status.  Similarly,
House Bill 358 creates s. 607.109, F.S., referred to as the
"Control Share Acquisition Statute", to grant shareholders the
opportunity to make the final decision regarding the
appropriateness of the takeover transaction.  The bill conditions
the acquisition of control of a Florida corporation meeting
specified criteria upon the approval of a majority of the
disinterested shareholders.

A.   Current Law & Present Situation:

The general regulatory and organization structure for
corporations operating within the State of Florida is set forth
in Chapter 607, Florida Statutes, Corporations.  Although various
sections of Chapter 607, F.S., allow corporations to merge or
consolidate with other corporations, statutory provisions
regulating business takeovers are nonexistent.  Additionally,
Florida law does not provide any statutory protection for
minority (dissenting) shareholders who oppose the formation of

-51-

the new corporation (from the takeover).  Generally, a takeover
occurs when an individual or entity seeks to gain control of a
corporation by offering to buy a majority of the corporation's
voting stock, either at market price or, in many instances, at
above market price, from those shareholders willing to tender
their shares.  This situation is referred to an a tender offer.

Frequently, upon gaining control of the corporation through
a successful tender offer, minority shareholders who elected not
to tender their shares initially will be coerced to accept less
for them.  This occurs where the new majority shareholder
attempts a second step merger by acquiring their shares.
Alternatively, shareholders believing their shares to be worth
more than the market price set by the tender offer may,
nevertheless, feel pressured into accepting the initial offer
because of their fear of receiving less desirable consideration
later.

Although Florida does not presently possess antitakeover
legislation, many states have adopted second-generation
antitakeover statutes.  The second-generation antitakeover
statutes basically are categorized into two groups, with most
states adopting provisions in both groups.  The first group seeks
to regulate tender offers directly and is generally considered to
be protective of corporate management.  However, the second
group of antitakeover statutes, referred to as "fair price
statutes", involves shareholder protection as opposed to
management.  These statutes are considered to be attempts to
prohibit coercive situations surrounding takeovers.

Similarly, Florida Statutes do not specifically address the
issue relating to acquisition of control of Florida business
entities.  Shareholders are not granted statutory authority to
make controlling decisions when faced with a takeover situation.

B.  **Effect of Proposed Changes**:

House Bill 358 amends Chapter 607, Florida Statutes,
creating a new section entitled "affiliated transactions" which
provides certain shareholder protection when such transactions
occur through tender offers.  However, the proposed legislation
does not prohibit tender offers but simply addresses problems
associated with such activity.  In fact, the bill is structured
so as to avoid direct regulation of tender offers.  This is
accomplished by regulating the internal affairs of Florida
corporations, in the manner employed in regulating contracts or
transactions between the corporation and one or more of its
directors.  The new section is patterned after one type of
"second-generation" antitakeover statutes which have been adopted
by several states in an effort to regulate tender offers.

Section 607.108(1)(b), Florida Statutes, defines
"affiliated transaction" as (1) a merger or consolidation, (2)

the sales of assets to an interested shareholder having a fair
market value of more than 5% of the corporations assets, (3) the
issuance of voting shares to the interested shareholder having a
fair market value greater than 5% of the total market
capitalization of the corporation's voting shares, (4) any plan
of dissolution proposed by an interested shareholder, (5) any
reclassification of securities or other corporate reorganization
which has the effect of increasing the percentage ownership of
the interested shareholder by more than 5%, or (6) any guarantee
by the corporation of the indebtedness of an interested
shareholder.

An "interested shareholder", in turn, is defined as any
person who is the "beneficial owner" of more than 10% of the
outstanding voting shares of the corporation. However, it does
not include the corporation or its subsidiaries, or employee
benefit plans of the corporation. A person is a beneficial owner
of voting shares if the individual has voting power, investment
power, or the right to acquire the same.

Affiliated transactions between a Florida corporation with
more than 300 shareholders and an interested shareholder (tender
offeror) must be approved by a two-thirds vote of the voting
shares of the corporation, not including the beneficially owned
shares.  Such a vote would not be required if the interested
shareholder has acquired 90% of the voting shares; held 80% of
the voting shares for at least 5 years; the business combination
is approved by a majority of disinterested directors; or, the
price received by each shareholder is at least equal to the
highest price paid by the interested shareholder for its shares
including any premium over market value.  These transactions are
permitted as exceptions to the supermajority disinterested
shareholder vote requirement because they are believed to be fair
to all shareholders.

