UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

H.T.E., INC.,

    Plaintiff,

vs.                                    CASE NO.: 6:01-cv-1366-Orl-31DAB

TYLER TECHNOLOGIES, INC.,

    Defendant.
_____/

## TYLER'S SUPPLEMENTAL BRIEF IN OPPOSITION
## TO MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant, TYLER TECHNOLOGIES, INC. ("Tyler"), submits this Supplemental Brief to explain why a reasonable time limit applies to any redemption rights set forth in Section 607.0902(10)(b), Florida Statutes (2001) (the "Statute").[1] There are at least three reasons why a reasonable time limit must apply. First, in Florida, as in other jurisdictions, where a statute is silent as to the time for exercising a right provided for therein, the law implies a reasonable time limit. Second, subsection 10(b) must be read to include the reasonable time limit set forth in subsection 10(a) because, otherwise, subsection 10(b) is rendered ambiguous and ineffective. Third, the failure to apply a reasonable time limit violates the Commerce Clause of the United States Constitution because it would grant a perpetual right of redemption that adversely impacts interstate commerce while serving no public purpose whatsoever.

---

[1] This Supplemental Brief responds to this Court's August 12, 2002 order requesting "further briefing on Defendant's argument that the Court must read a reasonable time limit into subsection 10(b) . . . ."

Importantly, all three reasons for applying a reasonable time limit are consistent with Tyler's principal argument that the Statute expressly sets forth a sixty-day time limit for stock redemption under Section 607.0902(10)(a)-(b). That is, these two subsections must be read *in pari materia* in order to discern all of the Statute's applicable pre-conditions, including the payment of "fair value" for the redeemed stock. § 607.0902(10)(a), Fla. Stat. (2001). Just as these other pre-conditions apply, which H.T.E. does not dispute, so does the sixty-day time limit.[2] Alternatively, should this Court choose to read subsections 10(a) and 10(b) separately, it then must choose between two alternatives: (1) grant H.T.E. a perpetual right of redemption, or (2) apply a reasonable time limit to the exercise of that right. As set forth below, only the second alternative is in accord with Florida law.

## A. The Statutory Rights And Privileges Granted By The Statute Must Be Exercised Within A Reasonable Time.

Florida follows the long-established rule that if a statute confers a right, but is silent with respect to the time for exercising that right, a reasonable time limit applies. For example, in *In re Edwards*, 130 So. 615 (Fla. 1930), the Florida Supreme Court held that an "auto truck dealer" forfeited its statutory right to operate on a railway line due to its unreasonable delay in effecting its right, despite the applicable statute's lack of any such time limit. The Court described the

---

[2] H.T.E.'s suggestion that *State of Florida v. Bradford*, 787 So. 2d 811 (Fla. 2001), compels a different interpretation is misplaced. *Bradford* stands for the unremarkable proposition that courts should not necessarily read the elements of one statutory provision into another when interpreting the whole. This construction makes sense in *Bradford* because the court was addressing independent, self-contained sections of a criminal statute setting forth the elements of separate criminal offenses. Those sections must be read independently to provide notice of what specific behavior will be subject to criminal sanction. Also, each statutory section in *Bradford* was unambiguous and each section was capable of standing by itself. By contrast, here the Statute's redemption provisions must be read as a whole to make any sense. § 607.0902(10)(a)-(b), Fla. Stat. (2001). Any other interpretation creates absurd results. For example, under H.T.E.'s misinterpretation of the Statute, H.T.E. arguably would have no obligation to pay the "fair value" of the redeemed stock because subsection 10(b) contains no such requirement. Yet an essential element of H.T.E.'s argument in support of a perpetual right of redemption is predicated on the obligation of the redeemer to pay "fair value." Hearing Transcript, at pages 7-8, 12, 52.

applicable rule of construction as follows: "It is a general rule of wide acceptance that, when no particular time is specified for the exercise of a right or privilege, the law presumes that a reasonable time was intended."[3] *Id.* at 617.

