

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

H.T.E., INC., a Florida corporation,

    Plaintiff,

-vs-                              Case No.: 6:01-cv-1366-Orl-31DAB

TYLER TECHNOLOGIES, INC., a
Delaware corporation,

    Defendant.

___

## ORDER

This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment (Doc. 48), together with Plaintiff's Memorandum in support thereof (Doc. 49), Plaintiff's Supplement (Doc. 85), and Defendant's opposition memorandum (Docs. 53 & 83). On June 20, 2002, the Court conducted a hearing at which argument of counsel was presented. Pursuant to this Court's August 12, 2002 Order, both Plaintiff and Defendant filed supplemental briefs and authority (Docs. 93-96). Both parties concede that the issues here to be decided do not involve disputed issues of material fact. Accordingly, the matter is ripe for determination as a matter of law.

### I. FACTUAL BACKGROUND

Plaintiff, H.T.E., Inc. ("HTE") is a publically held Florida corporation, headquartered in Seminole County, Florida. HTE is in the business of computer software development and its stock is traded on the National Association of Securities Dealers Automated Quotation System ("NASDAQ"). Defendant, Tyler Technologies, Inc. ("Tyler") is a Delaware corporation with its

principal office located in Dallas, Texas. Tyler is a holding company with operating subsidiaries also engaged in the computer software business. Its stock is traded on the New York Stock Exchange ("NYSE").

HTE was founded by Jack and Dennis Harward (the "Harwards"). On August 3, 1999, the Harwards entered into a severance agreement and resigned as officers and employees of HTE. Two weeks later, on August 17, 1999, Tyler and the Harwards entered into a stock purchase agreement whereby Tyler acquired from the Harwards 5,618,952 shares of HTE stock, representing approximately 32% of HTE's outstanding stock, at an average price of $2.81 per share.

On August 20, 1999, Tyler notified HTE of its purchase of the HTE shares. On August 23, 1999, Tyler provided an "Acquiring Person Statement" ("APS") to HTE pursuant to Florida Statutes section 607.0902(6). However, Tyler did not exercise its right to request a special meeting of the HTE shareholders as provided by section 607.0901(7), Florida Statutes. Consequently, Tyler's voting rights to the HTE shares acquired from the Harwards was not determined until the next regular meeting of the HTE shareholders on November 16, 2000. At that meeting, a proposal to confer voting rights on the HTE stock held by Tyler was defeated.

On October 12, 2001, over two years after Tyler had acquired the HTE stock, HTE's board of directors adopted resolutions authorizing the redemption of all of the HTE shares owned by Tyler at $1.30 per share. On October 29, 2001, HTE gave Tyler notice of the redemption. Tyler disputes HTE's right to redeem the shares.

## II. PROCEDURAL BACKGROUND

On October 30, 2001, HTE filed suit in state court seeking declaratory relief. Tyler removed the case to federal court on November 20, 2001. On December 21, 2001, HTE amended

its Complaint to state a claim against Tyler for tortious interference. Tyler answered the first Amended Complaint and filed a counterclaim seeking declaratory relief with respect to HTE's redemption of Tyler's HTE stock.

The instant Motion concerns the effectiveness and scope of HTE's redemption of Tyler's shares. The issue of the appropriate redemption price and HTE's claim for tortious interference remain for another day.

### III. THE STATUTE

This dispute is governed by Florida's Control-Share Acquisition Law, section 607.0902, Florida Statutes, enacted in 1987.[1] The act focuses on the acquisition of "control shares"[2] in an

---

[1] The bill, introduced in 1987 as 87-257, was originally codified at section 607.109, Florida Statutes. Later, it was repealed and re-codified, in its original form, at section 607.0902, Florida Statutes.

[2] Section 607.0902(1) states:

> "Control shares."--As used in this section, "control shares" means shares that, except for this section, would have voting power with respect to shares of an issuing public corporation that, when added to all other shares of the issuing public corporation owned by a person or in respect to which that person may exercise or direct the exercise of voting power, would entitle that person, immediately after acquisition of the shares, directly or indirectly, alone or as a part of a group, to exercise or direct the exercise of the voting power of the issuing public corporation in the election of directors within any of the following ranges of voting power:
> (a) One-fifth or more but less than one-third of all voting power.
> (b) One-third or more but less than a majority of all voting power.
> (c) A majority or more of all voting power.

