UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:01-cv-1366-Orl-31DAB

H.T.E., INC.,

    Plaintiff,

vs.

*DISPOSITIVE MOTION*

TYLER TECHNOLOGIES, INC.,

    Defendant.
_____/

### TYLER'S MOTION FOR SUMMARY JUDGMENT ON H.T.E.'S AND TYLER'S DECLARATORY JUDGMENT ACTIONS

Defendant, TYLER TECHNOLOGIES, INC. ("Tyler"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, moves the Court to enter summary judgment on the remaining issues in H.T.E.'s and Tyler's Declaratory Judgment Actions, and declare that (1) Tyler is entitled to full voting rights of all of the shares of H.T.E. stock owned by it up to 20 percent of the issued and outstanding common stock of H.T.E. as of the date Tyler acquired those shares; and (2) any transferee of the shares of H.T.E. stock now owned by Tyler (and in which Tyler was deemed not to have voting rights) would have voting rights in such shares provided they were acquired in a non-control share acquisition or the transferee otherwise complied with the provisions of the Florida Control Share Acquisition Act. § 607.0902, Fla. Stat. (2001) (the "Act").[1]

---

[1] The issue of the validity of H.T.E.'s purported redemption of the H.T.E. stock owned by Tyler, which was the subject of the Order entered September 18, 2002, *H.T.E., Inc. v. Tyler Technologies,*

1. The pleadings, depositions, answers to interrogatories, admissions, affidavits and other evidence on file, demonstrate that there is no genuine issue as to any material fact and that Tyler is entitled to a summary judgment on H.T.E.'s Count I and Tyler's Counterclaim Count I, both of which seek declaratory relief, as a matter of law.

2. Any restriction on voting rights of the H.T.E. stock owned by Tyler, pursuant to Section 607.0902, Florida Statutes (2001), is limited to "control shares." As explained in detail in Tyler's prior legal memoranda, filed in opposition to H.T.E.'s Motion for Summary Judgment, the definition of "control shares" includes only those shares constituting 20 percent or more of the voting shares of stock of H.T.E. at the time that Tyler acquired those shares of stock.

3. A transferee of the H.T.E. stock owned by Tyler who does not acquire "control shares" in a "control share acquisition" would have voting rights in those shares regardless of their status when Tyler owned them. As shown below, H.T.E. has conceded that Tyler is correct on this point.

WHEREFORE, Defendant/Counter-Plaintiff Tyler, respectfully requests that the Court enter summary judgment on H.T.E.'s and Tyler's Declaratory Judgment Actions, and enter a declaratory judgment against H.T.E. and for Tyler on H.T.E.'s Count I and on Tyler's Counterclaim Count I, which specifically orders, adjudges, and declares in Tyler's favor as follows:

---

*Inc.*, 2002 U.S. Dist. LEXIS 17561, 2002 WL 31094769 (M.D. Fla. 2002) (the "Order"), has been amicably resolved by H.T.E.'s agreement to withdraw and rescind its attempted redemption and to not attempt any further such redemption. Both parties have also agreed to withdraw their tort

  A. Any restriction on the voting rights of the H.T.E. stock owned by Tyler pursuant to the Act is limited to those shares constituting 20 percent or more of the issued and outstanding common stock of H.T.E. as of the date that Tyler acquired those shares, and therefore, Tyler's shares of H.T.E. stock below that threshold of 20 percent still have full voting rights; and

  B. Regardless of the status of the voting rights of the H.T.E. shares in possession of Tyler, if and when Tyler transfers H.T.E. shares to a third party or parties, the transferee of those H.T.E. shares will have full voting rights in such shares, provided they were acquired in a non-control share acquisition or that the transferee otherwise complies with the provisions of the Act.

## MEMORANDUM OF LAW

**I. STATEMENT OF THE CASE**

In this action, Tyler seeks a declaration that: (A) Tyler is entitled to full voting rights of all the shares of H.T.E. stock owned by it up to 20 percent of the issued and outstanding shares of H.T.E. common stock as of the date that Tyler acquired those shares; and (B) a transferee of the shares of H.T.E. stock owned by Tyler (and in which Tyler was deemed not to have voting rights) would have voting rights in such shares provided those shares were acquired in a non-control share acquisition or the transferee otherwise complied with the provisions of the Act.

---

claims. Accordingly, the two issues presented herein are all that remain for disposition, and these questions are solely matters of statutory interpretation.

