# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

H.T.E., INC.,

      Plaintiff,

vs.                      CASE NO.: 6:01-cv-1366-Orl-31DAB

TYLER TECHNOLOGIES, INC.,

      Defendant.

_____/

**DEFENDANT, TYLER TECHNOLOGIES, INC.'S, NOTICE OF FILING RESPONSES AND OBJECTIONS TO INTERROGATORIES IN SUPPORT OF TYLER'S MOTION FOR SUMMARY JUDGMENT ON H.T.E.'S AND TYLER'S DECLARATORY JUDGMENT ACTIONS.**

The Defendant, TYLER TECHNOLOGIES, INC., by and through its undersigned attorneys, hereby gives notice of filing of the original of H.T.E., INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES served on April 23, 2002, in support of Tyler's Motion for Summary Judgment.

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by U. S. Mail this 4th day of October, 2002, to John W. Foster, Sr.,

106

Esquire, Baker & Hostetler LLP, 2300 Sun Trust Center, 200 South Orange

Avenue, Post Office Box 112, Orlando, FL 32802-0112.

William B. Wilson, Esquire
Florida Bar No.  153167
HOLLAND & KNIGHT LLP
200 S. Orange Avenue, Suite 2600
Post Office Box 1526
Orlando, FL 32802-1526
Phone:  (407)425-8500
Fax:  (407)244-5288
Attorneys for Defendant,
Tyler Technologies, Inc.

ORL1 #743477 v1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

### CASE NO.: 6:01-cv-1366-Orl-31DAB

H.T.E., Inc., a Florida corporation,

     **Plaintiff,**

v.

**TYLER TECHNOLOGIES, INC.,**
a Delaware corporation,

     **Defendant.**

_____/

### H.T.E., INC.'S RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF INTERROGATORIES

The Plaintiff, H.T.E., Inc., ("HTE"), hereby serves its responses and objections to the interrogatories served by the Defendant and states as follows:

**A.**    **GENERAL OBJECTIONS**

    1.    HTE objects to each Interrogatory to the extent that it seeks information that is protected by the attorney-client privilege.

    2.    HTE objects to each Interrogatory to the extent that it seeks information that is work product and otherwise constitutes trial preparation materials.

    3.    HTE objects to the definitions and instructions to the extent those definitions and instructions exceed the scope of discovery permitted under the Federal Rules of Civil Procedure.

**B.** **SPECIFIC OBJECTIONS AND ANSWERS TO INTERROGATORIES**

**Interrogatory 1.** Identify (i.e., state the name or designation and the purpose or application of) each product of HTE that competes with a product of Tyler and for each such HTE product, identify the product(s) of Tyler with which it competes.

**Response:**

Pursuant to Rule 33(d) of the Fed. R. Civ. P., HTE is producing the product brochures to Tyler contemporaneously with this response. The answer to this interrogatory may be derived or ascertained from these product brochures, and the burden of deriving or ascertaining the answer is substantially the same for Tyler as for HTE.

**Interrogatory 2.** State the name, address and telephone number of each customer or prospective customer of HTE with whom you know or believe that Tyler competed against HTE for business during the period from January 1, 1997 through the present date, and for each such customer identify (i.e., state the name or designation and the purpose or application of) the project and nature of the business for which there was such competition, and the approximate date or dates of the competition.

**Response:**

HTE's records indicate that Tyler competed against the following customers or prospective customers:

1. Rochester, NH – Finance and Administration software, August 2000

2. Eau Claire, WI - Finance and Administration software, September 2000

3. Kearney, NE - Finance and Administration software, September 2000

4. Coconut Creek, FL - Finance and Administration software, May 2001

5. Porterville, CA - Finance and Administration software, October 2001

6. Norco, CA - Finance and Administration software, March 2002

2

Tyler has competed against HTE for other business; however, as of this date, HTE has located no other records which reflect the identity of any other specific customers or prospective customers.

**Interrogatory 3.**  State the name, address and telephone number of the five (5) primary or major competitors of HTE

 **Response:**

- Tyler Technologies, specifically including its subsidiaries, Process, Inc. d/b/a MUNIS and Incode
  5949 Sherry Lane
  Suite 1400
  Dallas, TX  75225

- NewWorld Systems
  888 West Big Beaver
  Suite 1100
  Troy, MI  48084-4749

- Pentamation
  225 Marketplace
  Bethlehem, PA  18018
  610-691-3616

- SCT
  4 County View Road
  Malvern, PA  19355
  800-223-7036

- SCI
  121 Hunter Avenue
  Suite 100
  St. Louis, MO  63124
  314-863-0262

**Interrogatory 4.**  State the name, address and telephone number of each customer or prospective customer of HTE from or on which HTE lost business or failed to obtain business as a result of any breach by Dennis Harward or Jack L. Harward of the Severance Agreement between them and HTE and state the name, address and telephone number of each person having

3

knowledge of the facts concerning the loss of business or failure to obtain business with respect to each such customer or prospective customer.

