

FILED

02 DEC -9 PM 4: 15

CLERK
[illegible]
ORLANDO [illegible]

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

H.T.E., INC., a Florida corporation,

        Plaintiff,

-vs-                                  Case No.: 6:01-cv-1366-Orl-31DAB

TYLER TECHNOLOGIES, INC., a
Delaware corporation,

        Defendant.

_____

## ORDER

This matter comes before the Court without oral argument on Defendant's Motion for Summary Judgment and incorporated memorandum of law (Doc. 101) and Plaintiff's Memorandum in Opposition (Doc. 108). Both parties concede that the issues here to be decided do not involve disputed issues of material fact and that if the Court finds that summary judgment for Tyler is inappropriate, the Court should enter summary judgment for HTE. (Def's. Mot., at 4 n.3; Pl's. Opp. at 18-19). Accordingly, the matter is ripe for determination as a matter of law. The Court has carefully considered the motion and response, including the accompanying memoranda, affidavits, depositions and exhibits, the previous memoranda submitted by the parties incorporated by reference into the current memoranda, and is otherwise fully advised in the premises.

## I. FACTUAL BACKGROUND

Plaintiff, H.T.E., Inc. ("HTE") is a publically held Florida corporation, headquartered in Seminole County, Florida. HTE is in the business of computer software development and its stock is traded on the National Association of Securities Dealers Automated Quotation System

("NASDAQ").[1] Defendant, Tyler Technologies, Inc. ("Tyler") is a Delaware corporation with its principal office located in Dallas, Texas. Tyler is a holding company with operating subsidiaries also engaged in the computer software business. Its stock is traded on the New York Stock Exchange ("NYSE").

HTE was founded by Jack and Dennis Harward (the "Harwards"). On August 3, 1999, the Harwards entered into a severance agreement and resigned as officers and employees of HTE. Two weeks later, on August 17, 1999, Tyler and the Harwards entered into a stock purchase agreement whereby Tyler acquired from the Harwards 4,650,000 shares of HTE stock and options for 968,952 additional shares of stock,[2] for a total of 5,618,952 shares representing approximately 32% of HTE's outstanding stock, at an average price of $2.81 per share.

On August 20, 1999, Tyler notified HTE of its purchase of the HTE shares. On August 23, 1999, Tyler provided an "Acquiring Person Statement" ("APS") to HTE pursuant to Florida Statutes section 607.0902(6). However, Tyler did not exercise its right to request a special meeting of the HTE shareholders as provided by section 607.0901(7), Florida Statutes. Consequently, Tyler's voting rights to the HTE shares acquired from the Harwards was not determined until the next regular meeting of the HTE shareholders on November 16, 2000. At that meeting, a proposal to confer voting rights on the HTE stock held by Tyler was defeated.

---

[1] In this Court's previous Order (Doc. 98, entered September 18, 2002), the Court outlined the undisputed facts in this case. Nevertheless, for ease of the reader, the Court will reiterate those facts here. The analysis and findings from that Order are adopted herein.

[2] On December 21, 1999, Tyler exercised its options and consummated the purchase of these shares.

On October 12, 2001, over two years after Tyler had acquired the HTE stock, HTE's board of directors adopted resolutions authorizing the redemption of all of the HTE shares owned by Tyler at $1.30 per share. On October 29, 2001, HTE gave Tyler notice of the redemption.

## II. PROCEDURAL BACKGROUND

On October 30, 2001, HTE filed suit in state court seeking declaratory relief. Tyler removed the case to federal court on November 20, 2001. On December 21, 2001, HTE amended its Complaint to state a claim against Tyler for tortious interference. Tyler answered the first Amended Complaint and filed a counterclaim seeking declaratory relief with respect to HTE's redemption of Tyler's HTE stock. On March 13, 2002, HTE filed a motion for partial summary judgment seeking an order from this Court determining the validity of HTE's redemption of Tyler's stock. After oral argument and supplemental briefings, this Court entered its Order (Doc. 98) on September 18, 2002, finding that HTE's redemption was invalid as untimely.

Subsequently, the parties filed a Joint Stipulation (Doc. 99) indicating that the tort claims in Counts II and III of HTE's Second Amended Complaint (Doc. 64) and Count II of the Second Amended Counterclaim (Doc. 63) would be dismissed with prejudice. On September 27, 2002, the Court entered an Order (Doc. 100) of dismissal on those claims. Therefore, the only remaining claims are the declaratory judgment action in Count I of the Second Amended Complaint and Count I of the Second Amended Counterclaim.