An exemption is granted to any corporation whose original
articles of incorporation expressly elect not to be governed by
this provision.  Additionally, any amendment to a corporation's
articles prior to January 1, 1989, electing not to be governed by
this section results in an exemption being granted.  Corporations
are also given the authority to choose not to be covered by the
act by amending their articles prior to 18 months following the
effective date of the created section or later than 18 months
under specified circumstances.

Section 607.109, Florida Statutes, is created to condition
control of a corporation on the approval of a majority of the
disinterested shareholders.  The statute protects the
shareholders of Florida corporations by affording them, when a
takeover offer is made, an opportunity to decide collectively
whether the resulting change in voting control of the corporation
would be desirable.  By giving them the right to approve or
disapprove the acquisition of control, the statute places the

-53-

Page 4
Bill # HB 358
Date: June 22, 1987

independent investor on an equal footing with the takeover bidder.

Under the language of the bill, control shares of an issuing public corporation acquired in a control share acquisition have no voting rights unless approved by a vote of a majority of all the shares entitled to vote, excluding interested shares. This vote is in addition to any vote of a class or series of shares otherwise required. "Control shares" are shares that, when added to all other shares which a person owns or has the power to vote, would fall within any of the following ranges of voting power: 1/5 to 1/3; 1/3 to a majority; a majority. "Control share acquisition" means the acquisition of the ownership of or the power to vote outstanding control shares. "Interested shares", which are not counted in the special approval process, are shares which any of the following persons has the right to vote: an acquiring person or member of a group with respect to a control share acquisition, any officer of the issuing corporation, any director who is also an employee of the issuing public corporation. Issuing corporations covered under this statute, known as "issuing public corporations" include any Florida corporation that has: 100 or more shareholders; its principal place of business, its principal office, or substantial assets in Florida; and, either more than 10 percent of its shareholders resident in Florida, more than 10 percent of its shares owned by Florida residents, or 1,000 shareholders resident in Florida.

The bill does not affect an acquisition consummated before the effective date of the statute, or pursuant to a contract existing before the effective date. Exemptions are granted to such corporations. Additionally, it does not apply to an acquisition pursuant to a will, or as a result of the satisfaction of a security interest, or pursuant to a merger or consolidation under Florida law with the issuing public corporation. Further, it does not apply to shares acquired by an employee benefit plan of the corporation or any of its subsidiaries. Similarly, a company may exempt itself from the governing of this created section if it amends its charter or by-laws prior to the control share acquisition.

Finally, House Bill 358 permits the application of both the

certain companies incorporated in another state but having substantial Florida contacts.

II.   ECONOMIC IMPACT:

     A.   Public:

The primary intent of House Bill 358 is to protect minority shareholders when presented with antitakeover situations,

therefore, it will have the impact of eliminating the potential
for abuse in such situations as well as provide protection for
all shareholders.  Shareholders will be provided greater
opportunity to receive fair prices for their shares.  The degree
of benefit to the public cannot be determined.

    B.  Government:

        According to the Banking and Business Law Section of the
Florida Bar, this bill should not have any adverse financial
impact on the state.  Moreover, it is believed that the proposed
legislation will create a disincentive for existing Florida
corporations to reincorporate in other states, while attracting
foreign corporations to reincorporate in Florida .

III.  STATE COMPREHENSIVE PLAN IMPACT:

        House Bill 358 is consistent with the state comprehensive
plan, s. 187.201(21)(b)4, F.S., in that it assists in
strengthening Florida's position in the world economy through
attracting foreign investment.

IV.   COMMENTS:

        Antitakeover legislation similar to House Bill 358 has been
adopted in several states.  Statutes addressing the issue through
the use of shareholder protection have been enacted in New York,
Virginia, Connecticut, Georgia, Kentucky, Louisiana, Maine,
Maryland, Michigan and Pennsylvania.

V.    LEGISLATIVE HISTORY:

    A.  Enacted Bill:

        House Bill 358, prefiled by Representative Trammell on
March 3, 1987, was referred to the House Committee on Commerce
(HJ 00035).  The bill was subreferred to the Subcommittee on
General Commerce on April 20, where it was reported favorably.
On May 4, the bill was reported favorably by the Full Committee
on Commerce (HJ 00348).  The bill was placed on the Special Order
Calendar on May 13 and amendments were adopted (HJ 00436).
Similar to the original bill, the amendments provided protection
for disinterested shareholders involving control of acquisition
of corporations.  Under the amendments, the control of
acquisition must be approved by a majority of the disinterested
shareholders.  On May 15, the bill passed as amended by a vote of
109-0 and was immediately certified (HJ 00451).  The Senate
received the bill in Messages and referred it to the Senate
Committees on Judiciary-Civil and Commerce.  On May 26, the
Senate Committee on Judiciary-Civil reported the bill favorably