The Florida Supreme Court has applied this rule in a variety of contexts. *See Palm Beach County Canvassing Bd. v. Harris*, 772 So. 2d 1273, 1285-86 (Fla. 2000) (observing that election statute "sets no specific deadline by which a manual recount must be completed" and holding, therefore, that the time limit must be "reasonable"); *Galen of Florida, Inc. v. Braniff*, 696 So. 2d 308, 310 (Fla. 1997) (holding that physicians wanting to invoke the provisions of the Florida Birth-Related Neurological Injury Compensation Plan must provide notice "a reasonable time prior to delivery" in order to qualify); *The Florida Bar v. Walter*, 784 So. 2d 1085, 1087 (Fla. 2001) (noting that in the absence of express statute of limitations in the rules applicable to lawyer discipline proceedings, The Florida Bar must proceed against an accused lawyer within a "reasonable time" after it acquires jurisdiction); *American Int'l Corp. v. Marine Bank & Trust Co.*, 78 So. 2d 869, 872 (Fla. 1955) (holding that where statute was silent as to when construction bonds must be posted with a Public Utilities Commission, the Commission had the discretion to set a reasonable time); *Waln v. Howard*, 196 So. 210, 212 (Fla. 1940) (ruling that although statute did not provide any periodic measure of time for when notice must be provided

---

[3] This rule of statutory construction is analogous to the rule of contract law that a "reasonable time" for the performance of a contract will be implied even where the contract itself is silent. *See e.g., De Cespedes v. Bolanos*, 711 So. 2d 216, 218 (Fla. 3d DCA 1998) (ruling that settlement agreement's silence as to performance of conditions did not render agreement unenforceable, but that law would imply a reasonable time period for performance.). Further, this rule of statutory construction derives from the same public policy concerns that ground the law's aversion to perpetuities. *See, e.g., Fallschase Dev. Corp. v. Blakey*, 696 So. 2d 833, 834-35 (Fla. 1st DCA 1997) (describing rule against perpetuities).

3

to terminate a tenancy at will, the statute should be interpreted as requiring "reasonable notice").[4] Other jurisdictions, likewise, apply this same rule of statutory construction.[5]

Thus, even if this Court were to read subsections 10(a) and 10(b) separately, it must still apply a reasonable time limit to subsection 10(b). The determination of a reasonable time limit is fairly simple given that the Florida Legislature has already determined that sixty days is a reasonable time limit for a public corporation to redeem control shares (regardless of whether its shareholders confer or withhold voting rights). § 607.0902(10)(a), Fla. Stat. (2001). Given this clear direction by the legislature, a reasonable time limit for this Court to adopt for subsection 10(b) is a sixty-day period to commence on the date that the shareholders decided to withhold voting rights.

---

[4] Lower courts in Florida apply the same rule of construction. *Concerned Citizens of Putnum County for Responsive Govt., Inc. v. St. Johns River Water Managment Dist.*, 622 So. 2d 520, 523 (Fla. 5th DCA 1993) (ruling that where statute directing the District to regulate water flows did not provide a time limit, the statute should be interpreted as requiring action "within a reasonable time."); *Board of Tr. of the Internal Improvements Trust Fund v. Lost Tree Village Corp.*, 600 So. 2d 1240, 1245 (Fla. 1st DCA 1992) (holding that where statute did not describe a time limit for action by government agency, a "reasonable time" is implied); *University of Florida Foundation, Inc. v. Miller*, 478 So. 2d 482, 484 (Fla. 1st DCA 1985) (holding that where statute was not specific as to the time by which personal representative must renounce personal compensation, the renunciation must come "within a reasonable time.").