See also Senate Staff Analysis and Economic Impact Statement for Bill No. CS/CB 404, Fla. Sen. Comm. on Commerce, at 2 (Apr. 14, 1987) (discussing the Indiana Control Share Acquisition Act upon which the Florida Control Share Acquisition Act was patterned: "'control shares, i.e., <u>shares held by any one person or firm in excess of 20 percent of the total stock outstanding</u>. . . .") (emphasis added).

issuing public corporation. When control shares are acquired in a "control share acquisition,"[3] the shares do not have voting rights unless a majority of the target company's disinterested shareholders approves a resolution granting voting rights to the control shares. Fla. Stat. § 607.0902(9). Thus, the purpose of the act is to protect Florida shareholders by affording them an opportunity to decide whether a change in corporate control is desirable, as well as creating a disincentive for Florida corporations to reincorporate in other states. See generally, Robert C. Rasmussen and Jeffrey M. Fuller, Florida Takeover Law: Control-Share Acquisitions, 16 F.S.U. L. Rev. 103, 104-05, 149 (1988); see also Staff Analysis and Economic Impact Statement for Bill No. CS/SB 404, Fla. Sen. Comm. on Commerce, at 2 (Apr. 14, 1987) ("The bill attempts to assure minority shareholders get a fair price for their shares in a takeover situation. . . . The public may benefit by the possible disincentive created by the bill for existing Florida corporations to reincorporate in Florida."); Staff Analysis for Bill No. HB 358, Fla. H.R. Comm. on Commerce, at 3 (Apr. 24, 1987); Final Staff Analysis for Bill No. HB 358, Fla. H.R. Comm. on Commerce, at 2-3 (June 22, 1987); Staff Analysis and Economic Impact Statement for Bill No. HB 358, Fla. Sen. Comm. on Commerce, at 3 (revised May 26, 1987).

Since the statute focuses on a vote of the disinterested shareholders, the act provides a framework for calling the shareholders meeting at which control share voting rights are determined. Generally, the voting rights issue is to be presented at the next special or annual meeting of the shareholders. Fla. Stat. § 607.0902(7)(d). However, the acquiring company can

---

[3] A "control share acquisition" is defined by the statute as "the acquisition, directly or indirectly, by any person of ownership of, or the power to direct the exercise of voting power with respect to, issued ad outstanding control shares." Fla. Stat. § 607.0902(2)(a).

compel a special meeting to be held within 50 days, if it files an APS and undertakes to pay the expenses thereof. Id. at 607.0902(7)(a)-(b).

The statute also provides the target company with certain redemption rights with respect to control shares. Id. at 607.0902(10). Section 607.0902(10)(a) applies to a control share acquisition where no APS has been filed. In that circumstance, the target company may, at any time within sixty (60) days following the acquisition, redeem the control shares at the "fair value" thereof. Id. at 607.0902(10)(a). Thus, if the acquiring company wishes to preempt the target company's right to effect an early redemption (presumably prior to a vote of the shareholders), it can simply file an APS. And, by filing an APS, the acquiring company can force an early vote of the target company's shareholders pursuant to section 607.0902(7)(a).[4]

Section 607.0902(10)(b) is curiously worded. At first blush, it would appear to relate to the converse of subsection (10)(a); i.e., redemption rights where the acquiring company has filed an APS. However, subsection (10)(b) does not provide an express right of redemption, nor does it indicate any time limit. Rather, it reads: "Control shares in a control-share acquisition are not subject to redemption after an acquiring person statement has been filed unless the shares are not accorded full voting rights by the shareholders as provided in subsection (9)." Id. at 607.0902(10)(b). It is this section which is at the root of this controversy.

---

[4] As indicated above, although Tyler filed an APS, it did not request a special meeting of the shareholders. Nothing contained in the record indicates Tyler's strategy in this regard.

## IV. ANALYSIS

Tyler contends that HTE's purported redemption of the shares acquired by Tyler is ineffective because its attempt came too late. HTE claims that because Tyler filed an APS, section 607.0902(10)(b) applies, giving HTE an unlimited amount of time to redeem the stock.