3

## II. THERE IS NO GENUINE ISSUE OF MATERIAL FACT AND THE REMAINING ISSUES ARE RIPE FOR SUMMARY JUDGMENT.

The two issues raised in Tyler's Motion for Summary Judgment involve the same undisputed operative facts as those that pertained to H.T.E.'s motion for partial summary judgment. Those facts are set forth in H.T.E.'s Memorandum of Law in Support of H.T.E.'s Motion For Partial Summary Judgment, at Section I(B)(1)(3) (Docket No. 49) and Tyler's Memorandum of Law in Opposition to H.T.E.'S Motion for Partial Summary Judgment, at Section II (Docket No. 53). Indeed, H.T.E. raised and addressed the voting rights issue involving the definition of "control shares" under the Act in its prior motion for partial summary judgment. H.T.E. Memorandum of Law in Support of H.T.E.'s Motion for Partial Summary Judgment, at Section III(C)(2) (Docket No. 49).[2] The issues raised in Tyler's Motion for Partial Summary Judgment are solely matters of statutory interpretation. Accordingly, they are ripe for summary judgment.[3]

## III. TYLER'S SHARES BELOW THE 20 PERCENT THRESHOLD ARE NOT "CONTROL SHARES" AND HAVE FULL VOTING RIGHTS.

In addition to the redemption issue that has now been resolved, Tyler's Second Amended Counterclaim asks this Court to declare that H.T.E.'s right to restrict the voting rights of the H.T.E. stock owned by Tyler is limited to those

---

[2] This legal issue was crystallized from the outset in the respective press releases of the parties in which H.T.E. took the position that all of the H.T.E. shares owned by Tyler were stripped of voting rights and Tyler took the position that only those H.T.E. shares constituting 20% or more of the issued and outstanding stock of H.T.E. were without voting rights. *Moore Second Deposition,* at 274 and Exhibit 109 (T1490, 1491, 1495 and 1501) and Exhibit 110.

[3] **Tyler submits that under the undisputed operative facts set forth in the parties' memoranda of law concerning H.T.E.'s Motion for Partial Summary Judgment, if the Court does not grant Tyler summary judgment on one or both issues, it should without**

4

shares constituting 20 percent or more of the voting shares of stock of H.T.E. at the time that Tyler acquired those shares of stock. In Tyler's Second Amended Counterclaim, Tyler alleged that:

> Tyler maintains that any ability of H.T.E. to limit the voting rights of Tyler are limited to the shares of stock held by Tyler in excess of the 20% of H.T.E.'s issued and outstanding shares of stock at the time Tyler acquired its stock. It is H.T.E.'s position that it can limit the voting rights of all of the stock held by Tyler.

Second Amended Counterclaim, at ¶ 14 (Docket No. 63).

H.T.E. answered that:

> HTE admits that the shareholders voted not to confer voting rights on the stock of HTE held by Tyler and that Tyler takes the contrary position (i.e., that HTE can only limit the voting rights of HTE's stock held by Tyler that is in excess of 20 percent of HTE's issued and outstanding share of stock at the time Tyler acquired its stock). HTE denies that Tyler's position is correct and proper.

Answer to Second Amended Counterclaim, at ¶ 14 (Docket No. 67).

This voting rights issue has already been fully briefed by the parties in connection with H.T.E.'s recently denied motion for partial summary judgment. Rather than repeat those arguments, Tyler hereby incorporates the various memoranda of law it filed in response to H.T.E.'s Motion for Partial Summary Judgment and Memoranda of Law, namely:

(1) Tyler's Memorandum of Law in Opposition to H.T.E.'s Motion for Partial Summary Judgment (Docket No. 53) (particularly pages 14 to 20);

---

**further notice enter summary judgment in favor of H.T.E. on that issue or those issues, or the Court should issue its own interpretation of the Act on that issue or those issues.**

(2) Tyler's Motion for Leave to File a Brief Supplemental Memorandum of Law to Prevent Misimpression of Law Regarding H.T.E.'s Pending Motion for Partial Summary Judgment (Docket No. 80);

(3) Tyler's Supplemental Memorandum of Law to Prevent Misimpression of Law Regarding H.T.E.'s Motion for Partial Summary Judgment (Docket No. 83); and

(4) Tyler's Supplemental Brief in Opposition to H.T.E.'s Motion for Partial Summary Judgment (Docket No. 95).

The Act provides that "control shares" acquired in a "control share acquisition" have only such voting rights as are conferred by the vote of the shareholders. § 607.0902(5) & (9), Fla. Stat. (2001). The parties agree that the vote of the shareholders can only pertain to "control shares."[4] Thus, at issue is the definition of "control shares," and that is purely a question of law.