**Response:**

Subject to and without waiving the general objections stated above, at this time HTE does not have specific knowledge of any particular customer or prospective customer it lost or failed to obtain business from as a result of the breach by Dennis Harward or Jack L. Harward of the Severance Agreement between them and HTE.

**Interrogatory 5.**  With respect to the employment agreements between HTE and Dennis Harward and Jack L. Harward, please state the following:

**Response:**

HTE objects to Interrogatory No. 5(a), 5(b) and 5(c) on the grounds that they are overbroad.  This interrogatory and its subparts have no time limit and therefore seek information pertaining to employment agreements between HTE and Dennis Harward and Jack L. Harward (collectively the "Harwards") which are not relevant to the issues in this case.  Moreover, the interrogatory seeks information concerning the negotiations and drafts of the employment agreements between HTE and Dennis Harward and Jack L. Harward which are irrelevant to the issues in this case.

(a)     State the name, address and telephone number of each person involved in the negotiations leading up to the contracts;

**Response:**

Subject to and without waiving the objections and general objections stated herein, HTE

answers as follows:

Jack Harward
1286 Hillstream Drive
Geneva, FL  32732

Dennis Harward
4643 Albritton Road
St. Cloud, FL  34772

L.A. Gornto, Jr.
149 S. Ridgewood Ave.
Suite 550
Daytona Beach, FL 32114
(386)257-1899

Bernard Markey
Navigator Equity Partners, LLC
47 Summit Avenue
Summit, NJ  07901
(908) 273-7733

Peter Roberts
[last known address]
BancBoston Ventures
100 Federal Street
Stop 01-32-01
Boston, MA  02110
(617) 434-2509

    (b)    State the name, address and telephone number of each person involved in

the drafting or commenting on the drafts of the employment agreements;

**Response:**

Subject to and without waiving the objections and general objections stated herein, HTE

believes the persons involved in the drafting or commenting on the drafts of the employment

agreements could include the following:

Jack Harward
1286 Hillstream Drive
Geneva, FL  32732

Dennis Harward
4643 Albritton Road
St. Cloud, FL  34772

L.A. Gornto, Jr.
149 S. Ridgewood Ave.
Suite 550
Daytona Beach, FL 32114
(386)257-1899

Randolph Fields
Greenberg Traurig
111 N. Orange Ave., 20th Floor
P.O. Box 4923
Orlando, FL  32801
(407) 420-1000

5

Peter Roberts                     Bernard Markey
[last known address]              Navigator Equity Partners, LLC
BancBoston Ventures               47 Summit Avenue
100 Federal Street                Summit, NJ  07901
Stop 01-32-01                     (908) 273-7733
Boston, MA  02110
(617) 434-2509

(c)     Describe sufficiently for identification purposes in connection with a request to produce all documents pertaining to the negotiations or drafting of such employment agreements.

**Response:**

Subject to and without waiving the specific objections to Interrogatory No. 5 and its subparts and the general objections stated above,  HTE has produced or is producing contemporaneously herewith the employment agreements.  HTE knows of no other documents pertaining to the negotiations or drafting of the same.

**Interrogatory 6.**  With respect to your allegation that Tyler interfered with a contract between Dennis Harward and/or Jack Harward and HTE, please state the following:

(a)     Describe each act of Tyler which interfered with the contract;

**Response:**

In August 1999, Tyler formulated a plan to take over HTE by first making a control share acquisition of the Harwards' HTE stock.  Indeed, on August 13, 1999, Tyler's board of directors issued a unanimous written consent which stated:

> The Board of  Directors deems it to be in the best interests of the Company to acquire all of the common stock of HTE, Inc. **in a single transaction or pursuant to a specific plan which is consummated within one year**; and to initiate this specific plan of the Company by acquiring up to 6,143,952 shares (the "Shares") of HTE, Inc. common stock...