On October 1, 2002, Tyler filed the instant motion for summary judgment asking this Court to decide what percentage of Tyler's shares constitute control shares, what voting rights, if any, Tyler has with respect to its shares, and whether voting rights would be accorded to a subsequent purchaser who was not acquiring the shares in a control-share acquisition.

## III. ANALYSIS

Tyler asserts that HTE's right to restrict the voting rights of HTE stock owned by Tyler is limited to those shares constituting 20 percent or more of the voting shares of HTE stock at the time Tyler acquired those shares. On the other hand, HTE claims that all of the 5,618,952 shares purchased by Tyler constitute control shares and thus HTE can restrict voting rights on all of those shares.

Although Tyler and HTE argue for different interpretations of the statute, the Court finds Tyler's interpretation is unreasonable under a the plain reading of the statute. Florida's Control-Share Acquisition Law, section 607.0902, Florida Statutes, focuses on the acquisition of "control shares" in an issuing public corporation. Section 607.0902(1) states:

> "Control shares."--As used in this section, "control shares" means shares that, except for this section, would have voting power with respect to shares of an issuing public corporation that, when added to all other shares of the issuing public corporation owned by a person or in respect to which that person may exercise or direct the exercise of voting power, would entitle that person, immediately after acquisition of the shares, directly or indirectly, alone or as a part of a group, to exercise or direct the exercise of the voting power of the issuing public corporation in the election of directors within any of the following ranges of voting power:
> (a) One-fifth or more but less than one-third of all voting power.
> (b) One-third or more but less than a majority of all voting power.
> (c) A majority or more of all voting power.

When control shares are acquired in a "control share acquisition," the shares do not have voting rights unless a majority of the target company's disinterested shareholders approves a resolution granting voting rights to the control shares. Fla. Stat. § 607.0902(9). Here, the disinterested shareholders of HTE stock voted not to grant any voting rights to those shares owned by Tyler.

A "control share acquisition" is defined by the statute as "the acquisition, directly or indirectly, by any person of ownership of, or the power to direct the exercise of voting power with respect to, issued and outstanding control shares." Fla. Stat. § 607.0902(2)(a). Section 607.0902(2)(b) states:

> For purposes of this section, all shares, the beneficial ownership of which is acquired within 90 days before or after the date of the acquisition of the beneficial ownership of shares which result in a control share acquisition, and all shares the beneficial ownership of which is acquired pursuant to a plan to make a control-share acquisition shall be deemed to have been acquired in the same acquisition.

In the instant case, both requirements of section 607.0902(2)(b) are met. First, Tyler intended to acquire all of the common stock of HTE in a single plan or pursuant to a specific plan of Tyler by acquiring up to 6,143,952 shares of stock held by the Haywards. (Depo. of Lynn Moore (Doc. 103), Ex. 62). Second, although the agreement between Tyler and the Haywards provided for the purchase of the 5,618,952 shares of stock from the Haywards in two transactions, (Id. at Ex. 61), Tyler received beneficial ownership of all of the 5,618,952 shares on August 17, 1999, as Tyler reported to the Securities and Exchange Commission. (Id. at Ex. 68; id. at Ex. 71). Therefore, the 5,618,952 shares of stock acquired by Tyler from the Haywards constituted a control-share acquisition under a plain reading of the statute and the facts of this case.

Furthermore, the Court concludes that Tyler's argument that HTE can only restrict the voting rights of those shares over the statutory threshold is unpersuasive. Under a plain reading of the statute, disinterested shareholders can only determine the voting rights for those shares

obtained in a control share acquisition.[3] Because Tyler acquired all of the 5,618,952 shares in a

---

[3] The Court would reach the same conclusion even if it found the statute to be ambiguous and applied the rules of statutory construction. A court's interpretation of a statute "is guided by several factors: the act's purpose as indicated in the legislative history; the plain meaning of the statute's language; [agency] interpretations; previous court interpretations; and other principles of statutory construction. . . . [The court's] ultimate goal is to give effect to congressional intent." Caro-Galvan v. Curtis Richardson, Inc., 993 F.2d 1500, 1505 (11th Cir. 1993) (citations omitted)). It is well settled that legislative intent is the polestar that guides a court's statutory construction analysis. State v. Rife, 789 So.2d 288, 292 (Fla. 2001); McLaughlin v. State, 721 So.2d 1170, 1172 (Fla. 1998); Aetna Cas. & Sur. Co. v. Huntington Nat'l Bank, 609 So.2d 1315, 1317 (Fla. 1992); see also United States v. Gonzales, 520 U.S. 1, 6 (1997).