Page 6
Bill # HB 358
Date: June 22, 1987

with 2 amendments (SJ 00417). The amendments provided that the two shareholder protection sections which were created would be applicable to foreign corporations with substantial holdings in Florida in addition to Florida corporations. The bill was withdrawn from the Senate Committee on Commerce (SJ 00450). On June 1, the bill was placed on Special Order Calendar and the amendments were adopted as further amended. House Bill 358 passed by a vote of 36-0 (SJ 00569). The following day, the bill was reconsidered and the amendments were adopted with the bill passing by a vote of 35-0 (SJ 00590). Later that day the bill was taken up on the House floor where the Senate amendments were concurred in by the House. The bill passed as further amended by a vote of 95-0 (HJ 01060). House Bill 358 was ordered engrossed then enrolled. On June 16, it was signed by the Officers and presented to the Governor.

    B. <u>Disposition of Companion:</u>

    House Bill 358 did not have a Senate companion.

VI.   PREPARED BY:   _Beryl D. Roberts_____

                             Beryl D. Roberts

VII.  STAFF DIRECTOR:  _____

                             H. Fred Varn

REVISED: __May 26, 1987__                    BILL NO. __HB 358__

DATE: __May 25, 1987__                        Page __1__

---

### SENATE STAFF ANALYSIS AND ECONOMIC IMPACT STATEMENT

| ANALYST | STAFF DIRECTOR | | REFERENCE | ACTION |
|---|---|---|---|---|
| 1. Cochran _MC_ | Lester _BL_ | 1. | JCI | Fav/2 amend |
| 2. _____ | _____ | 2. | COM | _____ |
| 3. _____ | _____ | 3. | _____ | _____ |
| 4. _____ | _____ | 4. | _____ | _____ |

SUBJECT:                                  BILL NO. AND SPONSOR:

  Corporations/Affiliated                HB 358 by
  Transactions                           Representative Trammell
                                     and others

---

## I. SUMMARY:

### A. Present Situation:

Chapter 607, F.S., provides the general regulatory and organizational scheme for corporations doing business in Florida. Although various sections of ch. 607, F.S., allow corporations to merge or consolidate with other corporations, there are no statutory provisions regulating business takeovers nor are there any which are protective of minority (dissenting) shareholders who oppose formation of the new corporation. Generally, a takeover occurs when a person or entity seeks to gain control of a corporation by offering to buy a majority of the corporation's voting stock either at market price or, in most instances, at greater than market price from those shareholders willing to tender their shares in exchange. This event is referred to as a tender offer.

Often times after gaining control of the corporation through a successful tender offer, minority shareholders who elected not to tender their shares initially will be coerced to accept less for them if the new majority shareholder attempts a second step merger by acquiring their shares. Alternatively, shareholders believing their shares to be worth more than the price set by the tender offeror may, nevertheless, feel pressured into accepting the initial offer because of their fear of receiving less desirable consideration later.

Unlike a tender offer where in most instances the entity attempting to takeover offers a premium price for the shares in an attempt to gain outright ownership of a corporation, an entity may attempt to gain controlling influence over a corporation by acquiring a controlling percentage of a companies shares, but less than all. If this happens an acquiror can, for example, control the election of members of the corporations board of directors.

### B. Effect of Proposed Changes:

House Bill 358 creates ss. 607.108 and 607.109, F.S., providing certain shareholder protection when tender offers or control share acquisitions take place.

Section 607.108(1)(b), F.S., defines "affiliated transaction" as (1) a merger or consolidation, (2) the sales of assets to an interested shareholder having a fair market value of more than 5% of the corporations assets, (3) the issuance of voting shares to the interested shareholder having a fair market value greater than 5% of the total market capitalization of the corporation's voting shares, (4) any plan of dissolution proposed by an interested shareholder, (5) any reclassification of securities or other corporate reorganization which has the effect of increasing the percentage ownership of the interested

shareholder by more than 5, or (6) any guarantee by the
corporation of the indebtedness of an interested shareholder.

An "interested shareholder", in turn, is defined as any person
who is the "beneficial owner" of more than 10% of the
outstanding voting shares of the corporation.  However, it does
not include the corporation or its subsidiaries, or employee
benefit plans of the corporation.  A person is a beneficial
owner of voting shares if he has voting power, investment
power, or the right to acquire the same.