[5] Florida law is consistent with the laws of other states on this point. *See, e.g., Louisiana Auto. Fin. Serv., Inc. v. Department of Econ. Dev.*, 743 So. 2d 217 (La. App. 1999) (If a statute imposes a duty but is silent as to when it is to be performed, a reasonable time is implied); *Ross v. Artuz*, 150 F.3d 97, 100 (2nd Cir. 1998) (if the "statute is silent as to the grace period to be allowed, the courts must fashion a grace period that is appropriate in view of the subject matter"); *Marchetti v. Ramirez*, 1997 WL 600409 at *2 (Conn. Sup. Ct. Sept. 18, 1997) ("Statutes that are silent as to time limits for their enforcement have been interpreted as requiring action within a reasonable time"); *Preston v. Ferguson*, 166 N.E. 2d 365, 372 (Ohio 1960) (where the Statute confers a power without placing any limitation as to the manner or means, the presumption is that it should be performed in a reasonable manner); *Hays v. Arizona Corp. Comm'n*, 409 P.2d 282, 284 (Az. 1965) (ruling that statute which did not specify exact time within which a corporate certificate could be renewed implied within a reasonable time); *Cohn v Town of Cazenovia*, 247 N.Y.S.2d 919, 220 (N.Y. App. 1964) ("In the absence of specific time limitations in the legislation, it must be presumed that the Legislature intended the various acts to be completed within a reasonable time as one continuous operation."); *United States v. Martinez*, 481 F.2d 214 (5th Cir. 1973) (noting that statute authorizing border searches by customs agents is silent as to temporal and spatial limitations as to what constitutes a "border search" and, thus, a constitutionally derived test of reasonableness applies).

**B.      Subsection 10(b) Cannot Be Read In Isolation.**

If subsection 10(b) is read in isolation it is rendered ambiguous and ineffective because subsection 10(b) contains none of the essential terms for exercising the right of redemption. Resolving the ambiguity using the applicable rules of statutory construction leads to an obvious result -- the Court must infer a reasonable time limit and the most reasonable time limit is sixty days.

Consider the negative language used in subsection 10(b):

> Control shares acquired in a control-share acquisition are not subject to redemption after an acquiring person statement has been filed unless the shares are not accorded full voting rights by the shareholders as provided in subsection (9).

This negative language, by itself, does not confer a right of redemption, let alone a perpetual right of redemption. Moreover, it does not describe any of the essential pre-conditions for exercising a right of redemption including the requisite corporate authority to invoke redemption, the price to be paid for the redeemed shares, the procedures to accomplish redemption, and the sixty-day deadline for redemption. § 607.0902(10)(a). Rather, subsection 10(b) refers to the right of redemption granted in the proximate subsection 10(a), including the essential pre-conditions listed therein.

Simply put, the only way to render subsection 10(b) unambiguous and effective is to read subsections 10(a) and 10(b) together.[6] Indeed, Florida courts must interpret statutes in their entirety as a harmonious whole and construe related sections together. *Harris*, at 1287.

---

[6] In addition to Florida, twenty-two states have enacted similar shareholder protection statutes. None of these statutes provides for, or has been interpreted to provide for, a perpetual redemption period. Indeed, most of the statutes avoid the ambiguity of the Florida statute by providing identical periods of time for redemption, which run from the date of the last acquisition when no acquiring person statement is filed and from the date of the shareholder

5

Moreover, choosing a perpetual right of redemption, instead of imposing a reasonable time limit (i.e., sixty days), would frustrate the Statute's legislative intent. *See Adams v. Lee*, 89 So. 2d 217, 220 (Fla. 1956) (statute should be construed to accomplish its legislative purpose). The purpose of the statute, both parties agree, is to "protect shareholders of public corporations by balancing their rights with those of a potential acquirer by allowing shareholders the opportunity to decide whether a change in corporate control is desirable."[7] But the grant of a perpetual right of redemption *after* the shareholders have decided to deny voting rights -- the critical event -- serves no purpose and is grossly unfair to the acquiring party. Affording a target company a perpetual right to redeem the control shares at the time, price, and manner of its choosing would create the potential for the target company to prevent sales of control shares by the acquiring company to a third party. Also, by allowing the target company to wait for conducive market conditions, a perpetual redemption right could deny an acquiring party the opportunity to realize gains that it might otherwise have achieved from its investment. The Statute, to the contrary, was not intended to create such mechanisms to punish acquiring parties.[8]