Tyler's reasoning is that subsections 607.0902(10)(a) and (b) must be read together, and the 60-day provision of (10)(a) must be read into (10)(b). It argues that subsection (10)(b) standing alone does not work because it does not contain the essential redemption terms (e.g., redemption "at fair value"). Thus, if provisions of (10)(a) regarding fair value, etc., must be assumed to apply to a (10)(b) redemption, Tyler contends that the 60-day limitation must likewise apply. According to Tyler, this fits nicely with the shareholder notice scheme whereby the acquiring company can compel a shareholder meeting within 50 days, leaving management another ten days to effect redemption if it so chooses. HTE, on the other hand, argues that because subsection (10)(b) is silent, the Court cannot read the 60-day time limit from subsection (10)(a) into (10)(b) and thus, HTE had an indefinite right of redemption.[5]

A court's interpretation of a statute "is guided by several factors: the act's purpose as indicated in the legislative history; the plain meaning of the statute's language; [agency] interpretations; previous court interpretations; and other principles of statutory construction. . . .

---

[5] HTE bases its argument on the maxim "expressio unius est exclusio alterius" or express mention of one thing is the exclusion of another. "This is not, however, a rule of law; rather, it is an aid to help us determine legislative intent." Grant v. State, 27 Fla. L. Weekly D720, 2002 WL 464697, *2 (Fla. 5 DCA Mar. 28, 2002) (citing 2A Norman J. Singer, Statutes and Statutory Construction, § 47.23, at 318 (6th ed. 2000)). Courts will disregard the maxim "when an expanded interpretation of a statute will accomplish beneficial results, where its application would thwart the legislative intent made apparent by the entire act, or serve the purpose for which the statute was enacted." Id. (citing Singer, Statutes and Statutory Construction at 324). As discussed herein, application of this maxim to the instant case would not further the purpose of the statute or the Legislature's intent.

[The court's] ultimate goal is to give effect to congressional intent." Caro-Galvan v. Curtis Richardson, Inc., 993 F.2d 1500, 1505 (11th Cir. 1993) (citations omitted)). "When the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." Campus Communications, Inc. v. Earnhardt, 821 So.2d 388, 395 (Fla. 5th DCA 2002) (quoting Holly v. Auld, 450 So.2d 217, 219 (Fla. 1984) (quoting A.R. Douglass, Inc. v. McRainey, 137 So. 157 (1931)); see also United States v. Weaver, 275 F.3d 1320, 1331 (11th Cir. 2001); Rollins v. Pizzarelli, 761 So.2d 294, 297 (Fla. 2000)). However, if a statute is ambiguous, courts should apply the rules of statutory construction. "Ambiguity suggests that reasonable persons can find different meanings in the same language." Pizzarelli, 761 So.2d at 297-98 (citing Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla. 1992)).

Here, Tyler and HTE have argued for different interpretations of section 607.0902(10)(b). Accordingly, the Court finds the statute ambiguous. When the statutory language is susceptible to more than one meaning, legislative history may be helpful in ascertaining legislative intent. Pizzarelli, 761 So.2d at 299 (citing Magaw v. State, 537 So.2d 564, 566 (Fla. 1989)); 2A Norman J. Singer, Statutes and Statutory Construction § 48.04 (6th ed. 2000). It is well settled that legislative intent is the polestar that guides a court's statutory construction analysis. State v. Rife, 789 So.2d 288, 292 (Fla. 2001); McLaughlin v. State, 721 So.2d 1170, 1172 (Fla. 1998); Aetna Cas. & Sur. Co. v. Huntington Nat'l Bank, 609 So.2d 1315, 1317 (Fla. 1992); see also United States v. Gonzales, 520 U.S. 1, 6 (1997). From the staff analyses, it is clear that the primary goal and purpose of the Act is to protect minority shareholders by affording them an opportunity to

decide whether a change in corporate control is desirable and by ensuring that they get a fair price for their shares. See Discussion, Part III, supra and citations mentioned therein.