Although Tyler will not repeat the arguments set forth in its previous memoranda, a few additional observations are appropriate in light of this Court's recent Order on the redemption issue. *See H.T.E., Inc. v. Tyler Technologies, Inc.*, 2002 U.S. Dist. LEXIS 17561, 2002 WL 31094769 (M.D. Fla. Sept. 18, 2002) (the "Order") (citations herein are to LEXIS). As this Court explained in its recent Order, the Court's task is to apply the plain meaning of the Act. Order at *10. As discussed in Tyler's previous memoranda, the Act plainly defines "control shares" as

---

[4] H.T.E. stated in its Memorandum in Support of Motion for Partial Summary Judgment that "Once an acquiring person has made a control share acquisition, the acquired control shares do not have voting rights unless a majority of disinterested shareholders approve a resolution granting voting rights to such control shares." H.T.E. Memorandum, at 9 (Docket No. 49).

only those shares above the statutory threshold. According to the Act, "control shares" are those shares that "when added to all other shares . . . owned by a person" allow "the exercise of the voting power" above the thresholds described in the Act. § 607.0902(1), Fla. Stat. (2001). By distinguishing between those control shares actually above the threshold and "all other shares," the statute makes clear that only the shares that actually give control are subject to voting restrictions. *See* Tyler's Memorandum, at 14-16 (Docket No. 53).

This distinction between the acquirer's control shares and all other shares is also maintained in the section restricting the voting rights of control shares. According to Section 607.0902(9), Florida Statutes (2001), the voting restriction imposed by the Act applies only to "[c]ontrol shares acquired in a control-share acquisition." If the Florida Legislature wished to subject all shares acquired in the control-share acquisition to voting restrictions, it could have easily done so by drafting the Act to apply to *all* shares acquired in a control-share acquisition. Instead, only "control shares" are restricted. *See* Tyler's Memorandum, at 15-17 (Docket No. 53).

Tyler's interpretation is also consistent with the legislative history of the Act. As this Court observed in its recent order, if there is any doubt about the meaning of the statute, the Court's goal is to give effect to the legislative intent. Order at *10. Here the legislature's intent was clearly expressed in a Senate Report already quoted by this Court. In its recent Order, this Court addressed the definition of "control shares" quoting from the Senate Staff Analysis and Economic Impact

Statement for Bill No. CS/CB 404, Fla. Sen. Comm. on Commerce, at 2 (Apr. 14, 1987). That report defines "control shares" to include only those shares above the statutory threshold. Discussing the Indiana Control Share Acquisition Act upon which the Act was patterned, the report states that "'control shares,' [are] shares held by any one person or firm *in excess of 20 percent of the total stock outstanding*. The law deprives these control shares of any voting power...." Order at *5 n.2 (emphasis added).

Tyler's construction of "control shares" is also consistent with this Court's description of the purpose of the Act which is "to protect minority shareholders by allowing them to decide who should control the corporation" and this Court's rejection of any suggestion that the Act is designed "to punish an acquiring company for attempting to take control of a public corporation." Order at *15. The Act effectively defines "control" as the ability to vote more than 20 percent of the corporation's stock. § 607.0902(1), Fla. Stat. (2001). There are no restrictions imposed on other stockholders who own 5, 10, or even 19 percent of the corporation. In other words, the purpose of the Act, which is to prevent a party from exercising voting rights to more than 20 percent of the stock, is accomplished by preventing the acquirer from voting those shares in excess of 20 percent. Any additional restriction on non-controlling shares is precisely the sort of punitive measure which this Court has already held must be rejected when interpreting the Act. See Order

8

at *15.[5] Put simply, why should an acquiring corporation's non-controlling shares be subject to voting restrictions not imposed on any other shareholder?[6]

Based on Tyler's memoranda of law incorporated herein, and the principles of statutory construction outlined in this Court's recent Order, Tyler submits that it is entitled to summary judgment declaring that any restriction on the voting rights of the H.T.E. stock owned by Tyler is limited to those shares constituting 20 percent or more of the issued and outstanding shares of H.T.E. common stock as of the date that Tyler acquired those shares of stock, and therefore, Tyler's shares of H.T.E. stock below that threshold of 20 percent still have full voting rights.