6

In furtherance of its plan to take over HTE, Tyler engaged in discussions and negotiations with the Harwards. During this time period, Tyler and its general counsel received, reviewed and had full knowledge about the Severance Agreement that the Harwards had executed with HTE which, among other things, prohibited the Harwards from acquiring more than five percent (5%) of the outstanding stock of a competing company, such as Tyler. Tyler also knew that the Harwards were members of HTE's Board of Directors, as well as major shareholders of HTE. Despite this knowledge, Tyler negotiated, drafted and executed a Stock Purchase Agreement with the Harwards pursuant to which the Harwards acquired more than five percent (5%) of Tyler's stock and Tyler acquired in excess of 32% of HTE stock. Tyler and the Harwards also executed an escrow agreement and, moreover, made an oral side agreement pursuant to which Tyler promised the Harwards that, if Tyler acquired HTE, Tyler would "fund out", or pay money to the Harwards under the Severance Agreement. Tyler's transaction with the Harwards constituted a breach by the Harwards of the Severance Agreement. Moreover, Tyler's transaction with the Harwards effectively removed them as Directors of HTE, signifying that Tyler further interfered with the business relations between HTE and the Harwards.

After entering into the Stock Purchase Agreement with the Harwards, Tyler continued to act in furtherance of its plan or scheme to take over HTE, including, without limitation, the following:

- Tyler published information and statements within the public domain regarding its acquisition of a large block of HTE stock and its plan to take over HTE;

- Tyler made an effort to remove HTE's Board of Directors and replace the same with ten (10) nominees which were either employees of Tyler or one of Tyler's affiliates;

7

- Tyler engaged in conversations and communications with the Harwards and the Harwards' legal counsel relating to the Harwards' breach of the Severance Agreement and the proposed repurchase by Tyler of some of its stock from the Harwards.

(b)    State the name, address and telephone number of each person having knowledge of the acts of Tyler interfering with the contract;

**Response:**

Previously disclosed pursuant to Rule 26 of the Federal Rules of Civil Procedure.

(c)    Describe sufficiently for identification purposes in connection with a request to produce each document that supports your answer to subparagraph (a) above or that describes or refers to any such acts of interference.

**Response:**

Subject to and without waiving the general objections stated above, the answer to this interrogatory can be derived or ascertained from the business records of HTE and/or from an examination, audit or inspection of such business records and the burden of deriving or ascertaining the answer is substantially the same for HTE as it is for Tyler.  Specifically, the answer to this interrogatory can be derived from the documents produced to Tyler pursuant to Rule 26 and Tyler's Request for Production of Documents.  Moreover, the depositions of Tyler's representatives, H. Lynn Moore, Jr., Louis Waters, William Oates and John Marr,  which were filed with the Court on December 21, 2001 (Docket Nos. 21, 22, 23 and 24, respectively), support HTE's response to 6(a).

**Interrogatory 7.** With respect to the decision to redeem the HTE common stock that was acquired by Tyler, please state the following:

(a)     The name, address and telephone number of each person involved in or who participated in that decision or the timing of that decision.

**Response:**

Bernard B. Markey
Navigator Equity Partners, LLC
47 Summit Ave.
Summit, NJ 07901
(908) 273-7733

Joseph M. Loughry, III
HTE, Inc.
1000 Business Center Drive
Lake Mary, FL 32746
(407) 304-3235

O.F. Ramos
14020 Carlton Dr.
Davie, FL 33330
(954) 423-9302

Edward A. Moses
1281 Prince Ct.
Heathrow, FL 32746
(407) 333-2596

L.A. Gornto, Jr.
149 S. Ridgewood Ave.
Suite 550
Daytona Beach, FL 32114
(386)257-1899

George P. Keeley
298 Island Creek Dr.
Vero Beach, FL 32963
(561) 231-6971

(b)     Identify the date of each meeting in which the redemption of the HTE stock acquired by Tyler was discussed and the names, addresses and telephone numbers of the attendees at each such meeting.