Turning to legislative history, it is clear that the section 607.0902 was patterned after the Indiana control-share acquisition act. See Senate Staff Analysis and Economic Impact Statement for Bill No. CS/CB 404, Fla. Sen. Comm. on Commerce, at 2 (Apr. 14, 1987). While the Senate Staff Analysis indicated that the "Indiana law adopt[ed] special rules for 'control shares,' i.e., shares held by any one person or firm in excess of 20 percent of the total stock outstanding," the Staff Analysis does not elaborate on this statement. The Comments in the Burns Indiana Statutes Annotated § 23-1-42-1 (2001) state that

> "Control shares" are not "all shares" owned by the acquiring person, but only the shares acquired in the "control share acquisition" . . . that, when added to the acquiring person' pre-acquisition holdings, put the person over one of the three specified thresholds of voting power. The facts in CTS Corp v. Dynamics Corp. of America, 481 U.S. 69, 95 L. Ed. 2d 67 (1987), are illustrative. The acquiring person in CTS owned approximately 9.6% of the issuing public corporation's shares before the acquisition, and then acquired approximately 17.9% in a tender offer, giving it a total of about 27.5%. Only the 17.9% acquired in the tender offer – which put the acquirer over the one-fifth threshold – were "control shares" whose voting power could be determined, under [Ind. Code] 23-1-42-9, by a vote of the disinterested shareholders. (Internal citation omitted, emphasis in original).

Moreover, although dicta, footnote 5 in the CTS case is instructive:

> CTS and Dynamics have settled several of the disputes associated with Dynamics' tender offer for shares of CTS. The case is not moot, however, because the judgment of this Court still affects voting rights in the shares Dynamics purchased pursuant to the offer. If we were to affirm, Dynamics would continue to exercise the voting rights it had under the judgment of the Court of Appeals that the Act was pre-empted and unconstitutional. Because we decide today to reverse the judgment of the Court of Appeals, Dynamics will have no voting rights in its shares unless shareholders of CTS grant those rights in a

control-share acquisition, these shares are control shares as defined in the statute with no voting rights.[4]

## V. CONCLUSION

Based on the foregoing, it is therefore,

**ORDERED AND ADJUDGED** that Defendant's Motion (Doc. 101) is **DENIED**. A judgment will be entered by separate order.

**DONE** and **ORDERED** in Chambers, Orlando, Florida this 9th day of December, 2002.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

---

meeting held pursuant to the Act. See Settlement Agreement, p. 7, par. 12, reprinted in letter from James A. Strain, Counsel for CTS, to Joseph F. Spaniol, Jr., Clerk of the United States Supreme Court (Mar. 13, 1987) (Emphasis added).
CTS, 481 U.S. at 78 n.5. Both the Comments and the footnote in CTS indicate that the Indiana Legislature intended and the Supreme Court agreed that disinterested shareholders could only determine the voting rights for those shares obtained in a control share acquisition. Thus, all previously owned shares would retain their voting rights.

[4] Although HTE originally asserted that all of the 5,618,952 shares of stock owned by Tyler would forever lose their voting rights, HTE has since changed its position. HTE and Tyler now agree that even if Tyler is not afforded voting rights on its shares, a subsequent bona fide purchaser, who was not affiliated with Tyler in any manner, who did not acquire the shares in a control-share acquisition, and who complied with section 607.0902, Florida Statutes, would be afforded full voting rights.

F I L E   C O P Y

Date Printed: 12/10/2002

Notice sent to:

    ___ John W. Foster Sr., Esq.
    Baker & Hostetler, LLP
    200 S. Orange Ave., Suite 2300
    P.O. Box 112
    Orlando, FL  32802-0112

    ___ Jerry Ray Linscott, Esq.
    Baker & Hostetler, LLP
    200 S. Orange Ave., Suite 2300
    P.O. Box 112
    Orlando, FL  32802-0112

    ___ William B. Wilson, Esq.
    Holland & Knight, LLP
    200 S. Orange Ave., Suite 2600
    P.O. Box 1526
    Orlando, FL  32802-1526

    ___ Michael D. Starks, Esq.
    Holland & Knight, LLP
    200 S. Orange Ave., Suite 2600
    P.O. Box 1526
    Orlando, FL  32802-1526

[handwritten initials] 12-10-02