Affiliated transactions between a Florida corporation with more
than 300 shareholders and an interested shareholder (tender
offeror) must be approved by a two-thirds vote of the "voting
shares" of the corporation, not including the beneficially
owned shares of the interested shareholder.  Such a vote would
not be required if the interested shareholder has acquired 90%
of the voting shares; held 80% of the voting shares for at
least 5 years; the business combination is approved by a
majority of disinterested directors; or the price received by
each shareholder is at least equal to the highest price paid by
the interested shareholder for its shares including any premium
over market value.

Section 607.108, F.S., does not apply to corporations whose
original articles of incorporation expressly elect not to be so
governed or any amendment to a corporation's articles prior to
January 1, 1989, electing not to be governed by this section.
Corporations may also elect not to be covered by the act by
amending their articles prior to 18 months following the new
sections effective date or later than 18 months under certain
circumstances.

Section 607.109, F.S., is created defining "control shares" as
the number of shares with voting power that, when added to all
other like shares, entitles a person or entity to direct the
voting power of the corporation.  "Control share acquisition"
means the acquisition by any person of ownership of, or the
power to direct the exercise of voting power with respect to,
issued and outstanding control shares.

Section 607.109, F.S., would apply to an "issuing public
corporation" which is defined as a corporation that has: (1)
100 or more shareholders; (2) its principal place of business,
its principal office, or substantial assets in Florida; and,
(3) more than 10 percent of its shareholders resident in
Florida, more than 10 percent of its shares owned by Florida
residents or, 1,000 shareholders resident in Florida.

Under s. 607.109 (1), F.S., an entity acquires control shares
whenever it acquires shares that, but for the operation of the
act, would bring its voting power in the corporation to or
above any of 3 thresholds, 20%, 33 1/3%, or 50%.  An entity
that acquires control shares would not necessarily acquire
voting rights.  Rather, it would gain those rights only to the
extent granted by a resolution approved by the shareholders of
the issuing public corporation, s. 607.109(9)(a), F.S.  Section
607.109(9)(b), F.S., would require a majority vote of all
disinterested shareholders holding each class of stock for
passage of such a resolution.  Thus, the effect of this
requirement is to condition acquisition of control of a
corporation on approval of a majority of the pre-existing
disinterested shareholders.

Finally, the acquiring person or entity can require the
management of the corporation to hold a special meeting within
50 days if it files an acquiring person statement, requests the
meeting, and agrees to pay the expense of the meeting, s.
607.109(7), F.S.

REVISED: May 26, 1987                                    BILL NO. HB 358

DATE:  May 25, 1987                                             Page  3

The effect of the bill is to prevent minority shareholders from
being "squeezed out" by a tender offer thereby receiving less
than market value for their shares and to allow shareholders,
in the case of issuing public corporations, to call a special
meeting within 50 days to vote on whether to allow a person or
entity that has bought a large portion of stock, to be able to
vote that stock and thus exercise control over the corporation.

II.  **ECONOMIC IMPACT AND FISCAL NOTE:**

A.  Public:

One intent of the bill is to assure minority shareholders get a
fair price for their shares in a takeover situation.  However,
no data is available at this time in support of this.

B.  Government:

Those corporations not electing to be covered by the act would,
in some situations, have to file amendments to their articles
of incorporation with the Department of State.  However, at
this time, the volume of amendments and corresponding increase
in workload and filing fees is indeterminate.

III.  **COMMENTS:**

The intent of this bill is to protect Florida corporations from
hostile takeovers.  While not directly prohibiting such takeovers
the bill allows for more shareholder say in a takeover situation.
By offering a safe haven where Florida corporations cannot be
easily subjected to hostile takeovers, corporations will be more
attracted to Florida when deciding where, among other states, to
locate.

IV.  **AMENDMENTS:**

#1 by Judiciary-Civil:

Provides that under certain circumstances, the provisions of s.
607.108, F.S., apply to foreign corporations.

Provides that acquisition of shares does not constitute control
share acquisition if the acquisition is consummated prior to the
effective date of the act or pursuant to a contract existing prior
to the effective date of the act.

Provides that acquisition of shares does not constitute control
share acquisition if consummated pursuant to certain employee
benefit plans.

Provides that under certain circumstances "issuing public
corporation" shall also mean a foreign corporation.

Changes effective date from July 1, 1987 to "upon becoming law."

Provides a severability clause.

#2 by Judiciary-Civil:
Title amendment.