---

vote denying voting rights when one is filed. *See* Ariz. Rev. Stat. § 10-2727; Idaho Code § 30-1609; Kan. Stat. Ann. § 17-1295; Mass. Gen. Laws. ch. 110D, § 6; Minn. Stat. § 302A.671(6); Va. Code Ann. § 13.1-728.7; S.D. Codified Laws § 47-33-13; Tenn. Code Ann. § 48-103-308(a). In fact, many of the states omit redemption rights altogether, illustrating that redemption is not essential to the fundamental purpose of these statutes. *See* Neb. Rev. Stat. § 21-2449 *et. seq.*; N.C. Gen. Stat. § 55-9A-01 *et. seq.*; Miss. Code. Ann. § 79-25-1 *et. seq.*; Mo. Ann. Stat. § 351.015 *et. seq.*; Ohio Rev. Code Ann. § 1701.831 *et. seq.*; Or. Rev. Stat. § 60.801 *et. seq.*; Wis. Stat. § 180.1130 *et. seq.*

[7] H.T.E.'s "Second Amended Complaint for Declaratory and Supplemental Relief, and for Damages," at paragraph 18. *See also CTS Corp. v. Dynamics Corp of Am.*, 481 U.S. 69 (1987) (describing purpose of Indiana's Control Share Acquisition Act).

[8] Another goal of the Statute is to enable shareholders to make an informed decision about corporate control by encouraging the filing of an acquired persons statement, a document that describes the acquiring party, its management experience, its goals for the company, etc. But H.T.E.'s misinterpretation would discourage the filing of these statements. That is, under H.T.E.'s misinterpretation, a sixty-day time limit for redemption applies when no statement is filed, but a perpetual right of redemption applies when a statement is filed. *See Woodall v. Traveler's Indem. Co.*, 699 So. 2d 1361, 1363 (Fla. 1997) (statute should be construed so as not to lead to an absurd result).

## C.   A Perpetual Right of Redemption Is Unconstitutional.

Finally, where possible, a Florida court must interpret a statute in a manner that upholds its constitutionality. *See, e.g., Sun 'N Lake of Sebring Improvement Dist. v. McIntyre*, 800 So. 2d 715 (Fla. 2d DCA 2001). In this regard, the Statute must be interpreted in a manner that will withstand the balancing test applicable to local restraints that impact interstate commerce.[9]

Were the Court to fail to read a reasonable time limit into the Statute, the resulting perpetual right of redemption would violate the Commerce Clause because it would dramatically impact interstate commerce without conferring any public benefit to the State of Florida. The Statute enables shareholders to defeat acquisition by deciding whether to deny voting rights. Once shareholders have made this decision, the purpose of the Statute is achieved. No further public purpose is served by a perpetual right of redemption.

On the other hand, a perpetual right of redemption will adversely impact interstate commerce by restricting alienability and confusing ownership. For example, H.T.E.'s misinterpretation of the Statute begs the question: does a perpetual right of redemption follow the "control shares" when, long after the shareholder meeting, the control shares are sold to third parties? This result would not pass constitutional muster. In sum, for the additional reason that Florida courts must construe statutes in a manner that upholds constitutionality, this Court should enforce a reasonable time limit in subsection 10(b), which is sixty days from the date the shareholders voted to withhold voting rights.

---

[9] *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970) (adopting balancing test between the legitimate local public interest and the impact on interstate commerce). *See also Tyson Foods, Inc. v. McReynolds*, 865 F.2d 99 (6th Cir. 1989) (holding certain provisions of Tennessee's Control Share Acquisition Act unconstitutional). Further, a perpetual right of redemption arguably conflicts with, and is therefore preempted by, the federal regulation of publicly traded securities. *See CTS Corp. v. Dynamics of Am.*, 481 U.S. 69, 84-86 (1987).

7

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by hand delivery/mail this **22nd** day of August, 2002, to John W. Foster, Sr., Esquire, Baker & Hostetler LLP, 2300 Sun Trust Center, 200 South Orange Avenue, Post Office Box 112, Orlando, FL 32802-0122.

Respectfully submitted,

William B. Wilson, Esquire
Florida Bar No. 153167
HOLLAND & KNIGHT LLP
200 S. Orange Avenue, Suite 2600
Post Office Box 1526
Orlando, FL 32802-1526
Phone: (407)425-8500
Fax: (407)244-5288
Attorneys for Defendant,
Tyler Technologies, Inc.

TPA1 #1241398 v3