Subsection(10)(a) gives management of the target company the right to an early redemption, limited to 60 days. When an APS is filed, however, management no longer has that right. Rather, under subsection 10(b), no redemption rights are conferred upon the target company unless and until its shareholders have voted to deny voting rights to the acquiring company's control shares. If subsection (10)(b) is read in isolation, it is rendered ambiguous and ineffective because it does not confer a right of redemption nor does it contain any of the essential terms for exercising that right ie., fair value. Such an absurd reading was not intended and should be avoided by courts when construing a statute. "[S]tatutes must be construed as to avoid an unreasonable or absurd result." Allstate Ins. Co. v. Rush, 777 So.2d 1027,1032 (Fla. 4th DCA 2000) (noting that "provisions of an act are to be read as consistent with one another"), rev. dismissed, 790 So.2d 1101 (Fla. 2001) (citing City of Boca Raton v. Gidman, 440 So.2d 1277, 1281 (Fla. 1983)); Pavolini v. Bird, 769 So.2d 410 (Fla. 5th DCA 2000), rev. denied, 790 So.2d 1102 (Fla. 2001)); Meeks ex rel. Estate of Meeks v. Florida Power & Light Co., 816 So.2d 1125, 1131-33 (Fla. 5th DCA 2002); see also Borgner v. Brooks, 284 F.3d 1204, 1208 (11th Cir. 2002) (citations omitted); United States v. Canals-Jimenez, 943 F.2d 1284, 1287 (11th Cir. 1991) ("A basic premise of statutory construction is that a statute is to be interpreted so that no words shall be discarded as being meaningless, redundant, or mere surplusage.").

However, if the two sections are read in para materia, the statute makes sense and subsection (10)(b) is given effect. It is a basic rule of statutory construction that "all parts of a statute must be read together in order to achieve a consistent whole. Where possible, courts must

give effect to all statutory provisions and construe related statutory provisions in harmony with one another." Young v. Progressive Southeastern Ins. Co., 753 So.2d 80, 84 (Fla. 2000) (quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla. 1992)); Department of Children and Family Servs. v. G.M., 816 So.2d 830, 831 (Fla. 5th DCA 2002); see generally Deal v. United States, 508 U.S. 129, 132 (1993). Under subsection (10)(a), the 60-day time limit runs from the date of acquisition; whereas under subsection (10)(b), the redemption period must be measured, if at all, from the date of the shareholder meeting, which triggered that right.[6] Thus, if the shareholders vote not to accord the acquiring company voting rights, then the redemption rights in subsection (10)(a) are triggered and the other provisions of (10)(a) must be read to apply, e.g., purchase at fair value and 60-day time limit.[7]

Reading the statute as granting an unlimited period of redemption when an APS is filed and after the shareholders have decided to deny voting rights serves no statutory purpose and does not further the intent of the Legislature–to protect minority shareholders by allowing them to decide who should control the corporation.[8] The grant of a perpetual right of redemption would be illogical, unreasonable, and unduly punitive to the acquiring company. There is nothing in the

---

[6] Other jurisdictions avoid this ambiguity by providing for identical periods of time to redeem, which run from the date of acquisition when no APS is filed and from the date of the shareholder vote denying voting rights when an APS is filed. See Ariz. Rev. Stat. § 10-2727; Idaho Code § 30-1609; Kan. Stat. Ann. § 17-1295; Mass. Gen. Laws ch. 110D, § 6; Minn. Stat. § 302A.671(6); S.D. Codified Laws § 47-33-13; Tenn. Code Ann. § 48-103-308(a); Va. Code Ann. § 13.1-727.7.

[7] Indeed, HTE has not argued that subsection (10)(a)'s "fair value" provision should not be read into (10)(b). Yet, under HTE's suggested reading of the statute, HTE would have no obligation to pay fair value.

[8] Even HTE agrees that this is the purpose of the Act. See HTE's second amended complaint (Doc. 64), at ¶ 18 (the purpose is to "protect shareholders of public corporations by balancing their rights with those of a potential acquirer by allowing shareholders the opportunity to decide whether a change in corporate control is desirable").

statute to suggest that it was intended to punish an acquiring company for attempting to take control of a public corporation. This Court concludes that there must be a time limit on a target company's redemption rights after shareholders have voted to deny voting rights to the acquiring company.[9] Accordingly, the 60-day time limit from subsection (10)(a) must be read into subsection (10)(b).