### IV. FULL VOTING RIGHTS WOULD FLOW TO THIRD PARTIES REGARDLESS OF THEIR RIGHTS IN TYLER'S POSSESSION.

Tyler is also entitled to summary judgment on its request that this Court declare that a transferee of the H.T.E. stock owned by Tyler would have voting rights in those shares regardless of whether Tyler had voting rights in those shares, provided they were obtained in a non-control share acquisition or the transferee otherwise complied with the provisions of the Act. *See* Second Amended Counterclaim (Docket No. 34). H.T.E. has conceded the point; thus, there is no dispute that Tyler's position on this issue is correct.

Tyler's Second Amended Counterclaim Count I stated in pertinent part:

---

[5] Because the H.T.E. shares owned by Tyler would have been "interested shares," Tyler, like other holders of "interested shares," would have been ineligible to vote those shares at the annual stockholders meeting on the resolution to grant voting rights to its "control shares." §607.0902(3)(a) and (9)(b)(2), *Fla. Stat.* (2001).

[6] Moreover, as discussed in Tyler's Memorandum in Opposition, H.T.E.'s interpretation is also in conflict with well-settled corporate law stating that the right to vote should not be taken away unnecessarily. *See* Memorandum in Opposition at 18 n.27 (Docket No. 53).

9

> Tyler maintains that to the extent that any of the H.T.E. shares of stock held by Tyler are deemed not to have voting rights, a purchaser or transferee of such shares who is unaffiliated with Tyler would have voting rights under such shares, provided such purchaser or transferee acquired such shares in a non-control share acquisition or otherwise complied with the provisions of §607.0902, Fla.Stat. (2001). As indicated in a press release dated December 15, 1999, it is H.T.E.'s position that regardless of the circumstances surrounding the transfer or purchase of such shares of H.T.E. stock or the status of the transferee or purchaser, such shares of H.T.E. stock would not have voting rights under any circumstances.

Second Amended Counterclaim, at ¶ 15 (Docket No. 63).

While H.T.E. originally denied this allegation in its answer on the basis that it was without knowledge of the facts, Answer to Second Amended Counterclaim, at ¶ 15 (Docket No. 67), H.T.E. recently conceded that Tyler's position is correct. That is, in a recent legal memoranda H.T.E. concedes that "provided the acquiring person's sale of acquired shares to a third-party does not itself constitute a control share acquisition, then that buyer would receive the shares free of redemption rights *and cloaked with voting rights.*" H.T.E. Memorandum, at 2 (Docket No. 84) (emphasis added). Indeed, this concession appears in both H.T.E.'s Memorandum in Opposition to Tyler's Motion for Leave to File Supplemental Memorandum, at 2 (Docket No. 84), and in H.T.E.'s Supplemental Brief Supporting H.T.E.'s Motion for Summary Judgment. H.T.E. Supplemental Brief, at 6 (Docket No. 93).[7] Thus, on

---

[7] And, L.A. Gornto, the individual who was quoted in the December 15, 1999 H.T.E. press release as stating that no purchaser or transferee of Tyler's H.T.E. stock would have voting rights, has now testified that the statement was intended to refer to a single purchaser or transferee for all 32 percent of H.T.E.'s stock, in which case the transfer would be a control share acquisition in his opinion and subject to the Act. *Gornto Second Deposition* at 162-63.

this point, there is no genuine issue of fact in dispute and the parties agree on the law. Therefore, Tyler is entitled to summary judgment.

Even if H.T.E. now disagreed, despite its earlier concession, and even if this Court were to determine H.T.E.'s concession did not constitute waiver or judicial estoppel, Tyler would still be entitled to summary judgment as a matter of law. This is true because Tyler's position is in accord with the Act's clear legislative purpose, and any other interpretation would be inequitable, punitive, and possibly unconstitutional. As this Court has already observed, the purpose of the Act is "to protect minority shareholders by allowing them to decide who should control the corporation" and is not to "punish an acquiring company for attempting to take control of a public corporation." Order, at *15. To interpret that Act in a manner that would result in a permanent elimination of voting rights on stock, even as to a transferee who does not own a controlling interest within the meaning of the Act, would be purely confiscatory.[8] Leading commentators agree, suggesting that the Act must be interpreted to permit a transferee to obtain voting rights so long as the transferee does not acquire those shares as part of a control share acquisition:

> The Act does not provide a method for restoring voting rights to shares after they have been resold or disfranchised by the Act. This suggests that once the voting rights of the control shares are denied, those rights are terminated forever. Under this interpretation, a person with nonvoting control shares would be unable to resell them. In addition, this interpretation increases the relative voting power of the other shareholders without

---

[8] *See also* Tyler's Memorandum of Law in Opposition to H.T.E.'s Motion for Partial Summary Judgment, at 13-14 (Docket No. 53) (discussing the constitutional implications of interpreting the Act in a manner that interferes with the national marketplace for the sale of securities); Tyler's Supplemental Brief in Opposition to Motion for Partial Summary Judgment, at 7 (Docket No. 95).