**Response:**

September 26, 2001, Board of Directors Meeting

Bernard B. Markey
Navigator Equity Partners, LLC
47 Summit Ave.
Summit, NJ 07901
(908) 273-7733

Joseph M. Loughry, III
HTE, Inc.
1000 Business Center Drive
Lake Mary, FL 32746
(407) 304-3235

O.F. Ramos
14020 Carlton Dr.
Davie, FL 33330
(954) 423-9302

Edward A. Moses
1281 Prince Ct.
Heathrow, FL 32746
(407) 333-2596

9

L.A. Gornto, Jr.
149 S. Ridgewood Ave.
Suite 550
Daytona Beach, FL 32114
(386)257-1899

George P. Keeley
298 Island Creek Dr.
Vero Beach, FL 32963
(561) 231-6971

Mark Leonard
Constellation Software, Inc.
20 Adelaide St. E., Suite 1200
Toronto, Ontario
M5C 2T6
(416) 861-2275

Donald S. Blair & Maihar Jubalia
Raymond James & Associates, Inc.
880 Carillion Parkway
St. Petersburg, FL  33716
(727) 575-5772

Randolph Fields
Greenberg Traurig
111 N. Orange Avenue
20th Floor
PO Box 4923
Orlando, FL  32801
(407)-420-1000

October 12, 2001 Board of Directors Meeting

Bernard B. Markey
Navigator Equity Partners, LLC
47 Summit Ave.
Summit, NJ 07901
(908) 273-7733

Joseph M. Loughry, III
HTE, Inc.
1000 Business Center Drive
Lake Mary, FL 32746
(407) 304-3235

O.F. Ramos
14020 Carlton Dr.
Davie, FL 33330
(954) 423-9302

Edward A. Moses
1281 Prince Ct.
Heathrow, FL 32746
(407) 333-2596

10

L.A. Gornto, Jr.
149 S. Ridgewood Ave.
Suite 550
Daytona Beach, FL 32114
(386)257-1899

George P. Keeley
298 Island Creek Dr.
Vero Beach, FL 32963
(561) 231-6971

(c)     Describe sufficiently for identification purposes in connection with a request to produce, each document prepared for, utilized in, or prepared as a result of each such meeting, including any notes or minutes taken during each such meeting.

**Response:**

Subject to and without waiving the general objections stated above, the answer to this interrogatory can be derived or ascertained from the business records of HTE and/or from an examination, audit or inspection of such business records and the burden of deriving or ascertaining the answer is substantially the same for HTE as it is for Tyler.  Specifically, the answer to this interrogatory can be derived from the documents produced to Tyler pursuant to Rule 26 and Tyler's Request for Production of Documents.

**Interrogatory 8.**  With respect to the decision to adopt the stock repurchase agreement, please state the following:

(a)     The name, address and telephone number of each person involved in or who participated in that decision or the timing of that decision.

(b)     Identify the date of each meeting in which the decision to adopt of the stock repurchase agreement was discussed and the names, addresses and telephone numbers of the attendees at each such meeting.

(c)     Describe sufficiently for identification purposes in connection with a request to produce, each document prepared for, utilized in, or prepared as a result of each such meeting, including any notes or minutes taken during each such meeting.

**Response:**

HTE objects to Interrogatory 8(a), 8(b) and 8(c) on the grounds that they are overbroad, vague and ambiguous as they refer to "the stock repurchase agreement" but do not indicate a time period to or what stock repurchase agreement the interrogatory refers.   Moreover, this interrogatory and its subparts seek information that is irrelevant to the issues in this lawsuit and are not reasonably calculated to lead to the discovery of admissible evidence.   Subject to and without waiving these objections and the general objections stated above, HTE did not enter into a stock repurchase agreement.  On or about May 29, 1999, HTE's Board of Directors approved an action by written consent to repurchase shares of its stock on the open market.   HTE is producing to Tyler a copy of this written consent contemporaneously with this response.

**Interrogatory 9.**   Describe each act of Tyler to take over HTE as is alleged in paragraph 16 of your First Amended Complaint, and for each such act, state the date or approximate dates of the act and state the following:

**Response:**

In August 1999, Tyler formulated a plan to take over HTE by first making a control share acquisition of the Harwards' HTE stock.  Indeed, on August 13, 1999, Tyler's board of directors issued a unanimous written consent which stated:

The Board of  Directors deems it to be in the best interests of the Company to acquire all of the common stock of HTE, Inc. **in a single transaction or pursuant to a specific plan which is consummated within one year; and to**

initiate this specific plan of the Company by acquiring up to 6,143,952 shares (the "Shares") of HTE, Inc. common stock...