## V. CONCLUSION

---

[9] Furthermore, even if this Court does not read the 60-day time limit from subsection (10)(a) into subsection (10)(b), the statute cannot be interpreted to grant HTE an infinite amount of time to exercise its redemption rights. Rather, as Tyler correctly contends a reasonable time must be presumed. When statutes have been silent as to a period of time, courts have read in a "reasonable time" into the statutes. "It is a general rule of wide acceptation that, when no particular time is specified for the exercise of a right or privilege, the law presumes that a reasonable time was intended." In re Edwards, 130 So. 615, 617 (Fla. 1930). Florida courts have applied this principal in a variety of contexts. See The Florida Bar v. Walter, 784 So.2d 1085, 1087 (Fla. 2001); Palm Beach County Canvassing Bd. v. Harris, 772 So.2d 1273, 1285-86 (Fla. 2000); Galen of Fla., Inc. v. Braniff, 696 So.2d 308, 310 (Fla. 1997); Burnsed v. Seaboard Coastline Ry., Co., 290 So.2d 13, 19 (Fla. 1974); American Int'l Corp. v. Marine Bank & Trust Co., 78 So.2d 869, 872 (Fla. 1955); Waln v. Howard, 196 So. 210, 212 (Fla. 1940); Concerned Citizens of Putnam County for Responsive Gov't, Inc. v. St. Johns River Water Mgmt. Dist., 622 So.2d 520, 523 (Fla. 5th DCA 1993); State Board of Tr. of the Internal Improvements Trust Fund v. Lost Tree Vill. Corp., 600 So.2d 1240, 1245 (Fla. 1st DCA 1992); University of Fla. Found., Inc. v. Miller, 478 So.2d 482, 484 (Fla. 1st DCA 1985). Courts in other jurisdictions have similarly ruled. See Ross v. Artuz, 150 F.3d 97, 100 (2d Cir. 1998) (citation omitted); United States v. Martinez, 481 F.2d 214 (5th Cir. 1973); Hays v. Arizona Corp. Comm'n, 409 P.2d 282, 284 (Az. 1965); Louisiana Auto. Fin. Serv., Inc. v. Department of Econ. Dev., 743 So.2d 217 (La. App. 1999); Preston v Ferguson, 166 N.E.2d 365, 372 (Ohio 1960); Cohn v. Town of Cazenovia, 247 N.Y.S.2d 919, 920 (N.Y. App. 1964). But see Landreth v. First Nat'l Bank of Cleburne County, 45 F.3d 267, 269 (8th Cir. 1995) (six-year statute of limitations for seeking payment of certificate of deposit did not require demand for payment to be made within a reasonable time; refusing, when statute was silent, to read in a "reasonable time").

The Court concludes that HTE must have redeemed Tyler's shares within a reasonable time. A reasonable time under the facts of this case and the statute is 60 days from the shareholder vote denying voting rights to Tyler. Because HTE's redemption was beyond any notion of reasonableness, HTE's redemption of Tyler's stock is invalid and no longer effective.

Based on the foregoing, it is therefore,

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 48) is **DENIED**.

**DONE and ORDERED** in Chambers, Orlando, Florida this __18__ day of September, 2002.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

F I L E   C O P Y

Date Printed: 09/19/2002

Notice sent to:

    ___  John W. Foster Sr., Esq.
           Baker & Hostetler, LLP
           200 S. Orange Ave., Suite 2300
           P.O. Box 112
           Orlando, FL  32802-0112

    ___  Jerry Ray Linscott, Esq.
           Baker & Hostetler, LLP
           200 S. Orange Ave., Suite 2300
           P.O. Box 112
           Orlando, FL  32802-0112

    ___  William B. Wilson, Esq.
           Holland & Knight, LLP
           200 S. Orange Ave., Suite 2600
           P.O. Box 1526
           Orlando, FL  32802-1526

    ___  Michael D. Starks, Esq.
           Holland & Knight, LLP
           200 S. Orange Ave., Suite 2600
           P.O. Box 1526
           Orlando, FL  32802-1526