> further cost or expense to them, legislatively creates a separate class of securities, and possibly creates a forfeiture or an impermissible restraint on the alienation of property. To avoid such results, the voting rights taint attendant to control shares should evaporate when those shares are transferred to a person in whose hands they are not control shares. The policy behind the Act will be fully served if purchasers of limited amounts of control shares do not inherit any voting rights restrictions attributable to them in the hands of the seller.

Robert C. Rasmussen and Jeffrey M. Fuller, *Florida Takeover Law: Control-Share Acquisitions,* 16 F.S.U. L. Rev. 103, 125-26 (1988). *See also* Jeffrey L. Silberman, *How Do Pennsylvania Directors Spell Relief?* Act 36, 17 Del. J. Corp. L. 115, 136 (1991) ("[I]f the voting rights are not accorded by the shareholders, the control shares can regain their voting power if the acquiror transfers them to a person with whom he has no affiliation.").

Two Florida experts on the Act discussed the nightmare implications of a contrary rule:

> As a practical matter, because the statute applies only to companies whose stock generally will be publicly traded, it would be commercially unreasonable and impractical to attempt to use the statute to strip the control shares of their voting rights permanently. The share certificates representing the control shares may be held by nominees such as banks or brokers and never be registered in the name of the person or entity involved in the control-share acquisition. If voting rights are not accorded the shares, they probably will be resold by the acquiror through the securities exchanges or the Nasdaq Stock Market. In such case, there would be no way for the corporation to determine which certificates represented the control shares and track them into the hands of subsequent holders. Even if that were possible, the corporation would in effect be creating a new class of nonvoting common stock. As a result, unless the corporation's articles of

> incorporation provide that shares of the class of stock that are disenfranchised in a control-share acquisition are permanently stripped of their voting rights, and the corporation could obtain possession of the certificates representing the control shares and insert a legend identifying their nonvoting status, any attempt to deny voting rights to a subsequent holder of the shares who acquires them without knowledge of their nonvoting status would almost certainly be unenforceable. See F.S. 607.0625-607.0627.

Gregory C. Yadley and Paul R. Lynch, *Anti-Takeover Laws* § 8.32, Florida Corporate Practice CP FL-CLE 8-1 (1999).

Based on the public policy expressed above and previously recognized by this Court and, more importantly, H.T.E.'s concession and agreement on this issue, Tyler submits that it is entitled to summary judgment in its favor. This Court should declare that, even if Tyler may not vote the H.T.E. shares in Tyler's possession, when Tyler transfers H.T.E. shares to a third party or parties, those H.T.E. shares will be "cloaked with voting rights" unless those shares would constitute "control shares" acquired in a "control share acquisition." H.T.E.'s Memorandum in Opposition to Tyler's Motion for Leave to File Supplemental Memorandum, at 2 (Docket No. 84); H.T.E.'s Supplemental Brief Supporting H.T.E.'s Motion for Summary Judgment, at 6 (Docket No. 93).

## V. CONCLUSION

For the reasons stated, Tyler is entitled to a summary judgment that (1) Tyler has full voting rights in H.T.E. stock owned by it up to 20 percent of the issued and outstanding shares of H.T.E. common stock as of the date it acquired them; and (2) any transferee of H.T.E. stock owned by Tyler would have voting

rights provided the shares were acquired in a non-control share acquisition or that the transferee otherwise complied with the provisions of the Act.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by hand delivery this /ST day of October, 2002, to John W. Foster, Sr., Esquire, Baker & Hostetler LLP, 2300 Sun Trust Center, 200 South Orange Avenue, Post Office Box 112, Orlando, FL 32802-0122.

William B. Wilson, Esquire
Florida Bar No. 153167
Michael D. Starks
Florida Bar No. 0086584
HOLLAND & KNIGHT LLP
200 S. Orange Avenue, Suite 2600
Post Office Box 1526
Orlando, FL 32802-11526
(407) 425-8500
Attorneys for Defendant,
Tyler Technologies, Inc.

ORL1 #741903 v4