In furtherance of its plan to take over HTE, Tyler engaged in discussions and negotiations with the Harwards. During this time period, Tyler and its general counsel received, reviewed and had full knowledge about the Severance Agreement that the Harwards had executed with HTE which, among other things, prohibited the Harwards from acquiring more than five percent (5%) of the outstanding stock of a competing company, such as Tyler. Tyler also knew that the Harwards were members of HTE's Board of Directors, as well as major shareholders of HTE. Despite this knowledge, Tyler negotiated, drafted and executed a Stock Purchase Agreement with the Harwards pursuant to which the Harwards acquired more than five percent (5%) of Tyler's stock and Tyler acquired in excess of 32% of HTE stock. Tyler and the Harwards also executed an escrow agreement and, moreover, made an oral side agreement pursuant to which Tyler promised the Harwards that, if Tyler acquired HTE, Tyler would "fund out", or pay money to the Harwards under, the Severance Agreement.

Immediately after signing the Stock Purchase Agreement and Escrow Agreement, and while still located in Orlando, Florida, Louis Waters ("Water") of Tyler initiated a telephone call to Bernard Markey ("Markey") of HTE. Waters told Markey that Tyler had just then acquired a substantial block of HTE's common stock from the Harwards and that Tyler desired to acquire all of HTE's common stock. Mr. Gornto of HTE received a similar telephone call from John Marr of Tyler.

On August 20, 1999, Tyler directed and delivered to Holland & Knight, as Escrow Agent, a notice authorizing the Escrow Agent to release the escrowed documents to the HTE transfer agent. On that same day, Tyler's general counsel, Lynn Moore ("Moore"), prepared and Waters signed a notice, which was submitted or delivered to HTE in Florida informing HTE of its

acquisition of HTE stock and which specifically requested a meeting with the HTE board of directors "to discuss a business combination between the two companies."

On August 23, 1999, Tyler delivered to HTE in Florida, Tyler's "Acquiring Person Statement", which was expressly prepared and provided by Tyler pursuant to Florida law (i.e., § 607.0902(6), Florida Statutes).

In approximately September of 1999, Gornto and Markey met with certain of Tyler's officers, including Waters and Marr. During the meeting, Tyler's representatives strongly promoted Tyler's acquisition of HTE.

On or about November 8, 1999, Tyler exercised its call option and acquired an additional 968,952 shares of HTE's common stock from the Harwards. Moore then flew to Orlando, Florida, and exchanged the Tyler stock certificates for the HTE stock certificates. While in Orlando, Moore mentioned to the Harwards or their counsel that Tyler was going to submit a proposal to restructure HTE's Board of Directors.

On or about December 8, 1999, Tyler delivered to HTE in Florida, its shareholder proposals, which were proposed for inclusion in HTE's proxy statement for the solicitation of proxies in connection with the then, next annual meeting of HTE's shareholders. Essentially, Tyler was proposing the removal of the then-current members of HTE's Board of Directors and the election of Tyler's 10 nominees as directors. Each of Tyler's 10 nominees were either employees of Tyler or one of Tyler's affiliates, and the business address of each such nominee was shown by Tyler to be the same business address out of which Tyler operated. Moore expressly admitted during his deposition that Tyler's shareholder proposal was viewed by Tyler "as a way to take over the company." Moore Depo. @ 84. On December 14, 1999, Tyler filed its amended Schedule 13D, providing the public with notice of Tyler's proposal to restructure the Board of Directors of HTE.

14

On December 17, 1999, HTE responded to Tyler's shareholder proposals and, on that same date, Moore delivered or submitted to HTE in Florida, a letter to "clarify Tyler Technology, Inc.'s letter. . . of December 8, 1999 . . ."

Tyler published information and statements within the public domain regarding its acquisition of a large block of HTE and its plan to take over HTE, and otherwise proceeded to implement the plan which it adopted in August of 1999 to take over HTE.

(a)     State the name, address and telephone number of each person with knowledge of each such act;

**Response:**

Previously disclosed pursuant to Rule 26 of the Federal Rules of Civil Procedure.

(b)     Describe the actions or steps, if any, that were taken by HTE as a result of any acts by Tyler to take over HTE

**Response:**

The answer to this interrogatory can be derived or ascertained from the business records of HTE and/or from an examination, audit or inspection of such business records and the burden of deriving or ascertaining the answer is substantially the same for HTE as it is for Tyler. Specifically, the answer to this interrogatory can be derived from the documents produced to Tyler pursuant to Rule 26 and Tyler's Request for Production of Documents.

Subject to and without waiving any objections stated herein and the general objections stated above, after learning of the transaction between Tyler and the Harwards, HTE placed the Harwards on notice that they were in breach of their Severance Agreement.  In connection therewith, HTE was forced to engage in protracted litigation against the Harwards until that litigation was settled in February of 2001.  HTE engaged counsel and consultants/experts in connection with said litigation.

Upon Tyler's request, representatives of HTE met with representatives of Tyler to discuss a possible business combination of the two companies.   HTE retained an outside company, Broadview International LLC in connection with Tyler's efforts to take over HTE.  After due and sufficient consideration, HTE decided that a business combination  between the companies was not in the best interests of HTE or its shareholders.

In accordance with Florida law, HTE at its next annual shareholder's meeting held a vote as to whether to accord voting rights to the shares of HTE stock that Tyler held.  At that annual shareholder's meeting, the shareholders voted not to accord voting rights to those shares.

Due to the uncertainty and confusion created by Tyler's acts as to the ownership, control and direction of HTE, HTE was forced to forego certain cost saving or cost-reducing actions.

HTE issued press releases regarding Tyler's actions.  Due to the confusion and uncertainty in the workplace and marketplace created by Tyler's actions, HTE has taken efforts to reassure its employees, customers and prospective customers, and to otherwise mitigate the harm caused by Tyler's actions.

HTE later redeemed Tyler's shares of HTE stock pursuant to its Articles of Incorporation and Florida law.  HTE retained the services of Raymond James & Associates, Inc. to determine the fair value to pay for the shares of HTE stock held by Tyler and placed those funds in escrow with SunTrust Bank to be delivered to Tyler upon the receipt from Tyler of the HTE shares. Tyler refused to tender the shares.  HTE  filed this  lawsuit.


(c)     Describe sufficiently for identification purposes in a request to produce each document or item supporting your answers to this interrogatory or describing or referring to such act(s).

**Response:**

The answer to this interrogatory can be derived or ascertained from the business records of HTE and/or from an examination, audit or inspection of such business records and the burden of deriving or ascertaining the answer is substantially the same for HTE as it is for Tyler. Specifically, the answer to this interrogatory can be derived from the documents being produced to Tyler pursuant to Rule 26 and Tyler's Request for Production of Documents.

**Interrogatory 10.**   State the name, address and telephone number of each person having knowledge of any damages sustained by or claimed by HTE in Count II of the First Amended Complaint and/or as a result of any purported interference by Tyler with any contract between HTE and Dennis Harward or Jack L. Harward.

**Response:**

Previously disclosed pursuant to Rule 26 of the Federal Rules of Civil Procedure.  HTE anticipates disclosing an expert witness by May 1, 2002 pursuant to the Case Management and Scheduling Order.

**Interrogatory 11.** State the total number of issued and outstanding shares of common stock in HTE for each of the following dates:

(a)     August 17, 1999;

**Response:**

17,372,374

(b)     November 8, 1999;

**Response:**

17,399,442

17

(c)    November 16, 2000;

**Response:**

17,323,390

(d)    October 29, 2001.

**Response:**

11,341,596

H.T.E., INC.

By: _____

Name: L. A. Gornto, Jr.

Title: Executive Vice President and General
Counsel

STATE OF FLORIDA)
                                    )SS:
COUNTY OF Volusia        )

The foregoing instrument was acknowledged before me this 22ⁿᵈ day of
April        , 2002 by L. A. Gornto, Jr., the Executive Vice President and General Counsel of
H.T.E., Inc., a  corporation, on behalf of the corporation. He is personally known to me or has
produced _____ as identification and did take an oath.

_____

Signature of Person Taking
Acknowledgment

Notary Stamp                              Print Name: Michele LeClerc

Title: Notary Public

Serial No. (if any) _____

Commission Expires:

Michele Le Clerc
MY COMMISSION # CC810463 EXPIRES
April 28, 2003
BONDED THRU TROY FAIN INSURANCE, INC.

18

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing **H.T.E., Inc.'s Responses and Objections to Defendant's First Set of Interrogatories** has been furnished via hand delivery to: **WILLIAM B. WILSON, ESQ.**, Holland & Knight LLP, 200 S. Orange Avenue, Suite 2600, Post Office Box 1526, Orlando, Florida 32802-1526 this _3d_ day of April, 2002.

John W. Foster, Sr.

G:\Jwf0370\25944\00001\Pleadings\FEDERAL\Responses To Tyler's 1st Rogs(Rev).Doc

# ADDITIONAL

# ATTACHMENTS

# <u>NOT</u>

# SCANNED

_____ Exceeds scanner's page limit

_____ Physical exhibit prevents scanning

__✓__ Other: ██████████████████

# **REFER TO COURT FILE**

Revised 09/15/99